**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NETLIST, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 2:21-CV-463-JRG |
| | ) |
| SAMSUNG ELECTRONICS CO., LTD., | ) JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS AMERICA, | ) ███████████████ |
| INC., SAMSUNG SEMICONDUCTOR, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO
SEVER AND STAY PATENTS AT ISSUE IN DELAWARE (ECF NO. 26)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

    A. Samsung Filed an Improper Anticipatory Suit in Delaware on Patent Families That Are Not at Issue in This Case ......................................... 2

    B. The Delaware DJ Patents and the Texas Patents Represent Separate Causes of Action ................................................................................. 4

        1. The Texas and Delaware DJ Patents Have Different Priority Dates ................................................................................. 4

        2. The Texas and Delaware DJ Patents Involve Substantially Different Products .......................................................... 5

        3. The PMIC Patents Have No Overlap with the Delaware DJ Patents .................................................................................. 6

        4. The Distributed Buffer Families Have No Relationship to the Delaware DJ Patents ........................................... 7

        5. Different Witnesses ................................................................................ 9

    C. The Co-Pending Micron Suit in the Eastern District Involves Identical Patents and Products ................................................................................. 10

III. ARGUMENT ................................................................................................................... 10

    A. The Texas Patents Do Not Relate Back to the Delaware DJ Patents ................................................................................................................ 10

    B. Even if Relation Back Was Proper, the Court Should Not Grant the Motion to Stay Because Complete Relief Cannot Be Granted in Delaware ................................................................................... 13

    C. Samsung Fails to Otherwise Show the Need to Sever or Stay this Case ....................................................................................................... 14

IV. CONCLUSION ............................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020) ................................................................................................15

*In re ASM International, N.V.*,
   774 F. App'x 650 (Fed. Cir. 2019) ..................................................................................*passim*

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012) ................................................................................................10

*Serco Servs. Co., L.P. v. Kelley Co., Inc.*,
   51 F.3d 1037 (Fed. Cir. 1995) ..................................................................................................14

*Woodbolt Distrib., LLC v. Nat. Alternatives Int'l, Inc.*,
   No. 11-cv-1266, 2013 WL 247041 (D. Del. Jan. 23, 2013) .....................................................14

**Statutes**

35 U.S.C. § 271(a) ........................................................................................................................14

**I.    INTRODUCTION**

On October 14, 2021, Judge Scarsi in the Central District of California ruled that Samsung had materially breached a Joint Development and License Agreement ("JDLA") it signed with Netlist, and that the agreement was terminated. The next day, Samsung Electronics Co, Ltd. ("SEC") and one of its subsidiaries, Samsung Semiconductor, Inc. ("SSI") raced to file a declaratory judgment in Delaware, a district in which neither Samsung nor Netlist maintains any facilities, documents, or witnesses. The original suit involves four non-infringement declaratory judgment claims on four patents ("Delaware DJ Patents"), three claims for patent unenforceability, and a state law breach of contract claim that seeks to subvert Judge Scarsi's ruling. Netlist has moved to dismiss this improper anticipatory complaint, and nothing substantive has happened in the Delaware case at all. Samsung is seeking a stay and severance based on claims that Judge Andrews has not even agreed to hear.

On December 20, 2021, Netlist brought a suit against SEC, SSI and Samsung Electronics America ("SEA") (collectively "Samsung") in this Court. SEA, based on the venue statute, cannot be sued in Delaware. To be respectful of the jurisdiction of the District of Delaware, the Texas suit involves patents from entirely different families, directed at entirely different technologies, and with one exception, different products (the "Texas Patents"). *In re ASM International, N.V.*, 774 F. App'x 650 (Fed. Cir. 2019) makes clear that, on these facts, the Delaware and Texas cases should proceed independently. There, the Federal Circuit expressly rejected the very premise underlying Samsung's motion, emphasizing that "no precedent had been advanced 'supporting the proposition that one court must hear all forms of intellectual property misappropriation of an accused product.'" *Id.* at 652 (citation omitted).

Samsung had a choice after Netlist filed its complaint before this Court. It could have respected the authority of this Court to determine its own jurisdiction and heeded black-letter precedent. In essence, if Samsung believed the Delaware court should adjudicate the Texas Patents

together with the Delaware DJ Patents, Samsung could have – and should have – brought a motion to transfer before this Court.  Instead, Samsung engaged in litigation tactics.  Shortly after Netlist agreed to Samsung's 90-day response extension here, Samsung amended its Delaware complaint to add the Texas Patents that were first filed before this Court, attempting to strip this Court of its authority to control its own docket.  Yet, under the clear holding in *In re ASM International*, this Court has the sole authority to determine whether this case can properly proceed in Texas.

## II.   BACKGROUND

### A. Samsung Filed an Improper Anticipatory Suit in Delaware on Patent Families That Are Not at Issue in This Case

In 2020, Netlist brought an action against SEC for breaching the 2015 JDLA.  Mtn. 2.  On October 14, 2021, Judge Scarsi in the Central District of California entered a summary judgment order finding that Netlist properly terminated the JDLA after Samsung materially breached the Agreement. Ex. 1 at 20–21.  At the time of Judge Scarsi's October 14, 2021 order, the C.D. Cal. case was still ongoing.  SEC and SSI then rushed to file a declaratory judgement action in Delaware **the day after** Judge Scarsi's unfavorable decision, based on the four Delaware DJ Patents, U.S. Pat. Nos. 10,217,523, 10,474,595, 9,858,218, and 7,619,912.  Mtn. 3.  Netlist moved to dismiss the Delaware Action on the basis that there was/is no live case and controversy between the parties as to the Delaware DJ Patents, and that the suit was brought to improperly interfere with the jurisdiction of Judge Scarsi and with a case involving the '912 patent that has been pending for nearly 13 years in the Northern District of California between Google and Netlist.  For example, SEC and SSI openly admitted in the Delaware complaint that they included the '912 patent following an indemnification request from Google.  ECF No. 26-2 (Del. FAC), ¶¶ 14, 43.

On December 20, 2021, Netlist filed an infringement action against SEC, SSI and SEA based on four Texas Patents from entirely distinct patent families: U.S. Pat. Nos. 10,860,506, 10,949,339 and

11,016,918, with a notice in the complaint that Netlist would add U.S. Pat. No. 11,232,054 – a continuation of the '918 patent – after it issued. Netlist did not include in this action any of the Delaware DJ Patents, nor patents in the same families as the Delaware DJ Patents, in order to respect the jurisdiction of the Delaware Court to adjudicate the Delaware DJ Patents.

The Texas Action brings claims against three entities: SEC (a foreign entity), SSI (a California corporation with all its US manufacturing facilities in Texas), and SEA (major facilities in Texas). SEA is not a party to the Delaware Action and cannot be sued for patent infringement in Delaware – it has no physical location in Delaware and is registered as a New York entity. ECF No. 25, ¶ 6. But SEC, SSI, and SEA can all be sued in Texas where they have an extensive presence. Texas is the location of **all** of Samsung's manufacturing facilities in the United States. Ex. 2 (Samsung in Texas), at 4. SEC, SEA, and SSI also routinely agree to defend patent actions in this District. ECF No. 23, ¶ 13. The evidence will show that SEA commits distinct acts of infringement in Texas, including using infringing memory modules manufactured by its affiliates outside of the U.S. to run SEA's business in the U.S.

Although SEC has no reservations appearing in the U.S., as evidenced by its improper Delaware Action, SEC stated that it would force Netlist to serve SEC in Korea via the Hague Convention unless Netlist agreed to a 90-day extension for SEC, SSI, and SEA to answer. On January 18, 2022, shortly after Netlist agreed to the 90-day extension to their answer, SEC and SSI amended their Delaware complaint, adding three of the Texas Patents – '506, '339 and '918 patents. Mtn. 4. Days later, Samsung moved to amend its complaint again to add another of the Texas Patents – the '054 patent – to the Delaware suit. *Id.* Netlist renewed its motion to dismiss as to the Delaware DJ Patents as an improper anticipatory lawsuit, moved to dismiss the addition of the original Texas Patents as an improper attempt to subvert this Court's jurisdiction, and opposed the motion to amend on the same basis. Ex. 3 (Netlist's Renewed Motion to Dismiss), at 13-15, 19-20; Ex. 4 (Netlist's Opposition to Samsung's Motion to Amend), at 11-17, 25. SEA remains a non-party to the Delaware

Action.

The District of Delaware has no concrete connection to the dispute between the parties. Not a single party has a facility or employees in the district. There is no evidence that the forum is convenient to any witnesses or contains any of the documents that will be at issue in the case. This is in stark contrast with Texas, which is a center of research and manufacturing for SEC, SSI, and SEA, and dramatically more convenient for both Samsung's Korean witnesses (who can fly directly to Dallas) and Netlist's witnesses, who are primarily on the West Coast.

After completing a technical analysis of additional Samsung memory products known as high bandwidth memory ("HBM"), Netlist included in its amended complaint in the Texas Action two additional patents against SEC, SSI, and SEA – U.S. Pat. Nos. 8,787,060 and 9,318,160 (together with the four above, the six "Texas Patents"). ECF No. 23, ¶ 3. The two HBM patents are also from an entirely distinct patent family from the Delaware DJ Patents.

There has been no activity in the Delaware Action. Although the case was filed 8 months ago, there has been no scheduling conference, discovery has not started, and SEC and SSI have not even approached the Court to request a ruling on the pending motions or to set a schedule. SEC and SSI are obviously content that the case remains inactive, consistent with Netlist's position that it was an improper anticipatory lawsuit that is now being used to stop progress of the Texas action and the unrelated Northern District Google action.

> **B.      The Delaware DJ Patents and the Texas Patents Represent Separate Causes of Action**
>
> 1.   **The Texas and Delaware DJ Patents Have Different Priority Dates**

The Delaware DJ Patents involve three separate patent families. The six patents at issue before this Court (the Texas Patents) involve entirely different patent families with different priority dates.

| Patent(s) | Priority Application(s) | Priority Date | Patent Family |
|---|---|---|---|
| **Delaware DJ Patents** | | | |
| '523 Pat. | Provisional No. 61/044,801 | April 14, 2008 | Dual-mode Operation Family I |
| '595/'218 Pat. | Provisional No. 61/186,799 | June 12, 2009 | Dual-mode Operation Family II |
| '912 Pat. | Provisional Nos. 60/550,668, 60/575,595 and 60/588,244 | Mar. 5, 2004, May 28, 2004, July 15, 2004 | Rank Multiplication Family |
| **Texas Patents** | | | |
| '506 Pat. | Provisional No. 61/676,883 | July 27, 2012 | Distributed Buffer Family I |
| '339 Pat. | U.S. App. No. 12/504,131 | July 16, 2009 | Distributed Buffer Family II |
| '918/'054 Pat. | Provisional No. 60/941,586 | June 1, 2007 | PMIC Family |
| '060/'160 Pat. | Provisional No. 61/409,893 | Nov. 3, 2010 | HBM Family |

2. **The Texas Patents and Delaware DJ Patents Involve Substantially Different Products**

In addition to involving entirely different patent families with different priority dates and prior art, the products covered by the Delaware DJ Patents and the Texas Patents are dramatically different.

| Product | Texas Patents | Covered by Delaware DJ Patents |
|---|---|---|
| HBM | Yes | No |
| DDR5 | Yes | No |
| DDR4 RDIMMs | No | Yes |
| DDR4 LRDIMMs | Yes [Technology specific to timing of data buffers on the LRDIMMs] | Yes [Technology specific to dual operating modes of LRDIMMs] |

As explained by Netlist's expert, Dr. William Mangione-Smith, a dual in-line memory module ("DIMM") is an assembly of individual memory devices (DRAMs) interconnected with other components (such as a registering clock driver ("RCD"), and data buffers) on a printed circuit board. Dr. Mangione-Smith Decl. ("MS Decl."), ¶¶ 10, 12-13. Much like the category "smartphone," DIMMs encompass numerous different designs based on the generation of DRAM on the module (*i.e.*, DDR5, DDR4, etc.) and the design of the module (*i.e.*, LRDIMM, RDIMM, UDIMM, SODIMM), which in turn affects not only the design of the memory devices themselves but also the types and designs of

specific components on the modules that interact with the memory devices. *Id.* Saying all DIMMs are the same is like saying all smartphones are the same. It is not a serious technical position.

3. **The PMIC Patents Have No Overlap with the Delaware DJ Patents**

The PMIC Family is directed to power management integrated circuits ("PMICs") that are located on the memory module. MS Decl., ¶¶ 18-19. Earlier memory generations put the power management on motherboard. *Id.* ¶ 19. Bringing the PMIC function onto the module itself "marks a radical change in voltage regulation." Ex. 5 at 3. DDR5 DIMMs' motherboard is no longer responsible for voltage regulation and power management, while DDR4 DIMMs' power management functionality resides in the motherboard and outside the memory module. MS Decl., ¶ 19. This subject matter is undoubtedly unrelated to the Delaware DJ Patents. *Id.* ¶¶ 20-21, 31.

***First***, the PMIC Family and the Delaware DJ Patents implicate different memory module products. Samsung's original Delaware complaint only asked the Court to declare that Samsung's **DDR4** DIMMs did not infringe the Delaware DJ Patents. ECF No. 26-3, ¶¶ 92, 102. In contrast, in this Action, Netlist asserts the PMIC Family ***only against* DDR5** DIMMs. ECF No. 23 ¶¶ 36, 41.

***Second***, as explained above, the PMIC Family and the Delaware DJ Patents implicate different functionalities based on different generations of DDR memory technologies. The Court need not take Netlist's word for this. When SEC and SSI improperly attempted to inject the PMIC Family into the Delaware case, they identified the JEDEC standards they believed are implicated; and the two sets have no overlap.

| Delaware DJ Patents[1] | PMIC Family |
|---|---|
| '523 patent: JESD82-32 DDR4 Data Buffer Definition. ECF No. 26-2 (Del. FAC), ¶ 63. | JESD 301-1 PMIC for DDR5; JESD 82-511 DDR5 RCD Definition; and JESD 79-5 DDR5 SDRAM. ECF No. 26-2 (Del. FAC), ¶ 57. |
| '595/'218 patents: JESD 82-31 DDR4 RCD | |

---

[1] Because not even Samsung contends its action is the first-filed action regarding the '912 patent at issue in the Google Action, Netlist does not include it in the charts.

| Definition. ECF No. 26-2 (Del. FAC), ¶ 70. | |

**Third,** DDR5 and DDR4 were developed a decade apart. JEDEC began publishing DDR4 standards in 2012, but did not publish the first DDR5 standard until 2020. Ex. 6 at 1.

4. **The Distributed Buffer Families Have No Relationship to the Delaware DJ Patents**

One of the key differences between RDIMMs and LRDIMMs is that LRDIMMs have a distributed set of buffers, one buffer for each data line, while RDIMMs have no data buffering. MS Decl., ¶ 13. The Distributed Buffer Families before this Court relate specifically to the use of distributed buffers, and more precisely, the latency control for the data paths between the distributed data buffers and the associated DRAMs. RDIMMs falling under the Delaware DJ Patents do not include this feature. *Id.* For example, the Texas '339 patent recites "wherein [a] byte-wise data path is enabled for a first time period in accordance with a latency parameter to actively drive a respective byte-wise section of the N-bit wide write data associated with [a] memory operation from the first side [of the data buffer] to the second side during [a] first time period," and "wherein the byte-wises data path includes first tristate buffers, and [a] logic in response to the module control signals [from an RCD] is configured to enable the first tristate buffers to drive the respective byte-wise section of the N-bit wide write data to the respective module data lines during the first period." Ex. 7 at 19:56:67; *see also* Ex. 8 at 19:38-52 (reciting data buffer's use of delayed read data strobe in response to signals from RCD for reading data from the DRAMs to the data buffer).

In contrast, the Delaware '912, '218, and '595 patents read on technology that is generically applicable to all DIMMs with an RCD serving as a module controller, and thus do not relate to the unique distributed data buffers found only in LRDIMMs. MS Decl., ¶¶ 22-29. The Delaware '912 patent, Ex. 9, reads on all rank multiplied DIMMs with features relating to the standard-set per-DRAM addressability feature. *Id.*, ¶¶ 27-28. It has nothing to do with the timing of signaling of distributed

buffers in LRDIMMs. As Dr. Mangione-Smith explains, the Delaware '595 and '218 patents "are directed to a novel technique enabling the memory module to communicate with a system memory controller during initialization or training." *Id.*, ¶ 29. During normal operation, the module controller, *e.g.*, RCD, is "configurable to output via [an] open drain output and [an] error edge connection a signal indicating a parity error occurred while the memory module is in [a] first mode." Ex. 10, cl. 1. In contrast, in the second mode, the module controller is "configurable to provide information related to the one or more training sequences by driving the open drain output and the error connection" to a low logic level state or a high impedance state. *Id.*; *see also* Ex. 11, cl. 1. Thus, the Delaware '595 and '218 patents do not implicate the timing issues with distributed data buffers. MS Decl., ¶ 29.

The '523 patent, like the '595 and '218 patents, also recites a memory module operable in at least a first mode (normal operation) and a second mode during which a data buffer "is configured to isolate [] memory devices from being accessed by the system memory controller." *E.g.*, Ex. 12, cl. 1. As Dr. Mangione-Smith explains, in that second mode, the data buffer is configured to send training data patterns to memory devices in accordance with the control and address signals from the module memory controller (RCD). *E.g.*, *id.*, 17:20-30; MS Decl., ¶ 30. *See also, e.g.*, *id.*, cls. 5-7 (dependent claims directed to on-board logic the memory module utilizes to conduct self-testing); *id.*, 14:1-4 (noting that in the second mode, the memory module may, for example, "include switching (e.g., by configuring the test controller 36) the mode of the memory module 10 from a normal operation mode to the test mode."). The '523 patent does not implicate the timing of data signals from the distributed data buffer architecture. MS Decl., ¶ 30. Consequently, there is no technical overlap between the Distributed Buffer Families in Texas and the '523 patent in Delaware.

The Court only need to look at the JEDEC standards that SEC and SSI identified when they attempted to inject the Distributed Buffer Families into the Delaware case. Once again, there is no overlap.

| **Delaware DJ Patents** | **Texas Distributed Buffer Families** |
|---|---|
| '523 patent: JESD82-32 [§ 2.1.8.5] DB-to-DRAM Write Delay Training. ECF No. 26-2 (Del. FAC), ¶ 63.<br><br>'595/'218 patents: JESD82-31 [§2.12] CA Bus Training Modes (Clock-to-CA training). ECF No. 26-2 (Del. FAC), ¶ 70. | '506 patent: JESD82-32A § 2.14 Read Commands and MPR Override Reads. ECF No. 26-2 (Del. FAC), ¶ 56; ECF No. 23, ¶ 72.<br><br>'339 patent: JESD79-4C § 4.25.5 Write Burst Operation and § 4.24.2 Read Burst Operation; JESD 21C § 6.1 Signal Groups; and JESD82-32A § 2.13 Write Commands, § 4.61 Logic Diagram, § 10.5 Output Timing Requirements. ECF No. 26-2 (Del. FAC), ¶ 56; ECF No. 23, ¶¶ 85–89. |

5. **Different Witnesses**

Samsung identified different witnesses for DDR5 modules and DDR4 LRDIMMs in this case. In particular, it identified Messrs. Kyungsoo Park and Hun-Joo Lee for DDR5 DIMMs, and Mr. You Keun Han for DDR4 LRDIMMs. Ex. 13, at 19-20. In contrast, in the Delaware Action, Samsung identified a Mr. Junseon Yoon as knowledgeable about the products at issue there. Ex. 14. Mr. Yoon is not identified on Samsung's Rule 26(a) disclosure in this case.

Furthermore, as the table below shows, there is extremely limited overlap between the inventors and prosecuting attorneys for the Delaware DJ Patents and the original Texas Patents.

|  | **Delaware DJ Patents** | **Texas Patents** |
|---|---|---|
| **Inventors**[2] | '912 patent: Jeffrey C. Solomon.<br><br>'595 and '218 patents: Hyun Lee.<br><br>'523 patent: Hyun Lee, Soonju Choi. | Distributed Data Buffer Families: Hyun Lee.<br><br>PMIC Family: Chi-She Chen, Jeffrey C. Solomon, Scott H. Milton.<br><br>HBM Family: Hyun Lee. |
| **Prosecution Counsel** | Bruce Itchkwawitz, Mehran Arjomand, David S. Kim, Jamie Zheng. | Michael Messinger, Khaled Shami (PMIC Family), and Jamie Zheng (Distributed Buffer Families & HBM Family). |

Notably, Inventor Lee is the sole inventor of the HBM Patents – that Samsung acknowledges should be heard by this Court – and the Texas Distributed Buffer Families, and Ms. Zheng is the prosecuting

---

[2] One of the inventors on a number Netlist's patents is Jayesh R. Bhakta, who has passed away. Therefore he is not addressed in this chart.

attorney for the HBM Patents and the Texas Distributed Buffer Family.

      **C.    The Co-Pending Micron Suit in the Eastern District of Texas Involves Identical Patents and Products**

On June 10, 2022, Netlist filed suit against Micron Technology, Inc. and its Texas-based subsidiaries in this District. *Netlist v. Micron Tech., Inc.*, No. 22-cv-203-JRG, ECF No. 1 (E.D. Tex. June 10, 2022). The Micron Action involves the same six patents at issue here – the '506, '339, '918, '054, '060, and '160 patents (*id.*, ¶ 2) – asserted against the exact same types of products at issue here – DDR4 LRDIMMs, all DDR5 DIMMs, and HBM (*id.*, ¶¶ 54-65).

**III.    ARGUMENT**

SEC, SSI, and SEA decided to seek a stay/severance from this Court while Netlist's motion to dismiss is pending in Delaware. Judge Andrews has not even agreed to hear a suit on the Delaware DJ Patents, much less consider the Texas Patents that were first filed before this Court. In contrast, SEC, SSI, and SEA have all answered and have not moved to dismiss. As a result, the Texas Patents are definitively before this Court. SEC and SSI's decision to file the instant motion is an acknowledgement that it is proper for this Court to determine the appropriate scope of its jurisdiction and that doing so will not impinge on the authority of the Delaware Court. The first-filed rule "favors pursuing only the first-filed action when multiple lawsuits involving ***the same claims*** are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (emphasis added). Netlist initiated the Texas Action on December 20, 2021. Samsung improperly attempted to add certain of the Texas Patents to Delaware on January 18, 2022. Netlist's action before this Court is therefore the first-filed action as to the Texas Patents.

      **A. The Texas Patents Do Not Relate Back to the Delaware DJ Patents**

Federal Circuit precedent quickly disposes of Samsung's assertion that its second-filed claims against the Texas Patents relate back to its legally defective and anticipatory Delaware action. *In re*

*ASM International* involved a writ of mandamus review. 774 F. App'x at 650. ASM and HiKE sued each other for patent infringement in December 2017 in N.D. Cal. "In February 2018, HiKE filed the underlying complaint in the District of Oregon, alleging that the same products infringed four different patents[.]" *Id.* at 651. ASM moved to transfer the Oregon case under the first-to-file rule. The district court denied the motion to transfer, noting that although the same products were at issue in both cases, the fact that the patents involved different technologies meant that the first-to-file rule was inapplicable:

> "[e]ven though the Accused Products are the same in both actions, the Accused Products are highly complex and involve multiple different technologies and the California lawsuit and the Oregon lawsuit involve different patents, different claim terms, and different claim elements." *Id.* at 651.

The Federal Circuit affirmed, first noting that it has long been the Federal Circuit's position that "no precedent ha[s] been advanced 'supporting the proposition that one court must hear all forms of intellectual property misappropriation of an accused product.'" *Id.* at 652 (citation omitted).

The Federal Circuit expressly rejected the argument that the presence of the same products in both cases justified the application of the first-filed rule, making clear that a specific technical analysis had to occur to understand overlap:

> "the district court exercised its considerable discretion to not transfer because this case involves different asserted patents, claim terms, and technology than are at issue in the Northern California action. ASM does not directly refute these factual findings and instead largely urges transfer because both cases involve the same products. However, that was essentially the same argument that was rejected [previously]." *Id.*

Even if the products were identical, this Court is still the first-filed court as to the Texas Patents. The Texas Patents and the Delaware DJ Patents involve completely different patent families and memory technologies. Under *ASM International*, this Court is the first-filed forum.

The PMIC Family and the Distributed Buffer Families are properly analyzed separately because each family represents a distinct cause of action.

**PMIC Family**: These patents are from a different patent family than the Delaware DJ Patents. There is no overlap in accused products or technology. *See supra*, II.B.2, 3 and 5. As a result, there is no evidence of any overlap, let alone substantial overlap, in infringement or validity. The PMIC Family is directed to a PMIC located on the DDR5 memory module, a feature which does not even exist in DDR4 products. Indeed, every DJ count in SEC and SSI's October 2021 anticipatory DJ is expressly limited to "Samsung DDR4 Memory Modules." ECF No. 26-3, ¶¶ 92, 102, 113, 127. Because of the fundamental differences in technology and products, the PMIC Family and Delaware DJ Patents will also not overlap in their damages analyses.

**Distributed Buffer Families:** The Distributed Buffer Families are not from the same family as any of the Delaware DJ Patents. And Samsung does not identify in its filings before the Delaware court any common sections of the JEDEC standards that will be implicated as to the disputed elements. Thus, there is again no evidence of substantial overlap in infringement or validity. As to damages, the Distributed Buffer Families are directed specifically and only to DDR4 LRDIMMs. The DDR4 LRDIMMs are among the DDR4 products at issue in Delaware. Despite this fact, there will be no meaningful overlap in the damages analysis. *See* MS Decl., ¶ 31. This is because the Distributed Buffer Families are directed to unique timing features present only in the distributed data buffers on LRDIMMs. *Id.*, ¶¶ 22-26. But the Delaware '912, '218, and '595 patents are directed at generic features present on all DDR4 DIMMs with RCDs, and the Delaware '523 patent does not implicate timing issues of distributed data buffers, but only the same dual mode operation at issue in the Delaware Action's '218 and '595 patents. *See supra*, II.B.4; MS Decl., ¶¶ 27-30.

Samsung does not engage the specific question of substantial overlap in infringement, validity and damages. Instead, it only alleges superficial similarity, such as three shared inventors (one deceased, and one the sole inventor of the HBM Patents not subject to the stay motion), one common prosecution attorney (who also prosecuted the HBM Patents), and one overlapping group of products.

But that is not enough to support relation back under *ASM International*. Indeed, under Samsung's legally defective version of substantial relation, the Distributed Buffer Family is as connected to the HBM Patents as it is to any of the Delaware DJ patents. Samsung's position is tantamount to arguing that all lawsuits between Samsung and Netlist concerning DIMMs must occur in Delaware because it filed an improper anticipatory lawsuit in that district, regardless of how remote or orthogonal the patented features are. *ASM International*, 774 F. App'x at 652, made clear this is not the law.

The dramatic dissimilarity in the patents' coverage and claims are not overcome by their declaration to different JEDEC standards. The Texas Patents and the Delaware DJ Patents each implicate different sections of the JEDEC standards – which Samsung's pleadings admit, *see supra*, II.B.3, 4 – that were developed at different times with different development and voting history. As such, the two sets of patents require gathering different sets of facts and analyzing different limitations and JEDEC standards. Samsung's allegation that Netlist failed to comply with its obligation to disclose the relevant standard-essential patents and provide a FRAND license is also patent-family specific. *See* Ex. 15 (JEDEC Patent Policy) at 23 ("Disclosure of a patent is deemed to include all patents claiming priority of a single filing."). Because the Texas Patents and the Delaware DJ Patents belong to different patent families, no substantial overlap exists on the facts underlying Samsung's breach-of-contract claim, even if Samsung has asserted such a claim in this case.

### B. Even if Relation Back Was Proper, the Court Should Not Grant the Motion to Stay Because Complete Relief Cannot Be Granted in Delaware

SEA is not a party to the Delaware Action and cannot be sued for patent infringement in Delaware – it has no physical location in Delaware and is registered as a New York entity. ECF No. 25, ¶ 6. But SEC, SSI, and SEA can all be sued in Texas where they have an extensive presence. Texas is the location of all of Samsung's manufacturing facilities in the United States. Ex. 2 (Samsung in Texas), at 4. SEA has a major presence in the district. And SEC, SEA, and SSI also repeatedly agree

to defend patent actions in the Eastern District.

In the Delaware Action, Samsung claims SEA "is not involved in the design or sale of the allegedly infringing Samsung products." ECF No. 26-8, at 5 n.3. This ignores the plain terms of 35 U.S.C. § 271(a), which identifies use as an independent act of infringement. In this Action, Netlist has alleged that SEA infringes by, *inter alia*, using the infringing products. ECF No. 23, ¶ 6. The record will show that SEA would be unable to run its business without the use of the infringing products. Moreover, because SEC and SSI claim that they do not manufacture the products in the United States, SEA's importation of the accused products for, *e.g.*, its own use, will be a primary source of damages.

Delaware courts and the Federal Circuit both hold that a second-filed action should be favored when it can provide complete relief. *See Woodbolt Distrib., LLC v. Nat. Alternatives Int'l, Inc.*, No. 11-cv-1266, 2013 WL 247041, at *2 (D. Del. Jan. 23, 2013) (dismissing declaratory judgment case where the plaintiff engaged in forum shopping and where a later-filed action in Texas was poised to resolve all parties' disputes and presented a more convenient forum for both the Texas-based declaratory judgment plaintiff and the California-based defendant); *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039–40 (Fed. Cir. 1995) (affirming second-filed infringement case going forward over first-filed DJ because the DJ was filed in "anticipation of the [second-filed] suit and [the district court had] considered the availability of witnesses and documents in each forum").

### C. Samsung Fails to Otherwise Show the Need to Sever or Stay this Case

The above analysis makes clear that "the extent of overlap [and] the likelihood of conflict" between the Delaware DJ Patents and the original Texas Patents is extremely limited. *In re ASM Int'l, N.V.*, 774 F. App'x at 652. The other factors the Federal Circuit teaches should be considered under a first-to-file issue are "the comparative advantage and the interest of each forum in resolving the dispute." *Id.* These other factors weigh strongly in favor of denying the motion to stay.

**First**, the Delaware Action was extraordinarily complex when originally filed, without the

Texas Patents. Adding the Texas Patents to the Delaware action would make it even more unmanageable. In contrast, keeping the actions separate allows for balanced litigation in each district, with a similar number of patent families at issue in each.

**Second**, Texas has a dramatically greater interest and advantage in resolving this dispute. There are no facilities, witnesses, or discovery located in or near Delaware for either party. In contrast, all of Samsung's manufacturing facilities in this country, as well as SEA's major office, are located in Texas. Ex. 2 (Samsung in Texas), at 4. These locations will be a locus of documents and witnesses needed for this case. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020). Moreover, all of Netlist's identified witnesses are located on the West Coast. *See* Exs. 17-18. Travelling to Texas for trial is dramatically more efficient than travel to the East Coast. The same holds for Samsung's witnesses in Korea, who can take advantage of Samsung's extensive facilities in Texas and the many direct flights between Korea and Dallas.

**Third**, any theoretical conflict that could exist between the Delaware DJ Patents and the Texas Patents will never come to pass. Trial on the Texas Patents is scheduled for May 2023. ECF No. 34. In contrast, there has been no substantive action in the Delaware Action, and the average time to a claim construction for patent cases before Judge Andrews is 24.2 months, and the average time for a jury trial in patent cases before Judge Andrews is 38.3 months. Ex. 16 (Docket Navigator data from 2008 through the present). In recent months, the District of Delaware has only become more impacted by Judge Stark's elevation to the Federal Circuit.

**Fourth**, the pending case against Micron in this district also involves the Texas Patents and similar products. This Court will become familiar with the technology at issue, and will be best positioned to adjudicate and ensure consistency for overlapping issues between the two suits.

## IV. Conclusion

For the reasons stated above, Samsung's Motion to Sever and Stay should be denied.

| | |
|---|---|
| Dated: June 17, 2022 | Respectfully submitted, |

/s/ *Jason Sheasby*

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
jsheasby@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**Attorneys for Plaintiff Netlist, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that, on June 17, 2022, a copy of the foregoing was served to all counsel of record.

/s/ *Jason Sheasby*
Jason Sheasby

- 17 -

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that a motion to seal this document is being filed contemporaneously pursuant to Local Rules CV-5(a)(7) and CV-7(k).

*/s/ Jason Sheasby*
Jason Sheasby
