# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:21-CV-463-JRG |
| vs. ) | |
| ) | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD., ) | |
| SAMSUNG ELECTRONICS AMERICA, ) | |
| INC., SAMSUNG SEMICONDUCTOR, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF NETLIST, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANTS SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG SEMICONDUCTOR, INC. (NOS. 1–11)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Netlist, Inc. ("Netlist") directs the following interrogatories to defendants Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Semiconductor, Inc. ("SSI") (collectively "Samsung" or "Defendants") to be answered no later than thirty (30) days from the date thereof.

**DEFINITIONS**

1. Unless the context indicates otherwise, for purposes of these discovery requests, the following words and phrases have the meanings given:

2. "Samsung," "Defendant(s)," "You," or "Your" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. and any present or former parent, subsidiary, division, subdivision, affiliated company, licensee, predecessor, or successor of Samsung, and any of its or their present or former officers, directors, agents, attorneys, consultants, accountants, employees, representatives, investigators, distributors, salespersons, sales representatives, licensors,

licensees, and any other persons acting, or purporting to act for or on its or their behalf or under its or their control, including but not limited to experts or persons consulted concerning any factual matter or matters of opinion relating to any issues involved in the action.

3. "Netlist" shall mean Plaintiff Netlist, Inc. and all of its affiliates, officers, employees, agents, representatives, contractors, consultants, attorneys, successors, and assigns.

4. "Patent" means any United States, international, or foreign classes or types of patents, utility models, design patents, applications (including provisional applications), certificates of invention, reissues, divisionals, continuations, continuations-in-part, extensions, renewals, reexaminations and foreign counterparts thereof.  The defined term Patent includes all stated categories of intellectual property regardless of whether those rights are presently expired or were ever adjudged invalid.

5. "Netlist Patents-in-Suit" means and refers to U.S. Patent Nos. 10,860,506 ("'506 Patent"), 10,949,339 ("'339 Patent"), 11,016,918 ("'918 Patent"), 11,232,054 ("'054 Patent"), 8,787,060 ("'060 Patent"), and 9,318,160 ("'160 Patent"), as well as all applications and patents that share a common priority claim.

6. "Third party" means any individual, entity, organization, partnership, or corporation that is not a party to this action.

7. "Prior Art" is used in the same manner in which the term is used in pre-AIA 35 U.S.C. §§ 102 and 103, and includes any patent, printed publication, system, prior knowledge, prior use, prior sale, offer of sale, or other act or event relevant to patentability under 35 U.S.C. §§ 102 or 103, or that You otherwise assert renders any asserted claim invalid.

8. "Accused Instrumentalities" shall mean any and all of: (1) Samsung Double Data Rate 4 ("DDR4") load reduced dual in-line memory modules ("LRDIMMs"), including but not limited to those listed on page 1 of Exhibits A and B to Netlist's P.R. 3-1 disclosures and any other products that operate in a substantially similar manner ("Samsung Accused DDR4 LRDIMMs"); (2) Samsung Double Data

Rate 5 ("DDR5") dual in-line memory modules, including, but not limited to those listed on page 1 of Exhibits C and D to Netlist's P.R. 3-1 disclosures and any other products that operate in a substantially similar manner ("Samsung Accused DDR5 DIMMs"); and (3) Samsung HBM2 or HBM2E high bandwidth memory products, including but not limited to those listed on page 1 of Exhibits E and F to Netlist's P.R. 3-1 disclosures and any other products that operate in a substantially similar manner ("Samsung Accused HBM Products").

9. "Standard(s)" means any technical standard created, authorized, controlled, and/or developed privately or unilaterally by a corporation, consortium, regulatory body, government, or standards setting organization.

10. "JEDEC" means the JEDEC Solid State Technology Association.

11. "Person" refers to any natural individual; any form of business entity including, but not limited to, any corporation, company, firm, general partnership, limited partnership, limited liability company, joint venture, proprietorship, business association, association, foundation, and legal entity; any directors, officers, owners, members, employees, agents, representatives, and attorneys of any of the foregoing; anyone else purporting to act on behalf of any such natural person or business entity; or any government entity, agency, officer, department, or affiliate.

12. "Specification" means all Documents or Things that discuss, illustrate, define, or reflect, in whole or in part, any aspect of how something is or should be made, inspected, or tested. Specifications include, for example, layout-design (topography) documents, textual documents, drawings, mask files, circuit diagrams, block diagrams, flow diagrams, product specifications, functional specifications, internal design and development specifications, architectural manuals, user manuals, programmer's guides, manufacturing process specifications, material specifications, assembly specifications, blueprints, and/or illustrations.

13. "Source Code" means programming language statements that can be compiled, transformed, interpreted, executed, or otherwise processed by software (or further compiled, transformed, interpreted, executed, or otherwise processed by software) into object code. This includes, without limitation, instructions, statements, procedures, subroutines, and programs written in a high-level programming language, design description language, or assembly language, and Specifications (defined above) for the operation of hardware, including, without limitation, code written in languages such as VHDL, register-transfer language (RTL), and verilog, and firmware and technical documentation.

14. "Including" and "include" mean including without limitation, whether or not the phrase "without limitation" is explicitly stated.

15. The words "and" and "or" are terms of inclusion and not of exclusion and are to be construed conjunctively or disjunctively as necessary to bring within the scope of these requests for production any information which might otherwise be construed to be outside their scope.

16. The term "any" shall mean "any and all" and the term "all" shall mean "any and all."

17. "Date" means the exact day, month and year if so ascertainable, or if not, the best approximation (including relationship to seasons and other events).

18. "Document" means any form of communication or representation, in any language fixed in any tangible medium, including every form of recording letters, words, pictures, sounds, or symbols, or combinations thereof by means such as handwriting, printing, photostatting, photographing, magnetic taping or writing, optically burning or encoding, or any other form of storing, compiling, or mechanically or electrically recording data onto any media including paper, film, plastic, magnetic tape, computer disks, compact discs (CDs), digital video discs (DVDs) and the like.  For example, the term "Document" includes without limitation, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, notebooks, lab notebooks, invention disclosures, prospectuses,

interoffice, and intra-office communications, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, meetings, printouts, teletypes, telefax, telefax records, invoices, work sheets, graphic or oral representations of any kind (including without limitation, pictures, photographs, charts, microfiche, microfilm, videotape, audiotape, recordings, motion pictures, plans, drawings, surveys), and electronic or mechanical records or representations of any kind (including, without limitation, electronic mail or e-mail, Instant Messages, tapes, cassettes, discs, and recordings).

19. Every draft, version, revision, or non-identical copy of a "Document," including copies that differ from the original because of hand notation(s), shall be considered a separate "Document," as that term is used herein, but exhibits, appendices and attachments to a "Document" shall be considered part of the "Document" itself.

20. "Communications" means all written, oral, telephonic, or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, advertisements, e-mails and all other Documents evidencing any transmittal of information or verbal or nonverbal interaction between persons and entities.

21. "Thing" means any tangible item, including without limitation, models, prototypes and samples of any device or apparatus or product.

22. "Supplier" means a natural person or a business entity that supplies any component involved in the Accused Instrumentalities. For the purposes of this definition, a co-development relationship or a fabrication relationship shall constitute one type of supplier relationship.

23. The terms "relate to," "reflecting," "relating to," "concerning," or any variations thereof, shall mean relating to, referring to, concerning, mentioning, reflecting, regarding, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting,

contradicting, constituting (in whole or in part), or between (as in the context of Communications), as the context makes appropriate.

## INSTRUCTIONS

1. All Interrogatories must be answered fully and in writing in accordance with Rules 11 and 33 of the Federal Rules of Civil Procedure.

2. Each of the Interrogatory requests (the "Requests") shall operate and be responded to independently and, unless otherwise indicated, no Request limits the scope of any other Request.

3. Where knowledge or information in Your possession is requested, the request extends to knowledge or information in the possession of Your predecessors and/or successors, as well as to information in the possession of Your officers, directors, agents, employees, representatives and, unless privileged, attorneys. Whenever an answer to these Requests contains information which is not based upon Your personal knowledge, state the source and nature of such information.

4. Words appearing in singular form, including defined terms, shall also be construed as plural, and words appearing in plural form, including defined terms, shall also be construed as singular so as to give each discovery request its broadest possible meaning and to bring within the scope of the discovery request all information that otherwise might be construed to be outside its scope.

5. Whenever appropriate, verb tenses shall be interpreted to include past, present, and future tenses, and words imparting the masculine include the feminine and vice versa.

6. The Definitions apply regardless of capitalization.

7. "Identify" shall include, among other applicable identifying information:

   (a) in connection with natural persons, their full names, titles and job descriptions, and their present or last known business addresses and residences (designating whether a given address is a present address or last known address and whether a given address is a business or residential address);

(b) in connection with firms, partnerships, corporations, proprietorships, associations or other entities, their name, and their present or last known addresses of the principal place of business (designating whether the address is a present or last known address);

(c) in connection with Documents, a description of the Document, setting forth its Date, title, author or over whose name it issued, the addressee, parties thereto, the substance and the present custodian thereof, with such reasonable particularity as would be sufficient to permit the Document to be sought by subpoena *duces tecum* or under the provisions of Rule 34 of the Federal Rules of Civil Procedure;

(d) in connection with oral statements and Communications: (i) the Date and location where they were made; (ii) the identity of each of the participants and witnesses thereto, and all others present; (iii) the medium of Communication; and (iv) their substance.

8. The term "Describe" when used with reference to a technology means to (a) describe it with specificity, (b) identify all uses You have made, are making, or plan to make of it, (c) describe each system, service, method, or apparatus (including any research or engineering project) developed, made, used, imported, sold, or offered for sale in the United States by You, or that You intend to develop, make, use, import, sell, or offer for sale in the United States, that uses it; (d) identify all internal or commercial names or designations.

9. "Set Forth Your Complete Basis" for a particular contention or allegation means to identify and comprehensively describe in detail its legal and factual basis, including the identity of all Persons with knowledge of the factual basis and the identity of all evidence, including Documents (by production number), oral statements, and witnesses that relate to it. If the contention or allegation relates to a comparison between patent claims and other subject matter, set forth the basis for the contention or allegation in claim chart form on an element-by-element basis. If the conduct of any Third Party is relevant

to any portion of this answer, please identify such Third Party and comprehensively describe in detail that party's relevant conduct.

10. If, in responding to any Interrogatory, You elect to produce business records pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, specify the particular records from which the answer may be derived or ascertained in sufficient details to permit Netlist to locate and identify the precise pages or records from which the answer may be ascertained as readily as You may ascertain such an answer.

11. If any document referred to in Your responses to these Interrogatories was, but is no longer, in Your possession, custody, or control, state that disposition was made with each document and when such disposition was made. In the event that any Document or Thing or portion thereof called for by this set of requests is known to have been lost or destroyed (either as a result of a Document destruction policy or otherwise), provide a written statement setting forth the following information for each such item: (1) the nature of the item (e.g. letter, memorandum, chart, engineering drawing, etc.); (2) the identity of each sender(s), author(s), and recipient(s) of the item whether indicated as such or not on the item; (3) the Date that the item was created, or if there is no record of this information, the approximate Date; (4) a description of the subject matter of the item; (5) if the item is a Document, the number of pages; (6) information regarding whether any attachments or appendices to the item exist or existed, along with a description of any such attachments or appendices; and (7) the circumstances of the loss or destruction of the item including the Date of destruction or loss, the identity of the Person(s) who lost or destroyed the item, and if the item was destroyed, the identity of the Person(s) who authorized the destruction.

12. If You do not answer any Interrogatory in full, state the precise reason for failing to do so. If a legal objection is made, set forth the specific nature of the grounds for the objection. If only a portion of any Interrogatory cannot or will not be answered, (i) provide a full answer to the remaining portion; and (ii) specifically set forth (a) the fact that the answer is incomplete and (b) the reasons or grounds for any omission or for Your inability or refusal to complete the answer. If an Interrogatory can be answered

only in part on the basis of information available at the time of the response, (i) provide an answer on the basis of that information; (ii) indicate that Your answer is so limited; and (iii) provide a further response, in accordance with these Instructions, when further information becomes available.

13. If You contend that any Interrogatory seeks information, in whole or in part, that is protected by a legal privilege or other doctrine which precludes disclosure thereof, identify the legal privilege and/or doctrine with particularity, including all supporting facts and each person having knowledge of the factual basis for the assertion.

14. You are required to supplement or amend Your responses to these Interrogatories as the need arises pursuant to Rule 26 of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

For each asserted claim of Netlist Patents-in-Suit that You deny liability for infringement or damages, Set Forth Your Complete Basis (including both factual and legal) for that denial on a product-by-product and element-by-element basis, including but not limited to, all claim elements that You assert are not met by that Accused Instrumentality, the reason for Your assertion that such elements are not met (such as by describing how each of Your products are configured to operate and/or actually operate), any affirmative defense(s) that You intend to assert with respect to that Accused Instrumentality, and the factual basis supporting Your belief that such affirmative defense(s) apply.

**INTERROGATORY NO. 2:**

Separately identify each Accused Instrumentalities made, used, offered for sale, sold by You or at Your direction since December 20, 2015 and up through trial in this matter. Your identification of each Accused Instrumentality should include (a) each product's name; (b) internal model number, external model number, part number, internal name, SKU, and any other unique identifier of the product; (c) Date first made, used, sold or offered for sale; and (d) the identification of Supplier(s) for any component(s) in

the Accused Instrumentalities (such as registering clock drivers, data buffers, DDR5 power management circuitry, SPD) that You assert are not made, assembled, or designed by You. To the extent that any Accused Instrumentality changed between the time of its introduction and the first day of trial in this matter, separately list each version/model and the first Date and last Date corresponding to each version/model. Your answer should use the format of the following table. This interrogatory is not limited to only the Accused Instrumentalities You contend are made, used, sold, offered for sale, or imported in the United States, because this will be an issue of disputed fact, and Netlist is entitled to the full discovery into what satisfies that requirement.

| Product Name | Unique Product Identifier | Date First Made by You | Date First Used by You | Date first Offered for Sale | Entity Offering for Sale | Date First Sold | Total Sales To-Date | 3rd Party Components Used | 3rd Party Component Supplier(s) |
|---|---|---|---|---|---|---|---|---|---|

**INTERROGATORY NO. 3**:

For each Accused Instrumentality identified in Interrogatory No. 2, Identify the five persons most knowledgeable regarding the following (including his or her role, position, location and contact information): (i) design, development and operation of the Accused Instrumentality; (ii) the relevant components in the Accused Instrumentality; (iii) the operation and function of the relevant components in the Accused Instrumentality; (iv) the manufacture of the Accused Instrumentality; and (v) sales, marketing, importation and exportation of the Accused Instrumentality.

**INTERROGATORY NO. 4**:

On a monthly basis beginning December 20, 2015, state the total number of units made, sold, used, or offered for sale, gross revenue, average revenue, operating revenue, net revenue, gross profit, operating profit, net profit, profit margin, the country/countries in which the unit was made, the country or countries in which any contract or invoice relating to the product was sent to or received from, the country or countries that the products were shipped to, the purchaser (including both the direct and indirect purchaser) and costs associated with each Accused Instrumentality identified in response to Interrogatory No. 2, on

a product-by-product basis. This interrogatory is not limited to the products You contend are made, used, sold, offered for sale, or imported in the United States, because this will be an issue of disputed fact, and Netlist is entitled to the full discovery into what satisfies that requirement.

**INTERROGATORY NO. 5**:

For each Netlist Patent-in-Suit, describe in detail the facts and circumstances regarding Your first awareness of the Netlist Patent-in-Suit, including (i) when You first became aware of the Netlist Patent-in-Suit, (ii) how You first became aware of the Netlist Patent-in-Suit, (iii) the identity of the individual(s) who first became aware of the Netlist Patent-in-Suit, (iv) the actions, if any, taken by You after becoming aware of the Netlist Patent-in-Suit, (v) the reason for such action or non-action, (vi) persons involved in deciding the course of action (or non-action) after learning of the Netlist Patent-in-Suit and the roles they played in the decision-making, and (vii) an identification of all documents showing or reflecting awareness of the Netlist Patent-in-Suit.

**INTERROGATORY NO. 6**:

With respect to each asserted claim of Netlist Patents-in-Suit, identify whether it is or is not an "Essential Patent Claim" as defined in JEDEC Manual of Organization and Procedure JM21T (September 2020) § 8.2.1, and Set Forth Your Complete Basis for that conclusion.

**INTERROGATORY NO. 7**:

For each license agreement that You believe is relevant to a reasonable royalty analysis, identify the license agreement, Your interpretation of the royalty rate and structure set forth in the license agreement, and all factual and legal bases for why it is (or is not) a comparable license.

**INTERROGATORY NO. 8**:

For each Netlist Patent-in-Suit, identify and describe in detail any alleged non-infringing alternative that You contend exists or existed to each Netlist Patent-in-Suit, including but not limited to: (i) a description of each alleged non-infringing alternative; (ii) a description of when and how each alleged

non-infringing alternative was developed or otherwise available; (iii) the identity of individuals involved in developing and/or most knowledgeable about each alleged non-infringing alternative (if applicable); (iv) costs associated with developing and implementing each alleged non-infringing alternative; (v) steps and the time required to develop and implement each alleged non-infringing alternative; (vi) Dates when each alleged non-infringing alternative was incorporated in an accused product or a commercial product (if applicable); (viii) any known patents covering the alleged non-infringing alternatives; (ix) the acceptability of the alleged non-infringing alternatives (including the differences in performance and costs between the alternative and the asserted claims, and consumers' acceptance of such differences); (x) any reason for not replacing a current product with the alleged non-infringing alternative; (xi) the identity of individuals involved in supporting the reason for not replacing current products with alternatives; and (xii) any other evidence that supports Your belief that the alternative is/was viable from a technical and business perspective.

**INTERROGATORY NO. 9**:

For each asserted claim of Netlist Patents-in-Suit that You assert Your liability for infringement is limited, Set Forth Your Complete Basis for such assertion, including any allegation that Your conduct is licensed or that Your behavior is not an act of making, using, offering for sale, or selling in the United States.

**INTERROGATORY NO. 10**:

For each Accused Instrumentality, identify all uses You make of each Accused Instrumentality in the United States, including in servers, data centers, or computers owned, operated, or leased by You, and what functions those servers, data centers, or computers perform in Your business.

**INTERROGATORY NO. 11**:

Identify each incident where customers or their contractors taking raw DRAM or FLASH or unfinished versions of the Accused Instrumentalities, and then creating Samsung Accused DDR4

LRDIMMs or Samsung Accused DDR5 DIMMs, including but not limited to providing the identity of the customers and contractors, the Date on which the materials were provided to the customers and contractors, the location the materials were provided to the customers and contractors, the location the materials were shipped to the customers and contractors, and any assistance or guidance provided to the customers or contractors.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  June 8, 2022 | */s/ Jason Sheasby* |
|  | Jason Sheasby (CA #205455)<br>jsheasby@irell.com<br>Annita Zhong, PhD (CA #266924)<br>hzhong@irell.com<br>**IRELL & MANELLA LLP**<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Telephone:  (310) 277-1010<br>Facsimile:  (310) 203-7199 |
|  | Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>Jennifer L. Truelove<br>Texas State Bar No. 24012906<br>jtruelove@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>104 East Houston Street Suite 300<br>Marshall, TX 75670<br>Telephone:  (903) 923-9000<br>Facsimile:  (903) 923-9099 |
|  | ***Attorneys for Plaintiff Netlist, Inc.*** |

### CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on June 8, 2022.

*/s/ Yanan Zhao*
Yanan Zhao
