# EXHIBIT 11

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., <br><br> Defendants. | Civil Action No. 2:21-CV-463-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF NETLIST, INC.'S FIRST NOTICE OF DEPOSITION OF DEFENDANTS SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG SEMICONDUCTOR, INC. PURSUANT TO RULE 30(b)(6)**

Please Take Notice that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Local Rules of this Court, Plaintiff Netlist, Inc. ("Netlist") directs the following interrogatories to defendants Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Semiconductor, Inc. ("SSI") (collectively "Samsung" or "Defendants").  The deposition(s) shall take place at a mutually agreeable place and date, beginning at 9:00 am and continuing from day-to-day thereafter (excluding Saturdays, Sundays, and holidays) until completed.  The deposition(s) will be conducted pursuant to the Federal Rules of Civil Procedure and will be conducted in the English language before a notary public or other officer authorized to administer oaths.  The deposition(s) may be recorded by stenographic means, audiotaped, videotaped, and/or transcribed using real time interactive transcription (e.g., LiveNote).

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Samsung shall designate one or more of its officers, directors, managing agents, or other persons who are most knowledgeable, and competent to

testify on its behalf, as to all matters known or reasonably available to Samsung with respect to the topics set forth in Attachment A. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the person(s) designated should be prepared to testify as to such matters known or reasonably available to Samsung. At least five business days before the date set for the deposition(s), Samsung shall identify, by name and position, each person so designated and shall set forth the matters on which that person will testify.

Netlist reserves the right to serve Samsung with additional notices pursuant to Rule 30(b)(6) on additional topics as this litigation progresses and as further evidence is produced.

Dated: August 1, 2022

Respectfully submitted,

*/s/ Jason Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199
***Attorneys for Plaintiff Netlist, Inc.***

# ATTACHMENT A

# DEFINITIONS

Unless the context indicates otherwise, for purposes of these discovery requests, the following words and phrases have the meanings given:

1. "Samsung," "Defendant(s)," "You," or "Your" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and any present or former parent, subsidiary, division, subdivision, affiliated company, licensee, predecessor, or successor of Samsung, and any of its or their present or former officers, directors, agents, attorneys, consultants, accountants, employees, representatives, investigators, distributors, salespersons, sales representatives, licensors, licensees, and any other persons acting, or purporting to act for or on its or their behalf or under its or their control, including but not limited to experts or persons consulted concerning any factual matter or matters of opinion relating to any issues involved in the action.

2. "Netlist" shall mean Plaintiff Netlist, Inc. and all of its affiliates, officers, employees, agents, representatives, contractors, consultants, attorneys, successors, and assigns.

3. "Patent" means any United States, international, or foreign classes or types of patents, utility models, design patents, applications (including provisional applications), certificates of invention, reissues, divisionals, continuations, continuations-in-part, extensions, renewals, reexaminations and foreign counterparts thereof. The defined term Patent includes all stated categories of intellectual property regardless of whether those rights are presently expired or were ever adjudged invalid.

4. "Netlist Patents-in-Suit" means and refers to U.S. Patent Nos. 10,860,506 ("'506 Patent"), 10,949,339 ("'339 Patent"), 11,016,918 ("'918 Patent"), 11,232,054 ("'054 Patent"), 8,787,060 ("'060 Patent"), and 9,318,160 ("'160 Patent").

5. "Third party" means any individual, entity, organization, partnership, or corporation that is not a party to this action.

6. "Samsung Accused DDR4 LRDIMMs" shall include any and all Samsung Double Data Rate 4 ("DDR4") load reduced dual in-line memory modules ("LRDIMMs"), including ones that its customers further customize.

7. "Samsung Accused DDR5 DIMMs" shall include any and all Samsung Double Data Rate 5 ("DDR5") dual in-line memory modules, including ones that its customers further customize.

8. "Samsung Accused HBM Products" shall include any and all Samsung HBM2 or HBM2E high bandwidth memory products, including ones that its customers further customize.

9. "Samsung Accused Products" shall mean any and all Samsung Accused DDR4 LRDIMMs, Samsung Accused DDR5 DIMMs, and Samsung Accused HBM Products.

10. "Samsung Distributor" shall include any person who Samsung authorized to sell any Samsung Accused Products.

11. "Samsung Partner" shall include any customers of Samsung's Accused Products and any other third parties involved in the involved in the design, development, manufacture, testing, assembly, importation, distribution, importation, sourcing, qualification, sale, or offer to sell Samsung Accused Products.

12. "Samsung Supplier" means a natural person or a business entity that supplies any component involved in the Samsung Accused Products or assembled Samsung's Accused Products in whole or in part. For the purposes of this definition, a co-development relationship or a fabrication relationship shall constitute one type of supplier relationship.

13. "Standard(s)" means any technical standard created, authorized, controlled, and/or developed privately or unilaterally by a corporation, consortium, regulatory body, government, or standards setting organization.

14. "JEDEC" means the JEDEC Solid State Technology Association.

15. "Person" refers to any natural individual; any form of business entity including, but not limited to, any corporation, company, firm, general partnership, limited partnership, limited liability company, joint venture, proprietorship, business association, association, foundation, and legal entity; any directors, officers, owners, members, employees, agents, representatives, and attorneys of any of the foregoing; anyone else purporting to act on behalf of any such natural person or business entity; or any government entity, agency, officer, department, or affiliate.

16. "Source Code" means programming language statements that can be compiled, transformed, interpreted, executed, or otherwise processed by software (or further compiled, transformed, interpreted, executed, or otherwise processed by software) into object code. This includes, without limitation, instructions, statements, procedures, subroutines, and programs written in a high-level programming language, design description language, or assembly language, and Specifications (defined above) for the operation of hardware, including, without limitation, code written in languages such as VHDL, register-transfer language (RTL), and verilog, and firmware and technical documentation.

17. "Including" and "include" mean including without limitation, whether or not the phrase "without limitation" is explicitly stated.

18. The words "and" and "or" are terms of inclusion and not of exclusion and are to be construed conjunctively or disjunctively as necessary to bring within the scope of these requests for production any information which might otherwise be construed to be outside their scope.

19. The term "any" shall mean "any and all" and the term "all" shall mean "any and all."

20. "Date" means the exact day, month and year if so ascertainable, or if not, the best approximation (including relationship to seasons and other events).

21. "Document" means any form of communication or representation, in any language fixed in any tangible medium, including every form of recording letters, words, pictures, sounds, or symbols, or combinations thereof by means such as handwriting, printing, photostatting, photographing, magnetic

taping or writing, optically burning or encoding, or any other form of storing, compiling, or mechanically or electrically recording data onto any media including paper, film, plastic, magnetic tape, computer disks, compact discs (CDs), digital video discs (DVDs) and the like. For example, the term "Document" includes without limitation, application notes, correspondence, circuit diagrams, datasheets, design files, description of operation principles, functional block diagrams, schematics, memoranda, notes, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, notebooks, lab notebooks, invention disclosures, prospectuses, product manuals, interoffice, and intra-office communications, offers, notations of any sort of conversations, working papers, applications, permits, surveys, specifications, source code, indices, telephone calls, meetings, printouts, teletypes, telefax, telefax records, invoices, work sheets, graphic or oral representations of any kind (including without limitation, pictures, photographs, charts, microfiche, microfilm, videotape, audiotape, recordings, motion pictures, plans, drawings, surveys), and electronic or mechanical records or representations of any kind (including, without limitation, electronic mail or e-mail, Instant Messages, tapes, cassettes, discs, and recordings).

22. "Communications" means all written, oral, telephonic, or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, advertisements, e-mails and all other Documents evidencing any transmittal of information or verbal or nonverbal interaction between persons and entities.

23. The terms "relate to," "reflecting," "relating to," "concerning," or any variations thereof, shall mean relating to, referring to, concerning, mentioning, reflecting, regarding, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, constituting (in whole or in part), or between (as in the context of Communications), as the context makes appropriate.

24. The term "Identify" or "Identity" shall mean:

(1) in connection with natural persons, their full names, titles and job description, and their present or last known business address and residence (designating which);

(2) in connection with firms, partnerships, corporations, proprietorships, associations or other entities, their name, and their present or last known addresses of the principal place of business (designating which);

(3) in connection with Documents, a description of the Document, setting forth its Date, title, format, nature, substance, author or over whose name it issued, addressee, and present custodian thereof, with such reasonable particularity as would be sufficient to permit the Document to be sought by subpoena *duces tecum* or under the provisions of Rule 34 of the Federal Rules of Civil Procedure;

(4) in connection with oral statements and Communications: (i) the Date and location where they were made; (ii) the identity of each of the participants and witnesses thereto, and all others present; (iii) the medium of communication; and (iv) their substance.

25. "Key Technical Information" shall mean each and all of (1) read and write operations in Samsung Accused Products; (2) structure and function of data buffers and RCDs in Samsung Accused DDR4 LRDIMM Products; (3) control and enablement period of the write and read paths and corresponding tristate buffers in data buffers in Samsung Accused DDR4 LRDIMM Products; (4) data sampling and transmissions by data buffers in Samsung Accused DDR4 LRDIMM Products, signals involved therein and how the signals are generated, (5) information sent during and after training mode; (4) chip selection generation and signaling; (6) rank multiplication; (7) configuration, interconnections, and electrical communications of the die interconnects in Samsung Accused HBM Products; (8) communication of data, control, and address signals to the control die (e.g., buffer die or logic die) and the DRAM dies in Samsung Accused HBM Products; (9) control of the driver sizes in Samsung Accused HBM Products; (10) chip selection mechanisms in Samsung Accused HBM Products; (11) interconnections between TSVs in DRAMs and I/O and power terminals in Samsung Accused HBM

Products; and (12) voltage regulation and power management in Samsung Accused DDR5 Products, including identification of structures, components and operations thereof, type and amplitude of supply voltages to each component in Samsung Accused DDR5 Products, and operation and signaling in Samsung Accused DDR5 Products in over-voltage or under-voltage situations.

## TOPICS

**TOPIC NO. 1:**

The identity of three (3) most knowledgeable Persons about each Key Technical Information and their respective positions and qualification.

**TOPIC NO. 2:**

Samsung's organizational structure as related to Samsung Accused Products, including but not limited to the description of any research centers, groups, subdivisions, departments, or persons responsible for the design, development, engineering, testing, manufacture, assembly, distribution, sourcing, qualification, and distribution of Samsung Accused Products and components thereof (such as data buffers, registering clock drivers, PMICs, and control dies).

**TOPIC NO. 3:**

The identity and location of Documents and Source Code as related to Key Technical Information and the identity of Persons having access to these Documents and Source Code.

**TOPIC NO. 4:**

The identity and location of Documents and Source Code that Samsung receives from its Suppliers as related to the Samsung Accused Products.

**TOPIC NO. 5:**

The identity of Documents and Source Code that Samsung shares with its Suppliers, Partners, and Distributors as related to the Samsung Accused Products.

**TOPIC NO. 6:**

The identity of Documents and Source Code that Samsung has a right to or has requested from its Suppliers, Partners, and Distributors as related to the Samsung Accused Products.

**TOPIC NO. 7:**

For each Standard section listed in Netlist's infringement contentions, and for each Standard section listed in Katherine Reardon's July 8, 2022 email, identify Samsung Accused Products that implement the section as drafted and to the extent there is a deviation or modification from that section, identify the deviation.

**TOPIC NO. 8:**

For each asserted claim of Netlist Patents-in-Suit, whether it satisfies the definition of "Essential Patent Claims" under JEDEC policy, as listed below, and what required portion the claim is essential to.

> Essential Patent Claims: Those Patent claims the use of which would necessarily be infringed by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard.
>
> NOTE    Essential Patent Claims do not include Patent claims covering aspects that are not required to comply with a JEDEC Standard, or are required only for compliance with sections that are marked "example," "non-normative," or otherwise indicated as not being required for compliance, or related to underlying enabling technologies or manufacturing techniques not specified in the standard.

**TOPIC NO. 9:**

For each Document identified as containing information related to Key Technical Information, identify the specific sections of the Document that purport to contain the Key Technical Information, the specific Key Technical Information the identified sections disclose, and why or how the identified information discloses the specific Key Technical Information.

**TOPIC NO. 10:**

Identify any Documents created in connection with Samsung's Supplier/component qualification or sourcing process for Samsung's Accused Products.

**TOPIC NO. 11:**

Samsung's policies, practices, and procedures for document management, storage, and preservation, including both paper and electronic documents.

**TOPIC NO. 12:**

The relationship between Samsung and any Samsung Suppliers, Partners, Distributors, and other Third Parties involved in the design, development, manufacture, testing, assembly, importation, distribution, sale, offer to sell of Samsung Accused Products, including any related agreements, Samsung's rights under the agreements, respective responsibilities, and contacts at Samsung Suppliers, Partners, Distributors, and other Third Parties.

**TOPIC NO. 13:**

Samsung's corporate structure and organization, including any relationship between or among Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc.; Samsung Partners, Distributors, and Suppliers (including without limitation to those disclosed in Samsung's Initial Disclosures); any past or present successors, subsidiaries, divisions, parents, or affiliates of the same; and any joint ventures or other legal entities that Samsung wholly or partially owns or owned, either directly or indirectly involved in the design, development, manufacture, testing, assembly, importation, distribution, sale, offer to sell of Samsung Accused Products.

**TOPIC NO. 14:**

Explain or identify (1) presence and absence of tristate buffers on data paths in Samsung Accused DDR4 LRDIMM Products; (2) start time and duration of time periods during which data paths and associated tristate buffers are enabled in Samsung Accused DDR4 LRDIMM Products; (3) information sent during and after training mode in Samsung Accused DDR4 LRDIMM Products; (4) amount of data strobe delay in data buffers in Samsung Accused DDR4 LRDIMM Products for data sampling and how the amount of delay is determined; (5) configuration, interconnections, and electrical communications of

the die interconnects in Samsung Accused HBM Products; (6) communication of data, control, and address signals between the control die (e.g., buffer die or logic die) and the DRAM dies in Samsung Accused HBM Products; (7) control of the driver sizes in Samsung Accused HBM Products; (8) interconnections between TSVs in DRAMs and I/O and power terminals in Samsung Accused HBM Products; (9) voltage regulation, operation states, and power management in Samsung Accused DDR5 Products.

**CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on August 1, 2022.

*/s/ Yanan Zhao*
Yanan Zhao