# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:21-CV-463-JRG |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD., | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC., SAMSUNG SEMICONDUCTOR, | ) | ██████████████ |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NETLIST INC.'S MOTION TO STRIKE PORTIONS OF DR. GABRIEL ROBINS' OPENING EXPERT REPORT

# TABLE OF CONTENTS

**Page**

I.     Argument ...................................................................................................................... 3

     A.    Dr. Robins Advances Invalidity Arguments Not Disclosed By Samsung During Discovery ................................................................................................ 3

     B.    Dr. Robins Fails to Establish That "JEDEC Presentations" Constitute Prior Art ....................................................................................................... 5

     C.    Dr. Robins Should Not Be Able to Present a Final Conclusion on Obviousness Based on the JEDEC Presentation Because He Does Not Present a Motivation to Combine the Various Components of the JEDEC Presentations ............................................................................................... 6

     D.    Dr. Robins Definition of "Knowledge of a POSITA" is Tainted By The Above Flaws .................................................................................................... 7

     E.    Dr. Robins Improperly Compares Prior Art References to Embodiments of the Invention ............................................................................................. 9

     F.    Dr. Robins Improperly Attempts to Alter Invalidity Contentions via the Expert Report .................................................................................................. 9

     G.    Dr. Robins' Analysis of POSITA's Use of Memory Layers Other Than DRAM Is Improper ...................................................................................... 12

     H.    Dr. Robins Fails to Analyze "Chip Select Signal" Under the Court's Construction ................................................................................................ 13

II.    Conclusion ................................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anascape, Ltd. v. Microsoft Corp.*,
   2008 WL 7180756 (E.D. Tex. May 1, 2008) ........................................................................ 1, 7

*Asterias Biotherapeutics, Inc. v. Viacyte, Inc.*,
   2014 WL 93903 (N.D. Cal. Jan. 9, 2014) .............................................................................. 5

*Cordis Corp. v. Bos. Sci. Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009) ............................................................................................. 4

*Firtiva Corp. v. Funimation Glob. Grp., LLC*,
   2022 WL 1792785 (E.D. Tex. June 1, 2022) ........................................................................ 1

*Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*,

   918 F.3d 928(Fed. Cir. 2019) ............................................................................................... 7

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966) ................................................................................................................... 5

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*,
   2017 WL 4619791 (E.D. Tex. Oct. 16, 2017) ...................................................................... 6

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
   656 F. App'x 504 (Fed. Cir. 2016) ........................................................................................ 4

*Onyx Therapeutics, Inc. v. Cipla Ltd.*,
   2020 WL 2214443 (D. Del. May 4, 2020) ............................................................................ 5

*ROY-G-BIV Corp. v. ABB, Ltd.*,
   63 F. Supp. 3d 690 (E.D. Tex. 2014) .................................................................................... 7

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
   929 F.3d 1363 (Fed. Cir. 2019) ............................................................................................. 4

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
   511 F.3d 1186 (Fed. Cir. 2008) ............................................................................................. 3

*TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*,
   375 F.3d 1126 (Fed. Cir. 2004) ............................................................................................. 6

*Treehouse Avatar LLC v. Valve Corporation*,
   54 F.4th 709 (Fed. Cir. 2022) ............................................................................................... 7

*Visto Corp. v. Seven Networks, Inc.*,
  2006 WL 5153146 (E.D. Tex. Mar. 27, 2006) ........................................................1

*Voter Verified, Inc. v. Premier Election Sols., Inc.*,
  698 F.3d 1374 (Fed. Cir. 2012).............................................................................3

**Statutes**

35 U.S.C. § 102.....................................................................................................3

35 U.S.C. § 103.....................................................................................................5

Plaintiff Netlist respectfully requests the Court strike portions of the opening expert report of Dr. Gabriel Robins.

## I.     Argument

### A.     Dr. Robins Advances Invalidity Arguments Not Disclosed By Samsung During Discovery

Courts in this District have made it clear that "[e]xpert invalidity reports may not introduce theories not previously set forth in invalidity contentions." *Firtiva Corp. v. Funimation Glob. Grp., LLC*, 2022 WL 1792785, at *1 (E.D. Tex. June 1, 2022); *Visto Corp. v. Seven Networks, Inc.*, 2006 WL 5153146, *1 (E.D. Tex. Mar. 27, 2006) (striking portions of expert report relying on prior art not disclosed in invalidity contentions); *Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7180756, *4 (E.D. Tex. May 1, 2008) (striking portions of expert report that exceeded scope of invalidity contentions). Here, Dr. Robins attempts to advance various theories and alleged prior art references that were not disclosed in Samsung's invalidity contentions and should thus be stricken.

Dr. Robins cites nearly one hundred references that were not cited in Samsung's invalidity contentions ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

The attempt to launder undisclosed prior art references does not just appear in the ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

As another example, ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

The inclusion of these previously undisclosed references throughout Dr. Robins' report prejudices Netlist because Netlist was not given the opportunity to consider these arguments when Samsung served its invalidity contentions. All reference to these sources and arguments based on these

sources should be excluded, including in the paragraphs identified above.

**B.      Dr. Robins Fails to Establish That "JEDEC Presentations" Constitute Prior Art**

Dr. Robins' obviousness grounds each ████████████████████████████████████

████████████████████████████████████████████████████████████████████████"[1]

Ex. 1 (Robins Invalidity Report) ¶ 422. Without further explanation or evidence, Dr. Robins states

that he █████████████████████████████████████████████████████████████████████

████████████████████████████ *Id.* Dr. Robins has not establish that these JEDEC Presentations

are prior art publications. The court should exclude his report's use of the JEDEC Presentations.

Whether a document "qualifies as a 'printed publication' under § 102 is a legal conclusion."

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008). The "key inquiry is whether

the reference was made 'sufficiently accessible to the public interested in the art' before the critical

date." *Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374, 1380 (Fed. Cir. 2012).

There is no evidence of record to support these documents were ever publicly accessible.

There is no evidence that anyone outside of JEDEC could access the cited JEDEC Presentations. Dr.

Robins ████████████████████████████████████████████████████. To the contrary,

all evidence confirms that the JEDEC presentations were confidential. Samsung's own expert

confirmed that "████████████████████████████████████████████████████████████

████████████████████████████████." Ex. 3 (Halbert Report) ¶ 37. JEDEC itself treats the

types of materials Dr. Robins relies on as highly confidential. For example, ███████████████

████████████████████████████████████████████████████████████████████████████

████ (Dkt. 48).[2] And even today the majority of these documents cannot be found through a search

---

[1] For a chart detailing all cited JEDEC Presentations, see Section I.C *infra.*
[2] *See, e.g.*, JEDEC00033568, JEDEC00033606, JEDEC00033586, JEDEC00035864, JEDEC00033061, JEDEC00033065.

of Google, Google Scholar, or the JEDEC website. JEDEC members' ability to access the JEDEC

Presentations does not establish that any of these documents were publicly available. *See, e.g., Samsung*

*Elecs. Co. v. Infobridge Pte. Ltd.,* 929 F.3d 1363, 1372 (Fed. Cir. 2019) (explaining that knowledge of

those *outside the authoring organization* is what is important, because "[t]o hold otherwise would . . . depart

from what it means to *publish* something"); *Cordis Corp. v. Bos. Sci. Corp.,* 561 F.3d 1319, 1335 (Fed. Cir.

2009) (no requirement for explicit legal obligation of confidentiality if inventor's expectation of

confidentiality reasonable); *Koninklijke Philips N.V. v. Zoll Med. Corp.,* 656 F. App'x 504, 529 (Fed. Cir.

2016).

In light of Dr. Robins' failure to establish that the JEDEC Presentations are prior art, the

Court should strike at least the following paragraphs of Dr. Robins' invalidity analysis, which invoke

the JEDEC Presentations: █████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████.

### C.   Dr. Robins Should Not Be Able to Present a Final Conclusion on Obviousness Based on the JEDEC Presentation Because He Does Not Present a Motivation to Combine the Various Components of the JEDEC Presentations

The "JEDEC Presentations" are not one document. They are instead **ten** separate

presentations delivered by various JEDEC members over the course of two years (2009-2011). In

specific, Dr. Robins cites:[3]

| | | | | |
|---|---|---|---|---|
| ████████ | ██████████████ | ████████ | ██ | ██████ |
| ████ | | | | |
| ████ | ███████████████████ | ████████ | ████ | ████████ |
| | ██████████ | | | |
| ████ | ███████████████████ | ████████ | ████ | ████████ |
| | █████████████████████ | | | |
| ████ | ███████████████████ | ████████ | ████ | ████████ |
| | ██████████████ | ██ | | |

---

[3] Ex. 1 (Robins Invalidity Report) ¶¶ 422-435.

| | | | | |
|---|---|---|---|---|
| ███ | ████████████ | ████ | ███ | ███████ |
| ███ | ████████████ | ████ | █ | ████ |
| | █████████████ | ███ | | |
| ███ | ████████████ | ████ | | ███ |
| | | ███ | | |
| ███ | ██████████ | ████ | ██ | ███ |
| | ████████ | | | ███ |
| █ | █████████████ | | ██ | ████ |
| | █████████ | | | ████ |
| ███ | ████████████ | ████ | ██ | ████ |
| | ████████ | | | |
| ███ | █████████ | ███ | | ████ |
| | ██████████ | | | |
| | █████ | | | |

Dr.  Robins  █████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████, which is insufficient as a

matter of law. *See Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 934 (Fed. Cir. 2019)

("An invention is not obvious simply because all of the claimed limitations were known in the prior

art at the time of the invention. Instead, we ask 'whether there is a reason, suggestion, or motivation

in the prior art that would lead one of ordinary skill in the art to combine the references, and that

would also suggest a reasonable likelihood of success.'") (internal citation omitted).

In light of Dr. Robins' failure to provide a motivation to combine the individual JEDEC

presentations, the Court should strike at least the paragraphs of Dr. Robins' invalidity analysis listed

in Section I.C, *supra*.

**D.     Dr. Robins' Definition of "Knowledge of a POSITA" is Tainted By The Above Flaws**

Dr.  Robins  asserts:  ████████████████████████   ███████

██████████████████████████████████████ Ex. 1 (Robins Invalidity

Report) ██████ (emphasis added); *see also, e.g.*, ██████████. The ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

Dr. Robins definition of "the knowledge of a POSITA" is tainted and must be stricken because it incorporates the flaws of his undisclosed references and the JEDEC Presentations discussed above. As discussed in Section I.A *supra*, Dr. Robins' additional references must be excluded because they were not disclosed in Samsung's contentions. As discussed in Section I.B *supra*, the portions of Dr. Robins' report relying on JEDEC Presentations should be excluded because they are confidential materials that are not part of the knowledge of a POSITA, and cannot be relied on for that purpose. *Asterias Biotherapeutics, Inc. v. Viacyte, Inc.,* 2014 WL 93903, at *7 (N.D. Cal. Jan. 9, 2014) ("[C]onfidential information is not relevant to the knowledge of a person of ordinary skill in the art"); *Onyx Therapeutics, Inc. v. Cipla Ltd.*, 2020 WL 2214443, at *20 (D. Del. May 4, 2020) (rejecting a finding of invalidity and holding that facts relied on to support obviousness were from "a confidential document that is not prior art" and therefore a "POSA would not have known [the fact] based on the available prior art").

The court should strike each of Dr. Robins' references to "the knowledge of the POSITA" in his obviousness analysis because two central aspects of his definition of that concept must be stricken, including at least: ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[4] *See also* Ex. 1 (Robins Invalidity Report) ████████████████████████████████

████████████████████████████████████████████████████████████

████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

### E.   Dr. Robins Improperly Compares Prior Art References to Embodiments of the Invention

An obviousness analysis requires comparing the prior art to the claims. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17(1966) ("Under § 103, the scope and content of the prior art are to be determined; *differences between the prior art and the claims at issue are to be ascertained . . . .*") (emphasis added); *see also, e.g.*, *TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1139 (Fed. Cir. 2004) ("Our validity analysis is a two-step procedure: 'The first step involves the proper interpretation of the claims. *The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art.*'") (internal quotations omitted) (emphasis added). Despite this basic principle, ██

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████ In so doing, Dr. Robins is comparing a prior art reference *to a preferred embodiment* rather than comparing the reference to the claims as is required. Divorcing the obviousness analysis from the claims in this manner has a high risk of misleading the jury. This is improper for an obviousness analysis and must be stricken.

### F.   Dr. Robins Improperly Attempts to Alter Invalidity Contentions via the Expert Report

In Samsung's invalidity contentions, Samsung asserted that DRAM dies with through silicon vias (TSVs) satisfy the definition of "stacked array die" in each asserted claim of the '060 and '160 patents. For example, in the invalidity contentions chart for "APA" (Admitted Prior Art), Samsung maps "stacked array dies" to stacked DRAM with TSVs.

| [1b] a plurality of stacked array dies including a first group of array dies and a second group of at least one array die, each array die having data ports; | The Court has not yet construed the claims and therefore the meaning of the terms in the claims has yet to be resolved by the Court.  The support identified here for this limitation is responsive to Plaintiff's infringement contentions, which Defendants disagree with.<br><br>*APA* discloses a plurality of stacked array dies including a first group of array dies and a second group of at least one array die, each array die having data ports. *See, e.g.,*<br><br>"Memory modules may include a number of memory packages. Each memory package may itself include a number of array dies that are packaged together. Each array die may include an individual |

| '060 Patent | Admitted Prior Art (*APA*) |
|---|---|
| | <br><br>FIG. 1B<br><br>The '060 patent at Fig. 1B.<br><br>"FIGS. 1A and 1B schematically illustrate examples of existing memory package designs currently used or proposed to be used to provide the dynamic random-access memory of memory modules. FIG. 1A schematically illustrates a memory package 100 with three array dies 110 and a control die 130. The control die 130 is configured to respond to signals received by the memory package 100 by |

| '060 Patent | Admitted Prior Art (*APA*) |
|---|---|
| | The '060 patent at 18:57-19:7. |
| | ==The JEDEC DDR3 RDIMM standard contains two major components: a DDR3 register and a plurality of DRAM packages each comprising one or more DRAM chips or dies.== The DDR3 register serves as a command/address signal buffer and as a command/control decoder. This DDR3 register holds a set of register control (RC) words, which a computer system configures to ensure the proper operation of the RDIMM. The DDR3 register contains a phase-lock-loop (PLL), which functions as a clock synchronizer for each RDIMM. The DDR3 register outputs a set of buffered command/address signals to all the DRAM packages on the RDIMM, but the data signals are directly fed to the DRAM packages from the system memory controller." |
| | The '060 patent at 19:8-20. |
| | "The 3DS-DIMM proposal can also be compared to the HyperCloud™ (HC) DIMM architecture of Netlist, Inc. An example of the HCDIMM architecture 602 is illustrated in FIG. 6B. Further details and embodiments of the HCDIMM architecture is disclosed in U.S. Pat. Nos. 7,289,386, 7,532,537, 7,619,912, and 7,636,274, each of which is incorporated in its entirety by reference herein. One of the main topological differences between the 3DS-DIMM and HCDIMM architectures is that while the 3DS-DIMM architecture uses a control die 722 to buffer the data signals and to decode command/address signals from the 3DS register, certain configurations of the HCDIMM architecture include a plurality of isolation devices (ID), each of which includes data buffers, but no decoding capability. Unlike the HCDIMM architecture, since the command/address signal needs to pass through the control die 722 in the 3DS DRAM package 720, the 3DS-DIMM proposal presents the same shortcoming (b) of the controller die described above. The data path control signals are generated by the register device (RD) 612 in the HCDIMM architecture 602, while the data path control signals are generated by the control die 722 in the 3DS DRAM. This aspect of the 3DS-DIMM architecture creates timing critical control paths in 3DS-DIMM architecture." |
| | The '060 patent at 19:41-63. |
| | To the extent that this limitation is not disclosed, either explicitly or inherently, by the *APA*, this limitation is obvious in combination with the knowledge of one of skill in the art and/or it would have been obvious to one of skill in the art at the time of the '060 patent to combine this reference with any |

Ex. 4 (Ex. E1 to Samsung's Invalidity Contentions) at 15, 18, 23.

As another example, in the claim chart based on "JEDEC Presentations," Samsung once again

████████████████████ .

| '060 Patent | JEDEC HBM and Low Power Proposals (*JEDEC HBM and Low Power Proposals*) |
|---|---|
| | ████████████████████████████████████████████ |

Ex. 5 (Ex. 18 to Samsung's Invalidity Contentions) at 7.

After the preparation of these invalidity contentions, Judge Payne construed "array die" to exclude the "DRAM circuit" of a prior art reference, "Rajan." Dkt. 114 at 31-32, 35. Samsung never updated its invalidity contentions to take into account this new construction. Instead, Samsung's expert engaged in self-help, announcing that his



*See generally*, Ex. 1 (Robins Invalidity Report) ¶¶ ████████████████████████. Samsung never amended its contentions to disclose its assertion that stacked DRAM with TSV was within the scope of the claim for validity based only on Netlist's interpretation of the construction. It cannot now make this amendment through its expert report.

### G.    Dr. Robins' Analysis of a POSITA's Use of Memory Layers Other Than DRAM Is Improper

"Like interrogatory responses, contentions narrow issues and set boundaries for trial." *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, 2017 WL 4619791, at *2 (E.D. Tex. Oct. 16, 2017) (striking

undisclosed invalidity opinions). Accordingly, expert "reports may not introduce theories not previously set forth in [ ] contentions." *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014); *see also Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7180756, at *3-4 (E.D. Tex. May 1, 2008).

Dr. Robins repeats the following sentence throughout his report: ████████████
████████████████████████████████████████████████████████████████
████████ Ex. 1 (Robins Invalidity Report) ¶¶ ████ (emphasis added), ███████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████ This statement and the arguments proposed to back it up have no support in Samsung's invalidity contentions, which assume DRAM is covered by the asserted patents. All such references should be stricken.

## H.   Dr. Robins Fails to Analyze "Chip Select Signal" Under the Court's Construction

An expert's opinions must apply the court's claim constructions. *See, e.g., Treehouse Avatar LLC v. Valve Corporation*, 54 F.4th 709, 714-15 (Fed. Cir. 2022) (affirming "the grant of a motion to strike expert testimony is not improper when such testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court.").

The court adopted "plain and ordinary meaning" for the term "chip select signal," which is used in various claims of the '060 patent.[5] Dkt. 114 at 34. Specifically, the court adopted Samsung's position that "the plain and ordinary meaning of this term excludes situations in which a chip select signal could enable multiple array dies at once." Dkt. 114 at 33.

Dr. Robins states that ████████████████████████████████████████████

████████████████████████████ *See, e.g.*, Ex. 1 (Robins Invalidity Report) ¶ ██████ . But Dr. Robins

---

[5] This term appears in claims 11–14, 16–19, 20–21, 23–28 of the '060 patent.

does not explain in his report ████████████████████████████████████████████

████████████████████████████████████. Thus, his opinions involving "chip select signal"

should be stricken, including at least the following paragraphs: ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████

## II.   Conclusion

Netlist respectfully requests that this Court exclude and strike the portions of Dr. Gabriel

Robins' opening report identified above.

Dated: February 3, 2023                    Respectfully submitted,

                                           */s/ Jason Sheasby*
                                           _____

                                           Samuel F. Baxter
                                           Texas State Bar No. 01938000
                                           sbaxter@mckoolsmith.com
                                           Jennifer L. Truelove
                                           Texas State Bar No. 24012906
                                           jtruelove@mckoolsmith.com
                                           **MCKOOL SMITH, P.C.**
                                           104 East Houston Street Suite 300
                                           Marshall, TX 75670
                                           Telephone: (903) 923-9000
                                           Facsimile: (903) 923-9099

                                           Jason Sheasby (*pro hac vice*)
                                           jsheasby@irell.com
                                           Annita Zhong, PhD (*pro hac vice*)
                                           hzhong@irell.com
                                           Thomas C. Werner (*pro hac vice*)
                                           twerner@irell.com
                                           Andrew Strabone (*pro hac vice*)
                                           astrabone@irell.com
                                           Yanan Zhao (*pro hac vice*)
                                           yzhao@irell.com
                                           Michael W. Tezyan (*pro hac vice*)
                                           mtezyan@irell.com
                                           **IRELL & MANELLA LLP**
                                           1800 Avenue of the Stars, Suite 900
                                           Los Angeles, CA 90067
                                           Tel. (310) 277-1010
                                           Fax (310) 203-7199

                                           Rebecca Carson (*pro hac vice*)
                                           rcarson@irell.com
                                           **IRELL & MANELLA LLP**
                                           840 Newport Center Drive, Suite 400
                                           Newport Beach, CA 92660

                                           ***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on February 3, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF CONFERENCE

I hereby certify that, on February 2, 2023 counsel for the parties met and conferred on the issues raised in this motion.  Counsel for Samsung confirmed that Samsung did not intend to withdraw any of its expert reports, or any portions of its expert reports, and that Samsung would oppose any motions to strike portions of its expert reports.

*/s/ Yanan Zhao*
Yanan Zhao