# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:21-CV-463-JRG |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD., | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC., SAMSUNG SEMICONDUCTOR, | ) | ▬▬▬▬▬▬▬▬▬ |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NETLIST INC.'S MOTION TO STRIKE PORTIONS OF THE REBUTTAL EXPERT REPORT OF PAUL K. MEYER

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ......................................................................................................... 1

    A. Mr. Meyer's ███████████ ................................................................ 1

        1. ████████████████████████ .............................. 1
            ████████████ ....................................................

        2. ████████████████████ .................................... 2
            ███████████████ .

    B. ██████████ ........................................................................ 5

    C. █████████████ ............................................................... 6

    D. █████████████ ............................................................... 8

    E. ██████████████ ............................................................. 9

    F. ████████████████████ .......................................... 9

    G. ████████████████████████ ............................. 11

    H. ███████████████████ ............................................ 11

    I. ████████████████████ .......................................... 12

    J. █████████████ ............................................................. 14

    K. ██████████ ................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Apple Inc. v. Wi-LAN Inc.,*
   25 F.4th 960 (Fed. Cir. 2022) ....................................................................................................2

*Biscotti Inc. v. Microsoft Corp.,*
   No. 2:13-CV-01015-JRG-RSP, 2017 WL 2536962 (E.D. Tex. May 18, 2017) ...............................4

*Cybergym Rsch. LLC v. ICON Health & Fitness, Inc.,*
   2007 WL 9724238 (E.D. Tex. Oct. 7, 2007) ...........................................................................11

*Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.,*
   2017 U.S. Dist. LEXIS 183216 (E.D. Tex. Nov. 4, 2017) ...........................................................7

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
   694 F.3d 51 (Fed. Cir. 2012) ....................................................................................................4

*Maxell, Ltd. v. Apple Inc.,*
   2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) ........................................................................11

*Optis Wireless Tech., LLC v. Apple Inc.,*
   No. 2:19-cv-066-JRG, Dkt. 437 ...............................................................................................9

*Packet Intelligence LLC v. Netscout Systems, Inc.,*
   No. 2:16-cv-230-JRG, slip op. (E.D. Tex. Sep. 29, 2017) ........................................................8

*Powell v. Home Depot U.S.A., Inc.,*
   663 F.3d 1221 (Fed. Cir. 2011) ..............................................................................................13

*Realtime Data LLC v. EchoStar Corp.,*
   2018 WL 6266300 (E.D. Tex. Nov. 15, 2018) .........................................................................7

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.,*
   No. 2:13-CV-213, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015) ...............................................4

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,*
   951 F.2d 684 (5th Cir. 1992) ....................................................................................................8

*VirnetX, Inc. v. Cisco Sys., Inc.,*
   767 F.3d 1308 (Fed. Cir. 2014) ................................................................................................2

**Rules**

Fed. R. Evid. 403 ...............................................................................................................3, 4, 11

-ii-

Netlist's Motion to Strike
Meyer Rebuttal Report
No. 21-cv-463-JRG (E.D. Tex.)

Fed. R. Evid. 408(a) ............................................................................................................11

**Other Authorities**

https://www.finra.org/investors/insights/market-cap ........................................................14

https://www.investopedia.com/terms/m/marketcapitalization.asp ....................................14

## I.    INTRODUCTION

Plaintiff Netlist respectfully brings this motion to strike and exclude certain portions of the rebuttal report of the Samsung Defendants' expert Paul K. Meyer, attached as Ex. 1 hereto.

## II.    ARGUMENT

### A.    Mr. Meyer's ██████████████████████████████████

**Paragraphs 289 – 305**. Mr. Meyer presents a ████████████████████████████████ ███████████████████████████████████████████████████████████████. This approach is speculative and violates Federal Circuit law for two reasons: first, ████████████████ ████████████████████████████████████████, but in doing so he runs afoul of the Federal Circuit's requirement that such an analysis must determine what actual patents drove the value of the license based on the facts of the case and the views of the contracting parties.  Second, ███████ ████████████████████████████████████████ without any basis in quantitative data or any technical analysis of the patents.

1.    ████████████████████████████████████████ ███████████████████████████████.

Mr.  Meyer ██████████████████████████████████████████████ █████████████. ████████████████████████████████████████████. He then claims to conservatively focus ██████████████████████████████████████ █████████████████████████████████████████.[1] This presentation was never shown to ████████.

Mr. Meyer then claims to ██████████████████████████████████████████ ████████████ Ex. 1, ¶ 294. To do so, Mr. Meyer relies on ███████████████████

---

[1] Notably, the vast majority of the ████████████████████████████████████████ ███.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Ex. 1 at ¶ 295.  This analysis does ***not*** consider the value that the

parties to the license, ████████████████ assigned to Netlist's patents.

Federal Circuit law requires that, in analyzing a comparable license, an expert must "account

for differences in the technologies and economic circumstances ***of the contracting parties***." *Apple*

*Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971 (Fed. Cir. 2022) (emphasis added).  In *Apple*, the Federal Circuit

held that there must be a factual basis to assign value to specific patents within a portfolio patent

license. Critically, this requires consideration of how the parties to the license "treated" the value of

the patents in question. *Id.* at 973; *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014).

Mr. Meyer has performed no such analysis.  Indeed, he does not identify which ██████████████

████████████████████████████████████████████████████

████████████████.  Indeed, to the contrary, Mr. Meyer's exhibits show that █████████████

███████████████████████████████████.  *See* Ex. 2 (Meyer

Attachment 18).  In *Apple*, the Federal Circuit emphasized that the defect present in Mr. Meyer's

analysis is a threshold barrier to the presentation of the opinion, and is not simply cured by cross-

examination.  *Id.* at *974.

     2.    █████████████████████████████████████

           █████████████████████████████.

Mr. Meyer compounds his speculation by claiming to ████████████████████████████

████████████████████████████.  After ██████████████████████████████

---

[2] Netlist has also moved to strike this analysis from Mr. McAlexander's report as unreliable, unable to be replicated, and thus unscientific.  To the extent the Court grants Netlist's motion to strike Mr. McAlexander's report, that is another basis to strike Mr. Meyer's opinion.

Netlist's Motion to Strike
Meyer Rebuttal Report
No. 21-cv-463-JRG (E.D. Tex.)

- 2 -

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████  With respect to the DDR4/HBM Patents, Mr. Meyer ███████████████████████

███████████████████████████████████████████  and he does the same with respect to the DDR5

Patents.  Ex. 1, ¶ 300.  He then claims that ██████████████████████████████████

██████████████████████████████████████████████████████████

████████████████.  These numbers are made up, but they are convenient; they allow Mr. Meyer to

██████████████████████████████████████████████████████████

████████████████████████.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

    To be clear, this additional ████████████ step is not based on any alleged technical

contribution, and it has no connection whatsoever to the ████████████████.  Rather, Mr. Meyer

did two things.  First, he determined █████████████████████████████████████████

████████████████.  This opinion alone should be excluded because "its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the

issues, misleading the jury, undue delay, [or] wasting time."  Fed. R. Evid. 403.  Just informing the jury

that █████████████████████████████████ would cause substantial juror confusion

and unfair prejudice, and would ████████████████████.  As discussed below, courts in this

district routinely exclude evidence of other litigation and unasserted patents under Rule 403.  ████████

████████████████████████████████████████████████████████

████████████████ are not at issue in this lawsuit and have no relevance to a determination of the value

of the patents-in-suit to Samsung.  *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13-CV-213,

2015 WL 627430, at *1 (E.D. Tex. Jan. 31, 2015) (granting Plaintiff's motion *in limine* to exclude

evidence of "litigation brought by [Plaintiff] unrelated to the patents-in-suit").

Second, Mr. Meyer reviewed ███████████████████████—which again was created

before any of the patents-in-suit even existed—and opined that ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████  Ex. 1, ¶ 298-99.   This halving of value in the guise of

"apportionment" is junk science.  It has no connection to the facts of the case and is not based on

any scientific, economic, or technical analysis; it is made up and speculative.  The Federal Circuit

prohibits numbers "plucked out of thin air" masquerading as quantitative damages analysis.

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (such "arbitrariness" "would

alone justify excluding [expert]'s opinions"); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-

RSP, 2017 WL 2536962, at *4 (E.D. Tex. May 18, 2017) (observing that Federal Circuit has

consistently excluded "expert testimony that applies general economic theorems or rules of thumb

that are not grounded in the facts of the case").  Indeed, ██████████████████████████

████████████████████████████████████████████ cannot possibly have a

connection to the facts of the case.  In other words—Mr. Meyer has ████████████████

████████████████████████████████████████████████████████

████████████████████████████████, but Netlist could not have ████████████████████████

████████████████████ because **they did not exist yet**.

    **B.**    ████████████████████████

Throughout Mr. Meyer's report, he claims that ████████████████████████████████

████████████████████████████████████. *See, e.g.,* Ex. 1 at ¶¶ 45, 209-210, 239,

262, n. 504, 306-311. This is wrong, and allowing Mr. Meyer to tell this to the jury would be confusing,

prejudicial, and contrary to the facts of the case.

As Mr. Meyer states in his report, ████████████████████████████████

████████████████████████ Ex. 1 at ¶ 43.  Samsung has repeatedly contended and still

contends in this case, however, that ████████████████████████.  Netlist

served an interrogatory to Samsung seeking the following: "With respect to each asserted claim of

Netlist Patents-in-Suit, identify whether it is or is not an "Essential Patent Claim" as defined in JEDEC

Manual of Organization and Procedure JM21T (September 2020) § 8.2.1, and Set Forth Your

Complete Basis for that conclusion." Ex. 3 at 109.  "Essential Patent Claim" is defined by JEDEC as

"Those Patent claims the use of which would necessarily be infringed by the use, sale, offer for sale

or other disposition of a portion of a product in order to be compliant with the required portions of

a final approved JEDEC Standard."  Ex. 4 at 23.  Samsung's response was unequivocal: ████████

████████████████████████████████████████████████████████████████████

████████████████████ Ex. 3 at 111.  Likewise, in Netlist's final supplemental interrogatory response

on the issue after completing its technical analysis Netlist stated ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████ Ex. 5 (Plaintiff Netlist, Inc.'s Second Supplemental Responses And

Objections To Defendants' First Set Of Interrogatories) at 47-48.

Samsung wants to have it both ways: it wants to tell the jury that ██████████████████████

████████████████████, but also that Samsung is ████████████████████████████████████

█████████████████████ This is confusing, prejudicial, and contradictory, and will

necessitate a sideshow on essentiality that neither side plans to address.  Netlist's experts will not argue

that the patents are █████████████████████████████████████████. Instead,

Netlist will show on an element by element bases why Samsung's specific accused designs infringe.

In other words, the jury will not make a determination of whether the patents-in-suit are ████████

██████████ the jury will only determine whether Samsung infringes and how much Samsung owes

in damages for its infringement.

**C.** ████████████████████████████████

**Paragraphs 95-102, 162-166**: Mr. Meyer identifies ████████████████████████████

████████████████████. Netlist served an interrogatory asking Samsung to identify any

alleged non-infringing alternatives ("NIAs").  Ex. 6, at 11. (Netlist's June 8, 2022 Interrogatory #8),

("For each Netlist Patent-in-Suit, identify and describe in detail any alleged non-infringing alternative

that You contend exists or existed to each Netlist Patent-in-Suit ….").  Samsung provided ████

████████████████████ to Netlist's first set of interrogatories, but █████████████████████

████████████████████ *See* Ex. 3, at 115. (Samsung's Dec. 22, 2022 Supp. Interrogatory Response)

at 115 ██████████████████████████████████████████).  Netlist also deposed

Samsung's corporate representatives regarding ███████████████████████████████████

████████████████████████████ Ex. 7 (Seung-Mo Jung Depo.) at 32:6-13 (██████

███████████████████████████████████████████████████████████████████████

- 6 -

Netlist's Motion to Strike
Meyer Rebuttal Report
No. 21-cv-463-JRG (E.D. Tex.)

████████████████████████████████████████████████████████

████████████ ); Ex. 8 (Kyungsoo Park Depo.) at 64:17-65:2 (████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ ); Ex. 9 (Sungjoo Park Depo.) at 85:9-17 (████████████

████████████████████████████████████████████████████████

███████████████  ██████████████████████████████████████████

████████████████████████████

Courts in this district routinely strike non-infringing alternatives that are not disclosed during the fact discovery period and are only disclosed for the first time in rebuttal reports. *See, e.g., Nanology Alpha LLC v. WITec Wissenschaftliche Instrumente und Technologie GMbH*, 2018 WL 4289342, at *5 (E.D. Tex. July 11, 2018) ("the Court finds that WITec's failure to disclose these alternatives until after the close of fact discovery would significantly prejudice Plaintiff and is not substantially justified."); *Realtime Data LLC v. EchoStar Corp.*, 2018 WL 6266300, at *7 (E.D. Tex. Nov. 15, 2018) (striking portions of expert report where "Defendants never properly disclosed…non-infringing alternatives"); *Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.*, 2017 U.S. Dist. LEXIS 183216, at *37-47 (E.D. Tex. Nov. 4, 2017) (striking portions of an expert report related to NIAs not disclosed in response to an interrogatory). In *Nanology*, the court held that the "WITec's failure to disclose these alternatives until after the close of fact discovery would significantly prejudice Plaintiff and is not substantially justified." *Id.*, at *5. The court further held that "the importance of the alternatives is minimal," as the expert "does not explain in his rebuttal report how the [NIAs] are non-infringing, or provide any information on the cost or availability of these alternatives." *Id.* Here too, Mr. Meyer does not explain how any of the ███████████████████████████████████████████████████. As an example, he claims that ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████ Ex. 1 at ¶ 39.  Mr. Meyer appeals

to ████████████████████ in support of this statement, but Dr. Robins' report (which was served

on the same day and is the first time ████████████████████) is also ██████████████

██████████████████████████████.  Mr. Meyer's other alleged ████████████████████

████.  For these reasons, Mr. Meyer's discussions of undisclosed NIAs should be stricken from his

report.[3]

       **D.**           ██████████████████████████████

       **Paragraphs 213, 288 n. 518, 298 n. 538, Attachment 18**.  Mr. Meyer's report makes a number

of references to ████████████████ that have no relevance to the opinions in his report or to this

litigation.  *See, e.g.*, Ex. 1 at ¶¶ 288 n. 518; 298 n. 538 (███████████████████████████████████

███████████████████████████████████████████); *id.* at ¶¶ 213 (█████████████████

███████████████████████████████████).  These portions of the rebuttal report should

be excluded.  *Intell. Ventures*, No. 2:17-CV-577-JRG, ECF No. 297 at 175:12-22 (excluding prior

litigation); *Packet Intelligence LLC v. Netscout Systems, Inc.*, No. 2:16-cv-230-JRG, slip op. at 9 (E.D. Tex.

Sep. 29, 2017) (precluding "[a]rguments, [o]pinions, and [t]estimony" regarding prior proceedings);

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 691 n.7 (5th Cir. 1992) (affirming

exclusion of evidence regarding prior litigation and noting "a jury might be confused into believing

that the opinion's findings are somehow binding in the case at bar" and "the danger of exaggerated

importance that the jury might have placed upon the [prior] decision").

---

[3] Netlist is moving to strike the discussion of these ███████████████████████████████████████
██████████████.  To the extent those discussions are stricken, that provides another basis to strike these
statements from Mr. Meyer's report.

E.   ██████████████████████████

**Paragraphs 126, 129, 141-144, 149-155**. Mr. Meyer repeatedly refers to the ████████████████

████████████████████████████████████ Ex. 1 at ¶ 126.  Mr.

Meyer purports that these ████████████████████████ But neither

Mr. Meyer, nor Mr. Halbert ████████████████████████████

████████████████████████████████████

████████████████████ . Nor does Mr. Meyer identify the ████████████

████████████ , or whether any of these ████████████████

████ . Mr. Meyer states that "████████████████████

████████████████████████████████████

████████ " Ex. 1 at ¶ 144.  There is no relevance to this statement and no connection to the patented

technology in this case; Mr. Meyer solely wishes to inform the jury that because ████████████

████████████████████████ .

The Court has explained previously that where there is reference to thousands of contributions

or patents to a particular standard, but there is no "internal subdivision to put what actually is at issue

here into a narrower comparison," but instead simply "just the global there are tens of thousands

contributed to the standard as a whole without any attempt to differentiate the various parts of the

standard," then "the implication that [the asserted patent] is only one of tens of thousands and,

therefore, not important, not valuable, is so difficult to avoid it probably does need to be struck."

*Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-066-JRG, Dkt. 437 (Pretrial Hearing) at 89:3-24.

F.   ██████████████████████████████

**Paragraphs 150-156, Attachment 13**.   After identifying the ████████████████

████████████████████████████████████

███████████████████████████████████████████. One of these relates to

the ████████████████████████████, wherein he opines that the parties would ███████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ In

response to this, Mr. Meyer proposes that ████████████████████████████████████████████

█████████████████████████████████ *See, e.g.*, Ex. 1 at ¶ 151 ████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████ To be clear, there is zero analysis that any of these ████████████

████████████████████████████████████████████ that is at issue in the case.  The

whole purpose of this exercise appears to be aimed at ████████████████████████████████████

██████████ and thus suggesting that ████████████████████████████████████.  Mr. Meyer

goes so far as to ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████.



Ex. 2, Attachment 13. Allowing Mr. Meyer to ████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

in this case is highly prejudicial and has no connection to the facts of this case.  Fed. R. Evid. 403.

**G.**   ████████████████████████████████████████████████

**Paragraphs 210, 311, Table 13**. On June 8, 2022, Netlist sent Samsung a ██████████ ████████████████████████████████████████████████████  The document, on its face, states "███████████████████████████████████████"  Ex. 10 ██████████████████████████████.  Rule 408 precludes introducing a settlement offer to "prove or disprove the validity or amount of a disputed claim."  Fed. R. Evid. 408(a).  Mr. Meyer██ ██████████████████████████████████████████████ and thus directly violates Rule 408.  Ex. 1 ¶ 211 ("████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████").  Using a ██████████████████ in this way is legally improper, prejudicial, and should be stricken from Mr. Meyer's report. *Maxell, Ltd. v. Apple Inc.*, 2020 WL 8269548, at *15 (E.D. Tex. Nov. 11, 2020) (holding that the expert "is prohibited from providing testimony that relies upon the prior offers in calculating a reasonable royalty" under Rule 408 where the communications were marked as "for settlement purposes only"); *see also Cybergym Rsch. LLC v. ICON Health & Fitness, Inc.*, 2007 WL 9724238, at *5 (E.D. Tex. Oct. 7, 2007) ("[The] expert report is excluded to the extent he relied on the offers made in the course of licensing or settlement negotiations . . .in his calculation of reasonable royalty.").

**H.**   ████████████████████████████████████████████

**Paragraph 210, Table 13**. Mr. Meyer's report directly discusses an ████████████ ████████████████████████████████████████████████████ ████████████████████████████████.  Ex. 1 ¶ 210 ("████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████

███████████████.").  This statement, and the table following it, is wholly irrelevant to this case.  First,

████████████████████████████████████████████████████████.  Ex. 11, at

603. ("████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████.").  The DDR4 LRDIMM patents in this case did not even issue until 2020 and

2021.  Dkt. 1-1 ('506 Patent) (issued Dec. 8, 2020); Dkt. 1-2 ('339 Patent) (issued Mar. 16, 2021).  Mr.

Meyer does not even attempt to explain █████████████████████████

████████████████████████████████████████████.  Second,

the ██████████████████████████████████████████████████████.

In this case, on the other hand, Samsung is asserting that the patents-in-suit are not essential.  Netlist

will prove infringement based on a technical analysis of the accused products, irrespective of any

standards.  Samsung is not entitled to a ████████████████████████.  A ████████

████████████████████ irrelevant to the calculation of damages in this case.  Third,

any discussion of ██████████ will be confusing to the jury, prejudicial, and open the door to ███

██████ that has no connection to this case.  As discussed above, any discussion of ████████████

should be stricken from Mr. Meyer's report.

**I.**     ██████████████████████████████████

**Paragraphs 270-271, Table 16**.  Mr. Meyer compares M████████████████████████

████████████████████████████████████████████.  In so doing,

he suggests that Netlist's ████████████████████████████████

████████████████ *See* ¶ 271 ("████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



”).  First, this is highly improper.  Section 284 provides that a patent holder is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."  Nowhere does the law state that a reasonable royalty must be ████ ██████████████████████████  To the contrary, the Federal Circuit holds that damages can be awarded far beyond a company's profit expectations.  *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011) ("Thus, we are not persuaded that Mr. Powell's expected profit of $2,180 per unit in 2004 is a reliable approximation of the upper limit that the parties would have reached during a hypothetical negotiation in May 2006.") (affirming award of $7,736 per unit).  Indeed, Mr. Meyer's proposition—████████████████████████████—would incentivize large companies like Samsung to routinely abuse the patent system by taking advantage of the patented technology of smaller public companies, knowing that its liability would be limited not by its own actions, but by the size of the company on which it preyed.

As a matter of economics, Mr. Meyer's opinion is also not correct.  Samsung would not be able to ████████████████████████████, and any suggestion that it could is speculative and unscientific.  Market capitalization reflects the current stock price multiplied by the total number of outstanding shares.  First, those outstanding shares are not all available for purchase.  They include restricted shares, also called locked-in shares, which a shareholder (typically a

company executive) is unable to freely sell.[4]  This is one of the reasons FINRA recognizes that "Something important to keep in mind is that market cap is the perceived value of a company because stock price is determined by investors. It isn't necessarily the actual value of a company and all of its parts."[5]  Second, Mr. Meyer is ███████████████████████████████████████████████████ ████████████████████████████████████  It is a basic principle of economics that when stock purchases increase, the price of the stock increases along with it.[6]  It would be highly prejudicial for Mr. Meyer ████████████████████████████████████████████████████ ██████████████████████████████.

**J.** ████████████████████████████████████

**Paragraph 195**.  Mr. Meyer states that ████████████████████████████████ ██████████████████████████  ████████████████████████████████ ██████████████████████████████████."  Ex. 1 ¶ 195.  Mr. Meyer further states that Samsung has "██████████████████████████████████" and that they are "███ ████████████████████████████████████████."  *Id.* ████████████████ are irrelevant to any decision the jury will make in this case and will only serve to confuse the jury.  This is especially true where Samsung ██████████████████████████████████████  Indeed, Netlist specifically asked Samsung's ████████ ████████████████████████████████████████████████████████ ████████████████████████  *See, e.g.*, Ex. 10 (Sungjoo Park Transcript) at 34:20-25 (██████

---

[4] https://www.finra.org/investors/insights/market-cap. ("Market capitalization, or market cap, is one measurement of a company's size. It's the total value of a company's outstanding shares of stock, which include publicly traded shares **plus restricted shares held by company officers and insiders**.") (emphasis added).

[5] *Id.*

[6] https://www.investopedia.com/terms/m/marketcapitalization.asp, ("If there is a high demand for its shares due to favorable factors, the price would increase.").

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████        ██████

███████████████████████████ ) (objections omitted); Ex. 13 (Hyun Joong Kim Dec. 6, 2022 Transcript)

at 50:20-23 (█████████████████████████████████████████████████████

███████████████████████████████████ ).

    **K.**    ████████████████████████████

    <u>**Paragraph 26**</u>. In paragraph 26, Mr. Meyer claims that ████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████ This statement is irrelevant, prejudicial, and will be confusing to the jury. ██████████

████████████████████████████████████████████████████ Rather, the accused

products  are ████████████████████████████████████████████████████████

███████ Mr. Meyer should not be allowed to tell the jury that ████████████████████████████

and claim it has any relevance to this case.

Dated: February 3, 2023

Respectfully submitted,

/s/ *Jason G. Sheasby*
_____

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

- 16 -

Netlist's Motion to Strike
Meyer Rebuttal Report
No. 21-cv-463-JRG (E.D. Tex.)

## CERTIFICATE OF SERVICE

I hereby certify that, on February 3, 2023, a copy of the foregoing was served to all counsel of record.

/s/ Yanan Zhao
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

/s/ Yanan Zhao
Yanan Zhao

## CERTIFICATE OF CONFERENCE

I hereby certify that, on February 2, 2023 counsel for the parties met and conferred on the issues raised in this motion.  Counsel for Samsung confirmed that Samsung did not intend to withdraw any of its expert reports, or any portions of its expert reports, and that Samsung would oppose any motions to strike portions of its expert reports.

/s/ Yanan Zhao
Yanan Zhao