UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | Civil Case No. 2:21cv463-JRG |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG SEMICONDUCTOR, INC., | |
| Defendants. | |

**SAMSUNG'S MOTION FOR SUMMARY JUDGMENT THAT ALL
ACCUSED PRODUCTS SOLD BEFORE JULY 15, 2020 ARE LICENSED**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF ISSUES ...................................................................................... 2

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................... 3

IV.     GOVERNING LAW ................................................................................................ 9

V.      ARGUMENT ......................................................................................................... 10

    A.      Netlist Licensed All of the Accused Samsung Products Under the JDLA ........... 10

        1.      Under New York Law, Samsung's License Under the JDLA Covers All Semiconductor Products Except Foundry Products .................................. 11

        2.      Issue Preclusion and Judicial Estoppel Bar Netlist's New Argument ...... 13

        3.      Netlist's Admissions About the License's Scope Bar Its New Theory .... 15

        4.      The Korean Tax Decision Cited by Netlist Does Not Support a Contrary Result .......................................................................................................... 16

    B.      All of the Accused Products Are Licensed—None Are Foundry Products .......... 17

    C.      Netlist May Seek No Damages Prior to July 15, 2020 ........................................ 20

VI.     CONCLUSION ...................................................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Authentic Apparel Grp., LLC v. U.S.*,
  989 F.3d 1008 (Fed. Cir. 2021) ................................................................9

*Beal Sav. Bank v. Sommer*,
  8 N.Y.3d 318 (2007) ..........................................................................9, 12

*Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp.*,
  401 F. Supp. 2d 692 (E.D. Tex. 2005) ...................................................16

*Chrimar Sys., Inc. v. Adtran, Inc.*,
  No. 6:15-CV-618-JRG-JDL, 2017 WL 131587 (E.D. Tex. Jan. 13, 2017) ...................10, 14

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
  70 F. Supp. 3d 808 (E.D. Tex. 2014) ..........................................10, 15, 21

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
  No. 2:19-cv-00023-RWS-RSP, 2020 WL 1899620 (E.D. Tex. Jan. 20, 2020) ...................21

*Greenfield v. Philles Records, Inc.*,
  98 N.Y.2d 562 (2002) ............................................................................9

*Jethroe v. Omnova Sols., Inc.*,
  412 F.3d 598 (5th Cir. 2005) ...........................................................10, 15

*Lozada-Leoni v. MoneyGram Int'l, Inc.*,
  2020 WL 10046089 (E.D. Tex. July 8, 2020) .........................................19

*Netlist Inc. v. Samsung Elecs. Co., Ltd.*,
  Nos. 22-55209, 22-55247 (9th Cir.) ....................................................5, 21

*Netlist Inc. v. Samsung Electronics Co., Ltd.*,
  No. 8:20-cv-00993-MCS (C.D. Cal.) .............................................. *passim*

*S. Road Assocs., LLC v. IBM Corp.*,
  4 N.Y.3d 272 (2005) ............................................................................9

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*,
  617 F.3d 1296 (Fed. Cir. 2010) ...............................................................9

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1. | Joint Development and License Agreement, bearing bates numbers NETLIST_SAMSUNG_EDTX00034064-82 |
| 2. | Netlist Public Interest Statement, *Certain Memory Modules and Components Thereof*, ITC Investigation No. 337-TA-1089 |
| 3. | Excerpts from Netlist's Opposition to Samsung's Motion for Summary Judgment or in the Alternative Partial Summary Judgment, *Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.), Dkt. No. 171 |
| 4. | Excerpts from Netlist's Statement of Genuine Disputes of Material Facts, *Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.), Dkt. No. 178-1 |
| 5. | Excerpts from C.D. Cal. Order re: Motions for Summary Judgment, *Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.), Dkt. No. 186 |
| 6. | Email re JDLA Negotiations, bearing bates numbers NL048993-4 |
| 7. | Excerpts from the Deposition Transcript of Hunjoo Lee, taken October 13, 2022 |
| 8. | Excerpts from Netlist's Fourth Supplemental Disclosure of Asserted Claims and Infringement Contentions, served December 11, 2022 |
| 9. | Excerpts from the Expert Report of Michael C. Brogioli, Ph.D., served December 27, 2022 |
| 10. | Excerpts from the Expert Report of Dr. William Henry Mangione-Smith, served December 22, 2022 |
| 11. | Excerpts from Samsung 2022 Interim Business Report, bearing bates numbers SAM-NET00407110-16 |
| 12. | Excerpts from the Deposition Transcript of Gail Sasaki, taken August 5, 2022 |
| 13. | Netlist JDLA Termination Letter, bearing bates numbers NETLIST_SAMSUNG_EDTX00034449-50 |
| 14. | Excerpts from Netlist C.D. Cal. Motion for Summary Judgement, *Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.), Dkt. No. 145 |
| 15. | C.D. Cal. 2/15/22 Final Judgment, *Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.), Dkt. No. 306 |
| 16. | Excerpts from the Deposition Transcript of Anson Tsui, taken December 2, 2022 |
| 17. | Excerpts from the Deposition Transcript of Jihwan Kim, taken September 15, 2022 |
| 18. | Collection of excerpted datasheets for Samsung HBM products, bearing beginning bates numbers:<br>SAM-NET00368003 (Samsung Flarebolt datasheet)<br>SAM-NET00368367 (Samsung Flashbolt datasheet)<br>SAM-NET00408421 (Samsung Aquabolt datasheet)<br>SAM-NET01333865 (Samsung Icebolt datasheet) |

| Exhibit No. | Description |
|---|---|
| 19. | Excerpts from the Deposition Transcript of Kyungsoo Park, taken September 23, 2022 |
| 20. | Excerpts from the Deposition Transcript of Kyungsoo Park, taken November 11, 2022 |
| 21. | Excerpts fr Samsung DDR5 Presentation, bearing bates numbers SAM-NET00521848-927 |
| 22. | Collection of excerpted datasheets for Samsung DDR5 products, bearing beginning bates numbers:<br>SAM-NET00362668 (Samsung RDIMM Datasheet)<br>SAM-NET00362517 (Samsung SODIMM Datasheet)<br>SAM-NET00362593 (Samsung UDIMM Datasheet) |
| 23. | Collection of excerpted datasheets for Samsung DDR5 PMICs, bearing beginning bates numbers:<br>SAM-NET00357754 (S2FPC01 PMIC datasheet)<br>SAM-NET00357966 (S2FPD01 PMIC datasheet)<br>SAM-NET00358167 (S2FPD02 PMIC datasheet) |
| 24. | Excerpts from the Deposition Transcript of Seung-Mo Jung, taken September 28, 2022 |
| 25. | Excerpts from the Deposition Transcript of Seung-Mo Jung, taken December 14, 2022 |
| 26. | Collection of excerpted datasheets for Samsung DDR4 LRDIMM products, bearing beginning bates numbers:<br>SAM-NET00330281<br>SAM-NET00346310<br>SAM-NET00346392<br>SAM-NET00346431<br>SAM-NET00346472<br>SAM-NET00346553<br>SAM-NET00346635<br>SAM-NET00346716<br>SAM-NET00346795<br>SAM-NET00347086<br>SAM-NET01319415<br>SAM-NET01319498 |
| 27. | Excerpts from Netlist's Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories (Revised), served December 19, 2022 |
| 28. | Samsung HBM Flashbolt webpage, bearing bates numbers NETLIST_SAMSUNG_EDTX00033900-05 |
| 29. | Samsung HBM Flarebolt webpage, bearing bates numbers NETLIST_SAMSUNG_EDTX00033955-57 |
| 30. | Samsung HBM Aquabolt webpage, bearing bates numbers NETLIST_SAMSUNG_EDTX00204531-36 |
| 31. | Samsung HBM Icebolt webpage, bearing bates numbers NETLIST_SAMSUNG_EDTX00204551-55 |

| Exhibit No. | Description |
|---|---|
| 32. | Verification of DDR5 RDIMM Products, bearing bates numbers SAM-NET00363671-76 |
| 33. | Verification of DDR5 SODIMM Products, bearing bates numbers SAM-NET00330273-80 |
| 34. | Verification of DDR5 UDIMM Products, bearing bates numbers SAM-NET00363720-24 |
| 35. | Samsung Module Handling Guide, bearing bates numbers SAM-NET00347077-85 |
| 36. | Excerpts from Netlist's Second Supplemental Disclosure of Asserted Claims and Infringement Contentions, served October 10, 2022 |
| 37. | Excerpts from Netlist's Disclosure of Asserted Claims and Infringement Contentions, served May 4, 2022 |
| 38. | Excerpts from Netlist's Responses and Objections to Defendants' Second Set of Interrogatories, served October 31, 2022 |
| 39. | Excerpts from Netlist's Combined Answering Brief and Opening Brief, *Netlist Inc. v. Samsung Elecs. Co., Ltd.*, Nos. 22-55209, 22-55247 (9th Cir.) |
| 40. | Excerpts from the Corrected Expert Report of Mr. David Kennedy, served January 20, 2023 |
| 41. | Korean Notice of Tax Appeal Decision, Appeal No.: Tax Appeal 2020-Jung-1581 |

██████████████████████████████

## I.       INTRODUCTION

The parties agree that Netlist granted Samsung a license to the asserted patents as part of

a "Joint Development and License Agreement" ("JDLA") before filing this suit.[1]  Ex. 1.  As the

Court is aware, there remains a dispute about whether Netlist permissibly terminated that license

on July 15, 2020, which is the subject of appeal before the Ninth Circuit.  But days before the

close of fact discovery, Netlist disclosed for the first time its remarkable assertion that, even

before the license was terminated, the license did not cover the accused products in this case.

Instead, Netlist asserts ████████████████████████████████████

████████████████████.  Leaving aside for a moment whether Netlist should be even permitted to

make this late assertion, Netlist's newly concocted position is frivolous on its face.  By its

expressed terms, the license covers ██████████████████████████

████████████████████████████████████████ and Netlist

has again and again confirmed its long held view that the license grant means what it says—it

covers **all** semiconductor products, including the accused products in this case.

Netlist has, for example, previously asserted to the International Trade Commission in its

case against SK hynix that "Samsung is authorized by cross-license to sell RDIMMs and

LRDIMMs," which are both accused in this case.  Ex. 2 at 3.  Indeed, in the CDCA Case relating

to the JDLA, Netlist vigorously argued that the JDLA's license provision is not narrowly limited

to the joint development project, a position Netlist now abandons—after convincing the CDCA

Court to adopt it.  Ex. 3 at 5 (arguing the court should not "import an implied limitation into

Section 6.2 [that limits this section to only the joint development project] that concededly does

not exist in other provisions" such as "Section 8 (the grant of patent licenses)"); Ex. 4 at 114-15

---

[1] Herein, "Netlist" means plaintiff Netlist, Inc., and "Samsung" means defendants Samsung
Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Semiconductor, Inc.

██████████████████████████████████

(Netlist disputing proposed statement of fact "to the extent that Samsung characterizes this quote as suggesting that the patent license overall was limited to the parties' 'joint research and development'"); Ex. 5 at 9 ("§ 8 [of the JDLA] governs intellectual property licenses *unrestricted to use* on the NVDIMM-P development project.");[2] *see also* Ex. 6 at NL048993

(███████████████████████████████████████

█████████████████████).

Thus, when it sued Samsung in CDCA, Netlist confirmed the proper scope of the agreement but here it seeks to shed the clear language of the agreement and its prior inconsistent positions in the hopes the Court will let the jury hear an elevated damages case that clearly and improperly captures licensed sales.  The Court should grant summary judgment in favor of Samsung to establish that Samsung's license under the JDLA covered *all* accused products.  As a result, *Netlist can recover no damages before July 15, 2020* (the date the CDCA Court determined that Netlist had terminated the JDLA's license to Samsung).

## II.      STATEMENT OF ISSUES

1.      Is the scope of Samsung's license under the JDLA limited to products of the joint development project (*i.e.*, Developed Products, in the language of the JDLA) or does it encompass all Samsung semiconductor products, except foundry products (*i.e.*, Samsung's Licensed Products, in the language of the JDLA)?

2.      Do all the accused products in this case meet the JDLA's definition of Samsung's Licensed Products and therefore all accused products sold before July 15, 2020 are licensed?

---

[2] All emphasis is added unless noted otherwise.

███████████████████████████████████████████

## III.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Samsung Electronics Co., Ltd. and Netlist entered the JDLA on November 12, 2015.

Ex. 1 (JDLA) at 1.

2.    The JDLA is governed by New York law.  Ex. 1 at § 14.

3.    The JDLA granted Samsung ████████████████████████████

███████████████████████     *Id.* at § 8.2

4.    The JDLA defines ███████████████████████████████████

█████████████████████████████████████████

███████████████████████     *Id.* at 3.

5.    The JDLA defines the ████████████████████████████████

███████████████████████████     *Id.* at 1.

6.    All of the asserted patents in this case are "Netlist's Licensed Patents" under the

JDLA because they have an effective filing date before November 12, 2020.  *See* Dkt. No. 23

(Netlist's First Am. Compl.) ¶ 50 (Capture Period extends through 11/12/20); *id.* at ¶¶ 18, 24, 30,

37, 42-43 (Netlist listing effective filing dates of asserted patents, all before 11/12/20).

7.    The JDLA defines ████████████████████████████████

████████████████████████████████████████

███████████████████████████     Ex. 1 at 3.

8.    The JDLA defines ████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

███████████████████████     *Id.* at 2.

9.    The accused products in this case are: (1) Samsung's HBM2, HBM2E, HBM3, and

newer products with 4 or more stacked DRAM dies for U.S. Patent Nos. 8,787,060 ("'060

3

██████████████████████████████████████████

patent") and 9,318,160 ("'160 patent"); (2) Samsung's DDR5 load reduced Dual In-Line

Memory Modules ("DIMMs") ("LRDIMMs"),[3] registered DIMMs ("RDIMMs"), small-outline

DIMMs ("SODIMMs"), and unbuffered DIMMs ("UDIMMs") for U.S. Patent Nos. 11,016,918

("'918 patent") and 11,232,054 ("'054 patent"); and (3) Samsung's DDR4 LRDIMMs for U.S.

Patent Nos. 10,860,506 ("'506 patent) and 10,949,339 ("'339 patent").  *See* Dkt. No. 23

(Netlist's First Am. Compl.) at ¶ 54 (defining Accused Instrumentalities); Ex. 8 at 3-4 (listing

accused products); *see also* Ex. 9 at 38 (listing accused HBM products); Ex. 10 at Ex. A at 43

n.40 (defining the "Accused Samsung DDR4 LRDIMMs" as those listed in Ex. 1 to Ex. A of his

report); *id.* at Ex. B at 47 (defining the "Accused Samsung DDR5 DIMMs" as "unbuffered

DIMMs ('UDIMMS'), small-outline DIMMS ('SODIMMS'), registered DIMMS ('RDIMMS'),

and load reduced dual in-line memory modules ('LRDIMMs')").

10. The accused products in this case are all Samsung semiconductor products.  *See* Ex.

11 at SAM-NET00407116 (listing DRAM as type of semiconductor product); Dkt. No. 23

(Amended Complaint) at ¶ 5 (Netlist characterizing the accused products as "semiconductor

products").

11. In 2017, Netlist filed an action in the International Trade Commission ("ITC") against

SK hynix, where it admitted in its "Statement of Public Interest" that "Samsung is authorized by

cross-license to sell RDIMMs and LRDIMMs."  Ex. 2 at 3.

12. ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[3] To date, ████████████████████████████████ Ex. 7 at 93:7-11; *see also id.* at
33:8-34:15.

███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

13. On May 28, 2020, Netlist sued Samsung Electronics Co., Ltd. in the Central District of California for alleged breach of the JDLA.  *See Netlist Inc. v. Samsung Electronics Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.) ("CDCA Case").

14. On July 15, 2020, Netlist sent Samsung a letter purporting to terminate the JDLA "effective immediately."  Ex. 13.

15. On October 14, 2021, the district court in the CDCA Case ("CDCA Court") granted summary judgment that Netlist terminated the JDLA, effective July 15, 2020, after Netlist argued the same.  Ex. 5 at 18; Ex. 14 at 11.

16. The CDCA Court reached its decision based in part on its interpretation that the parties' patent cross-licenses are not limited to the joint development project, after Netlist argued the same.  Ex. 5 at 9 (court finding "§ 8 [of the JDLA] governs intellectual property licenses unrestricted to use on the NVDIMM-P development project"); Ex. 3 at 5 (Netlist arguing the same).

17. The CDCA Court entered final judgment on February 15, 2022, which includes a declaration that Netlist terminated the JDLA on July 15, 2020.  *See* Ex. 15.

18. The parties cross-appealed to the Ninth Circuit, where those appeals are fully briefed and awaiting oral argument.  *See Netlist Inc. v. Samsung Elecs. Co., Ltd.*, Nos. 22-55209, 22-55247 (9th Cir.) ("Ninth Circuit Appeal").[4]

---

[4] Samsung is appealing the judgment that Samsung materially breached the JDLA, and whether Netlist properly terminated the JDLA.

19.     The accused products in this case all embody Samsung's own designs.  *See* Ex. 16

at 35:24-36:2 ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████); Ex. 18 (Samsung HBM Flarebolt, Flashbolt, Aquabolt, Icebolt datasheets);

Ex. 19 at 93:15-25 ██████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████ Ex. 21 at SAM-NET00521856 (showing development timeline

for Samsung DDR5 products); Ex. 22 (DDR5 RDIMM, SODIMM, UDIMM datasheets); Ex. 23

(PMIC datasheets); Ex. 24 at 7:11-8:2 (stating Samsung DRAM Solution team designs DDR4

LRDIMM products); Ex. 25 at 53:4-15 ██████████████████████████████████

███████████████████████; Ex. 26 (DDR4 LRDIMM datasheets); Ex. 25 at 17:15-25 ██████

█████████████████████████████████████████████████.

20. Netlist's experts have admitted that Samsung designed the accused products.  Ex. 9,

at ¶¶ 389-90 (stating that "Samsung . . . designed and manufactured" the HBM products accused

of infringing the '060 and '160 patents); Ex. 10 at Ex. A, ¶ 335 (stating Samsung "designed" the products accused of infringing the '506 and '339 patents); *id.* at Ex. B, ¶¶ 483 (stating Samsung "designed" the products accused of infringing the '918 and '054 patents).  Netlist adopted these admissions as its own.  Ex. 27 at 38 ("Netlist incorporates by reference the expert report(s) that it will serve in accordance with the Court's Docket Control Order[.]"); *id.* at 42 (same); *id.* at 45 (Netlist "incorporates by reference technical reports that it will serve in accordance with the Court's Docket Control Order.").

21. Samsung sells all the accused HBM products as its own products.  *See* Ex. 18 (Samsung Flarebolt, Flashbolt, Aquabolt, Icebolt datasheets); Ex. 28 (Flashbolt webpage); https://semiconductor.samsung.com/dram/hbm/hbm2e-flashbolt/ (describing Samsung-branded HBM memory, including specific models); Ex. 29 (Flarebolt webpage); https://semiconductor.samsung.com/dram/hbm/hbm2-flarebolt/ (describing Samsung-branded HBM memory, including specific models); Ex. 30 (Aquabolt webpage); https://semiconductor.samsung.com/dram/hbm/hbm2-aquabolt/ (describing Samsung-branded HBM memory, including specific models); Ex. 31 (Icebolt webpage); https://semiconductor.samsung.com/dram/hbm/hbm3/ (describing Samsung-branded HBM memory, including specific models).

22. Samsung sells all the accused DDR5 products as its own products.  *See* Ex. 22 (DDR5 RDIMM, SODIMM, UDIMM datasheets); Ex. 23 (PMIC datasheets); Ex. 32 at SAM-NET00363675-76 (showing Samsung-branded DDR5 RDIMM products); Ex. 33 at SAM-NET00330279 (showing Samsung-branded DDR5 SODIMM products); Ex. 34 at SAM-NET00363724 (showing Samsung-branded DDR5 UDIMM products); https://semiconductor.samsung.com/dram/ddr/ddr5/ (describing Samsung-branded DDR5

memory, including specific models).

23. Samsung sells all the accused DDR4 LRDIMM products as its own products.  *See* Ex.
26 (DDR4 LRDIMM datasheets); Ex. 35 at SAM-NET00347078 (depicting Samsung-branded
DDR4 LRDIMM memory); https://semiconductor.samsung.com/dram/ddr/ddr4/ (describing
Samsung-branded DDR4 memory, including specific models).

24. Netlist's infringement contentions and infringement expert reports exclusively target
products sold as Samsung products and identify no product produced for a third party and sold
under a third party's name.  *See* Undisputed Material Fact ¶ 9; Ex. 36 at Ex. E, at 1 (referring to
Samsung webpages for information about accused HBM products); *id.* at Ex. F, at 1 (same); *id.*
at Ex. E, at 2-6 (showing Samsung's marketing of the accused HBM products as Samsung
products); *id.* at Ex. F, at 2-6 (same); *id.* at Ex. C, at 1 ("Examples of Samsung DDR5 DIMMs
products . . . can be found via Samsung's module-selector page."); *id.* at 4 (showing Samsung-
branded DDR5 products); *id.* at Ex. D, at 1 ("Examples of Samsung DDR5 DIMMs products . . .
can be found via Samsung's module-selector page."); *id.* at 7-8 (showing Samsung-branded
DDR5 products); Ex. 37 at Ex. A, at 1 (referring to Samsung's module-selector page for DDR4);
*id.* at 2 (showing Samsung-branded DDR4 LRDIMM products); *id.* at Ex. B, at 1 ("Examples of
Samsung DDR4 LRDIMM products . . . can be found via Samsung's module-selector page.");
*id.* at 3 (showing Samsung-branded DDR4 LRDIMM products); Ex. 9 at 38 (identifying only
Samsung products as accused products); *id.* at 114-15 (referring to Samsung's websites for its
Samsung-branded Flashbolt, Icebolt, Aquabolt, and Flarebolt products); Ex. 10 at Ex. B, at 47
("There are four types of ***Samsung*** Double Data Rate 5 ("DDR5") Dial In-Line Memory
Modules ("DIMMs") at issue in this action . . . ."); *id.* at 60-67 (depicting Samsung-branded
products); *id.* at Ex. A, at 42-44 (referring to Samsung DDR4 LRDIMM datasheets); *id.* at 43

n.40 (defining the "Accused Samsung DDR4 LRDIMMs").

25. Netlist has adduced no evidence that any of the accused products are Foundry Products as defined by the JDLA.  During discovery in this case, Samsung propounded Interrogatory No. 16 asking Netlist to "describe in complete detail the factual basis underlying" any contention "the Accused Products were not licensed products" under the JDLA.  Ex. 38 at 7. In response, Netlist stated that ███████████████████████████████████

26. The accused products are all "Samsung's Licensed Products" under the JDLA.  Ex. 1 at 2-3, 8.

## IV.   GOVERNING LAW

"Contract interpretation is a question of law generally amenable to summary judgment." *Authentic Apparel Grp., LLC v. U.S.*, 989 F.3d 1008, 1014 (Fed. Cir. 2021) (internal quotations, citations omitted).  The JDLA is governed by New York law, which provides that contract interpretation follows a two-step process.  Courts first determine "[w]hether a contract is ambiguous" as "a question of law."  *S. Road Assocs., LLC v. IBM Corp.*, 4 N.Y.3d 272, 278 (2005).  If the contract is unambiguous, then a court must "enforce[] [it] according to its terms." *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007).  Where a contract is "ambiguous," however, "[e]xtrinsic evidence of the parties' intent may be considered."  *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002).

Issue preclusion, also called collateral estoppel, is relevant here in light of the inconsistent positions Netlist has taken.  The Federal Circuit analyzes issue preclusion "under the law of the regional circuit."  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1311 (Fed. Cir. 2010).  In the Fifth Circuit, "[i]ssue preclusion applies

9

when (1) the identical issue was previously adjudicated; (2) the issue was fully and fairly litigated; (3) the determination of the issue was necessary to the resulting judgment; and (4) there must be no special circumstance that would render preclusion inappropriate or unfair." *Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-CV-618-JRG-JDL, 2017 WL 131587, at *1 (E.D. Tex. Jan. 13, 2017) (citing *State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 689 (5th Cir. 1994)). Notably, a final district court judgment gives rise to issue preclusion even pending appeal. *See DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex. 2014) ("Importantly, the collateral estoppel effect of a prior district court decision is not affected by the fact that an appeal has been taken from the decision." (citing cases)).

Judicial estoppel is also relevant because Netlist prevailed in court based on its previous positions. "A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

## V. ARGUMENT

### A. Netlist Licensed All of the Accused Samsung Products Under the JDLA

Under the plain language of the JDLA, Netlist granted Samsung a patent license for ***all*** of Samsung's semiconductor products, including the memory products at issue in this case. The only possible exception—for foundry products—is not at issue. *See* Section V.B., *infra*. However, Netlist suggested near the close of fact discovery that Samsung's patent license is limited to joint development project. This assertion is wrong as a matter of law, based on the plain language of the JDLA contract. The Court also should reject Netlist's new argument based on issue preclusion and judicial estoppel, as detailed below.

10

████████████████████████████████████████

**1.      Under New York Law, Samsung's License Under the JDLA Covers
All Semiconductor Products Except Foundry Products**

Under the plain language of the JDLA—which is dispositive under governing New York

law—Samsung's patent license covers all semiconductor products except foundry products.  In

contrast, Netlist's suggestion that Samsung's patent license is limited to the joint development

project finds no support in the language of the contract.

Two subjects covered by the JDLA are: a joint development project between Samsung

and Netlist and a cross-license of the parties' patents.  The title reflects this fact: "Joint

Development *and* License Agreement."  Ex. 1 at 1.  The structure of the agreement also reflects

these dual purposes.  ██████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████.

The JDLA's definitions section also supports the distinction between licensed products

and products of the joint development project.  "Developed Product" is defined as ███

█████████████████████████████████████████████

██████████████████████  Ex. 1 at 2.  Likewise, "JDP" or "Joint Development Project"

is defined as ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████



*Id.* By contrast, "Licensed Products" are defined as ██████████ and "Samsung's Licensed Products" are defined broadly as ██████████ ██████████ *Id.* at 2-3.

Most importantly, ██████████

*Id.* at 8.  Therefore, the license provision, by its terms, unambiguously applies to Samsung's Licensed Products and not to only the Developed Product, as Netlist asserts.

Under New York law, which governs the JDLA (*see id.* at § 14), an unambiguous contract provision, like the license grant here, must be enforced "according to its terms." *Beal*, 8 N.Y.3d at 324.  This canon of contract interpretation is consistent with Netlist's arguments to the Ninth Circuit in the pending appeal.  For example, Netlist told the Ninth Circuit that "New York law counsels the Court to 'be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.'"  Ex. 39 at 18 (quoting

---

[5] Exclusions for foundry products are common in semiconductor agreements.  The licensor, on the one hand, does not want to inadvertently license products of third parties (that are designed by such parties and that are so branded) that happen to be made by the licensee; the licensee, on the other hand, while ensuring its own products are licensed, does not have the same concerns with respect to products of third parties that it did not design and do not carry the licensee's brand.

*Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 948 N.Y.S.2d 292, 297 (App. Div. 2012)).  Netlist

also asserted that "'courts may not by construction add or excise terms, nor distort the meaning

of those used and thereby make a new contract for the parties under the guise of interpreting the

writing.'"  *Id.* (quoting *Ashwood Capital*, 948 N.Y.S.2d at 297).

This Court should thus grant summary judgment that Samsung's license extends to all

semiconductor products (except Foundry Products as defined in the JDLA), and is not limited to

the joint development project (*i.e.*, in the language of the contract, Developed Products).

### 2.      Issue Preclusion and Judicial Estoppel Bar Netlist's New Argument

The Court should bar Netlist's new argument that Samsung's patent license should be

limited to the parties' NVDIMM-P joint development project under principles of issue preclusion

and judicial estoppel.  In the CDCA Case, Netlist argued that the cross-licenses of Section 8 of

the JDLA are ***not*** limited to the joint development project because that interpretation suited

Netlist's interests at the time.  In particular, Netlist argued that the supply provision in Section

6.2 is not limited to the joint development project, just like Section 8, the grant of patent licenses

is not so limited:

> Samsung does not argue that the entire JDLA relates strictly to the parties'
> joint development efforts—conveniently, only Section 6.2 is purportedly so
> limited.  Samsung even admits that 'the main purpose of the JDLA was patent
> licensing,' which should be construed 'broad[ly].'  Samsung provides no reason
> for the Court to ***import an implied limitation*** into Section 6.2 ***that concededly***
> ***does not exist in other provisions*** in that same contract—whether it be Section 7
> (the parties' mutual release of claims), ***Section 8 (the grant of patent licenses)***, or
> Sections 1 and 13.1 . . . .

Ex. 3 at 5 (internal citation omitted); *see also id.* at 17 (Netlist "***agreeing*** with Samsung" that

"the main purpose of the JDLA was patent licensing" and "the licenses are broad" (original

emphasis)); Ex. 4 at 114-15 (Netlist ***disputing*** proposed statement of fact "to the extent that

Samsung characterizes this quote as suggesting that the patent license overall was limited to the

parties' 'joint research and development'").

These arguments were successful.  The CDCA Court entered summary judgment in Netlist's favor because it agreed with Netlist's argument that the license provision was not limited to the joint development project:  "§ 8 [of the JDLA] governs intellectual property licenses *unrestricted to use* on the NVDIMM-P development project.  The coexistence of project-specific provisions and project-nonspecific provisions signals that the parties intended not to restrict the NAND and DRAM supply obligation to the NVDIMM-P project by omitting any mention of it in § 6.2."  Ex. 5 at 9.  The court's acceptance of Netlist's argument that the licenses of Section 8 are not limited to the joint development project means that Netlist's new argument here is barred by both issue preclusion and judicial estoppel.

First, all of the elements of issue preclusion are present: (1) the identical issue was previously adjudicated; (2) the issue was fully and fairly litigated; (3) the determination of the issue was necessary to the resulting judgment; and (4) there must be no special circumstance that would render preclusion inappropriate or unfair.  *See Chrimar Sys.,* 2017 WL 131587, at *1. The issue at hand—scope of the JDLA's patent license—was fully and fairly litigated in the CDCA Case because Netlist argued that a broad patent license, not limited to the joint development project, supported its argument that Samsung's supply obligation was also not limited to the joint development project.  Furthermore, the district court accepted this argument and *expressly* cited it as a basis for granting Netlist's motion for summary judgment, thus making determination of the issue necessary to the resulting judgment.  Ex. 5 at 9.  Samsung disagrees that its supply obligation extended beyond the joint development project, and has appealed this issue to the Ninth Circuit.  Of course, Samsung has never taken the position that the *license* was limited to the joint development project, which would be contrary to the plain

███████████████████████████████

language of the agreement.  Finally, there are no special circumstance here that would render preclusion inappropriate or unfair, especially given how Netlist benefited from the resolution of this issue in the CDCA Case.  Indeed, the CDCA Court's final judgment in Netlist's favor is binding on Netlist even pending appeal.  *DietGoal*, 70 F. Supp. 3d at 812.  Netlist, therefore, may not argue that the cross-licenses of Section 8 of the JDLA are limited to the joint development project.

Judicial estoppel requires the same result "to protect the judicial system."  *Jethroe*, 412 F.3d at 600.  All of the elements are again satisfied:  (1) Netlist's position is plainly inconsistent with its prior legal position; (2) Netlist convinced the CDCA Court to accept the prior position; and (3) Netlist did not act inadvertently.  *See id.*  Here, Netlist's express argument that Section 8 was not limited to the joint development project was accepted by the CDCA Court, and Netlist made this argument deliberately because it helped Netlist obtain summary judgment.  This Court should hold that Netlist cannot have it both ways.

### 3.    Netlist's Admissions About the License's Scope Bar Its New Theory

Netlist's arguments in the CDCA Case are not the only time Netlist has interpreted JDLA's patent license as covering all Samsung semiconductor products (except foundry products), rather than limited to products of the joint development project.  For example, long before hatching its new theory here, Netlist filed an action in the ITC against SK hynix in 2017, and told the ITC in its "Statement of Public Interest" that "Samsung is authorized by cross-license to sell RDIMMs and LRDIMMs covered by the asserted patents."  Ex. 2 at 3.  Furthermore, ██████████████████████████████████████████████

██████████████████████████████████████████████ Ex. 6 at NL048993; *see also* Ex. 12 at 213:13-214:12 (Rule 30(b)(6) witness ████████████████████

████████████████████████████████████).  These earlier interpretations

15

███████████████████████████████████████

are completely in accord with the unambiguous language of the license grant in the JDLA and

inconsistent with the new position taken by Netlist here.

### 4. The Korean Tax Decision Cited by Netlist Does Not Support a Contrary Result

Faced with the unambiguous language in the JDLA and its own admissions, Netlist seeks

solace in a decision by a Korean Tax Tribunal.  On December 19, 2022, Netlist added the

following statement to its supplemental response to Samsung's interrogatory asking for any

bases for alleging willful infringement—notably, ***not*** in response to Samsung's licensing defense

interrogatory: █████████████████████████████████████████████

██████████████████████████████████████ Ex. 27 at 27; *see*

*also* Dkt. No. 140 at 1 n.1.

That Korean tax tribunal decision (Ex. 41) is irrelevant to the present motion, most

notably because it relies on Korean ***tax*** law rather than New York contract law, *see, e.g.*, *id.* at

17-21 (referring to related laws), and Samsung was not even a party to the proceeding, *id.* at 1

("Appellant: Netlist, Inc").  Even the decision's discussion of the license, which is *dicta*, does

not purport to redefine Samsung's Licensed Products as limited to the joint development project,

but rather acknowledges one instance, ███████████████████████ where the license

would apply.  *Id.* at 22-23, 27-29.  In any event, the sparse record regarding the Korean tax

decision makes it unsuitable for consideration by this Court.  *See Burns, Morris & Stewart Ltd.*

*P'ship v. Masonite Int'l Corp.*, 401 F. Supp. 2d 692, 698 (E.D. Tex. 2005) (declining to consider

incomplete evidence of a foreign proceeding "without a complete presentation of such evidence,

nor a complete understanding of what happened before the foreign body and why that was

████████████████████████

important under foreign law").[6]

Accordingly, this Court should disregard the Korean tax ruling as inadmissible hearsay and irrelevant to interpretation of the JDLA under New York contract law.

*   *   *

The Court should enter summary judgment that Samsung's license in Section 8.2 of the JDLA covers all semiconductor products (except Foundry Products as defined in the JDLA).

### B.        All of the Accused Products Are Licensed—None Are Foundry Products

All of the asserted patents are subject to the JDLA's license.  The JDLA defines "Netlist Licensed Patents" as those ██████████████████████████████ ████████████████████████ which extends through November 12, 2020.  *See* Ex. 1 at 1 (defining "Effective Date," "Capture Period"); *id.* at 3 (defining "Netlist's Licensed Patents"); Dkt. No. 23 (Netlist's First Am. Compl.) ¶ 50 (stating Capture Period extends through 11/12/20).  Here, the asserted patents all have an effective first filing date before November 12, 2020.  Dkt. No. 23 (Netlist's First Am. Compl.) at ¶¶ 18, 24, 30, 37, 42-43 (Netlist listing effective filing dates of asserted patents, all before 11/12/20).

Because all of the accused products are Samsung semiconductor products, *see* Undisputed Material Fact ¶ 9, they fall within the scope of the JDLA's license unless they meet the definition of Foundry Product in the JDLA.  Ex. 1 § 8.2 (defining Samsung's Licensed Products).  There is no genuine issue of material fact that none of the accused products are Foundry Products.

---

[6] Netlist, the party affirmatively relying on the Korean tax decision, notably did not serve an expert report from a Korean law expert qualified to opine about the context and content of this foreign decision.  Netlist's damages expert, David Kennedy, is not qualified to opine about it.

██████████████████████████████████

The JDLA defines a Foundry Product as ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████   Ex. 1 at 2.  Under this definition, any accused product that is based on designs, specifications, or working drawings *of Samsung* is not a Foundry Product.  In addition, any accused product that Samsung sells ████████████████ i.e., as a *Samsung-branded product*, is not a Foundry Product.  Here, the accused products all embody Samsung's own designs, and Samsung sells all the accused products as its own products.

First, the accused products are designed by Samsung rather than any third parties.  *See* Undisputed Material Fact ¶ 19 and supporting evidence.  Indeed, Netlist's infringement experts affirmatively state that *Samsung* designed the accused products. Ex. 9, at ¶¶ 389-90 (stating that "Samsung . . . designed and manufactured" the HBM products accused of infringing the '060 and '160 patents); Ex. 10 at Ex. A, ¶ 335 (stating Samsung "designed" the products accused of infringing the '506 and '339 patents); *id.* at Ex. B, ¶ 483 (stating Samsung "designed" the products accused of infringing the '918 and '054 patents).  Netlist adopted these positions in its interrogatory responses.  Ex. 27 at 38 ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████   Therefore, Netlist is bound by these admissions that Samsung, rather than a third party, designed all the accused products.  The undisputed evidence that Samsung designed all the accused products alone entitles Samsung to summary judgment that the accused products are not Foundry Products and, therefore, meet the JDLA's definition of Samsung's Licensed Products.

There is a second, independent basis to enter judgment that the accused products are not Foundry Products—Samsung sells the accused products as ***its own products***.  *See* Undisputed Material Fact ¶¶ 21-23 and supporting evidence.  In addition, when Netlist identified the accused products in its infringement contentions, it listed only Samsung-branded products.  *See* Undisputed Material Fact ¶ 24.  Likewise, Netlist's technical experts analyzed only Samsung-branded products.  *Id.*  The deadline for amending Netlist's infringement contentions to identify other products—e.g., products allegedly sold by Samsung not "as its own" and under a third party's brand—has long past.  Dkt. No. 34 (DCO setting deadline for infringement contentions for May 4, 2022); P.R. 3-1 (requiring identification of accused products).  Accordingly, the universe of accused products in this case are those sold under Samsung's brand—i.e., products that Samsung sold to others as its own products.

Despite failing to identify any accused product that allegedly meets the JDLA's definition of Foundry Product in response to Samsung's interrogatory seeking such information, *see* Ex. 38 at 7-9,[7] Netlist's opposition to Samsung's motion to stay references a description of "Samsung HBM2 Foundry Services."  *See* Dkt. No. 85 at 8; Dkt. No. 85-23 at 6-7.  Even if it were proper to rely on this description, it is facially irrelevant because it simply discusses a service that Samsung's Foundry division can provide to companies that design logic chips (e.g., processors).  Samsung's foundry business for processor logic chips is well-known.  This documents describes how the Foundry division can manufacture logic chips of a third party's design and package

---

[7] A party must respond to all interrogatories regardless of whether it ultimately bears the burden of proof on an issue.  *See Lozada-Leoni v. MoneyGram Int'l, Inc.*, 2020 WL 10046089, at *8 (E.D. Tex. July 8, 2020) ("A party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable[.]").  Accordingly, Netlist is bound by its failure to identify any product it contends is a Foundry Product under the JDLA and it is too late now, after the close of fact discovery, to supplement its interrogatory response on this issue.

them with Samsung's HBM2 memory.  Dkt. No. 85-23 at 6 (stating Samsung Foundry provides to "logic chip design companies" "[a]dvanced process chip manufacturing" and "PKG [packaging] service including 2.5D + HBM2").  Figure 1, entitled "HBM & 2.5D Structure," depicts the special 2.5D packaging used when packaging logic chips with Samsung's HBM memory.  *Id.* at 3.  Nothing in this document says that Samsung will manufacture HBM using a third party's design for this type of memory—let alone the HBM products accused in this case.  Nor does it raise a genuine issue of material fact that the actual accused products—all designed by Samsung and sold as Samsung's own products—are not Foundry Products as defined in the JDLA.

There is no genuine factual dispute that the accused products do not meet the JDLA's definition of Foundry Products.  Therefore, the Court should enter summary judgment that the accused products are all "Samsung's Licensed Products" under the JDLA.

### C.      Netlist May Seek No Damages Prior to July 15, 2020

The reason Netlist seeks to circumvent the clear language of the JDLA's license and Netlist's own prior interpretation of that license is clear: to inflate its damages claim by improperly capturing licensed sales.  Specifically, Netlist seeks damages through trial over the following time periods:



Ex. 40 at 133-135.[8]

---

[8] Samsung is moving herewith to strike the opinion of Netlist's expert, David Kennedy, where he offers damages analysis based on sales of HBM products prior to July 15, 2020.

███████████████████████

██████████████████████████████████

███████

Specifically, Samsung's license began on November 12, 2015, the JDLA's Effective Date.  Ex. 1 at 1.  The CDCA Court granted Netlist's motion for summary judgment that it had properly terminated the JDLA on July 15, 2020, Ex. 5 at 18, 20-21, and entered judgment on Netlist's claim for declaratory relief on the issue, Ex. 15.[9]  Therefore, all the accused products sold before July 15, 2020 are licensed and Netlist may collect no damages on such products. *FireBlok IP Holdings, LLC v. Hilti, Inc.*, No. 2:19-cv-00023-RWS-RSP, 2020 WL 1899620, at *3 (E.D. Tex. Jan. 20, 2020) ("A patentee is barred from seeking damages for a party's use or sale of a product that the patentee has already licensed.").

## VI.    CONCLUSION

Samsung respectfully requests that the Court enter summary judgment that all Samsung accused products are licensed under the JDLA, and as a result Netlist may recover no damages for sales before July 15, 2020.

---

[9] Samsung contends that Netlist never properly terminated the JDLA.  This issue is pending in the Ninth Circuit Appeal.  If the Ninth Circuit reverses the CDCA Court's judgment, the immediate effect of such a decision would render all of Samsung's accused products licensed perpetually, such that Netlist may not maintain the present suit against Samsung.  Given the constraints of issue preclusion, *DietGoal*, 70 F. Supp. 3d at 812, Samsung does not seek summary judgment, at this time, on its license defense for products sold after July 15, 2020.  Of course, in the event of reversal, the post-July 15, 2020 sales all would be licensed for the same reasons set forth herein but Samsung will formally address this issue once the Ninth Circuit rules.

Date: February 3, 2023

Respectfully submitted,

*/s/ Lauren A. Degnan*

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
LAD@fr.com
Brian Livedalen
D.C. Bar No. 1002699
livedalen@fr.com
Daniel A. Tishman
D.C. Bar No. 1013923
tishman@fr.com
Matthew Mosteller
CA Bar No. 324808
mosteller@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Katherine Reardon
NY Bar No. 5196910
kreardon@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:  (404) 892-5002

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Matthew Colvin
Texas Bar No. 24087331
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

Karolina Jesien
New York Bar No. KJ7292
FISH & RICHARDSON P.C.
Times Square Tower
20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile:  (212) 258-2291

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

Alice J. Ahn
CA 271399 / DC 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Ste. 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile: (415) 591-6091

Brian R. Nester
D.C. Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202)-662-6000

23

■■■■■■■■■■■■■■■■

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

██████████████████████████████

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 3, 2023.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

*/s/ Lauren A. Degnan*