UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG SEMICONDUCTOR, INC.,<br><br>Defendants. | Civil Case No. 2:21cv463-JRG<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S MOTION FOR SUMMARY JUDGMENT**
**OF NONINFRINGEMNET OF U.S. PATENT NOS. 8,787,060 AND 9,318,160**

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUE ..... 2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ..... 2

IV. GOVERNING LAW ..... 5

V. ARGUMENT ..... 6

  A. There Is No Evidence, Nor Could There Be, of Infringement Under the Court's Construction of "Array Die" ..... 6

  B. The Court Considered and Rejected Dr. Brogioli's Argument on the Scope of "Array Die" During Claim Construction ..... 8

VI. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allergan Sales, LLC v. Sandoz, Inc.*,
717 F. App'x 991 (Fed. Cir. 2017) ....................7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................5

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
268 F.3d 1352 (Fed. Cir. 2001)....................7

*Calypso Wireless, Inc. v. T-Mobile USA Inc.*,
No. 2:08-CV-441-JRG-RSP, 2013 WL 684741 (E.D. Tex. Feb. 25, 2013)....................6

*Cassidian Commc'ns, Inc. v. microDATA GIS, Inc.*,
No. 2:12-CV-00162-JRG, 2013 WL 6491477 (E.D. Tex. Dec. 10, 2013)....................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................5

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022) ....................10

*Google Inc. v. Beneficial Innovations, Inc.*,
No. 211CV00229JRGRSP, 2014 WL 4215402 (E.D. Tex. Aug. 22, 2014)....................6

*GTX Corp. v. Kofax Image Prods. Inc.*,
571 F. Supp. 2d 742 (E.D. Tex. 2008)....................10

*Intell. Ventures I LLC v. T Mobile USA, Inc.*,
No. 2:17-CV-00577-JRG, 2018 WL 5809267 (E.D. Tex. Nov. 6, 2018)....................6

*Iris Connex, LLC v. Acer Am. Corp.*,
No. 2:15-CV-1909-JRG, 2016 WL 4596043 (E.D. Tex. Sept. 2, 2016) ....................6

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996)....................5

*Packless Metal Hose, Inc. v. Extek Energy Equip. (ZHEJIANG) Co.*,
No. 2:09-CV-265-JRG, 2013 WL 682845 (E.D. Tex. Feb. 22, 2013) ....................7

*Parallel Networks, LLC v. Abercrombie & Fitch Co.*,
704 F.3d 958 (Fed. Cir. 2013)....................6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................9

*Quest Licensing Corp. v. Bloomberg L.P.*,
No. 14-CV-561(GMS), 2017 WL 239345 (D. Del. Jan. 19, 2017), *aff'd*, 726 F. App'x 819 (Fed. Cir. 2018)....8

*TiVo Inc. v. Dish Network Corp.*,
640 F. Supp. 2d 853 (E.D. Tex. 2009), *rev'd on other grounds*, 646 F.3d 869 (Fed. Cir. 2011)....8

**Other Authorities**

Fed. R. Civ. P. 56(a)....5

# TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1. | Netlist's Disclosure of Asserted Claims and Infringement Contentions, served May 4, 2022 |
| 2. | Netlist's First Supplemental Disclosure of Asserted Claims and Infringement Contentions, served August 12, 2022 |
| 3. | Netlist's Second Supplemental Disclosure of Asserted Claims and Infringement Contentions, served October 10, 2022 |
| 4. | Netlist's Fourth Supplemental Disclosure of Asserted Claims and Infringement Contentions, served December 11, 2022 |
| 5. | Excerpts from the Markman Hearing Transcript, dated November 4, 2022 |
| 6. | Expert Report of Michael C. Brogioli, Ph.D., served December 27, 2022 |
| 7. | US2008/0025137 ("Rajan") |

## I. INTRODUCTION

The issue of infringement as to the ’060 and ’160 patent is ripe for summary judgment—Netlist has failed to offer an infringement opinion under the plain meaning of the Court’s claim construction. Specifically, the Court interpreted the term “array die” to mean “array die that is different from a DRAM circuit.” That construction is clear on its face. The alleged “array die” in Samsung’s products is a DRAM circuit, which forecloses any finding of infringement (because the alleged array die certainly cannot be different than a DRAM circuit). Yet, Netlist and its expert do not apply the straightforward plain meaning of DRAM circuit to the DRAM circuits indisputably in the accused HBM products. Rather, wholly contrary to its position throughout this case, Netlist now asserts that the DRAM circuits contained in the accused HBM products are not the same DRAM circuits that are set forth in the Court’s construction. This is nothing more than a last ditch effort to save a baseless infringement case foreclosed by the Court’s claim construction.

Prior to the Court’s construction, Netlist repeatedly and consistently alleged that the accused “array dies” are DRAM. When Netlist asserted the ’060 and ’160 patents for the first time in its First Amended Complaint, Netlist unambiguously and unequivocally referenced the claimed array dies as corresponding to DRAM dies in Samsung’s HBM products. Netlist also alleged in its infringement contentions that the claimed array die limitations were met by the DRAM dies in the accused HBM products. This assertion is now untenable in light of the Court’s construction.

Thus, instead of applying the plain meaning of the Court’s construction, Netlist seeks to re-litigate its failed claim construction arguments. Specifically, Netlist’s expert Dr. Brogioli argues that Netlist did not disclaim during prosecution all DRAM circuits, but rather only the particular DRAM circuits in the relevant prior art reference (“Rajan”) when stacked using wire

bonding. Dr. Brogioli's theory improperly reargues the same position Netlist articulated and lost during claim construction. The assertion ignores that Rajan does not mention wire bonding let alone limit its teachings to wire bonding. Rather, Netlist's argument contradicts the teachings of Rajan, teachings which Netlist itself has relied on in this case—namely, that Rajan broadly teaches "any form" and "any . . . type" of DRAM. Summary judgment of no infringement should be granted.

## II. STATEMENT OF ISSUE

Whether Samsung's Accused HBM Products infringe the asserted claims of the '060 and '160 patents, where the Court construed "array die" as "array die that is different from a DRAM circuit," and where Netlist agrees that the core dies it accuses of being "array die" are DRAM?

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The term "array die" appears in every asserted claim in the '060 and '160 patents. Dkt. No. 23-5 (U.S. Patent No. 8,787,060), at 23:57-24:15 (claim 1), 25:1-25 (claim 11), 25:63-26:21 (claim 20); Dkt. No. 23-6 (U.S. Patent No. 9,318,160), at 23:47-24:3 (claim 1).

2. During claim construction Netlist argued that "array die" should be construed as its "[p]lain and ordinary meaning (that is, a die including memory cells)." Dkt. No. 76, at 27.

3. During claim construction Samsung argued that "array die" should be construed to mean "array die that is different from a DRAM circuit" because of prosecution history disclaimer. Dkt. No. 82, at 13-16.

4. In its Opening Claim Construction Brief filed September 2, 2022, Netlist argued that Netlist's "disclaimer, if any, would be limited to ***Rajan's*** DRAM circuits 206A-D ***as stacked by Rajan***." Dkt. No. 76, at 28.[1]

[1] All emphasis is added unless noted otherwise.

5. Netlist declined to make any substantive argument at the claim construction hearing on the construction of "array dies" after Judge Payne informed the parties that he had tentatively decided to adopt Samsung's proposed construction of "array dies" based on a finding that Netlist had disclaimed DRAM circuits during prosecution, *See* Ex. 5 (Nov. 4, 2022 Markman Hearing Tr.), at 33-34.

6. Magistrate Judge Payne construed the claim term "array die" as "array die that is different from a DRAM circuit," consistent with Netlist's statement during prosecution. Dkt. No. 114 (Claim Construction Order), at 31-32.

7. Netlist originally objected to Magistrate Judge Payne's Claim Construction Order but has since filed a motion to withdraw its objections, which the Court granted. Dkt. 192, 194.

8. In specifically claiming infringement of the '060 and '160 patents, Netlist alleged that the Accused HBM Products' DRAM core dies correlate to the claimed "array dies." Dkt. No. 23, at ¶ 119 ("The Accused HBM Products also each include a plurality of array dies arranged in a stack (*e.g.*, 8 stacked DRAM dies)."), ¶ 120 ("[S]ome TSVs only electrically interconnect some of the DRAM dies (first group of array die(s), selected from the group of DRAM dies that Samsung annotates each individually as a 'Core Die')."").

9. Netlist admitted in its Amended Complaint that the stacked core dies of the Accused HBM Products are DRAM dies. Dkt. No. 23, at ¶¶ 62, 120, 131.

10. Netlist's Amended Complaint states: "The Accused HBM Products have also at least two die interconnects. For example, some TSVs only electrically interconnect some of the ***DRAM dies (first group of array die(s)***, selected from the group of DRAM dies that Samsung annotates each individually as a 'Core Die'), while others may electrically bypass this first group of array dies and electrically connect with the active transceiver logic of at least one of the ***other***

***DRAM dies (second group of array die(s))***." Dkt. No. 23, at ¶ 120.

11. Netlist made the same allegation in the context of its claim for infringement of the '160 patent. Dkt. No. 23, at ¶ 131.

12. In its May 4, 2022 infringement contentions, Netlist identified "Samsung's HBM2, HBM2E, and newer products with 8 or more stacked DRAM dies products, and any other Samsung memory products that operate the same way in all material aspects" as the Accused Instrumentalities. Ex. 1, at 4.

13. In its August 12, 2022 first supplemental infringement contentions, Netlist identified "Samsung's HBM2, HBM2E, HBM3 and newer products with 8 or more stacked DRAM dies products, and any other Samsung memory products that operate the same way in all material aspects" as the Accused Instrumentalities. Ex. 2, at 4.

14. In its October 10, 2022 second supplemental infringement contentions and December 11, 2022 fourth supplemental infringement contentions, Netlist identified "Samsung's HBM2, HBM2E, HBM3 and newer products with 4 or more stacked DRAM dies products, and any other Samsung memory products that operate the same way in all material aspects" as the Accused Instrumentalities. Ex. 3, at 4; Ex. 4 at 4.

15. In the claim charts served with every version of its infringement contentions, Netlist repeatedly and consistently alleged that the claimed array die limitations were met by the Accused HBM Products' DRAM core die. Ex. 2 (Netlist's Aug. 12, 2022 proposed amendment), at 4; *id.* at Ex. E, at 1, 8-10, 12, 19, 27-28, 31-40, 49-50, 57-58, 61-62, 65-66, 68; *id.* at Ex. F, at 1-2, 6-10, 12, 19, 27-28, 30-33, 35-38, 53-54; Ex. 3 (Netlist's Oct. 10, 2022 proposed amendment), at 4; *id.* at Ex. E, at 1-4, 6-10, 12, 19, 27-29, 32, 46, 53-60, 70-72, 78-80, 84, 86, 89-90, 92; *id.* at Ex. F, at 1-4, 6-10, 12, 19, 27-28, 30-33, 35-38, 51, 55; Ex. 4 (Netlist's Dec. 11,

2022 proposed amendment), at 4; *id.* at Ex. F, at 1-4, 6-10, 12, 19, 27-28, 30-33, 35-38, 51, 55.

16. Dr. Brogioli, Netlist's expert, states in his report that the Accused HBM Products' DRAM core dies satisfy the "array die(s)" limitation of the asserted claims. *See* Ex. 6, at ¶¶ 174-82.

17. Dr. Brogioli admits in his report that the Accused HBM Products core dies use DRAM memory. *See* Ex. 6, at ¶¶ 73, 105, 186, 187, 188, 191.

18. Neither Netlist nor Dr. Brogioli alleges that the Accused HBM Products' core dies meet the "array die(s)" limitation of the '060 or '160 patents on the ground that the Accused "array dies" in the HBM Products are anything other than DRAM dies. *See generally* Dkt. 23; Exs. 1-4, 6.

19. Dr. Brogioli never alleges that the plain meaning of DRAM circuit excludes DRAM dies. *See generally* Ex. 6.

## IV. GOVERNING LAW

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, and admissions on file, altogether with the affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Determining infringement is a two-step process. "The first is a question of law, to be determined by the court, construing the letters-patent, and the description of the invention and specification of claim annexed to them. The second is a question of fact, to be submitted to a jury." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996) (citation omitted). To prevail on summary judgment of noninfringement, the moving party "must either produce

evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Intell. Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (citation omitted).

## V. ARGUMENT

### A. There Is No Evidence, Nor Could There Be, of Infringement Under the Court's Construction of "Array Die"

The Court should grant summary judgment that the Accused HBM Products do not infringe the asserted claims of the '060 and '160 patents because they do not include "array dies." The Court construed "array die" as "array die that is different from a DRAM circuit," and it is undisputed that the core die of the Accused HBM Products are DRAM. Dkt. No. 114, at 31-32; *Iris Connex, LLC v. Acer Am. Corp.*, No. 2:15-CV-1909-JRG, 2016 WL 4596043, at *20 (E.D. Tex. Sept. 2, 2016) ("[T]he accused products do not literally infringe Claim 1 because no accused product has a single 'physically moveable' reading head as the Court's construction requires."); *Calypso Wireless, Inc. v. T-Mobile USA Inc.*, No. 2:08-CV-441-JRG-RSP, 2013 WL 684741, at *1 (E.D. Tex. Feb. 25, 2013) (summary judgment of noninfringement where "[t]he uncontroverted evidence shows" that a claim limitation is not met).

Throughout this case, Netlist has consistently argued that the Accused HBM Products' DRAM core dies are the features that satisfy the "array die(s)" limitation. *See supra* § II, at ¶¶ 8-17. Indeed, Netlist's allegations in its Amended Complaint and infringement contentions, which are both party admissions, explicitly identify the core die of the Accused HBM Products as DRAM. *Supra* § II, at ¶ 8-15; *Google Inc. v. Beneficial Innovations, Inc.*, No. 211CV00229JRGRSP, 2014 WL 4215402, at *9 (E.D. Tex. Aug. 22, 2014) ("Beneficial's complaint and infringement contentions are both party admissions . . . ."); *see also Parallel*

*Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 968 (Fed. Cir. 2013) (stating that the plaintiff's "admissions doom [its] claims" under the court's claim construction).

Further, Netlist has not alleged in its Complaint or infringement contentions that the Accused "array dies" in the HBM Products are anything other than DRAM dies. *Supra* § II, at ¶ 18. As such, Netlist has not even attempted to provide a viable infringement theory under the Court's construction. *Packless Metal Hose, Inc. v. Extek Energy Equip. (ZHEJIANG) Co.*, No. 2:09-CV-265-JRG, 2013 WL 682845, at *5-6 (E.D. Tex. Feb. 22, 2013) (granting summary judgment of noninfringement where the plaintiff "failed to present any evidence" with respect to certain limitations); *see also Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1362 (Fed. Cir. 2001) ("Because there is no dispute over the structure of the accused device, resolution of the claim construction issue in this case dictates the outcome of the infringement inquiry.").

Even Netlist's own expert, Dr. Brogioli, admits that the Accused HBM Products use DRAM memory, *see supra* § II, at ¶ 17, and he has not contended that Samsung's HBM core dies are anything other than DRAM dies, *see supra* § II, at ¶ 18. Nor has Dr. Brogioli offered any opinion on a person of ordinary skill in the art's understanding of the phrase "DRAM circuit," the phrase Judge Payne adopted when construing "array die." *See supra* § II, at ¶ 19. Dr. Brogioli's analysis therefore confirms that there is no dispute of fact and that summary judgment is appropriate. *Allergan Sales, LLC v. Sandoz, Inc.*, 717 F. App'x 991, 996 (Fed. Cir. 2017) (affirming summary judgment of noninfringement where plaintiff's "expert confirmed" that limitation was not met).

### B. The Court Considered and Rejected Dr. Brogioli's Argument on the Scope of "Array Die" During Claim Construction

Having no way around the facts and its own admissions, and rather than apply the plain meaning of the phrase "DRAM circuit" (as in the Court's construction of "array die") to the Accused HBM Products, Netlist and its expert improperly reargue positions on "array die" that the Court rejected during claim construction. *TiVo Inc. v. Dish Network Corp.*, 640 F. Supp. 2d 853, 869 (E.D. Tex. 2009), *rev'd on other grounds*, 646 F.3d 869 (Fed. Cir. 2011) (rejecting a party's "thinly veiled attempt to reargue claim construction" and explaining that "[s]uch is not proper"). In doing so, Dr. Brogioli "failed to apply the court's claim construction." *Quest Licensing Corp. v. Bloomberg L.P.*, No. 14-CV-561(GMS), 2017 WL 239345, at *3 (D. Del. Jan. 19, 2017), *aff'd*, 726 F. App'x 819 (Fed. Cir. 2018).

During claim construction, Netlist argued that any disclaimer "would be limited to ***Rajan's*** DRAM circuits 206A-D ***as stacked by Rajan***." *Supra* § II, ¶ 5. The Court fully considered and rejected Netlist's argument, explaining that Netlist never "explain[ed] the structural difference between array dies and DRAM circuits, or even how they might be stacked differently." Dkt. No. 114, at 31-32. This Court should reject Netlist's attempt to advance this same argument through its expert in order to circumvent the Court's construction.

Dr. Brogioli contends that the Accused HBM Products infringe based on his opinion regarding how a skilled artisan would understand the scope of the "array dies" claim term in light of the prosecution history. This was the same issue that the Court addressed in claim construction. Nevertheless, according to Dr. Brogioli, Netlist disclaimed only a "different" type of DRAM circuit—namely, DRAM circuits that have been stacked using wire bonding. *See* Ex. 6, at ¶ 62 ("[I]t is up to experts to explain what are the DRAM circuit that are excluded . . . ."); *id.* at ¶ 72 (A POSITA "would understand that the nature of the memory cell

within an array die had nothing to do with and formed no basis for the rejection of the Netlist's pending claims over Rajan or for the reason to distinguish over Rajan."); *id.* at ¶ 80 (A POSITA "would regard stacked DRAM circuits with edge wire-bonding such as those found in Rajan 206A-D as different from array dies stacked via TSVs."); *see also id.* at ¶¶ 63-65, 75, 190 (opining Rajan's Figures 2A-2E disclose a particular stacking arrangement using wire-bonding); *id.* at ¶¶ 66-70, 183-93 (opining that the DRAM circuits used in Rajan are "different" from those used in HBM by virtue of using different types of interconnections).

Dr. Brogioli's theory is an affront to the Court's claim construction and "contradict[s] the intrinsic evidence."[2] *Cassidian Commc'ns, Inc. v. microDATA GIS, Inc.*, No. 2:12-CV-00162-JRG, 2013 WL 6491477, at *5 (E.D. Tex. Dec. 10, 2013). Dr. Brogioli's theory that Rajan discloses only a particular type of DRAM contradicts Rajan's express, broad teaching concerning DRAM—which Netlist itself quoted to the Court during claim construction. Specifically, Netlist quoted Rajan's teaching that the DRAM circuits contemplated by Rajan "may take ***any form***" and may include "synchronous (SDRAM), double data rate synchronous (DDR DRAM, DDR2 DRAM, DDR3 DRAM, etc.), quad data rate (QDR DRAM), direct RAMBUS (DRDRAM), fast page mode (FPM DRAM), video (VDRAM), extended data out (EDO DRAM), burst EDO (BEDO DRAM), multibank (MDRAM), synchronous graphics (SGRAM), ***and/or any other type of DRAM***." *See* Dkt. No. 76 at 29; *see also*, Ex. 7 (Rajan), at ¶ 18, Fig. 2B (labeling stacked die as generic DRAM). Indeed, Netlist's attempt to use Dr. Brogioli's opinions and his cited evidence (which are extrinsic evidence) to contradict the broad

[2] Rajan is part of the intrinsic record. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent.").

disclosure in the intrinsic record of the '060 and '160 patents contravenes binding precedent holding that "expert testimony may not be used to diverge significantly from the intrinsic record." *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022) (citing *Phillips*, 415 F.3d at 1318). The Court should reject Netlist's reliance on Dr. Brogioli's opinions.

Furthermore, Dr. Brogioli's interpretation of the schematic arrows in Rajan's Figures 2A-2E as wire bonding, *see* Ex. 6, ¶ 64, "fails to raise a genuine issue of fact as it is a 'conclusory expert statement devoid of facts upon which the conclusions were reached.'" *GTX Corp. v. Kofax Image Prods. Inc.*, 571 F. Supp. 2d 742, 753 (E.D. Tex. 2008) (citation and quotations omitted). Dr. Brogioli's only cited support that Rajan's DRAM stack is wire bonded is Rajan's statement that "data signals may be wired as one common bus, several busses or as an individual bus to each DRAM circuit 206A-D." *See* Ex. 6, ¶ 64 (citing Rajan, ¶ 50). This statement plainly does not exclude other types of die connections and Rajan is not so limited, especially where Rajan broadly teaches "any form" and "any . . . type" of DRAM. *See* Dkt. No. 76 at 29; *see also*, Ex. 7 (Rajan), at ¶ 18. Dr. Brogioli's interpretation should be rejected because it is conclusory and contrary to Rajan itself.

Accordingly, the Court should reject Netlist's efforts to re-argue claim construction as both procedurally and substantively improper.

## VI. CONCLUSION

For all of the above reasons, the Court should grant summary judgment of noninfringement of the '060 and '160 patents.

[redacted]

Date: February 3, 2023

Respectfully submitted,

*/s/ Lauren A. Degnan*

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
LAD@fr.com
Brian Livedalen
D.C. Bar No. 1002699
livedalen@fr.com
Daniel A. Tishman
D.C. Bar No. 1013923
tishman@fr.com
Matthew Mosteller
CA Bar No. 324808
mosteller@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Katherine Reardon
NY Bar No. 5196910
kreardon@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Matthew Colvin
Texas Bar No. 24087331
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

Karolina Jesien
New York Bar No. KJ7292
FISH & RICHARDSON P.C.
Times Square Tower
20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile:  (212) 258-2291

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:   (903) 934-9257

Alice J. Ahn
CA 271399 / DC 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Ste. 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile: (415) 591-6091

Brian R. Nester
D.C. Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202)-662-6000

                    *Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 3, 2023. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A)

*/s/ Lauren A. Degnan*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Lauren A. Degnan*