UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.<br><br>    Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>and SAMSUNG SEMICONDUCTOR, INC.,<br><br>    Defendants. | Civil Case No. 2:21cv463-JRG<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO STRIKE PORTIONS
OF THE REBUTTAL EXPERT REPORT OF JOSEPH MCALEXANDER (Dkt. 208)**

**TABLE OF CONTENTS**

I.    ARGUMENT ........................................................................................................ 1

   A.    Mr. McAlexander's Non-Infringement Theory Regarding "Pre-Regulated Input
         Voltage" Was Timely and Follows the Court's Claim Construction Order .......... 1

   B.    Mr. McAlexander's Non-Infringement Theories Are Not Claim Construction
         Arguments ........................................................................................................ 2

         1.    "converter circuit" ('918 cls. 1, 16, 23) ...................................................... 3

         2.    "non-volatile memory" ('918 cls. 12, 19, and 26; '054 cls. 5, 7, 23-24).... 3

         3.    "transfer data" ('054 cls. 5, 7, and 24) ...................................................... 4

         4.    "operable state" ('054 cls. 4, 6, 11, 16, 18-19, 21, and 25) ...................... 5

         5.    "determine"/"determining" ('506 cls. 1, 14) .............................................. 5

   C.    Samsung Properly Disclosed Mr. McAlexander's Non-Infringement Opinions.... 6

         1.    "conversion circuit [that] includes at least three buck converters" ('054 cl.
               1) ................................................................................................................ 7

         2.    "non-volatile memory is configured to store configuration information"
               ('918 cl. 10) ................................................................................................ 7

   D.    Mr. McAlexander Does Not Introduce New Non-Infringing Alternatives ............. 8

   E.    Mr. McAlexander's Opinions Regarding Non-Infringement Are Based on the
         Claim Language and Constructions, Not the Specification ................................. 9

   F.    Mr. McAlexander's Rebuttal Opinions Are Not "Improper Infringement
         Opinions" ........................................................................................................ 10

   G.    Mr. McAlexander's Opinions Regarding Prior Proceedings Are Relevant .......... 12

   H.    Mr. McAlexander Does Not Render Legal Conclusions Regarding Prosecution
         History Estoppel ............................................................................................... 12

   I.    Mr. McAlexander Relies on Materials Struck by the Court in Rebuttal to Netlist's
         Expert's Reliance on Struck Materials .............................................................. 13

   J.    Mr. McAlexander's Relative Technical Benefit Opinions Are Reliable .............. 13

II.   CONCLUSION ................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015)............................................................11

*Better Mouse Co. v. Steelseries ApS*,
No. 2:14-cv-198-RSP, 2015 WL 11116902 (E.D. Tex. Dec. 22, 2015).....................................3

*Genband US LLC v. Metaswitch Networks Corp.*,
No. 2:14-cv-33-JRG-RSP, 2016 WL 122969 (E.D. Tex. Jan. 9, 2016) ...................................6

*Gree Inc. v. Supercell Oy*,
No. 2:19-cv-00071-JRS-RSP, 2020 U.S. Dist. LEXIS 121198 (E.D. Tex. July 9, 2020).........3

*Gree Inc. v. Supercell Oy*,
No. 2:19-cv-00200-JRG-RSP, 2021 U.S. Dist. LEXIS 217028 (E.D. Tex. Mar. 6, 2021) .......4

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ......................................................13

*Key Energy Servs., Inc. v. C.C. Forbes, LLC*,
No. 2:08–cv–346–CE, 2011 WL 7429433 (E.D. Tex. June 3, 2011)......................................12

*PerdiemCo, LLC v. Industrack LLC*,
No. 2:15-cv-00727, 2016 WL 8135383 (E.D. Tex. Oct. 24, 2016).......................................6, 7

*Personal Audio LLC v. Togi Ent.*,
No. 2:13-cv-00013-JRG-RSP, 2014 U.S. Dist. LEXIS 191709 (E.D. Tex. Sept. 4, 2014)
.......................................................................................................................................2, 4, 5

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
552 F. Supp. 3d 664 (E.D. Tex. 2021)...................................................................................12

*United Servs. Auto. Ass'n v. PNC Bank, N.A.*,
No. 2:20-cv-00319-JRG-RSP, 2022 WL 1453204 (E.D. Tex. Apr. 17, 2022)......................2, 4

*Ventures II LLC v. Sprint Spectrum, L.P.*,
No. 2:17-CV-0661-JRG-RSP, 2019 WL 1877309 (E.D. Tex. Apr. 26, 2019)........................15

*Virnetx, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)..............................................................................................15

**Other Authorities**

Fed. R. Civ. P. 37(c) .................................................................................................................6

Netlist cannot justify its request to strike any portion of Mr. McAlexander's rebuttal report.  Despite Netlist's characterizations, Mr. McAlexander's non-infringement opinions are consistent with Judge Payne's claim constructions and the plain meaning of the claims.  Mr. McAlexander's other analysis constitutes proper rebuttal, and Netlist's complaints, at best, go to the weight of the evidence, not admissibility.  Netlist's motion should be denied.

## I.      ARGUMENT

### A.      Mr. McAlexander's Non-Infringement Theory Regarding "Pre-Regulated Input Voltage" Was Timely and Follows the Court's Claim Construction Order

Samsung disclosed its non-infringement theory regarding "pre-regulated input voltage" well in advance of Mr. McAlexander's rebuttal report.  In its interrogatory responses, Samsung put Netlist on notice of its theory that "[t]he '918 Patent Accused Products do not include a 'pre-regulated input voltage.'"  Ex. 1 at 51.  Further, Netlist does not suffer any prejudice from this allegedly late disclosure, and alleges none.  Netlist does not identify any additional discovery necessary to assess the merits of this argument, which as explained below, relies on the plain and ordinary meaning of "pre-regulated input voltage" and "input voltage," making further claim construction unnecessary.

Mr. McAlexander's non-infringement theory follows Judge Payne's Claim Construction Order.  Contrary to Netlist's assertions, Judge Payne never addressed whether the "pre-regulated input voltage" and "input voltage" must be separate voltages, let alone reject that idea.  *See* Dkt. No. 114 at 21-22.  Judge Payne addressed a different issue—whether "pre-regulated input voltage" has to be generated on the memory module from an input voltage.  Dkt. No. 114 at 22. Judge Payne ruled it did not and gave the term its plain and ordinary meaning.  *Id.*

Mr. McAlexander applies Judge Payne's construction in his analysis.  He does not opine

███████████████████████████████

that the "pre-regulated input voltage" limitation is missing because of where the voltage is generated.  Ex. 2 at ¶ 364; *see generally id.* at ¶¶ 358-387.  Mr. McAlexander simply points out that the voltage that Dr. Mangione-Smith identifies ███████████ does not satisfy both the claimed "pre-regulated input voltage" and "input voltage" according to the plain and ordinary reading of these terms.  *Id.* at ¶ 366.  Analyzing the plain and ordinary meaning of a term for the purposes of infringement is squarely within the purview of expert testimony.  *See, e.g.*, *Personal Audio LLC v. Togi Ent.*, No. 2:13-cv-00013-JRG-RSP, 2014 U.S. Dist. LEXIS 191709, at *8 (E.D. Tex. Sept. 4, 2014) (refusing to strike expert testimony because "[t]he initial claim construction dispute was distinct from the factual question posed here: whether [plaintiff] can prove that [the accused products] do – in fact – possess one communications interface for performing all three steps required by the limitation in question"); *United Servs. Auto. Ass'n v. PNC Bank, N.A.*, No. 2:20-cv-00319-JRG-RSP, 2022 WL 1453204, at *10 (E.D. Tex. Apr. 17, 2022) (expert did not engage in claim construction and merely rebutted plaintiff's expert's opinion based on the plain and ordinary meaning of the claim term where expert opined that the claim term itself imparted a particular order of "presenting [] electronic images").  Netlist's request should be denied.

   **B.**   **Mr. McAlexander's Non-Infringement Theories Are Not Claim Construction Arguments**

   Mr. McAlexander does not engage in claim construction.  Contrary to Netlist's assertion, not every reference to the claim language or the patent specification is a claim construction exercise.  If that were true, experts could not opine on the issue of infringement before a jury.  Netlist should not be able to suppress proper non-infringement opinions by labeling them "improper claim construction."  Here, the terms at issue, *e.g.*, "converter circuit," "non-volatile memory," are technical in nature, and Mr. McAlexander should be permitted to explain how these terms are understood by skilled artisans and why the accused structures are different.

### 1. "converter circuit" ('918 cls. 1, 16, 23)

Mr. McAlexander's non-infringement opinion regarding "converter circuit" is not a claim construction argument. Mr. McAlexander applies the plain meaning of the term and concludes as a factual matter that an LDO is not a "converter circuit." As Mr. McAlexander explains, a "converter circuit" and LDO are fundamentally two different components with different structure and operation. Ex. 2 at ¶¶ 403-405, 409, 411-412. Naturally, Mr. McAlexander shows that the patents themselves, among other things, support this distinction. *Id.* at ¶¶ 402-407. Tellingly, Dr. Mangione-Smith makes the same distinction attempting to distinguish the prior art. For example, Dr. Mangione-Smith alleges that the "converter circuit" limitation would not be rendered obvious by the JEDEC prior art grounds because a POSITA "would have used an LDO." Ex. 3 at Ex. B, ¶ 347. In other words, Dr. Mangione-Smith opines a buck converter would satisfy the "converter circuit" limitation while an LDO or resistor would not.

Thus, both experts analyze components in the accused products and prior art and assess whether they satisfy the "converter circuit" as a factual matter. Mr. McAlexander "is giving an opinion as to what a POSITA would consider the plain meaning. This constitutes a non-infringement opinion, does not amount to claim construction, and is properly presentable to the jury." *Gree Inc. v. Supercell Oy*, No. 2:19-cv-00071-JRS-RSP, 2020 U.S. Dist. LEXIS 121198, at *6 (E.D. Tex. July 9, 2020) (quotation omitted) (internal citations and quotations omitted). Netlist's request should be denied.

### 2. "non-volatile memory" ('918 cls. 12, 19, and 26; '054 cls. 5, 7, 23-24)

Mr. McAlexander does not engage in improper claim construction regarding the term "non-volatile memory." Rather, he opines that a POSITA would understand that the plain and ordinary meaning of the term does not include registers. Ex. 2 at ¶ 539. Courts in this District have allowed similar opinions as proper. *See, e.g.*, *Better Mouse Co. v. Steelseries ApS*, No.

3

2:14-cv-198-RSP, 2015 WL 11116902, at *2 (E.D. Tex. Dec. 22, 2015) (refusing to strike expert testimony that a "button" with "two or more positions" requires two or more "resting positions" because testimony was based on expert's knowledge as a POSITA and did not conflict with the specification). Mr. McAlexander further explains that the patent specifications are consistent with the understanding of a POSITA. Ex. 2 at ¶¶ 530, 532-534.

Netlist also seeks to strike this opinion because Netlist disagrees with Mr. McAlexander's reading of "non-volatile memory." Dkt. No. 208 at 6. But factual disputes between experts over the plain and ordinary meaning of a term are not a basis for striking the expert opinion. *Personal Audio LLC*, 2014 U.S. Dist. LEXIS 191709, at *8-9 ("The Court declines to strike both parties' technical experts simply because they take a technically and legally defensive position on a factual dispute . . . . This is precisely the role in which infringement and non-infringement experts are routinely used."). Netlist's request should be denied.

### 3.    "transfer data" ('054 cls. 5, 7, and 24)

Mr. McAlexander does not offer a claim construction argument regarding "transfer data." He appropriately opines that updating error bits does not constitute a "transfer" of data because there is no data "transferred" from one place to another. Ex. 2 at ¶¶ 539-540. Such an opinion is supported by the plain reading of the text and the cited dictionary definitions confirm Mr. McAlexander's plain and ordinary understanding of the claim language. *See Gree Inc. v. Supercell Oy*, No. 2:19-cv-00200-JRG-RSP, 2021 U.S. Dist. LEXIS 217028, at *8 (E.D. Tex. Mar. 6, 2021) (holding that expert's opinion that accused functionality does not meet the text of the limitation is not improper claim construction opinion); *see also United Servs. Auto. Ass'n*, 2022 WL 1453204, at *10.

Netlist further contends that this opinion should be struck because it is "erroneous," but such a disagreement is not a basis to strike an expert's opinion. Dkt. No. 208 at 7; *Personal*

4

*Audio LLC*, 2014 U.S. Dist. LEXIS 191709, at *8-9.  Netlist points to Mr. McAlexander's citation of the specification's use of the word "transfer," but does not explain why those citations constitute claim construction.  Netlist's request should be denied.

### 4.    "operable state" ('054 cls. 4, 6, 11, 16, 18-19, 21, and 25)

Mr. McAlexander's non-infringement opinion regarding "operable state" is not a claim construction argument.  Mr. McAlexander applies the meaning of the term as agreed upon by the parties—"state in which the memory module is operated"—and concludes as a factual matter that the memory module is not operated when the SDRAMs are not operating.  Ex. 2 at ¶ 492. Dr. Mangione-Smith disagrees, asserting that the accused products are in a "state in which the memory module is operated" so long as any component on the module is active.  Ex. 4 at Ex. B, ¶ 180.  Disagreement about whether an accused function satisfies a claim element is not a basis for exclusion.  *See, e.g.*, *Personal Audio LLC*, 2014 U.S. Dist. LEXIS 191709, at *8-9.  Netlist's request should be denied.

### 5.    "determine"/"determining" ('506 cls. 1, 14)

The '506 Patent claims recite "determining" a "predetermined amount" of delay to apply to a read strobe.  Mr. McAlexander does not offer claim construction opinions regarding the "determining" term.  Rather, Mr. McAlexander opines that there is no infringement based on the plain meaning of the term and the claim structure itself, which requires the recited "determining" to take place on the memory module by the data buffer.  Ex. 2 at ¶¶ 167 ("Based on the language and structure of claim 1, the 'predetermined amount' must be determined on the memory module because . . ."), 168 ("Based on the language of claim 14, the claimed 'determining' must happen on the memory module because . . .").  Mr. McAlexander's brief discussion of the specification is not supporting a new claim construction.  To the contrary, Mr. McAlexander confirms that the specification discloses "determining" by only the data buffer on the memory module.  Ex. 2 at ¶¶

5

169-170.  Netlist's request should be denied.

### C.   Samsung Properly Disclosed Mr. McAlexander's Non-Infringement Opinions

Netlist seeks to strike two of Mr. McAlexander's non-infringement theories with respect to the asserted '918 and '054 patents because they were allegedly "previously undisclosed."  Dkt. No. 208 at 10-11.  But Netlist had notice of each of these arguments, including through Samsung's interrogatory responses and documents cited therein, and is not prejudiced by them. The Court should deny Netlist's attempt to strike Samsung's timely non-infringement theories.

Rule 26 enumerates each party's disclosure obligations during fact discovery.  Fed. R. Civ. P. 26.  Even where a party's disclosure is deemed untimely, the failure is excusable if it "was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  This Court considers four factors in determining whether untimeliness is harmless: "(1) the party's explanation, if any, for its failure to disclose the information in a timely manner; (2) the prejudice to the opposing party if the evidence is admitted; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the evidence."  *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 122969, at *1 (E.D. Tex. Jan. 9, 2016) (citing *Texas A & M Research Found. v. Magna Transp. Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).

Moreover, a party is not entitled to early disclosure of specific expert opinions via interrogatory requests.  *See*, *e.g.*, *Genband*, 2016 WL 122969, at *2.  When a party believes that an interrogatory response on a contention topic is insufficient, "the appropriate remedy [i]s to a file a motion to compel a response," not to wait until expert reports have been served to assert the alleged insufficiency.  *See PerdiemCo, LLC v. Industrack LLC*, No. 2:15-cv-00727, 2016 WL 8135383, at *2 (E.D. Tex. Oct. 24, 2016).

███████████████████████████

### 1.    "conversion circuit [that] includes at least three buck converters" ('054 cl. 1)

Samsung's response to Netlist's Interrogatory No. 1 discloses support for Mr. McAlexander's opinion that "a Low Drop Out (LDO) regulator" is not the claimed "conversion circuit [that] includes at least three buck converters" Ex. 1 at 56-57.  Mr. McAlexander's opinion that an LDO regulator "is not [the claimed] buck converter" is consistent with Samsung's disclosures—"the LDO does not convert voltages but instead regulates voltages." *Id.*; Ex. 2 at ¶ 423.  In its interrogatory response, Samsung cites much of the same evidence, including testimony from its corporate representatives that the accused voltage ███████████ ████████████████████████████████████████████████████ that Mr. McAlexander cites in providing the same opinion.  Ex. 1 at 50-51, 56-57, 95.  Samsung put Netlist on notice of its theory that an LDO is not a converter.  To be sure, Netlist does not seek to strike Section 8.7.3 of Mr. McAlexander's report that provides this very opinion, *i.e.*, that an LDO is not a converter in the asserted '918 patent's claims.  Ex. 2 at ¶ 429.

Moreover, Netlist never challenged the sufficiency of Samsung's disclosures.  Thus, Netlist's motion should be denied without reaching the four-factor test for assessing whether allegedly untimely discovery is "harmless."  Nevertheless, applying the four-factor test does not warrant a different result.  Netlist has not identified any prejudice to it resulting from Samsung's alleged untimeliness and the theory is plainly important because it cuts across numerous asserted claims for the '054 patent, including claim 1 and its 11 dependent claims.

### 2.    "non-volatile memory is configured to store configuration information" ('918 cl. 10)

Samsung's interrogatory responses provided Netlist with notice that the accused products do not have a "non-volatile memory [that] is configured to store configuration information." *PerdiemCo*, 2016 WL 8135383, at *2 ("Interrogatories are designed to provide notice to

parties.").  Samsung identified this limitation in its first responses to Netlist's Interrogatory No. 1, more than 5 months before the close of fact discovery.  Ex. 1 at 40.  Samsung's supplemental responses further emphasized that "a bit in a register [identified] as the 'configuration information'" does not satisfy the claim, and cited technical documents to demonstrate that.  *Id.* at 54-55.  Netlist did not challenge the sufficiency of this interrogatory response, or seek clarification of Samsung's disclosures.  Its motion does not identify any prejudice Mr. McAlexander's opinion causes it because there is none.  The Court should reject Netlist's arguments regarding the timeliness of Mr. McAlexander's opinions.

### D.  Mr. McAlexander Does Not Introduce New Non-Infringing Alternatives

Mr. McAlexander does not introduce new non-infringing alternatives.  He simply provides proper rebuttal testimony to Dr. Mangione-Smith's untimely opinions that attempt to evaluate the technical benefit of the patents by comparing the accused products to various non-infringing alternatives, which forms the basis of Netlist's damages demand.  Samsung has moved to strike these opinions for failing to disclose these damages calculations during fact discovery as required under Rule 26.  Dkt. No. 204 at 14-15.

As to Dr. Mangione-Smith's analysis itself, the problem is that he pulls these "non-infringing alternatives" out of thin air.  His conclusory opinions are flawed because he fails to consider, for example, the footprint of the invention and the contribution of the patents over the prior art.  This is Netlist's (and its expert's) burden, and Mr. McAlexander should be free to point out where Netlist's expert falls short.

With regard to the '506 patent, Dr. Mangione-Smith asserted that "[t]he best non-infringing alternative" "would generally cause the performance and reliability of those Products to degrade as speed increases . . . until the impact of the NIA would cause those products to not operate with acceptable reliability," and that this "point is reached at speeds greater than 2400

8

███████████████████████

MT/s." Ex. 4 at Ex. F, ¶ II.A.  The 2400 MT/s speed he references is arbitrary and conclusory, without any explanation of how Dr. Mangione-Smith arrived at that number.  In rebuttal, Mr. McAlexander explained that it would be possible to "create an alternative DDR4 product that did not use the allegedly infringing technology that was also still readily able to perform commercially acceptably at speeds of 2400 MT/s and above." Ex. 2 at ¶ 666.  Mr. McAlexander simply responds to Dr. Mangione-Smith's assertion, as he is entitled to do.  Mr. McAlexander's opinion regarding NIAs related to the '506 patent should not be struck.

With regard to the '918 and '054 patents, Dr. Mangione-Smith incredibly claims that the closest non-infringing alternative "would be to move PM off the DIMM and onto the motherboard, using a configuration similar to that used in DDR4." Ex. 4 at Ex. F, ¶ V.B.  In rebuttal, Mr. McAlexander shows that the asserted claims recite a specific configuration of components on the DIMM, and Netlist's expert fails to consider alternative solutions for managing power on the DIMM.  Ex. 2 at ¶¶ 677-678.  Mr. McAlexander provides similar rebuttal testimony to Dr. Mangione-Smith's assertion that the only other non-infringing alternative would be to provide "two separate rails." Ex. 4 at Ex. F, ¶ V.A; Ex. 2 at ¶¶ 682, 685. Ultimately, Netlist (not Samsung) introduced non-infringing alternatives as a way to value the patents.  Mr. McAlexander's opinions constitute proper rebuttal and should not be struck.

### E.    Mr. McAlexander's Opinions Regarding Non-Infringement Are Based on the Claim Language and Constructions, Not the Specification

Mr. McAlexander does not base the non-infringement arguments identified by Netlist on the specifications of the asserted patents.  Dkt. No. 208 at 12-13.  Rather, Mr. McAlexander relies on the claim language itself and the Court's Claim Construction Order to form his non-infringement opinions.  *See* Ex. 2 at ¶¶ 164-168, 239-245.

For the '506 patent, in response to Dr. Mangione-Smith's pointing to a process in the

9

accused products that is ***not*** performed on the memory module as the claimed "determining," Mr. McAlexander applies the plain meaning of the claim language itself in forming his opinion that that the "determining" step is not satisfied in the accused memory module.  Ex. 4 at Ex. A, ¶¶ 130-143; Ex. 2 at ¶¶ 164-168.  That the specification supports the plain meaning of the claims does not change this analysis.  Nor is it improper for an expert to note that the plain meaning comports with the specification's use of a term.  Because Mr. McAlexander does not base his non-infringement opinions on the specification, his opinions should not be struck.

With regard to the '339 patent, the Court construed the "drive" terms to mean "enabling only ***one of the data paths*** while the other possible paths are disabled."  Dkt. No. 114 (emphasis added).  Yet, Netlist continues to distort the Court's ruling by accusing Samsung's products that do not include the required "data paths."  Ex. 4 at Ex. A, ¶ 210 ("The Accused Samsung DDR4 LRDIMMs meet this limitation because, as explained below, there is only a single byte-wise data path in the byte-wise buffer.").  In his rebuttal report, Mr. McAlexander relies on the plain language of the Court's construction to form his non-infringement opinions.  Ex. 2 at ¶¶ 239-245, 251-260.  That the specification support the plain meaning understanding of the Court's construction does not change this result.  Because Mr. McAlexander does not base his non-infringement opinions on the specification, his opinions should not be struck.

### F.    Mr. McAlexander's Rebuttal Opinions Are Not "Improper Infringement Opinions"

Mr. McAlexander does not rely on prior art to make non-infringement arguments.  To be sure, the paragraphs that Netlist seeks to exclude are found in sections entitled "General Background of the Technology of the '506 and '339 Patents" and "General Background of the Technology and Inventions of the '918 and '054 Patents."  Ex. 2 at ¶¶ 79 (Section 7.1), 317 (Section 8.1).  In those sections, Mr. McAlexander provides an overview of the patents and the

10

state of the art in rebuttal to Dr. Mangione-Smith's discussion of the patents, the background of the technology, and the patents' technical benefit.  For example, Dr. Mangione-Smith asserts "[t]he '918 and '054 patents are directed to the use of a novel on-module power management and voltage regulation system."  Ex. 4 at Ex. B, ¶ 1.  In rebuttal, Mr. McAlexander explains that, consistent with his invalidity opinions on written description, he disagrees "because the alleged invention of the '918 and '054 Patents is clearly related to improvements in a 'hybrid' memory system."  Ex. 2 at ¶ 327.  Mr. McAlexander's opinion in this regard is (1) not related to infringement; (2) proper rebuttal to Dr. Mangione-Smith's opinions; (3) relevant to, *inter alia*, written description and prosecution laches; and (4) consistent with Mr. McAlexander's opinions on these topics expressed in his opening report.

As another example, Mr. McAlexander describes the state of the art related to the '339 patent to address Dr. Mangione-Smith's opinion that "[t]he '339 patent generally relates to . . . a distributed data buffer architecture" and that "the distributed buffer approach would be necessary for populating channels with more than one LRDIMM while achieving the higher data speeds of DDR4."  Ex. 4 at Ex. A, ¶¶ 301, 303.  In other words, Dr. Mangione-Smith claims that the '339 patent is solely responsible for introducing the concept of distributed data buffer architectures in DIMMs.  In the paragraphs at issue (Ex. 2, ¶¶ 115-121, 89-99), Mr. McAlexander appropriately rebuts this testimony by, *inter alia*, demonstrating that distributed buffer architectures and related components were known in the art.  *See*, *e.g.*, *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("When a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone.")  Netlist's request should be denied.

### G.     Mr. McAlexander's Opinions Regarding Prior Proceedings Are Relevant

The entirety of Netlist's argument with regard to Mr. McAlexander's reliance on prior proceedings consists of the following two sentences: "Mr. McAlexander references several prior proceedings" and "[t]his should be excluded as irrelevant."  Dkt. No. 208.  Netlist is wrong that the prior proceedings are irrelevant.

For example, Netlist's actions in other venues are highly relevant to prosecution laches. "Prosecution laches as a defense to infringement requires proof of two elements: (a) that the patentee's delay in prosecution was unreasonable and inexcusable under the totality of the circumstances; and (b) that the accused infringer or the public suffered prejudice attributable to the delay." *Personalized Media Commc'ns, LLC v. Apple, Inc.*, 552 F. Supp. 3d 664, 684 (E.D. Tex. 2021) (citations omitted).  Mr. McAlexander's opinions regarding the evolution of the technical scope of the claims of the '339 patent's family during its prosecution—demonstrated by Netlist's prosecution, litigation and JEDEC activity—are therefore proper under the "totality of the circumstances" and should not be struck.[1]

### H.     Mr. McAlexander Does Not Render Legal Conclusions Regarding Prosecution History Estoppel

Mr. McAlexander does not render legal conclusions with regard to prosecution history estoppel.  Rather, he provides his understanding of the law regarding prosecution history estoppel, and the factual explanation of the statements made by Netlist during prosecution of the '339 and '506 patents. Ex. 2 at ¶¶ 146-148.  This analysis is entirely proper.  *Key Energy Servs., Inc. v. C.C. Forbes, LLC*, No. 2:08–cv–346–CE, 2011 WL 7429433, at *1 (E.D. Tex. June 3, 2011) (motion to limit expert testimony relating to prosecution history estoppel "GRANTED as

---

[1] Similarly, Netlist relies on the disclosure of related patents to Samsung regarding the LRDIMM DDR4 standard for its willfulness allegations.  It is highly relevant that the ITC found that DDR4 LRDIMM products did not infringe patents related to the patents-in-suit in this case.

to legal conclusions," and "DENIED as to the factual story concerning what the prosecution history was"). Accordingly, the Court should deny Netlist's request to strike Mr. McAlexander's opinions relating to prosecution history estoppel.

**I.      Mr. McAlexander Relies on Materials Struck by the Court in Rebuttal to Netlist's Expert's Reliance on Struck Materials**

Netlist argues that expert opinions based on excluded documents should be stricken despite itself offering testimony on those documents. Despite the Court's ruling excluding certain materials (which Netlist alleges relate to conception and reduction to practice) from this case, Netlist's expert Dr. Mangione-Smith nevertheless improperly relied on these documents in his reports, in defiance of the Court's Order. *See* Dkt. Nos. 179; 195 at 3; 204 at 2-4. In response, Mr. McAlexander included a section in his report addressing some of these materials,[2] but acknowledged: "[i]t is also my understanding that Netlist's assertions relating to HyperCloud have been struck from this case," and further stated that "[t]o the extent that Dr. Mangione-Smith is nonetheless permitted to opine on this subject matter, I offer the following rebuttal opinions." Ex. 2 at ¶ 122. Samsung filed a motion to strike Dr. Mangione-Smith's reliance on materials that were excluded by this Court. *See* Dkt. No. 204. Samsung agrees that if its motion is granted and the relevant paragraphs are struck from Dr. Mangione-Smith's reports, then paragraphs 122-145 should be struck from Mr. McAlexander's Rebuttal Report.

**J.      Mr. McAlexander's Relative Technical Benefit Opinions Are Reliable**

There is nothing unreliable about Mr. McAlexander's analysis of the relative technical contribution of certain patent families in the Netlist Patent Portfolio. Netlist's criticism, even if

---

[2] Mr. McAlexander does not compare Netlist's HyperCloud product to Samsung's accused products in his analysis, as asserted by Netlist. Dkt. No. 208 at 14-15. Rather, Mr. McAlexander relies on Netlist's own comparison of its HyperCloud product to the claims of a patent in the '339 patent's family in an inventor declaration submitted during prosecution. Ex. 2 at ¶ 124.

true, goes to the weight of the evidence, not admissibility.  *See*, *e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility."), *aff'd*, 564 U.S. 91 (2011).

Netlist's complaints do not go to Mr. McAlexander's methodology, and for good reason. To assist Samsung's damages expert with a comparable license analysis, Mr. McAlexander evaluated the relative technical benefit of nine Netlist patent families by considering "1) the area of technology of the patent family, 2) the technical scope of the patent family claims, 3) the potential applicability or use of the claimed technology in the current field, and 4) the number of other family members within a family." Ex. 2 at ¶ 658.  Netlist does not explain why these factors do not permit Mr. McAlexander to estimate reliably the technical contributions of the Netlist patent families.[3]

Ultimately, Netlist's motion takes issue with the facts and how Mr. McAlexander applied his methodology to those facts.  Netlist's assertion that Mr. McAlexander does not adequately explain how he applied his methodology is false.  For example, Mr. McAlexander recites how he applied these factors to determine that one patent family (Family 2) directed to thermally conductive material between circuit boards "provides a relatively small technical benefit in terms of technical scope and applicability" due to the "the crowded field of heat dissipation in electronic applications," the "relatively narrow claims," and the fact that the patents are "at best

---

[3] Netlist's suggestion that Mr. McAlexander's opinion is unsound because he focuses on only nine patent families makes little sense.  Mr. McAlexander expressly states in his report that he focused on only nine patent families because he was specifically asked to do so.  Ex. 2 at ¶¶ 657-658.  Cross examination, not exclusion, is the vehicle for Netlist to air its disagreement with this approach.

tangential to DRAM or other memory or packaging technologies." *Id.* at ¶ 659.  If Netlist disagrees with Mr. McAlexander's conclusions reached after application of his recited methodology, it is free to probe other possible conclusions through cross-examination.  *See*, *e.g.*, *Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-0661-JRG-RSP, 2019 WL 1877309, at *6 (E.D. Tex. Apr. 26, 2019) (rejecting argument that testimony on comparable transaction should be excluded because that transaction involved "a license for thousands of patents, the vast majority of which [the expert witness] does not assign value," and explaining that "such arguments should be reserved for cross-examination at trial").  Mr. McAlexander plainly sets out the steps of his methodology, and then walks through its application in his report without ambiguity.  Netlist effectively seems to argue Mr. McAlexander should have employed a different methodology than that which he chose to use, but such disagreement is again fodder for cross-examination and not indicative of unreliability (particularly in view of Mr. McAlexander's deep technical expertise in the relevant fields to which Netlist's patent portfolio applies).

Finally, Netlist's criticism that Mr. McAlexander assessed the patent families in "5% increments" is not a valid ground to exclude his opinions.  Estimation does not render an apportionment unreliable or unreasonable.  *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) ("[W]e have never required absolute precision in this task [of apportionment]; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty.").

The Court should not strike Mr. McAlexander's relative technical benefit opinions.

## II.   CONCLUSION

For the aforementioned reasons, Netlist's motion should be denied.

Date: February 17, 2023

Respectfully submitted,

*/s/ Francis J. Albert*

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
LAD@fr.com
Brian Livedalen
D.C. Bar No. 1002699
livedalen@fr.com
Daniel A. Tishman
D.C. Bar No. 1013923
tishman@fr.com
Matthew Mosteller
CA Bar No. 324808
mosteller@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Katherine Reardon
NY Bar No. 5196910
kreardon@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:  (404) 892-5002

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130

Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Matthew Colvin
Texas Bar No. 24087331
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

Karolina Jesien
New York Bar No. KJ7292
FISH & RICHARDSON P.C.
Times Square Tower
20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile:  (212) 258-2291

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

Alice J. Ahn
CA 271399 / DC 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Ste. 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile: (415) 591-6091

Brian R. Nester
D.C. Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One City Center

17

850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202)-662-6000

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 17, 2023.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

*/s/ Francis J. Albert*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Francis J. Albert*