UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC. | Civil Case No. 2:21cv463-JRG |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG SEMICONDUCTOR, INC., | |
| Defendants. | |

**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO STRIKE PORTIONS OF
THE OPENING EXPERT REPORT OF JOSEPH MCALEXANDER (Dkt. 212)**

## TABLE OF CONTENTS

I.     ARGUMENT ................................................................................................ 1

     A.     Mr. McAlexander's Written Description Opinions Are Proper ............................ 1

           1.     Mr. McAlexander's Written Description Opinions Are Not Claim Construction Opinions ................................................................ 1

           2.     Mr. McAlexander Applied the Proper Legal Framework ......................... 6

           3.     Samsung Complied with the Local Rules .................................................. 7

     B.     Mr. McAlexander's Opinions About the '339 Patent's "Drive" Terms Are Based on the Court's Construction ................................................................... 8

     C.     Mr. McAlexander's Equitable Defense Opinions and the Underlying Facts Are Properly Included in His Report ............................................................... 9

     D.     Mr. McAlexander's Opinions About Netlist's Relationship to JEDEC Are Relevant ...................................................................................................... 9

     E.     Mr. McAlexander's Reliance on Prior Art Is Proper ........................................... 11

     F.     Mr. McAlexander's Opinions Regarding Other Litigation Are Relevant ........... 13

     G.     Mr. McAlexander's Reliance on Background Art Is Proper ............................... 14

II.     CONCLUSION ........................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
　889 F.3d 735 (Fed. Cir. 2018)..................................................................................2

*Allergan v. Teva*,
　No. 15-cv-1455-WCB, 2017 U.S. Dist. LEXIS 225041 (E.D. Tex. Aug. 3,
　2017) ........................................................................................................................15

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*,
　541 F.3d 1115 (Fed. Cir. 2008)..................................................................................6

*Cisco Sys., Inc. v. Cirrex Sys., LLC*,
　856 F.3d 997 (Fed. Cir. 2017)................................................................................5, 6

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
　161 F. Supp. 3d 438 (E.D. Tex. 2015) ......................................................................2

*Gentry Gallery, Inc. v. Berkline Corp.*,
　134 F.3d 1473 (Fed. Cir. 1998)..................................................................................6

*GoPro, Inc. v. Contour IP Holding LLC*,
　908 F.3d 690 (Fed. Cir. 2018)..................................................................................11

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
　481 F.3d 1371 (Fed. Cir. 2007)..................................................................................6

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
　424 F.3d 1336 (Fed. Cir. 2005)..................................................................................1

*M & K Holdings, Inc. v. Samsung Elec. Co.*,
　985 F.3d 1376 (Fed. Cir. 2021)................................................................................11

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*,
　923 F.3d 1368 (Fed. Cir. 2019)..............................................................................4, 5

*Oyster Optics, LLC v. Cisco Sys., Inc.*,
　No. 2:20-cv-00211-JRG, Dkt. No. 239 (E.D. Tex. Dec. 13, 2021) ..........................1

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
　552 F. Supp. 3d 664 (E.D. Tex. 2021) ....................................................................10

*Realtime Data, LLC v. Actian Corp.*,
　No. 6:15-cv-463, 2017 WL 11662040 (E.D. Tex. Apr. 3, 2017) ..............................2

i

*Rivera v. Int'l Trade Comm'n,*
  857 F.3d 1315 (Fed. Cir. 2017)..................................................................................1, 2

*Seagen Inc. v. Daiichi Sankyo Co.,*
  No. 2:20-CV-00337-JRG, 2022 WL 2789901 (E.D. Tex. July 15, 2022)................................9

*Ultravision Techs., LLC v. Lamar Advert. Co.,*
  No. 2:16-CV-374-JRG-RSP, 2017 WL 3836139 (E.D. Tex. Apr. 18, 2017)..........................7

*United Servs. Auto. Ass'n v. PNC Bank N.A.,*
  No. 220-CV-00319-JRG-RSP, 2022 WL 1300832 (E.D. Tex. Apr. 29, 2022)........................7

*Versata Software, Inc. v. SAP Am., Inc.,*
  758 F. Supp. 2d 389 (E.D. Tex. 2010)...................................................................11

*Ware v. Abercrombie & Fitch Stores Inc.,*
  No. 4:07-CV-00122, 2011 WL 13322747 (N.D. Ga. Oct. 17, 2011) ......................................1

*Ziilabs Inc. v. Samsung Elecs. Co.,*
  No. 2:14-cv-203, 2015 WL 7303352 (E.D. Tex. Aug. 25, 2015)...........................................15

*Zoho Corp. v. Sentius Int'l, LLC,*
  494 F. Supp. 3d 693 (N.D. Cal. 2020) ...................................................................7

**Statutes**

35 U.S.C. § 102...........................................................................................11, 12

Netlist provides no valid reason to strike any portion of Mr. McAlexander's opening report.  As set forth below, Netlist's superficial critiques are incorrect, and at best go to the weight of the evidence, not admissibility.  Netlist's motion should be denied.

I.      **ARGUMENT**

   A.      **Mr. McAlexander's Written Description Opinions Are Proper**

      1.      **Mr. McAlexander's Written Description Opinions Are Not Claim Construction Opinions**

Netlist asserts without basis that Mr. McAlexander's written description opinions are improper "claim construction arguments."  Dkt. No. 212 at 1.  Mr. Alexander does not attempt to define terms in the asserted patents.  Rather, Mr. McAlexander's opinions compare the scope of the specification to the scope of the claims to consider whether the claims lack written description support.  This analysis is separate and distinct from a claim construction inquiry.

Mr. McAlexander's written description opinions properly consider both the applicable claim construction order as well as the scope of the claims defined by Netlist in its infringement assertions.  The Federal Circuit and other courts have approved of both approaches.  *See Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1319 (Fed. Cir. 2017) (considering whether the scope of "the asserted claims read on Solofill's K2 and K3 cup-shaped containers" and finding "written description support for broad claims covering a receptacle . . . such as Solofill's accused products . . . . is lacking").[1]  The written description requirement asks a fundamental question—did the

---

[1] *See also LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005) ("Although the specification would meet the requirements of section 112 with respect to a claim directed to that particular engine, it would not necessarily support a broad claim to every possible type of fuel-efficient engine . . . ."); Ex. 1 (*Oyster Optics, LLC v. Cisco Sys., Inc.*, No. 2:20-cv-00211-JRG, Dkt. No. 239, at 3 (E.D. Tex. Dec. 13, 2021) (denying motion to strike (attached as Ex. 12 at 11) Defendant's expert's opinion that the claims as interpreted for infringement lack written description)); *see also Ware v. Abercrombie & Fitch Stores Inc.*, No. 4:07-CV-00122, 2011 WL 13322747, at *20 (N.D. Ga. Oct. 17, 2011) ("The issue here is whether or not the '592

1

inventors describe their invention in such terms as to demonstrate full possession of the claimed

subject matter at the time of filing. *Id.* ("A specification has an adequate written description

when it 'reasonably conveys to those skilled in the art that the inventor had possession of the

claimed subject matter as of the filing date' of the patent . . . 'The test requires an objective

inquiry into the four corners of the specification from the perspective of a person of ordinary

skill in the art . . . to show that the inventor actually invented the invention claimed.'" (quoting

*Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc))).  Netlist

should not be permitted to levy unreasonably broad infringement assertions without

demonstrating that its inventors satisfied the written description requirement based on the limited

specification they submitted.  If Netlist maintains its overbroad interpretation to support its

infringement claim, it must face the consequences with regard to invalidity.  *See 01 Communique*

*Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018) (permitting defendant's

argument that claims would be invalid if plaintiff attempted to expand claims to capture accused

products).[2]

In arguing that Mr. McAlexander's written description opinions are based on purportedly

waived claim constructions, Netlist forgets that the factual issue of written description is

appropriately analyzed *after* claim construction.  *See Ericsson Inc. v. TCL Commc'n Tech.*

*Holdings, Ltd.*, 161 F. Supp. 3d 438, 457 n.7 (E.D. Tex. 2015) ("'Whether a patent claim is

supported by an adequate written description is a question of fact,' and therefore the Court will

---

specification supports claim 1 as now asserted by plaintiffs in order to sustain their charge of
infringement.").

[2] *Cf. Realtime Data, LLC v. Actian Corp.*, No. 6:15-cv-463, 2017 WL 11662040, at *10 (E.D.
Tex. Apr. 3, 2017) ("[Defendant's expert] is allowed to assume for purposes of his analysis that
[Plaintiff's] understanding of the construed claims is correct and demonstrate how, in his
opinion, each element of the claims is found in the prior art under that interpretation.").

not decide this issue at the claim construction stage" (quoting *Abbvie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1297 (Fed. Cir. 2014))).  Mr. McAlexander's opinions properly apply, in certain instances, ***Netlist's*** broad claim interpretations to compare that scope with the support in the specification.  *See*, *e.g.*, Dkt. No. 212 at 2.

**Mr. McAlexander's '506 Patent Written Description Opinions:**  The '506 patent's claims recite "determining" a "predetermined amount" of delay to apply to a read strobe.  Mr. McAlexander opines that the written description requirement is not satisfied based on Netlist's expanded interpretation of the claims for purposes of infringement, which permits the "determining" to take place off the memory module.  Ex. 2 at ¶¶ 178-198.[3]  Given that the claims must be interpreted in the same way for infringement and validity, Mr. McAlexander analyzes the validity of the claims in view of Netlist's interpretation (which goes beyond the plain meaning) and concludes the specification "does not provide support for 'determining' the delay outside of the data buffer or outside of the memory module," and therefore "fails to reasonably convey to one of ordinary skill in the art that the inventors had possession of the subject matter of the claimed invention."  *Id.* at ¶ 198.

Mr. McAlexander's analysis of the specification is not advancing a new claim construction—it is the heart of any written description analysis to determine whether the specification discloses the asserted claim scope.  Here, Mr. McAlexander opines that the specification discloses "determining" by only the data buffer on the memory module such that it does not provide written description support for Netlist's interpretation that includes off-module determinations.  *Id.* at ¶¶ 181-193, 196.  Mr. McAlexander's reliance on a named inventor's

_____

[3] Citations herein are to Mr. McAlexander's corrected Opening Report, which Netlist attached as Exhibit 1 to its motion.  While Netlist's motion frequently cites to Exhibit 1, it appears to rely on the paragraph numbering in the uncorrected version of Mr. McAlexander's Opening Report.

testimony and Netlist's own statements during prosecution of a related patent confirms the scope of the specification—namely, that it does not contemplate "determining" of a delay anywhere but on the memory module.  *Id*. at ¶¶ 194-195, 197; s*ee Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1381 (Fed. Cir. 2019) ("Although inventor testimony cannot establish written description support where none exists in the four corners of the specification, it illuminates the absence of critical description in this case.").

Mr. McAlexander's analysis is similar with regard to the "previous operation" and "before" terms of claims 1 and 14 of the '506 patent.  He does not dispute the constructions of these claim terms.  Rather, he opines that the specification does not provide disclosure commensurate with the claims as Netlist interprets them for infringement purposes.  Mr. McAlexander explains that the specification discloses "determining" only ***during*** a normal write memory operation that occurs prior to the delayed read operation.  Ex. 2 at ¶¶ 200, 212; *see also id.* at ¶¶ 201-209, 213-221.  Based on this analysis, he concludes that a POSITA would not understand the inventors of the '506 patent to have purportedly invented a memory module where the delay of a read operation is determined ***outside of*** a normal write memory operation, as Netlist asserts in its infringement accusations.  *Id*. at ¶¶ 210, 222.

**Mr. McAlexander's '918 and '054 Patents Written Description Opinions:** The Court should also deny Netlist's attempt to exclude Mr. McAlexander's opinion that the scope of the '918 and '054 patents' claims Netlist advances for infringement lacks written description.  Dkt. No. 212 at 4-6, 12-13.  Sections 9.7.1, 9.7.2, and 9.7.4 of Mr. McAlexander's report do not offer claim construction opinions or "argu[e] that limitations must be imported into the claims."  Dkt. No. 212 at 4-5, 12.  Instead, they present Mr. McAlexander's opinion that the claims, as construed by the Court and applied by Netlist to show infringement, lack adequate support in the

specification because they are of a much broader scope than what the inventors clearly regarded as their invention.  *Cisco Sys., Inc. v. Cirrex Sys., LLC*, 856 F.3d 997, 1007 (Fed. Cir. 2017) ("[A] broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." (quoting *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008))).  Mr. McAlexander concludes that, "[w]ithout a requirement for non-volatile memory, the claimed 'memory modules' of the '918 and '054 Patents" broadly recite generic aspects of memory modules and "fail to capture what the inventors clearly understood and regarded as their invention."  Ex. 2 at ¶ 1971; *see also*, *e.g.*, *id.* at ¶¶ 1981, 1990.  The evidence relied upon by Mr. McAlexander in forming those opinions, including patents in the same family, inventor testimony, and elements of the patent including the title, are all relevant and likewise should survive Netlist's challenge.  *See Nuvo Pharms.*, 923 F.3d at 1381.

Mr. McAlexander analyzes the validity of the asserted '918 and '054 patents' claims reciting "non-volatile memory" "[u]sing Netlist's apparent claim scope as gleaned from its infringement allegations."  Ex. 2 at ¶ 1996; Dkt. No. 212 at 5.  He concludes that the patents "fail[] the written description requirement because the infringement theory relies on a claim scope that encompasses writing error data into registers of a power management component of the memory module, which is subject matter absent from the specification."  Ex. 2 at ¶ 1996. Mr. McAlexander's observation that "[t]he claims of the '918 Patent also separately recite 'non-volatile memory' and 'registers'" is not claim construction.  *Id.* at ¶ 2004.  Rather, Mr. McAlexander considers those claims analyzing the specification, and concludes that they "are consistent with the distinct usage of 'non-volatile memory' and 'registers' in the specification [which] further demonstrate[s] that the specification of the '918 and '054 Patents fails to provide

support for writing error data to registers in response to a trigger signal." *Id.* at ¶ 2006.

Mr. McAlexander conducts a similar analysis with respect to the claims reciting "voltage amplitude[s]." Dkt. No. 212 at 5. Mr. McAlexander considers "Netlist's apparent[] claim scope as gleaned from its infringement allegations . . . that encompasses the claimed 'voltage amplitude(s)' and 'voltage level' having the same meaning," and determines that the specification does not support such breadth. Ex. 2 at ¶¶ 2012-2015.

With regard to the "buck converter" term, Mr. McAlexander similarly concludes that "Netlist's apparent claim scope as gleaned from its infringement allegations" lacks written description support "because the infringement theory relies on a claim scope that encompasses generating the same voltage value from two or more buck converters on the memory module, which is subject matter absent from the specification of the '918 and '054 Patents." *Id.* at ¶ 2025. It is proper for Mr. McAlexander to consider Netlist's overbroad interpretation for purposes of invalidity. Like the Plaintiff in *Liebel-Flarsheim*, Netlist put itself into this predicament by advancing a broader claim scope in the hope of capturing Samsung's products, even though the specifications fail to support such breadth. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007). Netlist's motion should be denied.

### 2.    Mr. McAlexander Applied the Proper Legal Framework

Netlist's argument that overbreadth of the '918 and '054 patents' claims "is not a legally relevant basis for written description" is incorrect as a matter of law. Dkt. No. 212 at 12. Although there is no "'essential element' test mandating an inquiry into what an inventor considers to be essential to his invention and requiring that the claims incorporate those elements," it is nevertheless true that a "broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Cisco*, 856 F.3d at 1007-08; *see also Carnegie Mellon*, 541 F.3d at 1127; *Gentry Gallery, Inc. v. Berkline Corp.*,

6

134 F.3d 1473, 1479 (Fed. Cir. 1998).

Thus, Mr. McAlexander's written description analysis follows the appropriate legal framework.  He considers the evidence and concludes "the independent claims of the '918 and '054 Patents are divorced from memory modules having both volatile and non-volatile memory on a single DIMM that the inventors regarded as their invention."  Ex. 2 at ¶ 1981.  Although Netlist disagrees with Mr. McAlexander's reliance on certain evidence, including prior art, the "'[w]ritten description analyses are highly fact specific' and vary depending on the context and background state of the art."  *Zoho Corp. v. Sentius Int'l, LLC*, 494 F. Supp. 3d 693, 705 (N.D. Cal. 2020) (quoting *Nuvo Pharms.*, 923 F.3d at 1383).  The Court should reject Netlist's attempt to strike Mr. McAlexander's written description opinions.

### 3.    Samsung Complied with the Local Rules

Netlist's assertion that "Samsung failed to disclose any of these theories during discovery" is false.  Dkt. No. 212 at 14.  Samsung's invalidity contentions identify each of the terms on which Mr. McAlexander opines and note that the applicable specifications fail to provide written description for the identified terms.  *See, e.g.*, Ex. 3 at 347-49, 354-59, 367-69, 372-74.  Although Netlist complains that "Samsung did not provide any detail in its contentions" (Dkt. No. 212 at 15), Samsung identified the terms and applicable specifications, and in any event, the Local Rules and District precedent do not require additional detail.  *See United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 220-CV-00319-JRG-RSP, 2022 WL 1300832, at *2 (E.D. Tex. Apr. 29, 2022) (finding invalidity contentions that identify claim terms that are not enabled "sufficiently put [plaintiff] on notice as to [defendant's] enablement positions and allowed for [plaintiff] to engage in meaningful discovery and to prepare its case." (internal quotations and citations omitted)); *see also Ultravision Techs., LLC v. Lamar Advert. Co.*, No. 2:16-CV-374-JRG-RSP, 2017 WL 3836139, at *2 (E.D. Tex. Apr. 18, 2017) ("The identification of specific

claim terms and the § 112 grounds pertaining to that term is sufficient notice for Plaintiff to engage in meaningful discovery and to prepare its case.").

Samsung indisputably complied with the Local Rules.  Moreover, Netlist has suffered no prejudice.  Samsung put Netlist on notice of its invalidity theories and disclosed all of the information on which Mr. McAlexander relies (*i.e.*, the asserted patents).  Samsung also included this same information in its response to Interrogatory Nos. 9 and 24, and Netlist never asked for more detail concerning Samsung's contentions.  *See, e.g.*, Ex. 4 at 117; Ex. 5 at 42.  Finally, Samsung served an interrogatory asking Netlist for its contentions as to why it disagrees with Samsung, and Netlist provided even less detail.  Ex. 6 at 47.  Netlist's request should be denied.

### B.    Mr. McAlexander's Opinions About the '339 Patent's "Drive" Terms Are Based on the Court's Construction

Netlist's mischaracterization of Judge Payne's Claim Construction Order with regard to the "drive" claim terms shows that it is blatantly ignoring both the construction and Judge Payne's explanation of that construction.  Mr. McAlexander quotes the Court's construction of the "drive" terms and applies the construction in his analysis as it is stated in the Court's Order: "enabling only one of the ***data paths*** while the other possible paths are disabled."  Ex. 2 at ¶ 237,[4] Dkt. No. 114 at 34.  Netlist, on the other hand, distorts the plain meaning of the Court's construction and attempts to use the Court's direction to the parties to refrain from mentioning its opinion in the presence of the jury as a shield for its egregious manipulation of the Court's order. Dkt. No. 212 at 4, Dkt. No. 114 at 35.

Netlist's position appears to be that neither party's expert may quote any portion of the Court's opinion other than the constructions in their report, but Netlist's own expert does exactly what Netlist argues Samsung's expert may not do.  *See* Ex. 7 at Ex. A, ¶ 210 (quoting statement

---

[4] All emphasis is added unless noted otherwise.

████████████████████████

from p.10 of the Court's Claim Construction Order that is not the actual construction); *see also id.* at Ex. A, ¶ 201; *id.* at Ex. B, ¶¶ 124, 289 (quoting or paraphrasing statements from the Court's Claim Construction Order that are not the actual constructions).  Mr. McAlexander's quotes of the Court's opinion are not "cherry-pick[ed] statements," as Netlist accuses, but rather the Court's own explanation of its construction, which is contrary to the meaning Netlist is using as the basis for its infringement allegations.  *See* Ex. 7 at Ex. A, ¶ 210 ███████████

████████████████████████████████

██████████████████████.  Mr. McAlexander included this information to counter Netlist's misrepresentations as to the Court's construction, which are themselves improper. Nevertheless, Samsung will not offer testimony as to the Court's claim construction order unless Netlist itself is permitted to do so.

### C.      Mr. McAlexander's Equitable Defense Opinions and the Underlying Facts Are Properly Included in His Report

The fact that certain opinions of Mr. McAlexander relate to equitable defenses is not a basis for exclusion.  Experts routinely express opinions in expert reports regarding such equitable defenses, which are ultimately addressed by the Court.  *See Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG, 2022 WL 2789901, at *1-2 (E.D. Tex. July 15, 2022).  It is not necessary to separate evidence relevant to jury issues and equitable issues in an expert report, and Netlist has provided no precedent to the contrary.  The underlying facts are also relevant to other issues, including infringement, invalidity, and standard essentiality, and Mr. McAlexander should be permitted to testify about them.  The Court should deny Netlist's motion.

### D.      Mr. McAlexander's Opinions About Netlist's Relationship to JEDEC Are Relevant

Despite Netlist's protests, Mr. McAlexander's analysis of the facts that led up to the issuance of the '506 and '339 patents is highly relevant.  Netlist seeks to silence Mr.

McAlexander's description about "Netlist's involvement in JEDEC, the amount of continuations that preceded the issued claims, and ITC proceedings involving unasserted patents."  Dkt. No. 212 at 6.  But Netlist's actions in each of these venues are highly relevant to several issues in this case, including prosecution laches and inequitable conduct, as well as issues of damages, non-infringement, and willfulness.[5]

For example, Netlist's JEDEC and litigation activity and prosecution history of the '339 patent's family are relevant to the issue of prosecution laches.  *See* Ex. 2 at ¶ 129-156. "Prosecution laches as a defense to infringement requires proof of two elements: (a) that the patentee's delay in prosecution was unreasonable and inexcusable under the totality of the circumstances; and (b) that the accused infringer or the public suffered prejudice attributable to the delay."  *Personalized Media Commc'ns, LLC v. Apple, Inc.*, 552 F. Supp. 3d 664, 684 (E.D. Tex. 2021) (citations omitted).  Mr. McAlexander's opinions regarding the evolution of the technical scope of the claims of the '339 patent's family during its prosecution—demonstrated by Netlist's prosecution, litigation and JEDEC activity—are therefore proper under the "totality of the circumstances" and should not be struck.

Netlist's JEDEC activity and prosecution history of the '506 patent's family are also relevant to inequitable conduct.  *See* Ex. 2 at ¶¶ 1187-1199.  Mr. McAlexander's opinions are based on his technical analysis of the disclosures made at JEDEC meetings attended by a named inventor of the '339 and '506 patents in view of the purported scope of these patents according to Netlist's infringement allegations.  "A party may show inequitable conduct by producing clear and convincing evidence of (1) material prior art, (2) knowledge chargeable to the patent applicant of prior art and its materiality, and (3) the applicant's failure to disclose the prior art to

---

[5] *See also* Samsung's Opposition to Netlist's Motion To Strike Opinions of John B. Halbert.

the PTO with intent to mislead." *Versata Software, Inc. v. SAP Am., Inc.*, 758 F. Supp. 2d 389,

392 (E.D. Tex. 2010) (citations omitted).  "The intent element of the offense is thus in the main

proven by inferences drawn from facts, with the collection of inferences permitting a confident

judgment that deceit has occurred."  *Id.* at 393 (quoting *Akron Polymer Container Corp. v. Exxel

Container, Inc.*, 148 F.3d 1380, 1384 (Fed. Cir. 1998)).  In fact, Netlist itself made its

involvement in JEDEC relevant when it relied on JEDEC specifications in its initial allegations

of infringement.  *See* Ex. 8.  The Court should deny Netlist's motion.

      **E.**    **Mr. McAlexander's Reliance on Prior Art[6] Is Proper**

    **JEDEC Documents:**  Netlist does not dispute that (1) the JEDEC Documents comprising

proposals, ballots, and meeting minutes were presented at JEDEC meetings and accessible to its

members, or that (2) the dates of the JEDEC Documents satisfy 35 U.S.C. § 102.  Rather, Netlist

appears to focus its argument on an alleged lack of public accessibility.  Dkt. No. 212 at 7-11.

    "A reference will be considered publicly accessible if it was disseminated or otherwise

made available to the extent that persons interested and ordinarily skilled in the subject matter or

art exercising reasonable diligence, can locate it."  *M & K Holdings, Inc. v. Samsung Elec. Co.*,

985 F.3d 1376, 1379 (Fed. Cir. 2021) (quotations omitted).  "'[A]ccessibility goes to the issue of

whether interested members of the ***relevant public*** could obtain the information if they wanted

to' and '[i]f accessibility is proved, there is no requirement to show that particular members of

the public actually received the information.'"  *GoPro, Inc. v. Contour IP Holding LLC*, 908

F.3d 690, 693 (Fed. Cir. 2018).  As Mr. McAlexander explained, the JEDEC Documents were

"accessible to many (20+) key members of the interested public (*i.e.*, the JEDEC member

companies in those committees) with the expectation their teachings would be freely disclosed to

---

[6] Netlist also filed a Motion for Partial Summary Judgment Finding JEDEC Materials Are Not
Publicly Accessible.  *See* Dkt. No. 209.  Samsung refers the Court to its opposition thereto.

and discussed with others." Ex. 2 at ¶ 1175.  The interested public, therefore, could obtain the information if they wanted to, given that entities from the public at large can easily become JEDEC members by applying online and paying a fee.  Contrary to Netlist's assertion, a Google search is not the proper test for public accessibility.  Dkt. No. 212 at 7.

Netlist also argues that the JEDEC Documents are not "evidence of knowledge of a POSA" but rather "a person of extraordinary skill."  Dkt. No. 212 at 9.  Netlist appears to base this argument on the notion that the "JEDEC Documents are confidential materials that are not part of the knowledge of a POSA."  *Id*. at 9.  Netlist offers no support for its proposition that JEDEC members are persons of "extraordinary skill."  As explained above, the JEDEC Documents were readily available to interested members of the relevant public, including Netlist and Samsung, as well as many others in the field.

According to Netlist, "Mr. McAlexander does not rely on these documents as 'evidence of what was known by a POSA,'" ignoring Mr. McAlexander's multiple express statements to the contrary.  Ex. 2 at ¶¶ 286, 698 ("the JEDEC proposals are each evidence of what was known in the field at the time"), *id*. at n.97, 100 ("The JEDEC materials are at least evidence of what was known by one of ordinary skill in the art."); *id*. at n.114, 115 ("The JEDEC materials described below are at least evidence of what was known by others prior to the alleged invention.").  Netlist's arguments about treating multiple JEDEC Documents as a single prior art reference misconstrues Mr. McAlexander's analysis.  Knowledge before the invention date is a proper basis for anticipation.  *See* 35 U.S.C. § 102 ("the invention was ***known*** or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent").  As explained by Mr. McAlexander, each set of JEDEC Documents is evidence of the technology being discussed at JEDEC, and

therefore constitute knowledge of the person of ordinary skill at the time.

**QBM documents:** Netlist does not dispute the dates of the QBM documents describing QBM's system art or Netlist's knowledge of these documents prior to the alleged invention dates of the '339 and '506 patents, but focuses its argument on public accessibility and motivation to combine. Mr. McAlexander explained that the relied-upon QBM documents were from Kentron Technologies Inc. ("Kentron") and describe QBM technology that Kentron developed between at least 1999 and 2005. Ex. 2 at ¶¶ 258-259. As with the JEDEC Documents, Mr. McAlexander stated that "[t]he QBM system described below is at least evidence of what was known by others prior to the alleged invention." Ex. 2 at n.98, 101. He also explained that, between 1999 and 2005, Kentron regularly disclosed technical details of QBM to members of JEDEC and of the QBM Alliance, which included Netlist and other industry members, as evidenced by QBM Alliance newsletters and the QBM web page containing links to QBM-related documents. Ex. 2 at ¶¶ 1179, 1186. Mr. Karabatsos, a former Principal of Kentron, confirmed these facts in his deposition, which occurred after Mr. McAlexander submitted his Opening Report. *See*, *e.g.,* Ex. 9 at 52:6-16, 101:4-102:7. Mr. Karabatsos also confirmed that the purpose of creating documents relating to the QBM technology, such as the documents on which Mr. McAlexander relied, was to disseminate the information to the industry. *See, e.g.*, *id*. at 101:16-23. The QBM system is, therefore, evidence of what is "known or used by others" under Section 102(a).

### F.  Mr. McAlexander's Opinions Regarding Other Litigations Are Relevant

Contrary to Netlist's assertion, Netlist's other litigations discussed by Mr. McAlexander are highly relevant. Dkt. No. 212 at 13.[7] The litigations are germane to Samsung's equitable

---

[7] Samsung notes that paragraphs 242-244 that Netlist requests to strike on these grounds do not include any reference to "other litigations."

████████████████████████████

defenses.  As discussed above, the litigations involving patents in the '339 and '506 patents' families are relevant to the issue of prosecution laches, as they are part of the "totality of circumstances" that must be considered when evaluating the reasonableness of Netlist's delay in filing these patent claims.  *See* Section I.C.

Netlist has also made the essentiality of its patents to the JEDEC standards an issue when it relied on the JEDEC DDR4 LRDIMM and various DDR5 DIMM standards in Netlist's infringement contentions.  Ex. 10 at 44 ("██████████████████████████████████████

█████████████████████████████████████████.").  Although Netlist never disclosed the '339, '506, '918, or '054 patents to JEDEC, it did disclose related patents as relevant to the DDR4 LRDIMM standard.[8]  The ITC, however, found that DDR4 standard compliant LRDIMMs *did not* infringe certain patents related to the '339 patent.  Ex. 2 at ¶¶ 171-174.  These facts undermine Netlist's claims about standard essentiality, and Mr. McAlexander should be able to consider them as part of his analysis.  Mr. McAlexander's reliance on such relevant facts should not be struck.[9]

### G.    Mr. McAlexander's Reliance on Background Art Is Proper

Netlist's request to exclude Mr. McAlexander's discussion of "U.S. Patents, theses, text books, product specifications, and other technical documents" to show the state of the art should be denied.  Dkt. No. 212 at 13.  These opinions are part of Attachment D to Mr. McAlexander's report, which he describes as "[a]n overview of the technology in this case."  Ex. 2 at ¶ 73.  For

---

[8] Netlist never declared any patent essential to the DDR5 standard.

[9] Similarly, Netlist relies on the disclosure of related patents to Samsung regarding the LRDIMM DDR4 standard for its willfulness allegations.  As discussed in Samsung's Motion for Summary Judgment of No Willful Infringement, these disclosures are insufficient for Netlist to meet its burden to prove willful infringement.  *See* Dkt. No. 200 at 7.  However, to the extent the Court allows the jury to hear this issue, the ITC's finding that DDR4 LRDIMM products did not infringe patents related to the patents-in-suit in this case would be highly relevant context.

example, the paragraphs at issue discuss the state of the art of DIMM technologies that predate Netlist's patents.  Ex. 11 at ¶¶ 154-157, 165-193, 196-207.

The Local Rules and District precedent permit Mr. McAlexander to consider background evidence of the state of the art at the time of the invention regardless of whether Samsung included this information in its invalidity contentions.  The Local Patent Rules "do not expressly, or by implication, require the production of all evidence that may be relevant in any way to the issue of obviousness, such as background evidence going to the state of the art at the time of the invention."  *Allergan v. Teva*, No. 15-cv-1455-WCB, 2017 U.S. Dist. LEXIS 225041, at *12-13 (E.D. Tex. Aug. 3, 2017).  And Defendants are not required "to identify all the evidence, including evidence as to the state of the technology and evidence as to the knowledge of persons of skill in the art, that might bear on the issue of obviousness." *Id.* at *13.

Courts in this district have "permitted defendants to rely on references that were not included in their invalidity contentions when the references were not proposed as invalidating prior art, but were directed to other purposes, such as showing the state of the art at the time of the invention . . . ." *Id.* at *15; *see also Ziilabs Inc. v. Samsung Elecs. Co.*, No. 2:14-cv-203, 2015 WL 7303352, at *2 (E.D. Tex. Aug. 25, 2015) (stating "background art can be relied upon in an expert's report outside of the content off the P.R. 3-3- disclosures" including as "(1) background material relevant to the technology at issue; (2) state of the art; and (3) establishing what one of skill in the art would have known at the time of invention.").  Moreover, Mr. McAlexander's reliance on Samsung prior art is not "irrelevant."  Dkt. No. 212 at 14.  Prior art is relevant to the state of the art regardless of its source.

## II.    CONCLUSION

For the aforementioned reasons, Netlist's motion should be denied.

Date: February 17, 2023

Respectfully submitted,

*/s/ Francis J. Albert*

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
LAD@fr.com
Brian Livedalen
D.C. Bar No. 1002699
livedalen@fr.com
Daniel A. Tishman
D.C. Bar No. 1013923
tishman@fr.com
Matthew Mosteller
CA Bar No. 324808
mosteller@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Katherine Reardon
NY Bar No. 5196910
kreardon@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:  (404) 892-5002

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130

16

Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Matthew Colvin
Texas Bar No. 24087331
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

Karolina Jesien
New York Bar No. KJ7292
FISH & RICHARDSON P.C.
Times Square Tower
20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile:  (212) 258-2291

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

Alice J. Ahn
CA 271399 / DC 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Ste. 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile: (415) 591-6091

Brian R. Nester
D.C. Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One City Center

17

850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202)-662-6000

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 17, 2023.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

*/s/ Francis J. Albert*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Francis J. Albert*

19