# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |  |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:21-CV-463-JRG |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC., SAMSUNG SEMICONDUCTOR, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NETLIST INC.'S OPPOSITION TO SAMSUNG'S MOTION FOR SUMMARY JUDGMENT THAT ALL ACCUSED PRODUCTS SOLD BEFORE JULY 15, 2020 ARE LICENSED (DKT. 196)

11190864.18  02

## TABLE OF CONTENTS

Page

I.      Introduction ................................................................................................................. 1

II.     Response to Statement of Issues to Be Decided by the Court ................................... 2

III.    Response to Samsung's Statement of Undisputed Facts ............................................ 2

VII.    Argument ..................................................................................................................... 8

        A.      Netlist Is Excused from Observing any License in the JDLA Due to
                Samsung's Material Breach .............................................................................. 8

        B.      There Is a Material Dispute of Fact About Whether the Accused Products
                Qualify as "Foundry Products" Under the JDLA ......................................... 11

        C.      Samsung Has Not Shown That the JDLA's License Unambiguously
                Extends to the Accused Products ................................................................... 14

                1.      ████████████████████████████████████
                        ██████████ .......................................................................... 14

                2.      Netlist Is Not Precluded or Estopped From Arguing That the
                        Scope of the License Grant Is Limited .............................................. 16

VIII.   Conclusion ................................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Afram Carriers, Inc. v. Moeykens,*
   145 F.3d 298 (5th Cir. 1998) ...............................................................18

*Allergan Sales, LLC v. Sandoz Inc.,*
   2016 WL 1224868 (E.D. Tex. Mar. 29, 2016) .........................................18

*Bradberry v. Jefferson Cnty., Tex.,*
   732 F.3d 540 (5th Cir. 2013) ...............................................................17

*Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp.,*
   401 F. Supp. 2d 692 (E.D. Tex. 2005) ..............................................15, 16

*In re CFLC, Inc.,*
   89 F.3d 673 (9th Cir. 1996) ..................................................................9

*Chrimar Sys., Inc. v. Adtran, Inc.,*
   2017 WL 131587 (E.D. Tex. Jan. 13, 2017).............................................16

*CXT Sys., Inc. v. Acad. Ltd.,*
   2020 WL 9936134 (E.D. Tex. 2020) .......................................................13

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.,*
   70 F. Supp. 3d 808 (E.D. Tex. 2014).......................................................10

*Enzo Biochem, Inc. v. Gen–Probe, Inc.,*
   424 F.3d 1276 (Fed. Cir. 2005)..............................................................12

*Fireman's Fund Ins. Co. v. Murchison,*
   937 F.2d 204 (5th Cir. 1991) ................................................................14

*Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli,*
   575 F.3d 693 (7th Cir. 2009) ................................................................16

*Jafari v. Wally Findlay Galleries,*
   741 F. Supp. 64 (S.D.N.Y.1990) .............................................................9

*Jethroe v. Omnova Sols., Inc.,*
   412 F.3d 598 (5th Cir. 2005) ................................................................17

*L.C. Eldridge Sales Co. v. Azen Mfg. Pte. Ltd.,*
   2013 WL 2285749 (E.D. Tex. May 23, 2013)............................................11

- ii -

*Mega Group Inc. v. Halton*,
    290 A.D.2d 673 ('N.Y. App. Div. 2002) ...............................................................................11

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007)........................................................................................9, 10

*Metabolite Lab'ys, Inc. v. Lab'y Corp. of Am. Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004)...................................................................................9, 10

*Netlist Inc. v. Samsung Elecs. Co.*,
    2021 WL 7186853 (C.D. Cal. Oct. 14, 2021)...............................................................3, 10

*Netlist, Inc. v. Samsung Electronics Co. Ltd.*,
    No. 8:20-cv-00993-MCS (C.D. Cal. 2020).........................................................................8

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    992 N.Y.S.2d 687 (2014)...................................................................................................18

## I.      Introduction

Samsung's Motion contends that Netlist cannot recover any damages before July 15, 2020, the day that Netlist notified Samsung of the termination of the parties' Joint Development and License Agreement ("JDLA").  Samsung's arguments fail for at least three reasons.

First, assuming *arguendo* the JDLA provided a license to all of the accused products before its termination, Samsung materially breached the JDLA no later than 2017. The instant Motion was written as if Samsung's material breach never took place. As explained below, a material breach by a licensee excuses the licensor from its obligation to not sue that breaching licensee for patent infringement.  The JDLA required Samsung to supply Netlist with NAND and DRAM products at Netlist's request at a competitive price.  But just two years into the agreement, Samsung cut off Netlist's allocation.  Armed with these undisputed facts, the Central District of California held that Samsung materially breached the JDLA as a matter of law.

Second, there is a dispute of material fact as to   which are expressly excluded.  While Samsung claims  the record shows otherwise. There is substantial evidence that  . Samsung concedes that the JDLA was terminated no later than July 15, 2020.  Opp. ¶ 17.  The only patents that had issued before this date were those directed at the HBM products accused of infringing the '060 and '160 patents.

Third, the only court that has addressed the scope of the license grant in the JDLA as an essential element of its ruling, the Korean Tax Court,   ." Ex. 2 (Tax Court Decision) at 27.  In specific, the Tax Court held

that ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████ The facts show

here that the patents-in-suit ████████████████████████████████

████████████████████████. Thus, Netlist's ████████████████████████

████████████████████████.

## II.      Response to Statement of Issues to Be Decided by the Court

1.      Is there a material dispute of fact regarding whether ████████████████████████

████████████████████████████████████████████████?

2.      Is there a material dispute of fact regarding whether the ████████████████████████

████████?

3.      Is there a material dispute of fact regarding whether the ████████████████████████

████████████████?

## III.     Response to Samsung's Statement of Undisputed Facts

1.      <u>Samsung's Facts 1 through 7: Disputed.</u> ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████ Ex. 2

(Korean Tax Court Decision) at 27-28. During these proceedings, ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████. ████████████████████████████████████



2.      With respect to fact 6, Netlist disputes that ████████████████████ ████████████████████." First, the Central District of California has entered judgment finding that "Netlist terminated the JDLA pursuant to JDLA § 13.2, and Samsung's licenses and rights under the JDLA have ceased." Dkt. 227-3 (CDCA Judgment) at 2. Second, as explained further below, Netlist is excused from performing under the license because Samsung materially breached the JDLA.  Third, four of the six patents in suit did not even issue until after the JDLA was formally terminated at least as of July 15, 2020.[1]

3.      <u>Samsung's Facts 8 through 10: Disputed</u>. There is a material dispute of fact regarding whether the ████████████████████." *See* ¶¶ 8-12 below.

4.      <u>Samsung's Facts 11 through 18: Disputed.</u> In the CDCA litigation, the Court found that Samsung breached its supply obligations by failing to "supply NAND and DRAM products to Netlist on Netlist's request at a competitive price." Ex. 22 at 6 (*Netlist Inc. v. Samsung Elecs. Co.*, 2021 WL 7186853 (C.D. Cal. Oct. 14, 2021) (citing JDLA § 6.2)). Samsung had argued that its obligations under section 6.2 were limited to supplying "NAND and DRAM products for the NVDIMM-P joint development project." *Id.* at 6. Samsung further argued that Netlist's position regarding Samsung's supply obligation contradicted the positions it had taken before the Korean Tax Court regarding the

---

[1] *See* Dkt. 23-1 ('506 patent issued on December 8, 2020), 23-2 ('339 patent issued on March 16, 2021), 23-3 ('918 patent issued on May 25, 2021), 23-4 ('054 patent issued on January 25, 2022).

limited scope of the license grant. The CDCA Court held that these two positions were not inconsistent and that the scope of Netlist's license grant was immaterial to its decision. *Id.* at 15.

5.   Netlist's alleged statements regarding Samsung's right to sell RDIMMs and LRDIMMs (Samsung's Facts 11 and 12), are also immaterial. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███ ██████ ███ ███ █████ ███ ██████ Moreover, the patents that read on LRDIMMs/RDIMMs were issued after Netlist terminated the JDLA (*supra* fn.1) and therefore Samsung cannot assert a license defense with respect to the products accused of infringing the '339, '506, '918, and '054 patents under any circumstance.

6.   <u>Samsung's Facts 18 through 26: Disputed</u>. Netlist disputes Samsung's assertion that ████████████████████████████████ under the JDLA. ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

7.   Samsung advertises its HBM Foundry Services.  For example, a Samsung marketing pamphlet titled "Supercharge Your Applications with Samsung High Bandwidth Memory" has an entire section devoted to "Samsung HBM2 Foundry Services." Ex. 3 (Dkt. No. 85-23) at 6. According to this pamphlet, "HBM2 is frequently used in high performance computing systems because of its lower power per bit. To implement HBM2 requires 2.5D PKG technology. . . . In 2016, Samsung Foundry started 10nm mass production for the first time." *Id.*

8.   Samsung's internal documents confirm that the ████████████████ fall within the

██████████████████████████████ under the JDLA, and that this is part of its overall business strategy. *See, e.g.,* Ex. 4 (SAM-NET00532125) at 532174 ██████████████████████████████████ ████████████████████████████"); Ex. 5 (SAM-NET00513626 (20160505 ███████████████████████████████████████████████████████████████████ ██████████████████); Ex. 6 (SAM-NET00482724) at 482729, 482731 (███████████████████ ████████████████████████████████████████████████████████AI").

9.    Samsung's internal documents further confirm that it ████████████████████████ ██████████████████████████. Ex. 7 (SAM-NET00512891) at 23 (Samsung presentation discussing "████████████████████████████████████████████████████████ ████████████████████████████████████"). Samsung's ██████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████████████████████ *Compare* Ex. 8 (Samsung Rog Responses Exhibit A) (identifying ████████████████████) *with* Ex. 9 (identifying ██████████████████████████).

10.    Samsung supplies ████████████████████. Ex. 10 (SAM-NET00462680); Ex. 11 (SAM-NET01350025). ███████████████████████████████████████████████████████ ████████████████████████████████████████." Ex. 10 at 4. ██████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* at 3.    Further, ████████████████ ████████████████████████████████████████████████████████████. Ex. 12 (SAM-NET01322194).

11.    Samsung's internal records confirm that it worked with ███████████████████████ ██████████████████████████████████████████████████████████████████. Ex. 23 (SAM-NET00491162) at 5 (███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████"). The records also

indicate ██████████████████████. *See* Ex. 24 (SAM-NET00536747) at 1 ("███████████

████████████████████████████████████"). The records further indicate that the ████████

████████████████████████ Ex. 25 at 2 (SAM-NET00537224).

12.    Samsung's internal records describe the ██████████████████████ as part of a

████████████████████." Ex. 26 (SAM-NET01330892) at 17 (SAM-NET01330909).

Netlist submits the following additional facts regarding Samsung's breach of the JDLA:

13.    Section 6.2 of the JDLA states that "Samsung will supply NAND and DRAM

products to Netlist on Netlist's request at a competitive price . . . ." Ex. 1 (JDLA) § 6.2. This was a

key deal term. *See* Ex. 22 (Summary Judgment Order) at 19 (finding the supply provision material).

During negotiations, Samsung told Netlist that "████████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████." Ex. 13 (NL108668) (May 18, 2015 email from Samsung to Netlist).

14.    From the execution of the JDLA until the first quarter of 2017, ████████████████

████████████████████████████ Ex. 14 (Chuck Hong CDCA. Testimony) at 84:10-16.

Then, in the ███████████████████████████████████████████████████████████████████

████████████████████████. Ex. 15 (SAM-NET00600940) █████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████████████████████████████████"). During a █████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

████████ Ex. 14 (CDCA Trial Transcript) at 84:20-25; *id.* at 122:13-16; *see also* Ex. 15 (2017-05-24

Samsung internal emails) ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

15.    By █████████████████████████████████████████████

███████████████.   Ex. 16 (NL020775).  On ███████████████████

███████████████████████████████████████████████████████

███████████████████ *Id.* at 1.

16.    Samsung's internal communications indicate that it ███████████████

███████████████████████████████████████████. A ██████████████

███████████████████████████████████████████████████████

█████████████████.  This emails states:

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

17.    Samsung  also  ███████████████████████████████████████.  An

internal Samsung email from ████████████████████████████████████████

███████████████████████████████████████████████████████."

Ex. 15 (SAM-NET00600940).  During  his  deposition,  ███████████████

███████████████████████████████████████████████████. Ex. 18

(Kim Depo. Tr.) at 47:22- 48:6 ("███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████); *id.* at 70:7-15 ("███████████████████████

███████████████████████████████████████████████████████

- 7 -



") (objections omitted).

18.   Samsung's breach led to ████████████████████████████. By

cutting off Netlist's supply, ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ Dkt. 205-1 (Netlist's Damages Expert Mr. Kennedy Rpt.) ¶ 312.

19.   On May 28, 2020, Netlist filed a complaint in the Central District of California against

Samsung for Breach of Contract.  *Netlist, Inc. v. Samsung Electronics Co. Ltd.*, No. 8:20-cv-00993-MCS

(C.D. Cal. 2020).  Netlist terminated the JDLA on July 15, 2020. Ex. 19 (NL000568). Judge Scarsi

found that Samsung had breached the supply obligation in the JDLA, and that this breach was

material:

> The Court entered partial summary judgment as to liability on the first breach of
> contract claim in favor of Netlist, determining 'that Netlist has established the
> existence of a contract, its performance of the contract, and Samsung's breach of the
> supply provision of the contract.' (XMSJ Order 15.) … As the Court concluded at
> summary judgement, the supply term was 'an integral part of the parties' agreement,
> one that Netlist valued highly.' (XMSJ Order 19) Samsung's breach deprived Netlist
> of the benefit it justifiably expected… The evidence concerning materiality is and was
> 'clear and substantially uncontradicted'…". Ex. 20 (CDCA Order on Motions for
> Entry of Judgment) at 2-3, 8.

## VII.   Argument

### A.   Netlist Is Excused from Observing any License in the JDLA Due to Samsung's Material Breach

Even assuming the JDLA license grant covered all of the Accused Products (it does not),

Samsung's contention that all accused products sold before July 15, 2020 are licensed still fails. This

is because Samsung materially breached the JDLA ████████████████████████████

████████████████████████████████████████████████████ Ex. 15 (SAM-

NET00600940). As of that date, Netlist was relieved of its duty to perform under the JDLA.

While the JDLA was still in effect, Netlist owed Samsung a continuing duty "to refrain from suing [Samsung] for infringement.'" *In re CFLC, Inc.*, 89 F.3d 673, 677 (9th Cir. 1996). Under New York law, however, any such contractual duty ends when the licensee materially breaches the contract. *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) ("[A] party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach.); *see also Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 68 (S.D.N.Y.1990) ("[W]here a party materially breaches, he has failed to substantially perform the contract, and the other party is discharged from performing his obligation"). Under New York law, it is well established that a "material breach" of a patent license agreement "constitutes termination even where the license agreement termination clause does not expressly so provide." *Metabolite Lab'ys, Inc. v. Lab'y Corp. of Am. Holdings*, 370 F.3d 1354, 1370 (Fed. Cir. 2004). Such a breach therefore relieves the licensor of its duty to refrain from suing the licensee for infringement. *In re CFLC, Inc.*, 89 F.3d at 677 (noting that "material breach" would "excuse" a licensor's continued performance).

Samsung committed material breach. Samsung announced that it would stop supplying Netlist with NAND and DRAM products in May of 2017, which it subsequently did. *Supra* III. ¶ 14. As the CDCA. Court held, this constituted breach under the plain language of the JDLA: "The JDLA obliges Samsung to supply NAND and DRAM products to Netlist on Netlist's request at a competitive price. (JDLA § 6.2.)." Ex. 22 (Summary Judgment Order) at 4. Further, "Samsung does not dispute that it declined to fulfill all of Netlist's orders for NAND and DRAM products." *Id.* at 9-10. "There is no genuine dispute that Samsung breached JDLA § 6.2." *Id.* Judge Scarsi's opinion that the breach was material was proper. As explained above, the supply provision of the JDLA was a key deal term. *Id.* at 19 ("Samsung's Breaches Were Material."). ███████████████████

████████████████████████████████████



██████   *See* III.  ¶ 18.  Samsung knew this.  Samsung ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

Ex. 13 (NL108668). Despite this, Samsung chose to cease supplying Netlist in 2017, knowing full well

that this ██████████████████████████████████████████████████████████████████

████████████████████████████████████████.” Ex. 15 (SAM-NET00600940). This result is exactly

what happened. *See* III. ¶ 17.

████████████████████████████ Ex. 18 (Kim Depo. Tr.) at 70:7-15 (“█

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.”).

The CDCA Court properly held that materiality was “clear and substantially uncontradicted.”

*Netlist Inc.*, 2021 WL 7186853, at *10; *see also id.* at 11 (“Samsung does not seriously contest

materiality.”). Samsung's supply obligation was “an integral part of the parties' agreement, one that

Netlist valued highly, as demonstrated by its negotiation and post-execution conduct.” *Id.* The CDCA

Court's decision regarding Samsung's material breach is binding on Samsung. As Samsung admits, this

judgment has preclusive effect even while an appeal is pending.  Mot. at 10 ████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████”) (quoting *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812

(E.D. Tex. 2014)).

Samsung's material breach relieves Netlist of its obligations under the JDLA, including its

obligation not to sue for infringement of licensed patents. *Merrill Lynch & Co.*, 500 F.3d at 186;

*Metabolite Lab'ys, Inc.*, 370 F.3d at 1370.  To the extent there can be any dispute about this (they cannot),

this is a question of fact for the jury to resolve. *Mega Group Inc. v. Halton*, 290 A.D.2d 673, 674-75 (N.Y.

App. Div. 2002) ("Whether promises in a contract are mutually dependent upon each other such that a failure to act by one party excuses non-performance by the other ordinarily is a question of fact.").

**B.     There Is a Material Dispute of Fact About Whether the Accused Products Qualify as ████████████████████████████**

Summary judgment is improper because there is dispute of material fact regarding ████████

████████████████████████████████████████████     ████████████████████████████

████████████████████████████████████     ("████████████████████████████████

████████████████████████████████████████.").  A "████████████████"  is defined as

"████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████."  Ex. 1 (JDLA) at 2.

While Samsung insists that none the accused products satisfy this definition, the record demonstrates otherwise.

First, Samsung ████████████████████████████████████████████████████████████.

Ex. 3 (Dkt. 85-23) at 6 (████████████████████████████████");  *id.* ████████████████████

████████████████████████████████████████████████████████████████████████████

████████████");  *see also* Disputed Facts ¶¶ 8-12. ████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████."    Mot. 19-20.  But this is

unsupported attorney argument. *L.C. Eldridge Sales Co. v. Azen Mfg. Pte. Ltd.*, 2013 WL 2285749, at *7 (E.D. Tex. May 23, 2013) ("Attorney argument is no substitute for evidence.") (quoting *Enzo Biochem, Inc. v. Gen–Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005)).

Second, Samsung's internal documents demonstrate that it ████████████████████████████

███████ Resp. Stmt. of Facts ¶¶ 9-10.  Moreover, the ██████████████████

█████████████████████████████████████████████████████████████████████

██████ Resp. Stmt. of Facts ¶ 9.  This also demonstrates that Samsung is ███████████████

████████████████████████.

For example, Samsung ██████████████████████.  Resp. Stmt. of Facts ¶ 10.

█████████████████████████████████████████████████████████████████████

████████████████████████████.”  Ex. 10 (SAM-NET00462680) at 4.  Moreover,

the  record  also  demonstrates  that  ████████████████████████████████████

███████████████.  Ex. 12 (SAM-NET01322194).

These facts demonstrate that █████████████████████████████████████

████████████████████  There are at least some that are ██████████████████

████████████████.  Nothing cited in Samsung's Motion demonstrates an absence of a

genuine dispute of material fact regarding this issue.

Samsung relies on self-serving assertions from its witnesses claiming that ████████████

█████████████████.  Mot. at 5 (¶19) (████████████████████████████████

████████).  But these assertions are inconsistent with the record.  For example, ████████

██████████████████████████████████████████████████  But this

███████████████████████.  Ex. 6 (SAM-NET00482724) at 482729, 482731

██████████████████████████  It also contradicts the ███████████████

██████████████████████████████████████.

Samsung also asserts that it ███████████████████████████████████████

████████████████.  Mot. at 5 (¶ 19).  But this is also contradicted by Samsung's own documents.

Ex. 7 (SAM-NET00512891) (“██████████████████████████████████████████

███████████████████████████████.”).

███████████████████. They do not cover the internal operations of the product, as evidenced by the fact that there is ████████████████████████████████████████ ███████████████████████.

The rest of the evidence purportedly demonstrates that Samsung manufactures and develops its own products. Mot. at 5 (¶ 19). But this is of no moment. ████████████████████████ ████████████████████████████████████. *Id.* But this ████████ ████████████████████████████████████████████████████████████ ███████████████████. Mot. at 5 (¶ 19).

Samsung next argues that the accused products are not Foundry Products because "████████ ████████████████████████████" Mot. at 19. As noted above, however, many of the products that Samsung supplies to its customers ████████████████████████████████ ████████████████████████ Resp. Stmt. of Facts ¶ 9.  Moreover, Samsung has confidentiality agreements with its customers, ██████████████. Resp. Stmt. of Facts ¶ 10.  Such agreements would ██████████████████████████████████████████████████ ██████████████. As such, Samsung ███████████████████████████████████████████████████████ ████████████ Ex. 1 (JDLA) at 2.

Finally, Samsung asserts that "████████████████████████████████████████████ ████████████████████████████." Mot. at 9 (¶ 25). But again, Samsung adopts the opposite approach than what is required for submitting proof in support of their Motion.  Samsung is the party asserting the license defense here, and thus it is Samsung who has the burden of demonstrating that there is no genuine factual dispute that the █████████████████████████ ████████ *CXT Sys., Inc. v. Acad. Ltd.*, 2020 WL 9936134, at *5 (E.D. Tex. 2020). As shown above, Netlist has provided evidence that the ████████████████████████████████████████████ ████████████████████████████████████████.

- 13 -

**C.    Samsung Has Not Shown That the JDLA's License Unambiguously Extends to the Accused Products**

Samsung argues that (1) the "plain language" of the JDLA granted Samsung a patent license for all of Samsung's semiconductor products, including those that have nothing to do with the parties' JDLA, and (2) that Netlist is estopped from arguing otherwise. Samsung is wrong on both accounts.

1.    ████████████████████████████████████████████████████████████.
████████████

As the moving party, Samsung has the burden of demonstrating that the license granted under the JDLA ***unambiguously*** covers the products at issue. *Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir. 1991) ("If a contract is ambiguous, summary judgment is inappropriate because the interpretation of a contract is a question of fact."). It has not met this burden.

Only one court has directly addressed the scope of Netlist's license grant in a manner that was essential to the judgment, the Korean Tax Court, ████████████████████████████
████████████████████████████████████████████████

████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████   ████████████

████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

████████████████████████████████

████████████████████████████████████████.   ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████   Mot. at 12. But this interpretation conflicts with the decision entered by the Korean Tax Court. Samsung thus ***cannot*** demonstrate, as it must, that the JDLA  unambiguously  ████████████████████████████████████████,  ████████████████████████

███████████████████████████.

Samsung contends that the Court should ignore the Korean Tax Court's decision, but none of its arguments are availing. First, Samsung argues that ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████  ██████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████

Second, Samsung argues that the Korean Tax Court's discussion of the JDLA was just "dicta," and the Court merely "███████████████████████████████████████." Both assertions are wrong. The Korean Tax Court specifically concluded ██████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████Ex. 2 at 27. This conclusion was not mere "dicta" as Samsung incorrectly contends, but rather a fundamental key to the determination of the tax withholding issue as decided by the authorities best suited to rendering an opinion on that issue. The Korean Tax Court ██████████████

██████████████████████████████████████████████████████

████████████████. Ex. 27 (Samsung's December 2019 Response to Korean Tax Tribunal).

Finally, Samsung relies on *Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp.*, 401 F. Supp. 2d 692, 698 (E.D. Tex. 2005), but that case is inapposite. That decision held that "[r]epresentations to a foreign patent office" cannot be relied on for purposes of "claim construction" because of "differences in international requirements for patent prosecution." *Id.* It also held that a court cannot rely on "extrinsic evidence" of a foreign proceeding without a complete record. *Id.* But this does not

mean that a Court cannot consider the contents of a foreign **final decision** or **judgment**. Courts routinely consider and even take judicial notice of such judgments because their contents are not reasonably subject to dispute. *See, e.g., Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 696 (7th Cir. 2009) ("An American court can take judicial notice of a foreign judgment" and citing cases). Thus, there are genuine factual disputes regarding the validity of overextending the JDLA license to encompass products that were not related to the parties' shared NVDIMM-P product development goals.

> **2.** **Netlist Is Not Precluded or Estopped From Arguing That the Scope of the License Grant Is Limited**

Samsung next argues that Netlist is barred from arguing that the scope of the license grant is limited under the doctrines of issue preclusion and judicial estoppel. This contradicts Judge Scarsi's Summary Judgment Order, where he declined to conclusively determine the scope of the license granted by Netlist. Ex. 22 (CDCA summary judgment order) at 14-15 ("Netlist argued before the Korean tax authority that 'the granting of cross licenses under the [JDLA] is limited to the joint research and development.' … Netlist's prior position on the scope of the patent licenses is **immaterial** to the breach theory in this litigation and to the reasons the Court will grant summary judgment as to liability.") (emphasis added).

With respect to issue preclusion, this doctrine only applies where "the identical issue was previously adjudicated" in a preceding action. Mot. at 9-10 (quoting *Chrimar Sys., Inc. v. Adtran, Inc.*, 2017 WL 131587, at *1 (E.D. Tex. Jan. 13, 2017)). But the CDCA Court did not decide the scope of Netlist's license grant. Rather, that case involved an entirely different provision and an entirely different dispute. *i.e.*, whether, under section 6.2, Samsung breached its supply obligations "by failing to fulfill orders for NAND and DRAM products." *Id.* at *3.

In the CDCA litigation, Samsung argued that its obligations under section 6.2 were limited to

supplying "NAND and DRAM products for the NVDIMM-P joint development project." *Id.* The CDCA Court rejected this argument, but never determined the scope of restrictions on Netlist's license grant. Samsung's reference to a portion of the court's 22 page order discussing section 8 of the JDLA, Mot. at 14, leaves this issue unsettled. However, other portions of the CDCA order make expressly clear that Judge Scarsi was not rendering any decision with respect to the license, or that this provision was even relevant to the breach dispute at issue there.  *See* Ex. 22 at 14-15.

Indeed, when Samsung tried to argue that estoppel should preclude Netlist from taking the position that Samsung's supply obligations were not limited to the joint development agreement given the position Netlist had taken before the Korean Tax Court, the CDCA court rejected this argument, noting that the "scope of the patent licenses is ***immaterial*** to the breach theory in this litigation, and to the reasons the Court will grant summary judgment as to liability."  *Id.* at *8 (emphasis added). Samsung neglects to mention this part of the CDCA Court's holding, but it is fatal to Samsung's preclusion argument. *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 550 (5th Cir. 2013) ("For collateral estoppel [] not only must the earlier proceedings have actually adjudicated the specific issue, but that determination must have been necessary to the decision.").

Samsung's judicial estoppel arguments similarly fail. Judicial estoppel only applies where "the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position." Mot. at 10 (quoting *Jethroe v. Omnova Sols., Inc.,* 412 F.3d 598, 600 (5th Cir. 2005)). As explained by the CDCA Court in a section of its Summary Judgment Order titled "Judicial Estoppel Does Not Apply," there was nothing inconsistent about Netlist's argument that its patent license to Samsung was limited to only joint development efforts, whereas Samsung's supply obligations under section 6.2 was not:

> [T]he doctrine [of estoppel] does not apply because Netlist's position in this litigation is not "clearly inconsistent" with its prior position. Netlist argued before the Korean tax authority that "the granting of cross licenses under the [JDLA] is limited to the

joint research and development." (DMSJ GDMF ¶ 65 (alteration in original).) As discussed, the JDLA contains some provisions that are specific to joint development and some that are not.

Ex. 22 (CDCA Summary Judgment Order) at 14-15.   As discussed above, the JDLA's preamble specifically ties the license grant to the parties' joint development efforts.  Ex. 1 (JDLA) at 1. But the JDLA contains no such statement limiting the scope of Samsung's supply obligations under section 6.2. This omission reflects the parties' intent to give these sections different scopes. *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 992 N.Y.S.2d 687, 694 (2014) ("[I]f parties to a contract omit terms . . . the inescapable conclusion is that the parties intended the omission").

Samsung claims that Netlist took the opposite position in the CDCA litigation, i.e., that section 8 was not limited to the joint development project. Mot. at 13. But Netlist's briefing on this issue was only highlighting that this was ***Samsung's*** position, and that Samsung had provided no argument as to why section 6.2 of the JDLA was limited to joint development whereas other provisions of the JDLA were not.  Ex. 21 (Netlist Opp. MSJ) at 5 ("Samsung provides no reason for the Court to import an implied limitation into Section 6.2 that concededly does not exist in other provisions in that same contract."). The fact that Netlist was showing the internal inconsistency of Samsung's position does give rise to preclusion or estoppel—in fact, just opposite. As this Court has explained, issue preclusion only applies where "the parties to the original action ***disputed the issue*** and the trier of fact decided it." *Allergan Sales, LLC v. Sandoz Inc.*, 2016 WL 1224868, at *7 (E.D. Tex. Mar. 29, 2016) (emphasis added). Regardless, even if Netlist had taken an inconsistent positions with respect to section 8.2 in the CDCA case, this would not trigger estoppel because, as explained above, the CDCA court did not consider section 8.2 to be relevant and did not rely on this section when reaching its decision. *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 304 (5th Cir. 1998) (party seeking estoppel "must "demonstrate[] the court's acceptance and reliance on" the inconsistent statement).

Finally, Samsung points to various supposed admissions made by Netlist that the JDLA

license grant covered Samsung's manufacture and sale of RDIMMs and LRDIMMs (although Samsung does not contend that these "admissions" give rise to preclusion or estoppel). Mot. at 15. But these statements are not on point in this litigation. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████  The patents that ███████████████████████ however, were issued after Netlist terminated the JDLA. *Supra* fn. 1. Samsung cannot assert a license defense with respect to ██████████████████████████, as the JDLA license was terminated at least as early as July 15, 2020.  And Samsung does not contend that the HBM products it developed were part of the development project.

There is a genuine dispute of material fact regarding the license grant, and so Samsung's Motion should be denied.

## VIII.  Conclusion

Samsung has not come close to satisfying its burden of demonstrating that the JDLA bars Netlist from seeking damages prior to July 15, 2017. Its Motion should be denied.

Dated: February 17, 2023

Respectfully submitted,

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)

hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on February 17, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Jason G. Sheasby*
Jason G. Sheasby

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason G. Sheasby*
Jason G. Sheasby