FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.<br><br>          Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>and SAMSUNG SEMICONDUCTOR, INC.,<br><br>          Defendants. | Civil Case No. 2:21cv463-JRG<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO STRIKE**
**PORTIONS OF DR. GABRIEL ROBINS'S OPENING EXPERT REPORT (Dkt. 213)**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**TABLE OF CONTENTS**

I.    ARGUMENT ................................................................................................................. 1

    A.    Dr. Robins Opinions on Technology Background and the Knowledge of a POSITA Are Proper ............................................................................................... 1

    B.    The JEDEC Presentations Properly Show Knowledge of POSITA ....................... 4

    C.    Dr. Robins's Obviousness Opinion Based on the JEDEC Presentations Is Proper 6

    D.    Dr. Robins's Analysis Regarding the Knowledge of a POSITA Is Proper ............ 7

    E.    Dr. Robins Properly Compares Kim to the Claim Language ................................ 7

    F.    Dr. Robins's Opinions Concerning the "Array Die" Term Are Proper .................. 8

    G.    Dr. Robins's Opinions Concerning a POSITA's Use of Memory Layers Other Than DRAM Are Proper ........................................................................................ 9

    H.    Robins's Opinions Concerning "Chip Select Signal" Are Proper .......................... 9

II.    CONCLUSION ............................................................................................................ 10

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anascape, Ltd. v. Microsoft Corp.*,
  No. 9:06-CV-158, 2008 WL 7180756 (E.D. Tex. May 1, 2008) .............................................1

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
  847 F. App'x 869 (Fed. Cir. 2021) ......................................................................................6

*Coffin v. Ogden*,
  85 U.S. 120 (1873)..................................................................................................................4

*Firtiva Corp. v. Funimation Global Group, LLC*,
  No. 2:21-cv-00111-JRG-RSP, 2022 WL 1792785 (E.D. Tex. June 1, 2022) ...........................1

Further, in
  IPR No. IPR2022-0062 ..........................................................................................................5

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1 (1966)....................................................................................................................7

*Mobility Workx, LLC v. Cellco P'ship*,
  No. 4:17-CV-00872, 2019 WL 5721814 (E.D. Tex. Nov. 5, 2019)..................................1, 2, 4

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006).............................................................................................5

*TI Group Automotive Systems (North America), Inc. v. VDO North America, L.L.C.*,
  375 F.3d 1126 (Fed. Cir. 2004).............................................................................................8

*UCB, Inc. v. Watson Lab'ys Inc.*,
  927 F.3d 1272 (Fed. Cir. 2019).............................................................................................4

*Visto Corp. v. Seven Networks, Inc.*,
  No. 2:03-CV-333 (TJW), 2006 WL 5153146 (E.D. Tex. Mar. 27, 2006)................................1

**Statutes**

35 U.S.C. §§ 102................................................................................................................................4

35 U.S.C. § 102(a) ........................................................................................................4, 5, 6, 7

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Netlist provides no valid reason to strike any portion of Dr. Robins's opening report. Dr. Robins asserts no new invalidity theories, but rather properly discusses the background of the technology and the knowledge of a POSITA. Netlist fails to show that Dr. Robins gap-fills his invalidity theories, provides any new invalidity theory, or otherwise improperly uses the background technology evidence he presents. The Court should also reject Netlist's attempt to avoid the JEDEC prior art. Membership to JEDEC is open to the public, and any interested person could have joined JEDEC and accessed the presentations on which Dr. Robins relied. The Federal Circuit squarely rejected the requirement for dissemination that Netlist advances here. Finally, contrary to Netlist's assertions, Dr. Robins's analysis of the prior art Kim reference compares it to the '060 and '160 patents' claim language, not their embodiments. At most, Netlist's criticisms of the expert go to the weight of the testimony, which can be probed on cross-examination—not its admissibility.

The Court should deny Netlist's motion.

**I.      ARGUMENT**

    **A.      Dr. Robins Opinions on Technology Background and the Knowledge of a POSITA Are Proper**

Netlist improperly seeks to strike Dr. Robins's technology background discussion and opinions concerning the knowledge of a POSITA. "[I]t is appropriate for the background section of a report to contain references in addition to those charted." *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-CV-00872, 2019 WL 5721814, at *21 (E.D. Tex. Nov. 5, 2019).

None of Netlist's cited cases support striking Dr. Robins's report. Specifically, Netlist's three cited cases—*Firtiva Corp. v. Funimation Global Group, LLC*, No. 2:21-cv-00111-JRG-RSP, 2022 WL 1792785 (E.D. Tex. June 1, 2022), *Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333 (TJW), 2006 WL 5153146 (E.D. Tex. Mar. 27, 2006), and *Anascape, Ltd. v. Microsoft*

*Corp.*, No. 9:06-CV-158, 2008 WL 7180756 (E.D. Tex. May 1, 2008)—do not address an expert's reliance on uncharted references for technology background purposes or to show the knowledge of a POSITA before the time of invention.

Netlist identifies no instance where Dr. Robins improperly relies on undisclosed prior art to advance a new invalidity theory. Netlist first points to Dr. Robins's statement that he considers the history of stacking techniques because the '060 and '160 patents discuss chip stacking, *see* Dkt. No. 213 at 1-2, but Netlist does not explain what is improper about that statement. It is proper because Dr. Robins is entitled to provide background on the relevant technology. *See Mobility Workx*, 2019 WL 5721814, at *21. Netlist complains that Dr. Robins uses the term "obvious" when describing TSVs in the background section. *See* Dkt. No. 213 at 2 (citing Ex. 1 at ¶ 242). But Netlist fails to show that Dr. Robins ever asserts a new invalidity theory based on an uncharted reference. Moreover, Netlist cannot be prejudiced on this point because the '060 and '160 patents themselves admit that TSVs passing through dies (as shown with respect to the TSVs leading to chip select ports 144 and 174) was already in the prior art.



FIG. 1A            FIG. 1B

Ex. 2 at 3:49-50 ("FIGS. 1A and 1B schematically illustrate examples of existing memory package designs.").

Netlist also claims that Dr. Robins's technology background section about Samsung's own technology predating the '060 and '160 patents should be stricken because it "has a high risk of jury confusion, with the jury believing that earlier work by Samsung has some relevance to validity." Dkt. No. 213 at 2. Samsung disagrees there would be any jury confusion but, in any event, this information is relevant to other issues—such as the value of the '060 and '160 patents' technical contribution to the field, and what Samsung knew prior to the patents. Indeed, Samsung's own past technology is highly relevant for purposes of rebutting ▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇ Ex. 3 at ¶¶ 348, 352. This material should not be stricken.

Netlist further complains that Dr. Robins offers an opinion that "a POSITA would be motivated to do a certain thing in light of the undisclosed references." Dkt. No. 213 at 2. At each paragraph listed by Netlist, Dr. Robins discusses the well-known motivation to reduce the load placed on drivers in order to improve performance of a memory package. *See, e.g.*, Ex. 1 at ¶¶ 470, 476, 495, 500, 620, 657, 661, 678, 683, 789, 830, 850, 855, 1015, 1020, 1039, 1043, 1059, 1092, 1097, 1113, 1118, 1134, 1170, 1175, 1191, 1195, 1211. This motivation was clearly spelled out in Samsung's invalidity contentions. *See, e.g.*, Ex. 4 at 30-36. Netlist identifies no instance where Dr. Robins uses a background reference to gap-fill or advance a new invalidity theory because he simply does not. Moreover, the '060 and '160 patents themselves admit that the motivation to reduce load to improve performance was already well-known in the art. *See* Ex. 2 at 2:8-15 (stating in the context of prior art Figures 1A and 1B that "[g]enerally, a load exists on each of the drivers"; that "to drive a signal along a die interconnect, a driver typically

3

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

must be large enough to overcome the load on the driver"; and that "generally a larger driver not only consumes more space on the control die, but also consumes more power"). Netlist therefore fails to show any prejudice.

Netlist also complains that Dr. Robins "asserts that a certain concept would be obvious based on undisclosed disclosures." Dkt. No. 213 at 2. But Dr. Robins is permitted to opine on the background knowledge of a POSITA. *See Mobility Workx*, 2019 WL 5721814, at *21. Netlist again fails to identify any improper use of evidence such as gap-filling or advancing a new invalidity theory, again, because Dr. Robins does no such thing. Netlist's request should be denied.

### B. The JEDEC Presentations Properly Show Knowledge of POSITA

Netlist seeks to strike the JEDEC Presentations on the purported basis that they do not qualify as "printed publications." Dkt. No. 213 at 3; *see also* Dkt. No. 209. Because Samsung is not relying on the JEDEC Presentations as printed publications, Netlist's motion should be denied.

Dr. Robins relies on the JEDEC Presentations as evidence of public knowledge in this country under § 102(a). *See* Ex. 1 at ¶ 422 ("I understand that these JEDEC Presentations are prior art to the patents-in-suit under at least 35 U.S.C. §§ 102 and/or 103 and are evidence and examples of ***what would be known by a POSITA***." (emphasis added)); *see also id.* at ¶ 439 n.8, ¶ 635 n.12. Dr. Robins's reliance on the JEDEC Presentations as invalidating prior art on the ground that they show a POSITA's knowledge before the time of invention is proper. 35 U.S.C. § 102(a) (pre-AIA) ("A person shall be entitled to a patent unless — (a) the invention was known or used by others in this country . . . ."); *Coffin v. Ogden*, 85 U.S. 120, 124 (1873) ("The prior knowledge and use by a single person is sufficient" to invalidate a patent.); *UCB, Inc. v. Watson Lab'ys Inc.*, 927 F.3d 1272, 1289 (Fed. Cir. 2019) (stating that prior knowledge and use

4

invalidate a patent "because if the invention was known to or used by others in this country before the date of the patentee's invention, the later inventor has not contributed to the store of knowledge, and has no entitlement to a patent." (citation marks, brackets, and citation omitted)). Netlist's request to strike Dr. Robins's purported use of them as "printed publications" therefore misses the point and should be denied.

To the extent Netlist can be understood to argue that the knowledge shown in the JEDEC Presentations does not count as prior art because it was not publicly accessible, Netlist is incorrect. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1305 (Fed. Cir. 2006) (stating general requirement of public accessibility under § 102(a)). JEDEC participation is open to the public, and anyone interested can join and access documents pertaining to subject matter of interest, such as committee presentations. As Samsung's expert Mr. McAlexander has explained, JEDEC documents were "accessible to many (20+) key members of the interested public (*i.e.*, the JEDEC member companies in those committees) with the expectation their teachings would be freely disclosed to and discussed with others." Ex. 5 at ¶ 1175.

Further, in IPR No. IPR2022-0062, Julie Carlson, JEDEC's former Manager of Standards Publication and current consultant to JEDEC on the maintenance and publication of JEDEC documents and standards, Ex. 6 at ¶ 3, submitted a declaration stating that

> JEDEC membership is open to any company or organization, or one of its related entities, that manufactures electronic equipment or electronic-related products or related services. Anyone interested can join JEDEC online, at JEDEC.org. When joining, any interested person can join any committee . . . . The joining members would have access to documents available to the committees and subcommittees the members join . . . .

Ex. 6 at ¶ 5. Ms. Carlson confirmed that this was the case in the 2009-2010 timeframe as well—before the '060 and '160 patents were filed. Ex. 7 at 26:25-27:10 ("Q. Was that true in 2009/2010 as well? A. Yes, I believe it was."). Similarly, in the same IPR, John Halbert, Intel

5

Corp.'s former representative to JEDEC, *see* Ex. 8 at ¶ 9, testified that it is easy for any interested member of the public to join JEDEC, and that someone may join upon paying a fee:

```
 9      Q    If an interested member of the public wanted
10   to join JEDEC, how easy was it to become a member of
11   JEDEC?
12           MR. SIM:  Objection to form of the question,
13   leading, and it's outside the scope.
14           THE WITNESS:  Just bring your checkbook.
```

Ex. 9 at 43:9-14.

Finally, "[p]ublic accessibility is not limited to circumstances of free or academic distributions; 'commercial distribution' can qualify." *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 847 F. App'x 869, 878 (Fed. Cir. 2021) (citation omitted). Because the JEDEC Presentations have been accessible to the interested members of the public at all relevant times, the JEDEC Presentations support Samsung's invalidity theory based on prior public knowledge under § 102(a).

### C. Dr. Robins's Obviousness Opinion Based on the JEDEC Presentations Is Proper

Netlist seeks to bar Dr. Robins from offering any final conclusion on obviousness based on the JEDEC Presentations on the purported ground that he does not provide a "motivation to combine these documents internally." Dkt. No. 213 at 5. Netlist misunderstands Samsung's invalidity theory. Dr. Robins explains that the JEDEC Presentations are a collection of disclosures that represent the knowledge of a POSITA participating in the JEDEC meetings in the time leading up to the filing of the '060 and '160 patents. *See, e.g.*, Ex. 1 at ¶ 422, ¶ 439 n. 8.

Netlist cites a single case for the general requirement for a motivation to combine, Dkt. No. 213 at 5, but cites no authority for its position that Dr. Robins's treatment of the JEDEC Presentations (i.e., as a collection of presentations representing the knowledge of a POSITA or

6

JEDEC participant) is somehow improper. *See generally* Dkt. No. 213 at 4-5. Dr. Robins appropriately considers the presentations together as the knowledge of a participant in JEDEC's HBM-related standardization process, given the collaborative nature of the standard setting process—as Dr. Robins explains—in which presentations are considered and consensus is reached. *See* Ex. 1 at ¶¶ 422-435. The Court should deny Netlist's request.

        **D.**      **Dr. Robins's Analysis Regarding the Knowledge of a POSITA Is Proper**

Dr. Robins's opinions concerning the knowledge of a POSITA should not be stricken because they are somehow "tainted." *Contra* Dkt. No. 213 at 5-7. As discussed above, Dr. Robins is entitled to discuss the background of the technology and offer opinions on the knowledge of a POSITA, and Dr. Robins's analysis does not gap-fill any invalidity theories or otherwise improperly use any such evidence. *See supra* § I(A). As also discussed above, the Samsung may rely on the JEDEC Presentations to show knowledge of others in this country under 35 U.S.C. § 102(a) because any interested person who wanted to could have obtained the presentation and accessed the documents. *See supra* § I(B). The Court should not strike any of Dr. Robins's opinions concerning the knowledge of a POSITA.

        **E.**      **Dr. Robins Properly Compares Kim to the Claim Language**

Netlist argues that Dr. Robins's visual juxtapositions of Kim against Figure 2 of the '060 and '160 patents should be stricken on the ground that they purportedly fail to compare Kim to the claim language. Dkt. No. 213 at 7. But even a cursory review shows that Dr. Robins's visual analyses compare Kim to the claim language by indicating where various claims limitations are found in Kim's Figure 2. *See, e.g.*, Ex. 1 at ¶ 463. Further, Figure 2 best illustrates the basic structural elements of the asserted claim, given that, in Figure 3 (the only other candidate), "certain elements are omitted" "for ease of illustration and to simplify discussion." Ex. 2 at 10:12-13. Further, Netlist does not explain how Dr. Robins's analysis runs afoul of *Graham v.*

7

*John Deere Co. of Kansas City*, 383 U.S. 1 (1966), or *TI Group Automotive Systems (North America), Inc. v. VDO North America, L.L.C.*, 375 F.3d 1126 (Fed. Cir. 2004)—the only two cases Netlist cites.  Netlist has not shown that striking the identified paragraphs is appropriate.

### F. Dr. Robins's Opinions Concerning the "Array Die" Term Are Proper

Netlist appears to fault Samsung for not updating its invalidity contentions to state that, following the Court's construction, only DRAM dies can qualify as "array dies" under Netlist's interpretation.  Dkt. No. 213 at 10.  Netlist's argument provides no basis for striking the listed paragraphs.  Samsung did not need to update its invalidity contentions because they supported invalidity under both Samsung's and Netlist's proposed constructions of "array die," and Netlist does not show otherwise.  *See, e.g.*, Ex. 4 at 30-31 (citing U.S. Patent No. 9,160,349 ("Ma"), at 8:51-9:3, and U.S. Patent Application Publication 2010/0110745 ("Jeddeloh"), at ¶ 17, which both discuss stacking dies of various types of memory).

Dr. Robins explained in his expert report that at least the Ma and Jeddeloh references—both of which were disclosed in Samsung's invalidity contentions, *see, e.g.*, Ex. 4 at 30-31 (citing Ma, at 8:51-9:3 and Jeddeloh, at ¶ 17)—teach stacking of memory types other than DRAM.  *See, e.g.*, Ex. 1 at ¶ 478.  Further, even accepting Netlist's incorrect theory regarding "array die," Netlist does not argue that Dr. Robins relied on any particular DRAM circuits that the applicant disclaimed, and so Netlist fails to show that Dr. Robins's report is deficient by relying on the wrong types of DRAM circuits.  The mere fact that Dr. Robins argued both positions in the alternative does not provide a reason to strike those arguments.  The Court should deny Netlist's request.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### G. Dr. Robins's Opinions Concerning a POSITA's Use of Memory Layers Other Than DRAM Are Proper

Netlist seeks to strike Dr. Robins's assertion that "a POSITA would have known to stack memory layers other than DRAM using TSVs, and would have found it obvious to do so." Dkt. No. 213 at 11. According to Netlist, this argument has "no support in Samsung's invalidity contentions." Dkt. No. 213 at 11. Netlist ignores that Samsung's invalidity contentions disclose Ma's teaching that "[t]he memory die 500 may include an array 502 of memory cells, which may be, for example, DRAM memory cells, SRAM memory cells, flash memory cells, or some other types of memory cells." *See, e.g.*, Ex. 4 at 30-31 (citing Ma, at 8:51-9:3). Samsung's invalidity contentions also disclose Jeddeloh's teaching that "[t]he memory arrays 203 are not limited to any particular memory technology and may include dynamic random-access memory (DRAM), static random access memory (SRAM), flash memory, etc." *See, e.g.*, Ex. 4 at 30-31 (citing Jeddeloh, at ¶ 17). Netlist's request should be denied.

### H. Robins's Opinions Concerning "Chip Select Signal" Are Proper

Netlist seeks to strike Dr. Robins's opinions concerning "chip select signal" on the purported ground that Dr. Robins "does not explain in his report why the signals he identifies in his elected prior art references are chip select signals that select *only one array die at a time*." Dkt. No. 213 at 12-13 (emphasis original). However, in the context of discussing the admitted prior art as a basis for invalidity, Dr. Robins quotes the '060 and '160 patents' explanation that each chip select signal selects a single "corresponding" and "respective" array die. *See* Ex. 1 at ¶ 484. Dr. Robins also explains that, in the Kim reference, "[t]he chip select signals CS0 and CS1 are the signals for selecting C1 or C2 [chips], *respectively,*" and thus each single corresponds to a single die. Ex. 1 at ¶ 421 (emphasis added). Netlist provides no reason to strike

Dr. Robins's opinions concerning "chip select signals," and therefore the Court should deny its request.

## II. CONCLUSION

For the foregoing reasons, the Court should deny Netlist's motion in its entirety.

Date: February 17, 2023

Respectfully submitted,

/s/ Francis J. Albert

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
LAD@fr.com
Brian Livedalen
D.C. Bar No. 1002699
livedalen@fr.com
Daniel A. Tishman
D.C. Bar No. 1013923
tishman@fr.com
Matthew Mosteller
CA Bar No. 324808
mosteller@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Katherine Reardon
NY Bar No. 5196910
kreardon@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Matthew Colvin
Texas Bar No. 24087331
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Karolina Jesien
New York Bar No. KJ7292
FISH & RICHARDSON P.C.
Times Square Tower
20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

Alice J. Ahn
CA 271399 / DC 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Ste. 5400

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile: (415) 591-6091

Brian R. Nester
D.C. Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202)-662-6000

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 17, 2023.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

*/s/ Francis J. Albert*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Francis J. Albert*