FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.<br><br>     Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>and SAMSUNG SEMICONDUCTOR, INC.,<br><br>     Defendants. | Civil Case No. 2:21cv463-JRG<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OPPOSITION TO NETLIST'S MOTION TO STRIKE
<u>PORTIONS OF THE REBUTTAL EXPERT REPORT OF GABRIEL ROBINS (Dkt. 210)</u>**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **TABLE OF CONTENTS**

I.      ARGUMENT ..................................................................................................... 2

    A.      Dr. Robins's Application of Plain Meaning of the Claims, Including Construed Claims, Is Proper ....................................................................................... 2

    B.      Dr. Robins Does Not Improperly Compare the Accused Products to Embodiments of the '060 and '160 Patents .................................................................. 7

    C.      Dr. Robins's Opinions on Prior Art Are Relevant to Alleged Technical Benefits of the Asserted Patents ............................................................................... 7

    D.      Dr. Robins Does Not Offer Non-Infringing Alternatives ..................................... 10

    E.      Netlist's Request To Strike Dr. Robins's Opinions Regarding the "Array Die" Term Is Baseless ........................................................................................ 12

    F.      Dr. Robins Properly Relied on Party Admissions ................................................ 15

II.     CONCLUSION .................................................................................................. 15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACS Hospital Systems, Inc. v. Montefiore Hospital*
    732 F.2d 1572, 1578 (Fed. Cir. 1984)......................................................................................8

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006).................................................................................................5

*Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*,
    214 F.3d 1302 (Fed. Cir. 2000)...............................................................................................4

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)............................................................................8, 9, 10, 11

*Google Inc. v. Beneficial Innovations, Inc.*,
    No. 211CV00229JRGRSP, 2014 WL 4215402 (E.D. Tex. Aug. 22, 2014)...........................15

*In re Kahn*,
    441 F.3d 977 (Fed. Cir. 2006).................................................................................................8

*Maxell, Ltd. v. Apple Inc.*,
    No. 5:19-CV-00036-RWS, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) .............................2

*Music Choice v. Stingray Digital Group. Inc.*,
    No. 2:16-CV-00586-JRG-RSP, 2019 WL 8110069 (E.D. Tex. Nov. 19, 2019) ......................2

*Ultravision Techs., LLC v. GoVision LLC*
    No. 2:18-CV-00100-JRG-RSP, 2021 WL 2144788 (E.D. Tex. May 26, 2021)......................2

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)...................................................................................................................4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Netlist employs a series of tactics to try to exclude Dr. Robins's reliable rebuttals to Dr. Brogioli's own problematic analyses, but none of Netlist's tactics provides any reason to exclude Dr. Robins's opinions.  For example, Dr. Brogioli skews the prosecution history in Netlist's favor in contravention of the Court's claim construction order with respect to the term "array die."  To protect Dr. Brogioli from criticism, Netlist labels Dr. Robins's sound response as an improper claim construction opinion.  Netlist also calls other of Dr. Robins's opinions improper claim construction where Netlist's infringement theory is weak and Netlist seeks to avoid any response.  But Netlist shows no instance where Dr. Robins strays from the plain meaning of the claim language, and Dr. Robins's report should not be stricken simply because Dr. Robins states that his plain meaning application of the claim language is also consistent with the express teachings of the '060 and '160 patents.

Netlist also seeks to exclude Dr. Robins's response to Dr. Brogioli's bold ***and previously undisclosed*** opinion that the '060 and '160 patents provided such a big technical contribution to the art that they have been "critical" to Samsung's ability to market HBM products, which forms the basis of Netlist's damages contentions.  Dr. Robins responds to that opinion by reliably surveying what technologies already existed in the prior art and compares them to the alleged benefits '060 and '160 patents propounded by Dr. Brogioli.  This material is relevant for purposes of evaluating the technical benefits of the '060 and '160 patents, is proper rebuttal to Netlist's damages assertions, and Netlist's complaint that it is "irrelevant to infringement" is without merit.

The Court should deny Netlist's motion.  At most, Netlist's criticisms of the expert go to the weight of the testimony, which can be probed on cross-examination—not its admissibility.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.     ARGUMENT

### A.     Dr. Robins's Application of Plain Meaning of the Claims, Including Construed Claims, Is Proper

In an effort to detract from its own failures to apply the plain meaning of the claims, Netlist defensively attacks Dr. Robbins for following the Court's required practice of using the plain meaning of the claims in his analysis.  Dr. Robins's opinions are plainly not belated or erroneous claim construction opinions.

As an initial matter, Netlist's cited cases are inapposite.  In *Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *23 (E.D. Tex. Nov. 11, 2020), Apple proposed a narrow construction for a claim phrase, withdrew this construction from its P.R. 4-1 disclosures, but then raised it later in its expert report.  Under these circumstances, the Court found that Apple had "withheld" its narrow claim construction and forbid the expert from advancing the construction.  *Maxell*, 2020 WL 8269548, at *23.  In *Ultravision Techs., LLC v. GoVision LLC*, the Court struck an expert's opinion because it "interprets the Court's claim construction for 'modular display panel' in a way that reads out the patent's preferred embodiment and directly contradicts the Court's claim construction analysis."  No. 2:18-CV-00100-JRG-RSP, 2021 WL 2144788, at *5 (E.D. Tex. May 26, 2021).

Netlist also cites *Music Choice v. Stingray Digital Group. Inc.*, but it does not address the propriety of an expert's application of claim language.  No. 2:16-CV-00586-JRG-RSP, 2019 WL 8110069, at *3 (E.D. Tex. Nov. 19, 2019).  There, the defendant moved for summary judgment and asked the Court to conduct "supplemental claim construction at the summary judgment stage."  Netlist is not seeking on summary judgment to have this Court supplement Judge Payne's claim construction.  Indeed, Netlist withdrew its objections to Judge Payne's construction.  Dkt. No. 194.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

As discussed further below, none of these cases apply here, where Dr. Robins faithfully applies the plain meaning of the claim language, and Samsung did not withhold any claim constructions until expert discovery.

**Paragraphs 269-270, 276, 416-419 ("not in electrical communication")**.  Netlist seeks to strike Dr. Robins's opinions on the phrase "not in electrical communication" by characterizing it as improper claim construction.  But as Netlist acknowledges, Dr. Robins explains that he applies plain language of that phrase as understood by a person of ordinary skill in the art ("POSITA").  Dkt. No. 210 at 1 (citing Mot. Ex. 1, at ¶ 415).  The fact that Dr. Robins articulates why understanding is also ***consistent*** with the express teachings of the '060 and '160 patents does not render Dr. Robins's opinions unreliable or different from the plain meaning.

Importantly, Netlist is the one who refuses to apply the plain meaning and instead seeks to read in limitations from the specification.  Specifically, Dr. Brogioli testified at his deposition that, in his view, ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████   *See* Ex. 1 at 166:2-12.  But the claim language nowhere mentions receivers and drivers on the core die or information exchange.  Netlist cannot read in limitations and then seek to strike Dr. Robins's analysis—which does not—and blame Dr. Robins for applying the plain meaning in his analysis.

Similarly, the fact that Dr. Robins explained that "die interconnect" encompasses other types of interconnection beyond TSVs is not improper claim construction—it is the proper understanding of a POSITA at the time of the purported invention.  Indeed, as an example, the independent claims of the '060 patent recite "die interconnects," whereas several dependent claims state more specifically that those die interconnects are TSVs.  *See, e.g.*, Ex. 2 at cls. 14,

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

25.  Netlist does not show how Dr. Robins strays from the plain meaning of the claim language—nor does Netlist show that Dr. Robins's discussion of the asserted patents' teachings is improper.  For these reasons, the Court should deny Netlist's request.

**Paragraphs 244-245, 281-282, 457-459 ("[first / second] driver"; "[first / second] driver size").**  Netlist seeks to strike Dr. Robins's opinions on the "first driver size" and "second driver size" by arguing that Dr. Robins's analysis is improper claim construction.  Netlist is incorrect, and the Court should deny Netlist's request.

Claim 1 of the '060 patent requires a "first driver size" and "second driver size," "the second driver size being different from the first driver size."  Ex. 2 at claim 1.  Neither party proposed a construction of "first driver size" and "second driver size" and therefore the plain meaning controls.  That is the same plain meaning that Dr. Robins applies, i.e., the requirement of two drivers that can be different sizes.  Dr. Robins explained his common-sense understanding of the claim language that, while the driver sizes do not necessary have to be different from each other at all times, there must be at least "the possibility" that the two driver sizes are different at some point.  *See* Ex. 3 at ¶ 459.  Dr. Robins pointed out that his understanding of the plain meaning has the added benefit that it is consistent with the teachings of the '060 and '160 patents.  Ex. 3 ¶¶ 244-245, 281-282, 457-458.

After learning that ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████  *See* Ex. 4 at ¶ 297.  This understanding is not the plain meaning because it renders null the whole notion of having two driver sizes.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention . . . ."); *Elekta*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (rejecting a proposed claim construction that would render language superfluous); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim." (collecting cases)).

The Court should not permit Netlist to advance a non-plain language interpretation of "first driver size" and "second driver size" while precluding Samsung from rebutting that nonsensical interpretation.  Nor should the Court fault Dr. Robins for articulating the reasoning for his plain meaning understanding—including the fact that it is consistent with the '060 and '160 patents themselves.  The Court should deny Netlist's request.

**Paragraph 469 ("selected in consideration of a load")**.  Netlist seeks to strike Dr. Robins's plain-meaning understanding of the limitation that the numbers of array dies in groups are "selected in consideration of a load," which appears in claim 7 of the '060 patent, on the purported ground that Dr. Robins engages in improper claim construction.  Netlist is incorrect.

Tracking the claim language, Dr. Robins reliably states that "POSITA would understand this limitation to be contemplating a determination of the numbers of the array dies based on the respective loads placed on the respective die interconnects." Ex. 3 at ¶ 469.  Dr. Robins pointed out that this claim language has the added benefit that it is consistent with the specifications of the '060 and '160 patents.  *Id.*

In contrast, Netlist's infringement theory regarding this claim language is bizarre, given that ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ *See* Ex. 4 at ¶ 252 ████████

████████████████████████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

███████████████████████████████████████████████████████████

Dr. Brogioli offers a one-sentence infringement theory that lacks any cited support and that

appears to involve a characterization of Samsung's mental state when designing the accused

HBM products: ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████  *See* Ex. 4 at ¶ 252.  Netlist's attempt

to exclude Dr. Robins's application of the plain language is a desperate attempt to avoid any

rebuttal of its already baseless infringement theory.  The Court should deny Netlist's request.

**Paragraphs 279-280 ("chip select signal")**.  Netlist seeks to exclude Dr. Robins's

opinion regarding a POSITA's understanding of the term "chip select signal."  Dkt. No. 210 at 4.

Netlist provides no reason to exclude paragraphs 279-280.

During claim construction, the Court rejected Netlist's argument that "one chip select

signal could be used for more than one array die."  *See* Dkt. No. 114 at 33.  The Court adopted

Samsung's proposal (plain meaning) because it agreed with Samsung that "[e]ach of the

independent claims ties the recited 'chip select signals' and 'chip select conduits' to

'corresponding' or 'respective' array dies."  *Id.* at 33.  Consistent with the Court's claim

construction order, Dr. Robins opines—based on the same disclosures in the '060 and '160

patent considered by the Court during claim construction—that "a POSITA would understand

that a chip select signal operates by selecting or enabling a respective array die for data transfer."

Ex. 3 at ¶ 279.  Netlist does not show how Dr. Robins's opinion is in any way inconsistent with

the Court's construction—and it is not.  Netlist's request is a ploy to prevent any rebuttal to its

infringement theory relying on an ████████████████████████████████

████████████████████.  *See, e.g.*, Ex. 4 at ¶¶ 267-269.  The Court should

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

deny Netlist's request.

### B. Dr. Robins Does Not Improperly Compare the Accused Products to Embodiments of the '060 and '160 Patents

Netlist seeks to exclude Dr. Robins's rebuttal to Netlist's infringement theory regarding

the terms "first driver size" and "second driver size," which relies on a ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Netlist argues that Dr. Robins's discussion of

the specification of the '060 and '160 patent renders Dr. Robins's analysis unreliable.  To the

contrary, Dr. Robins applies the plain meaning of the claim language as understood by a

POSITA and shows how that plain meaning is consistent with the '060 and '160 patents.  The

Court should deny Netlist's request.

Even though the relevant claims refer to "*data* conduits," ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to meet the claim language requiring one of the two

driver sizes.  Ex. 3 at ¶¶ 461, 463.  Netlist has no other choice, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮   *See* Ex. 4 at ¶ 252.  Netlist understandably seeks to avoid Dr. Robins's reliable

rebuttal of Netlist's theory, but Netlist has failed to show that his analysis amounts to improper

claim construction or diverges from the plain meaning of the claim language.  The Court should

deny Netlist's request.

### C. Dr. Robins's Opinions on Prior Art Are Relevant to Alleged Technical Benefits of the Asserted Patents

Netlist improperly seeks to exclude Dr. Robins's reliable analysis responding to Dr.

Brogioli's overblown assessment of the "technical benefits" of the '060 and '160 patents.  Netlist

does this to take attention away from its own failure to disclose the basis for its damages theories

in this case.  *See* Dkt. No. 202 at 10-13.  For that reason, Samsung has moved to strike those

portions of Netlist's expert's undisclosed damages theories.  *Id.*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Specifically, Dr. Brogioli opines that the '060 and '160 patents are "critical" to the success of Samsung's HBM, and that Samsung "would not be technically competitive" without them. *See, e.g.*, Ex. 4 at ¶¶ 348, 352, 359.  Dr. Robins responds in his rebuttal report reliably—by surveying technology that existed before the '060 and '160 in an effort to more realistically ascertain the technical contribution (if any) of the '060 and '160 patents.  Dr. Robins's analysis on this score is relevant to the issue of the technical benefits of the '060 and '160 patents.  *See, e.g.*, *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing factor "9.  The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results"; and factor "11.  The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.").  Netlist's complaint that it is "not relevant to infringement"—even if assumed correct—is no reason to exclude this material.

Even entertaining Netlist's argument that the identified portions of the report should be stricken as irrelevant to infringement, Netlist cites no case law in support.  Netlist cites selectively quotes *ACS Hospital Systems, Inc. v. Montefiore Hospital*, in which the court stated: "Infringement is determined on the basis of the claims, not on the basis of a ***comparison with the patentee's commercial embodiment of the claimed invention***."  732 F.2d 1572, 1578 (Fed. Cir. 1984) (emphasis added).  Netlist does not identify any such comparison here.  Netlist also provides a quote regarding obviousness from *In re Kahn*, 441 F.3d 977, 986 (Fed. Cir. 2006), but Netlist does not explain how this case is relevant here.  Netlist has not carried its burden of showing that striking the identified portions of Dr. Robins's rebuttal report is warranted.

**Paragraphs 52-63, 67 (Chip Stacking and TSVs)**.  Netlist here seeks to exclude Dr. Robins's discussion of historic uses of TSVs and chip stacking.  *See* Ex. 3 at ¶¶ 52-63, 67; *see*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*also* Dkt. No. 210 at 5-6.  Netlist argues that these paragraphs should be stricken because they are "irrelevant to an infringement analysis."  *Id.* at 6.  The Court should reject Netlist's argument, because these passages are relevant for other reasons—including Dr. Brogioli's assessment of the technical contribution of the '060 and '160 patents for damages purposes.

**Paragraphs 113-130 (Production Yield and Device Failures)**.  Netlist seeks to exclude Dr. Robins's discussion of the historic development of test and repair technology as way to deal with device failures.  *See* Ex. 3 at ¶¶ 113-130.  Netlist again states that these paragraphs are "irrelevant to infringement."  Dkt. No. 210 at 6.  Netlist provides no reason to strike these paragraphs, and in any event they are relevant to the technical value (if any) of the '060 and '160.  *See, e.g.*, Ex. 3 at ¶ 496 (Dr. Robins's rebuttal report discussing test and repair in the context of rebutting Dr. Brogioli's technical benefits analysis).

**Paragraphs 302-317, 324-340 (History of Samsung's Technology)**.  Netlist here seeks to exclude Dr. Robins's discussion of Samsung's development of the accused technology starting in at least 2006.  Netlist faults Dr. Robins for not providing an "element-by-element analysis to establish that Samsung products practice" patents identified and surveyed by Dr. Robins.  But that is a straw-man requirement, and Netlist notably cites no support for it.  Dr. Robins need not offer an opinion that Samsung's accused HBM products ***actually practice claims*** of a third-party's patents for those patents to be relevant to the historic technical contribution made by the '060 and '160 patents compared to what was previously known in the art.  *See Georgia-Pacific*, 318 F. Supp. at 1120.  Dr. Robins properly identifies them as relevant baseline technology for purposes of evaluating their technical contribution, regardless of whether Samsung ever practiced them.  Because neither Samsung nor Dr. Robins maintain that the third-party patents "cover" the accused HBM products, Samsung was not obligated to identify them in response to

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Netlist's Interrogatory No. 15.

The Court should not strike any of ¶¶ 52-63, 67, 113-130, 302-317, 324-240.

### D.      Dr. Robins Does Not Offer Non-Infringing Alternatives

Netlist next seeks to exclude Dr. Robins's response to Dr. Brogioli's technical benefits analysis by framing Dr. Robins's cited materials as "non-infringing alternatives" and arguing that they should have been identified in response to Netlist's interrogatory on that issue.  *See* Dkt. No. 210 at 7-9.  However, Dr. Robins never identifies anything as a non-infringing alternative.  Nor does he opine on whether the accused HBM products practice any claims of any patents discussed in the identified paragraphs—nor is he obligated to offer such an opinion. Indeed, Netlist points to no case requiring Dr. Robins to take a firm position.  *See id.* at 7-9.

Dr. Robins's analysis is offered for purposes of measuring the technical contribution (if any) of the '060 and '160 patent in comparison to what came before, and is in direct rebuttal to Dr. Brogioli's failure to apportion any alleged technical benefits attributable to the patents.  *See* Ex. 3 at § VIII.  As an example, Dr. Brogioli takes the extreme position that "without the benefit of the '060/'160's inventions, Samsung would not be technically competitive in applications that require higher capacity memory," Ex. 4 at ¶ 359, yet he admits that he does not analyze key features of the ███████████████████████████████████████████ ███████. Ex. 1 at 234:5-20.  Dr. Brogioli bases his opinion on Samsung's use of a ██████████████████████████ but ignores that such structures were known well before the priority date of the '060 and '160 patents.  If Dr. Brogioli is allowed to make such claims, then Dr. Robins should be permitted to offer a rebuttal.

The fact that Dr. Robins does not offer an infringement or non-infringement opinion respecting the prior art patents discussed in the cited portions of Dr. Robins's reports is irrelevant and does not render his analysis unreliable.  *See Georgia-Pacific*, 318 F. Supp. at 1120.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**Paragraphs 170-175 (Kang)**.  Netlist contends that Dr. Robins's discussion at paragraphs 170-175 is somehow improper because Dr. Robins states that the "Kang / Samsung" patent "discloses [an] HBM invention."  Because HBM is indisputably a broader concept than the '060 and '160 patents and accused HBM products in this case, Netlist's irrelevant assertion is no reason to strike Dr. Robins's analysis.  *See generally* Ex. 5 (JEDEC JESD235 standard titled "High Bandwidth Memory DRAM").  Further, the fact that there is a prior art patent, licensed to Samsung, that discloses HBM is relevant to the alleged technical benefits attributable to the '060 and '160 patents.

**Paragraphs 176-227 (Riho/Elpida)**.  Netlist argues that Dr. Robins's description of the patents disclosed at paragraph 176-227 is somehow improper because the patents teach stacking using TSVs.  Netlist provides no reason to strike these paragraphs.  They are relevant to rebutting Dr. Brogioli's opinion on the "critical" technical importance of the '060 and '160 patents and should not be stricken.  *See Georgia-Pacific*, 318 F. Supp. at 1120.

**Paragraphs 302-317 (Samsung)**.  Netlist argues that Dr. Robins's overview of Samsung's early HBM technologies at paragraphs 302-317 is improper because it involves "unelected references."  Dkt. No. 210 at 8.  Netlist provides no basis for striking Dr. Robins's discussion.  He should be permitted to discuss these technologies for purposes of evaluating the technical contribution of the '060 and '160 patents.  *Georgia-Pacific*, 318 F. Supp. at 1120.

**Paragraphs 324-340 (Elpida)**.  Netlist lastly contends that Dr. Robins's discussion at paragraphs 324-340 relating to the Longitude patent portfolio are improper because it involves "unelected prior art references ████████████████████████████  Dkt. No. 210 at 8.  Netlist contends that these paragraphs should be stricken "to the extent Dr. Robins contends that the references discussed therein practice the accused products, and are NIAs to the

11

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

patents-in-suit." *Id.*  But because Dr. Robins takes no position on the accused HBM products' infringement of these patents, Netlist provides no basis for striking these paragraphs.  Because Dr. Brogioli opines ███████████████████████████████████ a benefit of the '060 and '160 patents, *see, e.g.*, Ex. 4 at ¶ 320, Dr. Robins's should be able to respond to that argument by showing where such structures were used in the prior art.

### E.    Netlist's Request To Strike Dr. Robins's Opinions Regarding the "Array Die" Term Is Baseless

As discussed below, Netlist provides no reason to strike Dr. Robins's analysis of Rajan or the term "array die."  This request is divorced from reality and is yet another attempt to muddy the water made crystal clear by the Court's claim construction order.  *See* Dkt. No. 114 at 31-32; Ex. 6 at ¶ 455.  Netlist's motion is nothing more than an attempt to hide the fact that its own expert failed to apply the plain meaning of the Court's claim construction.  Ex. 1 at 129:7-10 (Q: What is the plain and ordinary meaning of the term "DRAM circuit"? A: I don't recall discussing the plain and ordinary meaning of that phrase . . . .").  To the extent Netlist ever believed the Court's construction should be changed, it withdrew its objections.  Dkt. No. 194.

**Paragraphs 154-169, 252, 286-300**.  Netlist attempts to distance itself from the plain meaning of the Court's construction of "array die" by re-litigating issues already decided by the Court's claim construction order, Dkt. No. 114.  Dr. Robins properly points out this error and shows how the plain and ordinary meaning of "DRAM circuit" is supported by the record.

First, Netlist incorrectly states that Rajan "makes clear that its structure of stacked dies with wirebonds connecting the dies is generic to any memory type."  Dkt. No. 210 at 11.  Rajan never mentions wire bonding*, see generally* Dkt. No. 210-11, and the '060 and '160 patents are clear that "the memory package 200 can include any type of memory package," Ex. 2 at 5:1-5.

Second, Netlist faults Dr. Robins for allegedly "not apply[ing] the Court's ruling that the

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

disclaimer was a structural disclaimer that was limited to Rajan's 'DRAM circuits.'"  Dkt. No. 210 at 12.  But that is not in Court's claim construction order, *see* Dkt. No. 114 at 31-32, and in fact, the Court squarely rejected Netlist's argument that the disclaimer was limited to Rajan's DRAM circuits, *see* Dkt. No. 76 at 28-29 (Netlist's claim construction brief arguing "disclaimer, if any, would be limited to Rajan's DRAM circuits 206A-D as stacked by Rajan."); Dkt. No. 114 at 31-32 (Order construing "array die" as "array die that is different from a DRAM circuit" and explaining that "Netlist did not explain the structural difference between array dies and DRAM circuits, or even how they might be stacked differently").  Intentionally or not, Netlist gets the Court's construction of "array die" exactly backwards.  Netlist identifies no place where Dr. Robins's analysis is inconsistent with the plain language of the Court's construction of "array die," which Dr. Brogioli admittedly did not even analyze.  Ex. 1 at 129:7-10.

**Paragraphs 258, 385**.  In its improper attempt to relitigate claim construction issues through its expert, which Samsung has moved to strike at Dkt. No. 202, Dr. Brogioli devotes 15 pages analyzing the prosecution history of the '060 patent.  Ex. 4 at 15-34.  With its motion, Netlist seeks to bar Dr. Robins's sound rebuttal to Dr. Brogioli's own characterization of the prosecution history, thus unfairly skewing the presentation to the jury.  Specifically, Dr. Brogioli improperly offered an opinion interpreting the prosecution history for a term that was already construed—and indeed even opined about the examiner's motivation for rejecting the claims: "A [POSITA] would understand that the nature of the memory cell within an array die had nothing to do with and formed no basis for the rejection of the Netlist's pending claims over Rajan or for the reason to distinguish over Rajan."  *See* Ex. 3 at ¶ 257; Ex. 4 at ¶ 72.  Despite Dr. Brogioli's own effort to characterize the prosecution history, Netlist accuses Dr. Robins of engaging in "improper claim construction."  Dkt. No. 210 at 13-14.  In reality, Dr. Robins offers a decisive

13

and reliable rebuttal of Dr. Brogioli's interpretation of the prosecution history when he explains, *inter alia*, that "[i]n context of Rajan's broad descriptions of the types of DRAMs and physical arrangements that could be used, it would make no sense for the inventor of the '060 patent to believe that Rajan only dealt with a specific type of DRAM circuit."  Ex. 3 at ¶ 258.

Further, in paragraph 385, Dr. Robins also reliably explains that "[t]he '060 and '160 patents' specifications state that the types of memory can include DRAM as well as flash, among other types," and "[i]f the inventor intended to distinguish Rajan on the basis of wirebonding, then as a technological matter he would have done so without distinguishing on the basis that Rajan's broadly-defined DRAM circuits are 'different from array dies.'"  Ex. 3 at ¶ 385.  This Court should not allow Netlist to use its experts to offer claim construction opinions and then exclude any response.

Dr. Brogioli should not be permitted to offer an opinion that contradicts the plain meaning of the Court's construction of "array die."  But if he does, then Dr. Robins should be permitted to respond.  The Court should deny Netlist's request.

**Paragraphs 256, 389**.  Netlist's request to strike paragraphs 256 and 389 is based on Netlist's incorrect understanding of the Court's claim construction order.  The Court found that "array die" should be construed as "array die that is different from a DRAM circuit," yet Netlist continues to ignore the plain language of the Court's claim construction its rejection of Netlist's argument that the applicant's disclaimer was "limited to Rajan's DRAM circuits 206A-D as stacked by Rajan."  Dkt. No. 76 at 28-29; Dkt. No. 114 at 31-32.  Even if Netlist's argument were a permissible interpretation of the record (it is not and it should not be allowed to be presented to the jury), the Court should not allow Dr. Brogioli to opine on the proper interpretation of the prosecution history only to deny Dr. Robins the opportunity to respond.  The

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Court should deny Netlist's request.

  **Paragraphs 377 & p.261 n.10**.  Netlist seeks to prevent Dr. Robins from applying the plain meaning of the Court's construction of "array die" as "array die that is different from a DRAM circuit."  Dkt. No. 114 at 31-32.  Netlist complains that Dr. Robins—at this particular paragraph—"cites nothing to support his opinion" that the accused HBM products contain DRAM core dies that logically cannot be "different from a DRAM circuit."  Dkt. No. 210 at 15.  But Netlist ignores that, in the immediately following paragraphs (paragraphs 378-409), Dr. Robins cites a host of evidence—including datasheets, other Samsung documents, testimony, and Netlist's own party admissions—supporting his opinion.  *See Google Inc. v. Beneficial Innovations, Inc.*, No. 211CV00229JRGRSP, 2014 WL 4215402, at *9 (E.D. Tex. Aug. 22, 2014) ("Beneficial's complaint and infringement contentions are both party admissions . . . .").  Dr. Robins's opinion is far from baseless.  The Court should Netlist's attempt to exclude Dr. Robins's straightforward application of the Court's construction of "array die."

  **F.**  **Dr. Robins Properly Relied on Party Admissions**

  Netlist cites no authority—or any reasoned explanation—supporting its argument that it is improper for Dr. Robins to rely on Netlist's party admissions in the form of Netlist's own complaint, infringement contentions, and briefs.  *See Google*, 2014 WL 4215402, at *9 (positions taken by a party are party admissions).  After the Court's construction of "array die" as "array die that is different from a DRAM circuit," Netlist understandably wants to escape from its own consistent admissions in this case that the accused HBM products have DRAM core dies.  That desire alone is no basis for excluding Netlist's admissions.  The Court should deny Netlist's request.

  **II.**  **CONCLUSION**

  For the foregoing reasons, the Court should deny Netlist's Motion.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Date: February 17, 2023

Respectfully submitted,

*/s/ Francis J. Albert*

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Lauren A. Degnan
D.C. Bar No. 452421
LAD@fr.com
Brian Livedalen
D.C. Bar No. 1002699
livedalen@fr.com
Daniel A. Tishman
D.C. Bar No. 1013923
tishman@fr.com
Matthew Mosteller
CA Bar No. 324808
mosteller@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Katherine Reardon
NY Bar No. 5196910
kreardon@fr.com
Sara C. Fish
GA Bar No. 873853
sfish@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:  (404) 892-5002

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130

16

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Matthew Colvin
Texas Bar No. 24087331
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

Karolina Jesien
New York Bar No. KJ7292
FISH & RICHARDSON P.C.
Times Square Tower
20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile:  (212) 258-2291

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

Alice J. Ahn
CA 271399 / DC 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Ste. 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile: (415) 591-6091

Brian R. Nester
D.C. Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP
One City Center

17

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202)-662-6000

*Attorneys for Defendants Samsung Electronics
Co., Ltd.; Samsung Electronics America, Inc.; and
Samsung Semiconductor, Inc.*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 17, 2023.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

*/s/ Francis J. Albert*

## **CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Francis J. Albert*

19