UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., <br><br> Defendants. | Case No. 2:21-CV-463-JRG <br><br> JURY TRIAL DEMANDED <br><br> **Filed Under Seal** |

# NETLIST INC.'S SUR-REPLY IN OPPOSITION TO SAMSUNG'S MOTION FOR SUMMARY JUDGMENT THAT ALL ACCUSED PRODUCTS SOLD BEFORE JULY 15, 2020 ARE LICENSED

**TABLE OF CONTENTS**

**Page**

I.    None of Netlist's Arguments Are Untimely ................................................................... 1

II.    Samsung's Material Breach Absolved Netlist Of Its Duty Not To Sue ....................... 1

III.    There Is a Dispute of Material Fact Over Whether HBMs Are "Foundry Products" ................. 3

IV.    Samsung Has Not Shown That The License Covers The Accused Products .............................. 4

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ASARCO, L.L.C. v. Montana Res., Inc.*,
    858 F.3d 949 (5th Cir. 2017) ................................................................................................... 3

*Bradberry v. Jefferson Cnty., Tex.*,
    732 F.3d 540 (5th Cir. 2013) ................................................................................................... 2

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*,
    525 U.S. 155 (1999) ................................................................................................................ 6

*Haverda v. Hays Cnty.*,
    723 F.3d 586 (5th Cir. 2013) ................................................................................................... 4

*Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana*,
    347 F.3d 589 (5th Cir. 2003) ................................................................................................... 6

*Jethroe v. Omnova Sols., Inc.*,
    412 F.3d 598 (5th Cir. 2005) ................................................................................................... 2

*Prime Choice Servs., Inc. v. Schneider Logistics Transloading & Distribution, Inc.*,
    2015 WL 7015268 (E.D. Wis. Nov. 12, 2015) ....................................................................... 2

*Sell v. Zylinski*,
    136 A.D.2d 924 (App. Div. 4th Dept. 1988) .......................................................................... 2

**Other Authorities**

Restatement (Second) of Contracts § 237 ...................................................................................... 2

I.  **None of Netlist's Arguments Are Untimely**

Netlist disclosed its position in an interrogatory served during fact discovery and before Samsung deposed its witnesses. **First**, Netlist noted the termination: ███████████

███████████

Ex. 1 at 8.  **Second**, Netlist ███████████

███████████

███████████ *Id*.  **Third**, Netlist noted that ███████████

███████████ *Id*. This included ███████████

███████████

███████████ *Id*. (citation omitted).

**Fourth**, in response to a separate interrogatory, Netlist noted that ███████████

███████████

███████████ Ex. 3 at 27. Indeed, Samsung extensively deposed Netlist's corporate representative on all of these issues. Ex. 2 (Hong Dep. Tr.) at 64:23-75:13 ███████████

███████████

███████████

███████████

███████████ ).

II.  **Samsung's Material Breach Absolved Netlist Of Its Duty Not To Sue**

Samsung does not dispute: (1) the CDCA found that Samsung materially breached the JDLA in 2017 or (2) "a material breach excuses performance" under New York law. Reply at 6. This is dispositive. Samsung's material breach in 2017 thus absolved Netlist from this obligation.

Samsung's sole response to this is that "Netlist's argument that the JDLA was not in force before its termination on July 15, 2020 contradicts its own prior representations" to the CDCA and this Court regarding the date of termination. Reply at 5. This misses the point. Netlist does not dispute

- 1 -

that it affirmatively terminated the JDLA on July 15, 2020. Indeed, Netlist has moved for summary judgment on this exact issue. Dkt. 201. But this does not mean that Samsung is entitled to license for all products sold prior to that date under New York law, which governs the contract. On the contrary, Samsung's material breach of the JDLA absolved Netlist of its duty not to sue **even before** the termination of the JDLA was effectuated. *Sell v. Zylinski*, 136 A.D.2d 924, 926, (App. Div. 4th Dept. 1988) ("The seller's breach, coupled with the failure of the mortgage contingency, excused the buyers from further performance. . . . The buyers' failure to give written notice of cancellation before the seller gave such notice does not entitle the seller to enforce the contract . . . ."); *see also Prime Choice Servs., Inc. v. Schneider Logistics Transloading & Dist., Inc.*, 2015 WL 7015268, at *5 (E.D. Wis. Nov. 12, 2015) ("[T]he adequacy of PCS's termination of the contract does not necessarily control their duty to perform under the contract. It is possible that the services contract had not yet been 'terminated' but that PCS was not obligated to perform.") (citing Restatement (Second) of Contracts § 237).

This is also why Samsung's preclusion and estoppel arguments fail, as Netlist explained in its reply in support of its motion regarding JDLA termination. Dkt. 305 at 2-4. Issue preclusion does not apply because the CDCA never decided whether, independent of termination, Samsung's material breach absolved Netlist of any obligation to comply with the license thereafter, nor was this issue presented to it. *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 550 (5th Cir. 2013) (Preclusion only applies if the issue was "actually adjudicated" in the prior suit).

Judicial estoppel similarly does not apply because Netlist's argument that Samsung's license defense fails with respect to pre-termination sales is not "plainly inconsistent" with CDCA's judgment. *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). Samsung argues that "Netlist's entire CDCA Case is premised on the fact that the JDLA was in force until July 15, 2020, and that Samsung breached its obligations to Netlist during that time period." Reply at 6. But again, Samsung conflates the question of whether the contract was still "in force" with the question of whether Netlist is obligated to perform under it.

Finally, Samsung argues that "claim preclusion" prohibits Netlist from bringing an "unpled early repudiation claim" here. Reply at 6. But Netlist is not bringing a claim for repudiation (unpled or otherwise). It is Samsung who raised the JDLA as a defense, and Netlist is entitled to present arguments and evidence as to why that defense fails. Netlist did not somehow forfeit these arguments when it obtained a declaration that the JDLA was terminated on July 15, 2020. Indeed, the Fifth Circuit has held that a declaratory relief does not even "bar all later *claims* arising out of the same dispute" because "[t]he whole point of a declaratory judgment action is to decide only a single issue in a dispute." *ASARCO, L.L.C. v. Montana Res., Inc.*, 858 F.3d 949, 955 (5th Cir. 2017).

### III.   There Is a Dispute of Material Fact Over Whether HBMs Are "Foundry Products"

Netlist's Opposition cited numerous Samsung documents showing that . Opp. at 4-6, 11-13. First, Samsung does not dispute that it supplies HBMs to customers, such as . Opp. at 5-6 (¶¶ 11-12). Nor does Samsung dispute that these Opp. at 5 (¶9), 11-12. This indicates that these products were Dkt. 264-2 at 2 (defining "Foundry Product"). **Samsung does not even attempt to offer any alternative explanation for this discrepancy**. Instead, Samsung faults Netlist for not having "served an interrogatory or asked a deposition question to understand those product numbers." Reply at 4. But Samsung forgets that it bears the burden of proving its license defense, including that the license covers the accused products. It is Samsung who has an obligation to establish that there is no way a reasonable jury could conclude the products at issue do not meet the definition of Foundry Products.

Second, Netlist's Opposition identified numerous Samsung advertisements and internal documents expressly linking its Foundry Services to HBMs. Opp. at 4-6, 11-12. For example, one Samsung advertisement, under a section called "Samsung HBM2 Foundry Services," states "**Samsung**

- 3 -

***Foundry offers*** customers the complete turnkey service including foundry, 2.5D packaging and HBM." Dkt. 264-4 at 6-7 (emphasis added). Another internal document discusses ▮▮▮▮ Dkt. 264-7 at 482730. A third document ▮▮▮▮ Dkt. No. 264-5 at 532128, 532174. Samsung tries to explain away these documents by asserting, for example, that they only show that ▮▮▮▮ Reply at 4. But none of the documents state this, and Samsung's attorney spin cannot support summary judgment. Even if one could spin the document in this way, the Court must "draw all reasonable inferences in favor" of Netlist, not Samsung. *Haverda v. Hays Cnty.*, 723 F.3d 586, 593 (5th Cir. 2013) (reversing summary judgment).

Finally, Samsung does not dispute that it ▮▮▮▮ Opp. at 5(¶9), 13. This demonstrates that the second part of the Foundry Product ▮▮▮▮ is also satisfied." Dkt. 264-2 at 2 (defining "Foundry Product").

## IV.   Samsung Has Not Shown That The License Covers The Accused Products

The only patents that issued before the undisputed termination date of the JDLA are those directed at the HBM products.  Samsung does not present any evidence, much less undisputed evidence, that technology in the HBM products was ▮▮▮▮ as recited in the preamble's discussion of the license grant.  Samsung does not dispute that ▮▮▮▮, Opp. 2-3 (¶1), ***the exact opposite*** of the interpretation Samsung is asking this Court to adopt as a matter of law. Samsung first argues that Netlist "provides no explanation based in the language of the JDLA to support" this interpretation. Reply at 2. Not so. The JDLA's preamble ▮▮▮▮

- 4 -

████ Opp. at 18 (citing Dkt. 264-02 at 2).

Next, Samsung's assertion that the Korean Tax Tribunal decision is not binding on this Court misses the point. This Court has full Article III power as to the instant case. It is **Samsung** that is bound by the KTT. This issue has already been adjudicated by the CDCA. First, Samsung participated in the process. The KTT made its decision after receiving extensive submissions from Samsung. Dkt. 264-28; *see also*, ████

████

████ Judge Scarsi already ruled on the relevance of the Korean proceeding, expressly holding that Samsung participated in the process, presented arguments adverse to Netlist in the proceeding, and Netlist prevailed:

> After entering the JDLA, Samsung deducted $1.32 million (16.5%) of the NRE fees to pay to the Korean tax authority. . . . Samsung responded to Netlist's requests for assistance in seeking a refund, though Samsung referred Netlist to appeal directly to the Korean tax authority, and its arguments before the tax tribunal were adverse to Netlist's interests. . . . The Korean tax authority ultimately determined that the NRE fees were not subject to tax withholding. . . . Dkt. 264-21 at 2 (internal citation and references omitted).

Judge Scarsi then held based on the KTT decision that Samsung had breached its obligations under the JDLA: "The Korean tax authority concluded that the NRE fees were not a patent royalty payment subject to tax withholding. . . . . Samsung was not required by applicable law to withhold; therefore, Samsung breached by withholding." *Id.* at 16. Samsung's attempt to advance a contrary position before this Court is a collateral attack on Judge Scarsi's ruling.

Third, the analysis of the JDLA's license scope was not dicta. It was a central part of the Tribunal's basis for ruling that ████ ████ The Tribunal concluded that one of the reasons the ████



Accordingly, the tribunal's decision is "conclusive" "[u]nder principles of international[] comity." *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana*, 347 F.3d 589, 594 (5th Cir. 2003). Deference to foreign tribunals is particularly appropriate where, as here, the foreign tribunal's decision implicates a treaty with the United States. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 176 (1999) (The "opinions of our sister signatories," . . . are "entitled to considerable weight."). As the Tribunal noted, the dispute arose as a result of the application of the

" Dkt. 264-3 at 2.

Finally, Samsung again argues that Netlist's interpretation is barred by preclusion and estoppel, and accuses Netlist of "seriously misquote[ing]" the CDCA's decision. Reply at 3. There was no misquote. The CDCA expressly stated that the "scope of the patent licenses is **immaterial** to the breach theory in this litigation, and to the reasons the Court will grant summary judgment as to liability." Dkt. 264-23 at 15 (emphasis added). Thus, contrary to Samsung's Reply, the CDCA did not "specifically rel[y] on § 8 to grant summary judgment in Netlist's favor." Reply at 3.

| | |
|---|---|
| Dated: March 3, 2023 | Respectfully submitted, |
| | */s/ Jason Sheasby* |

                        Samuel F. Baxter
                        Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

**Attorneys for Plaintiff Netlist, Inc.**

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that, on March 3, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao