# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 2:21-CV-463-JRG ) |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., | ) JURY TRIAL DEMANDED ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF NETLIST INC.'S SUR-REPLY TO SAMSUNG'S *DAUBERT* MOTION AND MOTION TO STRIKE CERTAIN OPINIONS OF DR. ANDREAS GROEHN**

**TABLE OF CONTENTS**

**Page**

I.    Dr. Groehn's hedonic regression analysis employs appropriate variables ................................ 1
II.   Dr. Groehn's analysis appropriately accounted for potential multicollinearity ........................ 2
III.  Dr. Groehn did not improperly omit relevant Samsung sales data ........................................... 5

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Coward v. ADT Sec. Sys., Inc.*,
　140 F.3d 271 (D.C. Cir. 1998) ................................................................................................ 2

*Hawes v. Macy's Stores W, Inc.*,
　2022 U.S. Dist. LEXIS 11861 (S.D. Oh. Jan. 22, 2022) ......................................................... 4

*Manpower, Inc. v. Ins. Co. of Pa.*,
　732 F.3d 796 (7th Cir. 2003) ................................................................................................... 1

Samsung calls regressions "complex, arcane, and dubious." Regressions have been widely used by economists in government, academia, and the private sector for nearly 100 years, by Dr. Groehn himself for nearly three decades, and have been repeatedly upheld by courts. *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808 (7th Cir. 2003) ("[R]egression analysis [is] a proven statistical methodology used in a wide variety of contexts."). In fact, ▮

## I. Dr. Groehn's Hedonic Regression Analysis Employs Appropriate Variables

Samsung's reply misreports a basic fact about statistical analysis in general and hedonic regressions in general: to matter, variables must actually **vary.** Opp. Ex. 1 **(Groehn Report)** ¶ 20. As Dr. Groehn explained at his deposition, and Samsung's own experts concede, ▮ Opp. Ex. 3 (Groehn Depo. Tr. (Rough)) at 103:5-7 (explaining that ▮) and at 107:9-16 (▮); Opp. Ex. 4 (Kline Report) at ¶¶ 32-33 and Fig. 3 ▮); Opp. Ex. 11 (McAlexander Depo.) at 164:25-165:7. Furthermore, in the hedonic regression analysis treatise cited repeatedly by Samsung in its opening and reply briefs, Dr. Triplett states that ▮ not to introduce all possible variables as Samsung suggests. Dkt. No. 263-7 at 177.

- 1 -

Samsung's original brief, which claims Dr. Groehn's report is only 10 pages, did not appreciate that included with the report was a data workbook which provides the data underlying the report. This includes both Microsoft Excel charts containing the underlying data and the results of his regression, as well as the underlying software program used specifically to run the regression. Ex. 1.

In its reply, Samsung offers no evidence that the additional "variables" like ▮▮▮▮, ▮▮▮▮, or ▮▮▮▮▮▮▮▮ actually vary in any meaningful way. Samsung's expert concedes the same. *See* Dkt. No. 263-4 (Kline Report) at ¶¶ 32-33 and Fig. 3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Samsung also ignores the widespread authority identified in Netlist's Opposition dictating that the choice of variables in a regression analysis is grist for the cross-examination mill. *See, e.g., Coward v. ADT Sec. Sys., Inc.*, 140 F.3d 271, 274-75 (D.C. Cir. 1998) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility.").

## II. Dr. Groehn's Analysis Appropriately Accounted For Potential Multicollinearity

Contrary to Samsung's argument in its reply that Netlist ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Reply at 2, Dr. Groehn expressly acknowledged the need to consider ▮▮▮▮▮▮▮▮▮▮ analyses both in the body and in the exhibits to his report—and did so appropriately. Specifically, he opined in the body of his report that, regarding the relationship between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. Ex. 1 at ¶ 30. Furthermore, in the data tables underlying his conclusions and attached to his report, Dr. Groehn provided a correlation matrix that illustrates the degree to which numerous variables are correlated. Opp. Ex. 5 (Notebook.nb) at ▮▮▮▮▮▮▮▮. Indeed, Samsung's expert acknowledged the existence of the code analyzing the ▮▮▮▮▮▮▮ and recognized it as such. Opp. Ex. 2 (Kline Depo.) at 78:18-22.

In its reply, Samsung now argues that "Dr. Groehn fails even to discuss **any** relationship

between the selected variables" in his report, that the report "does not ▇▇▇▇ or any of [sic] analysis of it," and that "[a]t deposition, Dr. Groehn could not ▇▇▇▇ or how he may have used it in his analysis." Reply at 2-3. None of these assertions has merit. As set forth above, Dr. Groehn does discuss the relationship between the relevant variables in the body of his report. *See, e.g.*, Opp. Ex. 1 at ¶ 30. In addition, the ▇▇▇ itself *is part of the report*. And, at his deposition, Dr. Groehn explained in detail, with reference to the ▇▇▇ exactly how he ▇▇▇ ▇▇▇" Opp. Ex. 3 at 152:11-153:5 ▇▇▇



); *see also id.*, at 158:6-9. Samsung contends that at his deposition Dr. Groehn "could not explain the values he saw and admitted he could not replicate correlation without multiple unavailable software programs." Reply at 4. Not so. Dr. Groehn explained to counsel that he could easily reproduce his results through the use of SQL and Mathematica, commonly-available software packages in widespread use by economists, loaded onto the laptop Dr. Groehn had with him at the deposition, but apparently not ▇▇▇ ▇▇▇ Opp. Ex. 3 at 157:10-158:20. That Dr. Groehn used SQL in his analysis was not a surprise to Samsung, as Samsung's own expert acknowledged at deposition that he was aware Dr. Groehn's analysis used SQL. Opp. Ex. 2 (Kline Depo.) at 70:17-24 ▇▇▇

▇▇▇).

In addition, Samsung also argues that Dr. Triplett's book dictates that multicollinearity can be

ameliorated by using large samples and is less concerning where "there is little evidence of the unstable coefficients" and where "indexes" are used. Reply at 3 (quoting Dkt. 263-7). But Dr. Triplett also wrote in the same book that "[i]n most well-constructed hedonic functions – with or without high mulicollinearity – coefficients of the major characteristics are usually statistically significant; that is, standard errors are not so large as to create a major difficulty," as is the case with Dr. Groehn's regression. Dkt. 263-7 at 173. Moreover, the size of the samples and the presence and degree of unstable coefficients are disputed matters of fact and opinion that can best be resolved via cross examination at trial, consistent with the caselaw. *See, e.g.*, *Hawes v. Macy's Stores W, Inc.*, 2022 U.S. Dist. LEXIS 11861, at *14-15 (S.D. Oh. 2022) ("Multi-collinearity may reflect that Plaintiff's general thesis—more [of the patented feature], higher price—is weak. But that is not the same as unreliable …. [This may] reflect uncertainty—a ripe ground for cross-examination—rather than junk science."). Once again, Samsung has cited no authority to support its novel proposition that what one party deems inadequate multicollinearity check suffices to warrant exclusion of the other party's expert.

Finally, Samsung asserts in reply that Dr. Groehn "failed to describe how or why the confidence interval related to multicollinearity." Reply at 4. Here, again, Samsung appears to misapprehend the relationship between basic statistical terms: confidence intervals measure the range of values of a given parameter. Multicollinearity is the potential for interdependence between the input variables, and as set forth above, Dr. Groehn accounted for this potential as well. A higher degree of multicollinearity can increase the width of the confidence interval, and as Dr. Groehn testified, his calculation of the confidence interval accounted for any multicollinearity in his experiment. Ex. 2 at 159:20-160:12 ▮

**III.     Dr. Groehn Did Not Improperly Omit Relevant Samsung Sales Data**

Finally, Samsung contends in its reply that Dr. Groehn ███████████████████████" and provided "█████████████████████████████████████████████████ ███████." Reply at 4. To the contrary, Dr. Groehn explained in his report that he excluded ███ ██████████████████████████████████ because ████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████ Opp. Ex. 1 at ¶ 25. He testified that "██████████████ ████████████████████████████████████████████████████████████████████████████ ███████████" Opp. Ex. 3 at 111:20-22. He further explained why merely weighting the data differentially would not cure the fundamental problem with using ████████████ in his dataset. *Id.* at 112:2-9.

In addition, in its reply, Samsung provides a list of additional confirmatory steps it imagines Dr. Groehn could have taken to support his analysis and argues, without evidence, that the documents on which he relied to support his opinion do not "contain information to support his opinion." Reply at 5. But as set forth above, Dr. Groehn confirmed the propriety of ████████████████ by examining and considering them carefully, and the jury will be perfectly well equipped to weigh Samsung's attorney argument that the documents do not support his opinion.

Samsung also argues that "█████████████████████████████████████████████ ███████████████████████████████ (as used by Mr. Kennedy), which again indicates unreliability." Reply at 5 n.2. Netlist admitted no such thing. Instead, in response to Samsung's erroneous claim in its opening brief that Dr. Groehn's data was inaccurate and inconsistent, Netlist explained exactly how and why Dr. Groehn started with the data Samsung provided and properly ██████████████████████████, as set forth above. *See* Opp. at 12-13; Opp. Ex. 1 at ¶ 25 and Fig. 1 ███ ████████████████████████████████████████████████████████████████████████████

For all these reasons, Samsung's motion should be denied.

- 5 -

Dated: March 3, 2023                     Respectfully submitted,

/s/ *Jason Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

**Attorneys for Plaintiff Netlist, Inc.**

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 3, 2023, a copy of the foregoing was served to all counsel of record.

/s/ *Yanan Zhao*
Yanan Zhao

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

/s/ *Yanan Zhao*
Yanan Zhao