# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:21-CV-463-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| SAMSUNG ELECTRONICS AMERICA, | ) | **Filed Under Seal** |
| INC., SAMSUNG SEMICONDUCTOR, | ) | |
| INC., | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF NETLIST INC.'S SUR-REPLY TO SAMSUNG'S *DAUBERT* MOTION AND MOTION TO STRIKE EXPERT TESTIMONY OF DAVID KENNEDY (DKT. 205)

## TABLE OF CONTENTS

**Page**

A.   Mr. Kennedy Apportioned to the Incremental Benefits of the Patents-in-Suit .......................1

B.   Mr. Kennedy Properly Uses Licenses to Inform the Hypothetical Negotiation .....................2

C.   Mr. Kennedy's Opinions Comply with the Court's Discovery Order .....................................4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
   967 F.3d 1353 (Fed. Cir. 2020)................................................................................................3, 4

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)................................................................................................4

*Monsanto Co. v. Ralph*,
   382 F.3d 1374 (Fed. Cir. 2004)................................................................................................2

*Powell v. Home Depot U.S.A., Inc.*,
   663 F.3d 1221 (Fed. Cir. 2011)................................................................................................1

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017)................................................................................................1

### A.    Mr. Kennedy Apportioned to the Incremental Benefits of the Patents-in-Suit

Mr. Kennedy apportions to the value of the patents-in-suit through his technical benefit analysis.[1]  Separately, Mr. Kennedy considered whether the parties at the hypothetical negotiation, having determined the apportioned value of the patents-in-suit, would split that value amongst themselves.  Mr. Kennedy reviewed the available evidence and determined that ██████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████  Dkt. 252 at 11 (Mr. Kennedy also runs alternative scenarios in which there is negotiating over the amount solely related to the technical benefit of the patents).  Samsung's damages expert also agreed that Netlist is entitled to ████████████████ ████████████████████████.  Ex. 1 at 294:10-15 ("█████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████

*VirnetX* is inapposite to the issue of the bargaining split here.  There, the Federal Circuit held anyone invoking the presumption that 50% of profits goes to each party "as applicable to a particular situation must establish [a] fit." *Id.* at 1332.  In that case, the assumption was "insufficiently grounded in the specific facts of the case." *Id.* at 1331.  Here, Mr. Kennedy's analysis is based solely in the facts of the case and not in any bargaining theorem.  And once technical apportionment has occurred, a defendant is not entitled to any share. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) is on point: "A price for a hypothetical license may appropriately be based on consideration of the costs and availability of non-infringing alternatives and the potential infringer's cost-savings."  The defendant was not entitled to any of this cost savings.  Mr. Kennedy identifies the

████████████████████████████████████████████████████████████████████████████████

---

[1] Samsung's argument that damages should be capped by Samsung's profits is foreclosed by the Federal Circuit. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011) ("[I]t is settled law that an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped.").

███

Moreover, Mr. Kennedy explains that Netlist has ███████████████████

███████ which would impact the hypothetical negotiation.  Ex. 2 (Kennedy Rpt.), ¶ 576.  The

Federal Circuit has held that "where, as here, a patentee is unwilling to grant an unlimited license, the

hypothetical negotiation process has its limits," and thus an infringer should have no expectation of

profit.  *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004).

Samsung's next argument regarding Mr. Kennedy's use of next-best alternatives makes no

sense.[2]  First, if Mr. Kennedy's next-best alternatives are not commercially acceptable, that would only

render his opinion conservative.  It would mean that only worse alternatives (or no alternative at all,

given that Samsung did not identify any during discovery or in opening reports) would have been

available to Samsung, and thus Samsung would lose even more money by not being able to offer the

patents-in-suit.  Second, throughout his report Mr. Kennedy makes clear that his analysis is based on

commercial availability.  E.g., Ex. 2, ¶ 599 ("███████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████).

### B.    Mr. Kennedy Properly Uses Licenses to Inform the Hypothetical Negotiation

Both Netlist's technical expert and damages expert identified the ████████████

████████████████████████████.  As Mr. Kennedy notes, ████████████

████████████████████████████████████

███████████████████████████████.  *Id.* ¶ 466.  The

Accused Products in the litigation that resulted in the license were S/DRAM "memory components

---

[2] Samsung's footnote 1 is incorrect.  ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████.

and/or memory modules; and/or SDR and/or DDR Controllers." Ex. 3 at 3:27-4:1. ██████████

██████████████████████ Mr. Kennedy ███████████████████. Ex. 2, ¶ 466. And

the license agreement grants rights to "████████████████████████████. Ex. 2, ¶ 390. To

describe the agreement as strikingly similar to the Samsung/Netlist relationship is an understatement.

The Federal Circuit holds that one of the primary elements of comparability is "assessing whether the

license . . . arises under comparable circumstances as the hypothetical negotiation." *Bio-Rad Lab'ys,*

*Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020).  Dr. Mangione Smith ███████████

████████████  Under the section "Comparable Licenses," he ███████████████████

██████████████████████████████████████████. Ex.

4 (MS Opening Exx C) at ¶¶ 133-143.  Samsung's technical expert likewise spent 8 pages of his report

identifying ████████████████████████████ Ex. 5

(McAlexander Rebuttal Report) at ¶¶ 689-700.  Mr. Kennedy relies on a technical opinion from ███

█████████████████████████████████████████████.

Ex. 2 ¶ 465. He concludes that the ████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████ *Id.* ¶ 463.  He  identifies ███████████████████

██████████████ *Id.* ¶ 464.  He opines that the relationship between ██████████████

████████████████████ as discussed above. *Id.*, ¶ 466.  He then takes steps to account

for the fact that the ██████████████████████ (*Id.*, ¶ 467):

█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████

In other words, he will tell the jury that the portfolio effect of the agreement can be assessed by

███████████████████████████████████████████████████████████████████████████████

██████████████████████████ The record at trial will also include the number of active US patents

██████████████████████████████████████████. Mr. Kennedy explains that "████████████

██████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████████

███████████████" *Id.*, at ¶ 468.  Samsung's position is that because Mr. Kennedy did not use the agreement

to generate a specific per patent royalty on its own, it cannot be a part of his hypothetical negotiation

analysis.  Under this theory, every individual component that goes into his hypothetical negotiation

would be inadmissible.  That is not the law.  In *Bio Rad*, the Court noted that it had previously affirmed

the use of a lump sum agreement as one of the factors used to establish a running royalty: "*Finjan,* for

example, involved a license which related to a lump sum payment rather than a running royalty. 626

F.3d 1197, 1211-12. We affirmed a damages award because the 'differences permitted the jury to

properly discount [that license]' *Id.*" *Bio-Rad*, 967 F.3d at 1373-74.  *Finjan, Inc. v. Secure Computing Corp.*,

626 F.3d 1197, 1212 (Fed. Cir. 2010) in turn emphasized that use of a lump sum agreement is

appropriate in front of the jury when it is given the tools to understand the differences:

> Finjan noted multiple differences between the Finjan-Microsoft licensing scenario and a
> hypothetical negotiation with Defendants. Parr explained that Finjan did not compete with
> Microsoft but does compete against Secure; that Finjan received significant intangible value from
> Microsoft's endorsements of Finjan; and that the license involved a lump sum instead of a
> running royalty. These differences permitted the jury to properly discount the Microsoft license.

Mr. Kennedy affirmatively points out the differences ████████████████████████████

██████████████████████████████████.

### C.    Mr. Kennedy's Opinions Comply with the Court's Discovery Order

Netlist disclosed its technical benefit theories in its interrogatories before fact discovery ended

and before depositions of its corporate representatives on damages.  Ex. 6 at 38-39:

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████



Netlist's 30b6 witnesses provided even more detail.  Ex. 7 (Milton) at 10 and Ex. 8 (Hong) at 1:



Dated: March 3, 2023

Respectfully submitted,

/s/ Jason Sheasby

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on March 3, 2023 a copy of the foregoing was served to all counsel of record.

*/s/ Jason Sheasby*
Jason Sheasby

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason Sheasby*
Jason Sheasby