**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| NETLIST, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC.,<br>Defendants. | Case No. 2:21-CV-463-JRG<br><br>JURY TRIAL DEMANDED<br><br>**Filed Under Seal** |

**PLAINTIFF NETLIST INC.'S ADDITIONAL MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

**Page**

1. Preclude Samsung from Presenting any Evidence or Argument Regarding RAND Obligations or any Alleged Failure to License Patents-in-Suit on RAND Terms.................. 1

2. Preclude Samsung from Presenting any Evidence or Argument that [REDACTED] [REDACTED]. ...................................................... 3

3. Preclude Samsung from Presenting Any Argument or Evidence That Contradicts the Findings of the Central District of California's Summary Judgment and Final Judgment..... 7

4. Preclude Samsung from Presenting Any Allegation that Netlist Has Failed to Comply With JEDEC Obligations. ........................................................................................................... 9

5. Preclude Samsung from Presenting Evidence, Argument, or Testimony that Practicing a Standard is a Defense to Infringement or Willfulness. ............................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adv. Thermal Sci. Corp. v. App. Materials Inc.*, 2009 WL 10671185 (C.D. Cal. July 20, 2009) .......... 6

*Fid. Nat. Title Ins. Co. v. Doubletree Partners, L.P.*, 866 F. Supp. 2d 604 (E.D. Tex. 2011) .......... 3

*Fiteq Inc. v. Venture Corp.*, 2015 WL 3987912 (N.D. Cal. June 30, 2015) .......... 7

*Protech Wheel Indus. Co. Ltd. v. Velox Ent., Inc.*, 2011 WL 13213578 (C.D. Cal. Jan. 12, 2011) .......... 7

*Matter of Westmoreland Coal Co.*, 968 F.3d 526 (5th Cir. 2020) .......... 9

## Other Authorities

JEDEC Manual of Organization and Procedure JM21T (September 2020) § 8.2.1 .......... 1

## Rules

Fed. R. Evid. 403 .......... 11

1. **Preclude Samsung from Presenting any Evidence or Argument Regarding RAND Obligations or any Alleged Failure to License Patents-in-Suit on RAND Terms.**

Samsung intends to tell the jury that Samsung is entitled to a RAND license under the JEDEC Patent Policy to the patents in suit, and that Netlist's damages request in this case violates Netlist's alleged RAND obligations. This argument has been waived by Samsung and if not waived, presents too much of a risk of prejudice and jury confusion given that neither side's experts are proving or disputing infringement by claiming the patents are essential to the JEDEC standard.

Under the JEDEC Patent Policy, "each Committee Member, as a condition of Participation, agrees to offer to license on RAND terms, to all Potential Licensees, such Committee Member's Essential Patent Claims for the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard issued during the period of membership in that committee." Ex. 1 at 26. "Essential Patent Claim" is defined by JEDEC as "[t]hose Patent claims the use of which would necessarily be infringed by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC Standard." Ex. 1 at 23. In other words, a JEDEC RAND obligation only applies to actually essential patent claims ("SEPs").

Samsung has not contended that any of Netlist's patents in this case are SEPs. To the contrary, Samsung has repeatedly and unequivocally stated that Netlist's patents are not essential. Netlist served an interrogatory to Samsung seeking the following: "With respect to each asserted claim of Netlist Patents-in-Suit, identify whether it is or is not an 'Essential Patent Claim' as defined in JEDEC Manual of Organization and Procedure JM21T (September 2020) § 8.2.1, and Set Forth Your Complete Basis for that conclusion." Ex. 2 at 11. Samsung responded that [REDACTED] Ex. 3 at 111. Even Samsung's damages expert does not affirmatively opine that there are any RAND obligations on the patents-in-suit. He opines [REDACTED]



Ex. 4 at ¶ 308.

Netlist's experts will not prove infringement in this case by claiming that the patents are SEPs. Instead, they will prove infringement based on the technical operation of the products. This is consistent with Netlist's final supplemental interrogatory response on the issue:



Ex. 5 (Plaintiff Netlist, Inc.'s Second Supplemental Responses And Objections To Defendants' First Set Of Interrogatories) at 48-49. The jury will not be asked to determine whether the patents-in-suit are SEPs. The existence of a JEDEC Patent Policy obligation as to "essential patent claims" is thus irrelevant to the patent claims in this case.

Samsung also intends to tell the jury that Netlist has failed to license its patents on RAND terms. Mr. Meyer repeatedly makes this assertion in his expert report:



Ex. 4 at ¶ 308.

*Id.* at ¶ 309.

*Id.* at ¶ 310.

Samsung, however, has not plead a claim or affirmative defense that Netlist's position on licensing terms violates RAND. Indeed, the only mention of RAND as it relates to damages is that RAND bars lost profits, which Netlist is not seeking: Dkt. 25.

**EIGHTH ADDITIONAL DEFENSE**
**(Notice, Damages, and Costs)**

Netlist's claims for damages are statutorily limited under 35 U.S.C. §§ 286 and 287. Netlist is barred from recovering costs in connection with this action under 35 U.S.C. § 288. Netlist's claims for relief are limited by the doctrines of full compensation, exhaustion, and/or first sale, and Netlist is not entitled to a double recovery. For example, to the extent the Patents-In-Suit are essential to one or more JEDEC standards, Netlist is barred from seeking lost profits by its RAND obligations.

Samsung cannot now attempt to try an unpled discrimination claim as to patents it does not contend are SEPs, nor do Netlist's experts. Moreover, as the party with the burden of proof, Samsung would have needed to offer opinions in its ***opening*** expert reports in support of its RAND discrimination arguments. *See* Amended Docket Control Order, Dkt. 109, setting deadline for "Serve Disclosures for Expert Witnesses by the Party with the Burden of Proof" as December 22, 2022. Samsung did no such thing here, except for Mr. McAlexander's expert report addressing equitable estoppel, which is irrelevant to the jury trial.

2. **Preclude Samsung from Presenting any Evidence or Argument that [REDACTED]**

Samsung contends that the [REDACTED], is comparable to the hypothetical negotiation here. In an attempt to discount the true value of that agreement, Samsung intends to tell the jury that [REDACTED]. In so doing, Samsung would be asking the jury to conduct contract interpretation, which is properly the purview of the Court. "[T]he interpretation of a contract is a question of law for the Court to decide." *Fid. Nat. Title Ins. Co. v. Doubletree Partners, L.P.*, 866 F. Supp. 2d 604, 614-15 (E.D. Tex. 2011) (citing *Kona Tech. Corp. v. S. Pac. Transp. Co.,* 225 F.3d 595, 604 (5th Cir. 2000). "In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language." *Id.* (quoting *Sparton Corp. v. U.S.*, 77 Fed. Cl. 1, 8 (Fed. Cl. 2007)).

Samsung never disclosed in fact discovery a claim that the [REDACTED] was unenforceable. In contrast, Netlist disclosed in fact discovery that the [REDACTED]. Ex. 18 (Netlist's First Supplemental Responses and Objections to Defendants' Third Set of Interrogatories) at 8-9. Nonetheless, Mr. Meyer's rebuttal expert report, to which Netlist does not get a response, opines that [REDACTED] Ex. 4 at ¶ 227. This is a legal conclusion for the Court. Ex. 6 (Meyer Deposition (rough)) at 253:16-22 [REDACTED]); *id.* at 255:12-15 [REDACTED]

Samsung cannot lie behind a log as to a legal issue such as the enforceability of a contract clause until a rebuttal expert report. The [REDACTED]" Ex. 7. Section 5 recites that [REDACTED]



The contract also specifies only narrow circumstances in which the obligation can be suspended:



[redacted]

The incorporated by reference [redacted]. It makes clear that [redacted] Ex. 8 at § 2.1. Shall is language of obligation. Indeed, the only time in which [redacted] must occur.

[redacted]

*Id.*

The parties also make clear the scale of the [redacted]:

[redacted]

*Id.*

[redacted]

*Id.*

And the parties also agreed on the [redacted]

[redacted]

*Id.*

Samsung's expert Mr. Meyer argues that [redacted] Ex. 4 at ¶ 227.

[redacted]

Ex. 7.

But the [redacted] Under the law of California, which governs, this represents a binding supply obligation. *Adv. Thermal Sci. Corp. v. App. Materials Inc.*, 2009 WL 10671185 (C.D. Cal. July 20, 2009) (finding contract language "Upon [AMI's] request, [ATS] shall supply and sell to [AMI]

Components" was reasonable susceptible to interpretation as "an affirmative supply obligation."); *Fiteq Inc. v. Venture Corp.*, 2015 WL 3987912, at *7 (N.D. Cal. June 30, 2015) (finding that where Agreement between parties indicated that "when a purchase order was forwarded… to Venture, Venture had two options: it could accept the purchase order in writing pursuant to Section 5.3.2(b)… or it could reject the purchase order pursuant to Section 5.3.3" but agreement specified conditions surrounding any rejection, "[t]his shows a clear intent by Venture to bind itself to fulfill the orders."); *Protech Wheel Indus. Co. Ltd. v. Velox Ent., Inc.*, 2011 WL 13213578, at *6 (C.D. Cal. Jan. 12, 2011) (finding that reading section of supply agreement as "not binding [seller] to accept purchase orders would essentially relieve [seller] of its most basic obligation under the contract—to sell [products] to [buyer]" and thus refusing to adopt this interpretation.).

**3. <u>Preclude Samsung from Presenting Any Argument or Evidence That Contradicts the Findings of the Central District of California's Summary Judgment and Final Judgment.</u>**

The Joint Development and License Agreement ("JDLA") between Samsung and Netlist is a central element of the notice, willfulness and damages aspects of this case. (Ex. 9). But the relevance of the JDLA does not meant that Samsung is entitled to re-litigate issues relating to the JDLA that have already been decided via a final judgment in the Central District of California. In light of this final judgment, Samsung may not attempt to dispute the issues already decided in the Central District. In specific, Samsung may not claim that: (1) it did not materially breach the parties' Joint License and Development Agreement ("JDLA") (Ex. 9); (2) that Netlist did not perform its obligations under the JDLA; (3) that the $8 million Non-Recurring Engineering ("NRE") fee in the JDLA was a royalty for patent rights; (4) that the JDLA was not terminated for material breach. Judge Scarsi previously found against Samsung on all issues. Ex. 10 (CDCA Dkt. 305) at 2-9; Ex. 11 (CDCA Dkt. 186) at 9-10, 13-16.

On May 20, 2020, Netlist filed a complaint in the Central District of California against Samsung for breach of the JDLA. *Netlist, Inc. v. Samsung Electronics Co. Ltd.*, No. 8:20-cv-00993-MCS

(C.D. Cal. 2020). Netlist also sought a declaratory judgment that it properly terminated the JDLA because Samsung's breach was material. Ex. 10 (CDCA Dkt. 305) at 2.

First, Judge Scarsi found that Samsung had breached its supply obligations:

> Samsung was obliged to "supply NAND and DRAM products to Netlist on Netlist's request at a competitive price." (JDLA § 6.2.) Samsung does not dispute that it declined to fulfill all of Netlist's orders for NAND and DRAM products. [Record cites]. There is no genuine dispute that Samsung breached JDLA § 6.2." Ex. 11 (CDCA Dkt. 186) at 9-10.

Second, Judge Scarsi found that this breach was material:

> Samsung does not seriously contest materiality. Samsung rests its argument in part on its untenable interpretation of the supply provision in § 6.2. Under the unambiguous meaning of the provision, the term is an integral part of the parties' agreement, one that Netlist valued highly, as demonstrated by its negotiation and post-execution conduct. *Id.* at 19.

Third, Netlist's CDCA complaint alleged that Samsung breached the JDLA by withholding $1.32 million in Korean taxes on the grounds that this payment constituted "royalty" income. Ex. 11 (CDCA Dkt. 186) at 15-16. Judge Scarsi concluded that it was not royalty income, and thus Samsung breached the agreement. *Id.*

The expressed purpose of the JDLA was the joint development of NVDIMM-P products. Ex.9 (JDLA) at 1 ("The Parties intend to work together to jointly develop an interface and associated technologies for certain memory modules . . . ."). To this end, the agreement required Samsung to "pay to Netlist eight million . . . as non-refundable NRE [non-recurring engineering] fees." Ex. 9 (JDLA) § 3.1.

Samsung withheld $1.32 million in taxes because, according to Samsung, the NRE fee constituted a taxable patent royalty. Ex. 12 (KTT) at 2; Ex. 13 (CDCA Dkt. 144-6) at NL107768. Netlist sought a refund on the basis that the NRE payment was "'business income" for research and development, "not royalty income." Ex. 12 (KTT) at 2.

The Korean Tax Tribunal ("KTT") [REDACTED]

[REDACTED] Ex. 12



(KTT) at 27. Ex. 12 (KTT) at 28.

> *Id.*

Netlist alleged in the CDCA action that Samsung's withholding of $1.32 million in Korean taxes was a breach of the JDLA since the NRE fee was not subject to withholding because it was not a royalty payment, as concluded by the KTT. Judge Scarsi agreed: "The Korean tax authority concluded that the NRE fees were not a patent royalty payment subject to tax withholding. . . . Samsung breached by withholding." Ex. 11 (CDCA Dkt. 186) at 15-16.

Fourth, Judge Scarsi rejected Samsung's argument that its breaches should be excused because Netlist somehow breached its obligations: "There is no genuine dispute that Netlist performed its obligations under the JDLA." *Id.* at 13-14.

Samsung is now barred from contesting Judge Scarsi's determinations under the doctrine of issue preclusion: "Issue preclusion, or collateral estoppel, prevents the same party from relitigating an issue when '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'" *Matter of Westmoreland Coal Co.*, 968 F.3d 526, 532 (5th Cir. 2020). Here, all three elements are satisfied. First, to the extent Samsung attempts to argue that it did not materially breach its obligations under the JDLA or that Netlist somehow failed to comply with its obligations, Samsung will be seeking to relitigate the exact same issues that were decided by Judge Scarsi. Second, these issues were fully briefed by the parties as evidenced by Judge Scarsi's orders granting summary judgment and entering final judgment in favor of Netlist. Ex. 10 (CDCA Dkt. 305) at 2-9; Ex. 11 (CDCA Dkt. 186) at 9-10, 13-16. Finally, it was necessary for Judge Scarsi to resolve all four of the questions outlined above in Netlist's favor in order

to issue a judgment that Samsung had breached its supply obligations and its NRE payment obligations and that Netlist had properly terminated the JDLA on this basis.

4. **<u>Preclude Samsung from Presenting Any Allegation that Netlist Has Failed to Comply With JEDEC Obligations.</u>**

Netlist requests that the Court preclude Samsung from presenting argument or evidence concerning any allegation that Netlist breached any duty to JEDEC. There is no breach of JEDEC obligation allegation pending before this Court, neither as a claim nor an affirmative defense that will be tried to the jury. There are no counterclaims in the case. Samsung's Third Affirmative Defense alleges a failure to disclose pursuant to JEDEC requirements and is purely equitable: "Laches, Estoppel, and/or Waiver." The Eighth Affirmative Defense, which relates to "Notice, Damages, and Costs" states that "Netlist's claims for relief are limited by the doctrines of full compensation, exhaustion, and/or first sale, and Netlist is not entitled to a double recovery. For example, to the extent the Patents-In-Suit are essential to one or more JEDEC standards, Netlist is barred from seeking lost profits by its RAND obligations." Netlist is not seeking lost profits. This is the sum total of allegations of breach of JEDEC obligations in the pleadings. Moreover, Samsung's interrogatory responses on infringement, indirect infringement, and willfulness make no reference to any breach of JEDEC obligations.

Samsung, in opposing Netlist's motion to strike Mr. Halbert's opinions, has telegraphed its intention to try to the jury a claim that Netlist breached some amorphous JEDEC obligations through its conduct. *See, e.g.*, Dkt. No. 269 at 2-3 [REDACTED]) (emphasis in original). Any claim that behavior by Netlist runs "counter to the rules, practices, and spirit of JEDEC" has no place in the jury trial. It is an unpled breach-of-contract claim.

Samsung has suggested that JEDEC disclosure obligations are relevant to whether an obligation to license on reasonable and non-discriminatory ("RAND") exists. *See, e.g.*, Dkt. No. 269 at 4-5, 7. Netlist has [REDACTED] As a result, if either party had sought to establish the patents were essential, a RAND commitment would exist. But RAND obligations attach to standard-essential patents ("SEP"), and in this case, no expert contends that any of the Asserted Patents are SEPs. *See* Dkt. No. 207 at 3 and Dkt. No. 303 at 6. Moreover, even if RAND obligations were somehow relevant to issues the jury will be considering, the jury can be informed of such obligations without either party having to discuss disputes about compliance with JEDEC obligations.

In its motion-to-strike briefing, Samsung has suggested that Netlist's JEDEC disclosure obligations are relevant to its argument that Netlist did not initially believe that the Asserted Patents were practiced by the Samsung products it now accuses of infringement. The patents Samsung alleges are subject to a JEDEC disclosure obligation issued on December 2020, March 2021, May 2021, and January 2022, i.e. several years after the publication of the standards Samsung claims it practices. Samsung has never alleged in an interrogatory response that the failure to disclose these patents to JEDEC is evidence of non-infringement or non-willfulness. Ex. 3 at 13-117, 149-50. Instead, this argument is just an excuse to allow Samsung to inject its estoppel defense into the jury trial.

In its motion-to-strike briefing, Samsung contends that JEDEC disclosure obligations are relevant to its willfulness and indirect infringement defenses, e.g., whether Samsung was aware of the Asserted Patents before Netlist filed suit. In other words, that Netlist's actions and inactions at JEDEC meetings somehow establish Samsung's lack of awareness of the Asserted Patents. Dkt. No. 350 at 3-4 ("The Court should permit the jury to evaluate Netlist's actions (and inaction) at those meetings against the backdrop of JEDEC's customary practices with respect to patenting, patent disclosures, and RAND obligations to determine whether Samsung knew of the asserted patents or its alleged infringement."). Samsung has not raised this attenuated theory as a basis for non-willfulness

or lack of notice in its interrogatory responses. *See, e.g.*, Ex. 3 (Samsung's 7th Supplemental Responses) at 149-150. To be clear, if Netlist points to a disclosure of a patent family in JEDEC as a basis for Samsung's knowledge of the patent family, Samsung is entitled to argue that the disclosure was not specific enough or did not identify the correct standard. But Samsung should not be able to argue that Netlist breached a duty of disclosure, or Samsung relied on some view of what Netlist's duty of disclosure to JEDEC was. This is just an after-the-fact lawyer rationalization for injecting the equitable estoppel dispute in front of the jury. No Samsung interrogatory response ever disclosed that Samsung relied on Netlist's disclosures or lack thereof when deciding how to proceed. Accordingly, any alleged slight probative value provided by this evidence would substantially be outweighed by the prejudice and confusion it would cause. Fed. R. Evid. 403. The jury would be confused that disclosure to JEDEC is somehow relevant to infringement. It is not.

Finally, Samsung has suggested that Netlist's withdrawal from JEDEC is relevant to the parties' Joint Development and Licensing Agreement ("JDLA") because it will claim that by withdrawing from JEDEC, Netlist was not able to comply with its obligations under the JDLA. This argument is foreclosed. The Central District of California ruled that Netlist had complied with all of its obligations under the JDLA, and this ruling was an essential part of the finding of material breach and right to termination: "Samsung contends summary judgment should be entered in its favor because Netlist indisputably breached its obligations under the JDLA by 'abandoning' the NVDIMM-P standardization project and canceling purchase orders." Ex. 11 (C.D. Cal. Dkt 186) at 12. "The Court also rejects the argument on the merits." *Id.* at 13. "There is no genuine dispute that Netlist performed its obligations under the JDLA." *Id.* at 13-14. Netlist withdrew and then re-joined certain JEDEC committees because of its objections that members of the industry were copying its proprietary designs. *See, e.g.*. Ex. 14 (Hong Depo. Tr.) at 191:22-192:7; 192:22-25 [REDACTED]

[REDACTED]

[REDACTED]). This was the result of an extended discussion Netlist

engaged in with the Board of JEDEC. *See, e.g.*, Ex. 15 (Feb. 23, 2011 Letter from JEDEC to Netlist); Ex. 14 (Hong Depo. Tr.) at 195:9-196:11; Ex. 16 (Martinez Depo. Tr. at 157:14-16); and Ex. 17 (letter from Sean Cunningham, DLA Piper to John Kelly, President JEDEC, September 7, 2011). Because [REDACTED], the discussion of Netlist's withdrawal and rejoining of JEDEC is entirely irrelevant to any issue properly before the jury.

**5. Preclude Samsung from Presenting Evidence, Argument, or Testimony that Practicing a Standard is a Defense to Infringement or Willfulness.**

Samsung should be precluded from suggesting to the jury that the fact its products practice JEDEC standards inoculates it from liability in this case. There are two ways Samsung may do this. First, Samsung may suggest that all it does is innocently practice the standard and it believed that it could not be infringing any Netlist patents by doing so. Samsung never disclosed "practicing the standard" as a defense to willfulness in its interrogatory response on non-willfulness. Ex. 3 at 149-50. Moreover, this argument would be an end-run-around the Court's MIL No. 7, which precludes Samsung from introducing evidence, testimony, or argument suggesting that there is anything legally improper in filing a patent application or writing patent claims to cover an adverse party's product.

Second, Samsung may argue that it does not infringe because Netlist has not shown that the asserted claims cover the standard. To be clear, to the extent foundation is laid that an accused product implements a particular passage from a standard accurately describes the operation of a particular aspect of the product, either party should be free to use this to argue the presence or absence of an element. What this motion *in limine* is directed to is an attempt by Samsung to confuse the jury that it must find essentiality of the patents in order to find infringement.

Dated: March 10, 2023

Respectfully submitted,

*/s/ Jason Sheasby*

Samuel F. Baxter

________________________________________
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 10, 2023 a copy of the foregoing was served to all counsel of record.

*/s/ Michael Tezyan*
Michael Tezyan

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Michael Tezyan*
Michael Tezyan

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on March 10, 2023 counsel for the parties met and conferred on the issues raised in these additional motions *in limine*. Counsel for Samsung confirmed that Samsung opposes the motions.

*/s/ Michael Tezyan*
Michael Tezyan