# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:21-CV-463-JRG |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| SAMSUNG ELECTRONICS AMERICA, | ) | **Filed Under Seal** |
| INC., SAMSUNG SEMICONDUCTOR, | ) | |
| INC., | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF NETLIST INC.'S OPPOSITION TO SAMSUNG'S OMNIBUS MOTIONS *IN LIMINE*

## TABLE OF CONTENTS

**Page**

MIL 1. ..................................................................................................................................... 1

MIL 2. ..................................................................................................................................... 7

MIL 3. ..................................................................................................................................... 9

MIL 4. ................................................................................................................................... 13

MIL 5. ................................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bradberry v. Jefferson Cnty., Tex.,*
  732 F.3d 540 (5th Cir. 2013) ............................................................................................... 5

*Brazos River Auth. v. GE Ionics, Inc.,*
  469 F.3d 416 (5th Cir. 2006) ............................................................................................. 14

*Comer v. Murphy Oil USA, Inc.,*
  718 F.3d 460 (5th Cir. 2013) ............................................................................................... 6

*Energy Transp. Grp., Inc. v. William Demant Holding A/S,*
  697 F.3d 1342 (Fed. Cir. 2012) ......................................................................................... 13

*Function Media, L.L.C. v. Google, Inc.,*
  2010 WL 276093 (E.D. Tex. Jan. 15, 2010) ...................................................................... 15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
  579 U.S. 93 (2016) ............................................................................................................... 2

*Lightfoot v. Hartford Fire Ins. Co.,*
  2012 U.S. Dist. LEXIS 31615 (E.D. La. Mar. 9, 2012) ..................................................... 14

*Mega Grp. Inc. v. Halton,*
  290 A.D.2d 673 (N.Y. App. Div. 2002) ............................................................................... 1

*Merrill Lynch & Co. v. Allegheny Energy, Inc.,*
  500 F.3d 171 (2d Cir. 2007) ................................................................................................. 1

*Mondis Tech., Ltd. v. Chimei Innolux Corp.,*
  822 F. Supp. 2d 639 (E.D. Tex. 2011) ................................................................................. 6

*Monsanto Co. v. Ralph,*
  382 F.3d 1374 (Fed. Cir. 2004) ....................................................................................... 2, 4

*Omega Patents, LLC v. CalAmp Corp.,*
  920 F.3d 1337 (Fed. Cir. 2019) ........................................................................................... 2

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.,*
  35 F.4th 1367 (Fed. Cir. 2022) ............................................................................................ 4

*South Ionian Shipping Co. v. Huge Neu & Sons Int'l Sales Corp.,*
  545 F. Supp. 323 (S.D.N.Y. 1982) ..................................................................................... 12

*Union Pump Co. v. Centrifugal Tech. Inc.,*
  404 F. App'x 899 (5th Cir. 2010) ....................................................................................... 15

*United States. v. Sum of $70,990,605*,
     234 F. Supp. 3d 212 (D.D.C. 2017) ................................................................................12

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
     No. 2:17-cv-456-JRG, 2018 WL 6787357 (E.D. Tex. Nov. 14, 2018) ...............................14

**Rules**

Rule 30(b)(6) ...................................................................................................................... 14, 15

Rule 32(a)(3)........................................................................................................................14

**MIL 1.** Neither party should refer to the specifics or existence of the CDCA lawsuit involving the Joint Development and License Agreement ("JDLA"). But the findings of Judge Scarsi are issue preclusive in this case, a fact Samsung concedes. And those findings are directly relevant to damages in this case. Judge Scarsi found that (1) Samsung breached its supply obligations under the JDLA, Ex. 1 (CDCA Dkt. 186) at 10 ("There is no genuine dispute that Samsung breached JDLA § 6.2."); (2) this breach was material, *id.* at 19 ("[T]he term is an integral part of the parties' agreement, one that Netlist valued highly, as demonstrated by its negotiation and post-execution conduct."); (3) "Netlist performed its obligations under the JDLA," *id.* at 13-14; and (4) Netlist terminated the JDLA on July 15, 2020, *id.* at 20-21 ("There is no genuine dispute that Netlist completed the termination in the manner set forth in the JDLA, that the breaches it identified were material, and that it did not waive its right to terminate."). Each of these facts should be treated as settled.

These underlying settled facts are directly relevant to Samsung's purported license defense and damages. As one of Samsung's senior partners observed recently, ██████████████████████ ███████████████████████████████ Ex. 2 (Hong Depo. Tr.) at 147:1-3.

First, Samsung has asserted that all accused products sold prior to July 15, 2020, when Netlist formally terminated the JDLA, are licensed. Dkt. No. 196. As Netlist has explained in its summary judgment briefing, this defense fails because, among other reasons, Samsung's material breach of the JDLA in 2017 excused Netlist from its obligation to comply with the license grant going forward. Dkt. No. 201, 264. Under New York law, which governs the JDLA, "a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain . . . ." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007). Whether there has been a substantial failure to perform sufficient to excuse the non-breaching party's performance is a question of fact for the jury. *Mega Grp. Inc. v. Halton*, 290 A.D.2d 673, 674-75 (N.Y. App. Div. 2002) ("Whether promises in a contract are mutually dependent upon each other such that a failure to act by one party

excuses non-performance by the other ordinarily is a question of fact.").

The testimony of Indong Kim regarding his view of Samsung's behavior is highly relevant. He was responsible for executing the Netlist joint development relationship. Ex. 13 (Indong Kim Dep. Tr.) at 20:18-23 ("I was the person executing the joint development agreement"). And he reported to his superiors on the scope of the supply obligation. Ex. 5 at SEC000259 ("SVP Jung-bae Lee, This is what is stated per current agreement. [Supply Clause]."). First, whether Samsung's behavior was fair and in good faith goes directly to whether a failure to perform was material. Restatement (Second) of Contracts § 241 ("In determining whether a failure to render or to offer performance is material, the following circumstances are significant: . . . e. the extent to which the behavior of the party failing to perform… comports with standards of good faith and fair dealing . . ."). Second, it is relevant to damages. In *Monsanto Co. v. Ralph*, 382 F.3d 1374 (Fed. Cir. 2004), the willful and intentional breach of the contract that led to the patent infringement suit was a factor properly considered in damages: "Monsanto responds that the jury's award reasonably reflects that Ralph misappropriated a license to use the seed without restrictions, as his infringing use . . . . We agree with Monsanto . . . ." *Id.* at 1383. Third, it is relevant to willfulness under Samsung's interpretation of the JDLA. This lawsuit exists because of the behavior that led to the material breach and termination of the JDLA. The fact that the conduct that led to this was reckless and in bad faith, the implication of Dr. Kim's testimony, is exactly what is considered in a willfulness inquiry. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106, n.1 (2016) ("our precedents make clear that 'bad-faith infringement' is an independent basis for enhancing patent damages"); *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1351-52 (Fed. Cir. 2019) (testimony on accused infringer's "state of mind prior to the alleged acts of infringement… was clearly relevant" to willfulness inquiry).

Samsung's sole substantive response to the above discussion of relevance is that the CDCA found that Netlist terminated the JDLA on July 15, 2020. Mot. at 1-2. But as Netlist has explained, Samsung's material breach of the JDLA excused Netlist's obligation to honor the JDLA's license grant

*even prior to termination.* Dkt. No. 343 at 1-2 (citing *Sell v. Zylinski*, 524 N.Y.S.2d 914 (1988) and *Prime Choice Servs., Inc. v. Schneider Logistics Transloading & Dist., Inc.*, 2015 WL 7015268, at *5 (E.D. Wis. Nov. 12, 2015)). Samsung conflates the question of when the JDLA was formally terminated with the question of when Netlist's license obligations ceased. Judge Scarsi held that there was a material breach. But the issue of whether Samsung lost its rights to be free of patent infringement liability before formal termination was not considered by Judge Scarsi. It will need to be considered by the jury in this case, who can be advised that Samsung materially breached the supply agreement, none of Samsung's products are licensed after July 15, 2020 and the period before this, and any rights Samsung may have had did not exist from the date on which it substantially failed to perform.

Second, irrespective of Samsung's license defense, Samsung's material breach of its supply obligations under the JDLA is directly relevant to damages. Samsung's damages expert, Mr. Meyer, has attempted to rebut Netlist's damages claims by pointing to Netlist's license with SK Hynix: ███

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████ Ex. 3 (Meyer Rpt.) ¶ 159. But Mr. Meyer ignores that Netlist

████████████████████████████████████████████████████████████████

████████████████████████████. Netlist's CEO testified to this dynamic in detail:

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████ Ex. 2 (Hong Depo) at 154:9-22.

As Mr. Kennedy explains, ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Ex. 4 (Kennedy Rpt.) ¶ 374.

It would be unfair to allow Samsung to argue that the value of the patents-in-suit is ████

████████████████████████████████████████████████ without affording Netlist

the opportunity to provide the jury with an explanation of ███████████████████████████ ███████████████████████████████████████████████████████. The Federal Circuit is explicit that the importance of non-economic consideration is relevant to a comparability analysis. *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1379 (Fed. Cir. 2022) (rejecting argument that "we do not permit the use of non-payment terms in comparable licenses" and finding it was proper to consider agreement term that "provides greater context for the royalty").

Samsung's prior material breach of the JDLA is also directly relevant to the hypothetical negotiations. Mr. Kennedy opines that █████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████ Ex.4 (Kennedy Rpt.) ¶ 576. And that Samsung's use of the patents without any of these benefits would not be acceptable to Netlist, and would serve as an upward driver on royalties. *Id.* ¶¶ 615-616. *Monsanto Co. v. Ralph*, 382 F.3d 1374 (Fed. Cir. 2004) is directly on point. In that case, the past material breach of a license agreement relating to the asserted patents was affirmed by the Federal Circuit as crucial evidence in setting a reasonable royalty. Ralph signed a contract with Monsanto that gave him the right to purchase and use patented seeds for growing, but forbade him from saving the seeds for a subsequent growing season. *Id.* at 1377-1378. Because of the breach of the contract, Monsanto sued for patent infringement. And the jury awarded damages in an amount 10x the prices Monsanto charges for its seeds, known as a "standard technology fee." The Federal Circuit affirmed that the "technology fee" would not be a cap on damages because Ralph had breached the agreement and behaved in a way that Monsanto would never have allowed voluntarily: "Monsanto responds that the jury's award reasonably reflects that Ralph misappropriated a license to use the seed without restrictions, as his infringing use extended well beyond the licensed planting of a commercial crop for a single growing season." *Id.* at 1383.

Samsung claims that any argument regarding Samsung's breach of the JDLA would violate the Court's Standing Order on MIL No. 13, which prohibits the parties from "introducing evidence,

testimony, or argument regarding either party's other litigations or arbitrations, including parallel proceedings in any other court, tribunal, or forum, including ADR proceedings." Mot. At 3. Not so. Netlist can present evidence of Samsung's breach without specifically referencing the CDCA action. Nor would this require the parties to "completely relitigat[e] the CDCA action" as Samsung contends. Indeed, Samsung has admitted that "the CDCA Court's final judgment in Netlist's favor is binding." Dkt. 196 at 15. Thus, Samsung is barred in this proceeding from contesting Judge Scarsi's finding that it materially breached the JDLA. Dkt. 379 at 7-9.

Samsung argues that it should be permitted to entirely re-litigate the CDCA ruling. Specifically, Samsung seeks to excuse its willful infringement of Netlist's patents by arguing that it had a "vigorous defense to Netlist's breach and termination allegations," that "Netlist suffered no damages as a result of Samsung's alleged breach," and that it has appealed the CDCA's finding that Samsung breached the JDLA. Mot. at 3-4. These extraneous allegations have no place in this litigation.

First, the amount of damages awarded in the CDCA case has no relevance to this proceeding. Judge Scarsi held that Netlist could not seek consequential damages under New York law because of a consequential damages waiver in the JDLA. Ex. 1 (CDCA Dkt. 186) at 21 ("the contractual limitation on consequential damages may not be pierced here.") (citing New York law). Neither he nor the jury considered what the scope of the consequential damages would have been if there was not a contractual exclusion. *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 550 (5th Cir. 2013) ("For collateral estoppel [] not only must the earlier proceedings have actually adjudicated the specific issue, but that determination must have been necessary to the decision."). As a result, the only damages available in the CDCA case were cover damages. Netlist accepts as settled for the purposes of this case that it was able to cover the lost supply for pre-existing contracts it had entered into with customers at the time of breach. But any suggestion by Samsung that there were "no damages" would be inaccurate, and highly prejudicial without any probative value. Ex. 18 (CDCA Dkt. 305) ("Samsung's breach deprived Netlist of the benefit it justifiably expected, even if Netlist could not convince a jury that it *suffered*

*cover damages*.").

Second, Samsung's attempt to rely on its Ninth Circuit appeal to rebut willfulness is particularly improper and should be precluded. Courts in this district have rejected "a standard that a party is not a willful infringer until after it has resolved all its rights on appeal and has lost." *See Mondis Tech., Ltd. v. Chimei Innolux Corp.*, 822 F. Supp. 2d 639, 651-52 (E.D. Tex. 2011); *see also id.* ("[A]bsent unusual circumstances, a defendant's continued infringement after it is an adjudicated infringer is willful—even before appeal."). Moreover, under Fifth Circuit law a district court judgment is binding even while on appeal. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) ("[A] case pending appeal is res judicata . . . ."). As a result, from at least the summary judgment by Judge Scarsi affirming the termination, Samsung could have had no good faith belief.

Third, Samsung may not raise a defense that it had a good faith belief that it was in compliance with its obligations. Samsung never disclosed this theory in its 30(b)(6) witness testimony on willfulness. Ex. 14 (Topics 65-67); Ex. 15 (designating Junseon Yoon on Topics 65, 66); Ex. 16 ("Topic No. 67 is duplicative of Topics Nos. 65 and 66"); Ex. 17 (Junseon Yoon Tr.) at 43:16-25 ███████

███████████████████████████████████████████████████████████

███████████████████████) Moreover, Samsung has asserted privilege on the issue of its reasoning for suspending supply. The now President of Samsung Memory, Dr. Lee, was instructed by JS Choi, the head of sales, to investigate Netlist's request for supply: ████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████Ex. 5 at 2. Dr. Lee wrote ████████████████████ *Id.* Dr. Lee was ████████████████████

████████████████████████████████████████████████████ *Id.* at 1. When President Lee was examined about this issue, he was instructed not to answer:

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████

- 6 -



Ex. 6 (Lee Depo. Tr.) at 59:8-60:4

**MIL 2.** Netlist will not argue to the jury that it is entitled to any damages based on the breach of the JDLA. But the expected value of the supply clause of the JDLA to Netlist at the time of its execution is highly relevant because both Netlist and Samsung's damages expert analyze and rely on it in their damages analysis. There should be no re-litigation of the issues decided in the Central District of California. No party should be telling the jury that damages or lack thereof from breach of the JDLA is a measure of damages in this case. But this is not the true subject of this MIL. Instead, it is an improper and untimely *Daubert* challenge to the report of Netlist's damages expert Mr. Kennedy. Mr. Kennedy notes that

████████████████████████████████████████████████████

Ex. 4 (Kennedy Report) at ¶ 314. Mr. Kennedy calculates what the value of this Supply Commitment

would have been to Netlist: █████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ *Id.* (Kennedy Report) at ¶ 325. After a detailed set of calculations, he projects what

Netlist's profits would have been, taking into account a large number of market forces. *Id.* at ¶¶ 328-

345. He then notes that ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ *Id.* at ¶ 566. Mr. Kennedy will not testify that Netlist should be awarded the

expectancy value of the JDLA as the measure of patent damages. But as discussed above, *supra* 3, the

Federal Circuit has held that it is proper to value the non-monetary consideration that is provided as

part of agreements.

Mr. Kennedy's opinion is all the more important because it directly responds to one of the

damages theories presented by Samsung's damages expert, Paul Meyer. Mr. Meyer also opines on the

value of the JDLA and calculates a per unit royalty rate based on it. *See* Ex. 3 (Meyer Report) at ¶¶

312-319. Mr. Meyer ignores the value of the supply obligation, and instead focuses solely on ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ *Id.* at ¶ 319. He also opined that ████████████████████████

██████████████████████████████████ *Id.* at n. 577.

Samsung argues that introducing the value of the JDLA would be prejudicial and confusing

because "at the hypothetical negotiation, Netlist would know that it could not get consequential damages for breach given that the JDLA bars consequential damages recovery." Mot. at 6. But this misstates the nature of the analysis. Mr. Kennedy does not opine that consequential damages from the breach should be damages for patent infringement. He opined that the JDLA would have been perceived as valuable to Netlist when it was executed and quantifies what this value would have been.

Samsung contends that it would be prejudiced because "it would have to explain why the JDLA does not permit the valuation and why Netlist is precluded from arguing otherwise." Mot. at 6-7. But there is no reason for Samsung to engage in any such explanation or to mention the CDCA case at all, because neither Mr. Kennedy nor Netlist will argue that the expectancy value of the JDLA is the measure of damages Netlist is entitled to for patent infringement.

Finally, Samsung claims that "the jury determined that Netlist was not damaged by Samsung's discontinuing of supply to Netlist and, consequently, that the supply agreement was worth nothing." Dkt. 380 at 5. Judge Scarsi ruled just the opposite. Ex. 1 at 11 ("Samsung does not seriously contest materiality…the [supply] term is an integral part of the parties' agreement, one that Netlist valued highly"), 21 ("The parties' contract disclaims liability for…consequential damages" and "[e]xpress waivers of consequential damages are enforceable under New York law"); Ex. 18 (Dkt. 305) ("Samsung's breach deprived Netlist of the benefit it justifiably expected, even if Netlist could not convince a jury that it **suffered cover damages**.").

**MIL 3.** Samsung seeks to prohibit Netlist from introducing evidence regarding the ███████ ████████ opinion on the grounds that this evidence is irrelevant and would violate Standing Order MIL 13. **First,** it is important to clarify what is not addressed by the MIL. When determining the tax treatment of the $ 8 million non-recurring engineering fee provided to Netlist under the JDLA, Samsung took the position with Netlist that it was a patent royalty. As part of this process Samsung ███████████████████████████████████████████████ These answers were shared and discussed with Netlist. No lawyers were involved in these exchanges. It was simply between

businesspeople and accountants. They are highly relevant to the case because they contain admissions that a reasonable jury could conclude was acknowledgement that Samsung believed the products accused of infringement in this case, which includes LRDIMM and RDIMM, would use Netlist's patented technology. Ex. 7 (⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛) at NL107768 ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ Ex. 8 ⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛) at  NL070535 ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ This is relevant to the valuation of the JDLA. In particular, it explains why Samsung would have provided an ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

These are documents exchanged between Samsung and Netlist businesspeople. They are not on pleading paper. They are on plain white paper, sent by email. They make no reference to any legal proceeding, and instead make reference to a ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛

**Second,** as to the KTT opinion itself, Samsung's MIL is actually an attempt to avoid the preclusive effect of Judge Scarsi's summary judgement in the CDCA, which adopted the KTT findings. Samsung's damages expert, Mr. Meyer, intends to opine that ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ and use this number to justify his valuation of a reasonable royalty. Ex. 3 (Meyer Rpt.) ¶¶ 318-19. But ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ Ex. 9 (KTT) at 27-28. Samsung withheld $1.32 million in taxes because, according to Samsung, the NRE fee constituted a taxable patent royalty. *Id.* at 2. The KTT disagreed, *Id.* at 27. Judge Scarsi then adopted the KTT ruling, holding that Samsung thereby breached the JDLA by improperly withholding these funds. Ex. 1 (CDCA Dkt. 186) at 15-16 ("The Korean tax authority concluded that the NRE fees were not a patent royalty payment subject to tax withholding. . . . Samsung breached by withholding.").

- 10 -

As noted in Netlist's MILs, Samsung is precluded from ███████████████████████ ███████████████████████ Dkt. 379 (Netlist MIL) at 8-9. But if Samsung is permitted to make this argument, then Netlist should be permitted to point out that it was ███████████████████ Moreover, Samsung's expert admitted that the parties would have been aware of the KTT's decision during a hypothetical negotiation over patent royalties. Ex. 10 (Meyer Depo.) at 141:6-21 ████████ ████████████████████████████████████████████████████████████ ████████████████████████████.

Third, Samsung intends to defend against willfulness by asserting that it had a good faith belief that it was licensed to the patents in suit before termination. By doing so, it opens the door to the ██████████  ████████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████ Ex. 9 (KTT) at 27-28 ████████████████████ ███████████████████████████  ███████████████████ ████████████████████████████████████████████████████); *Id.* at 23 ██████████████████████████████████████████████████████████ █████████████████

Samsung argues that Netlist is estopped from arguing that the JDLA's license grant was limited to joint development only because this is supposedly "contrary" to the position it took in the CDCA litigation. Samsung MIL at 9. Netlist has addressed this argument at length in its summary judgment briefing. Dkt. No. 264 (Netlist MSJ Opp.) at 16-19; Dkt. No. 343 (Netlist Surreply) at 6. In sum, Netlist's positions are not inconsistent, and even if they were, Judge Scarsi expressly held that the "scope of the patent licenses is ***immaterial*** to the breach theory in this litigation, and to the reasons the Court will grant summary judgment as to liability." Ex. 1 (CDCA MSJ) at 15. Thus, neither issue preclusion nor estoppel applies. Dkt. No. 264 (Netlist MSJ Opp.) at 16-19.

Samsung argues that the KTT decision is irrelevant because it was not a party to the underlying proceedings and it did not have a fair opportunity to contest the KTT's decision. But as Netlist explained in its summary judgment briefing, Judge Scarsi held that Samsung participated in the KTT proceeding and presented arguments which the KTT duly considered and rejected. Dkt. No. 343 at 5. Moreover, the KTT's decision is entitled to deference under principles of international comity especially because it involves the application of a treaty to which the United States is a party. *Id.* at 6. This case is therefore distinct from *South Ionian Shipping Co. v. Huge Neu & Sons Int'l Sales Corp.*, 545 F. Supp. 323 (S.D.N.Y. 1982) and *United States. v. Sum of $70,990,605*, 234 F. Supp. 3d 212, 246-47 (D.D.C. 2017) on which Samsung relies. In both of those cases, there was a dispute about whether the parties had a fair opportunity to participate in the foreign proceedings. But those cases held only that the fairness and sufficiency of the foreign proceeding at issue was in dispute. *South Ionian Shipping,* 545 F. Supp. at 325; *Sum of $70,990,605,* 234 F. Supp. 3d at 246-47. Here, Judge Scarsi held that Samsung had the opportunity to participate and that Samsung was bound by the KTT's findings. Dkt. No. 343 at 5. Moreover, even if the KTT's decision is not ***binding*** on Samsung, it is still relevant to this dispute for all of the reasons explained above. None of Samsung's authorities hold otherwise.

Samsung argues that introduction of the KTT's decision would be unduly prejudicial because the KTT ███████████████████████████████████████████ Mot. at 9. Samsung represented to the Korean government that the parties' joint development of NVDIMM-P "ended in the second half of 2017" because Netlist had failed to meet Samsung's "specifications." Ex. 7 at NL107764. The KTT, however, concluded that this was incorrect:



Ex. 9 (KTT) at 29. While generalized statements about Samsung's credibility may be inadmissible, the

statement above rebuts any suggestion by Samsung that its behavior was motivated by a dissatisfaction with Netlist's technology.

**MIL 4.**  Netlist cannot without leave argue that Samsung is "greedy," "corrupt," "evil," "dishonest," an "oligopolist," suggest that Samsung's control over pricing in the market is illegal, or reference previous criminal convictions of Samsung for price fixing. However, the fact that Samsung is one of only three players in the DRAM market, that it must keep parity in terms of performance with the other two members, and as long as it maintains this parity Samsung has significant control over pricing, is directly relevant to the hypothetical negotiation. Mr. Kennedy opines that ▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Specifically, Mr. Kennedy opined that:



Ex. 4 at ¶¶ 191-92. The Federal Circuit has held that the need of a licensee in the hypothetical negotiation to keep up with competitors in a highly concentrated market is relevant. *See Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1355-56 (Fed. Cir. 2012) (finding "facts presented in [] Cartel Report" including that the "[relevant product] market is highly concentrated and the industry enjoys 'exceedingly high profit margins' due to a lack of competition" were "clearly relevant to the determination of a reasonable royalty rate for the [plaintiff's] patents").

In its motion, Samsung suggests that this "would require significant resources and trial time to rebut." Mot. at 10-12. Samsung can challenge Mr. Kennedy's pricing opinion via cross-examination and in rebuttal with its own expert, Mr. Meyer, who already does so in two paragraphs in his own report. Ex. 3 (Meyer Report) at ¶¶ 205-06.

Samsung argues that Mr. Kennedy's opinion is "devoid of support." Mot. at 11. On the

contrary, Mr. Kennedy relies on direct testimony from ████████████████████

████████████████████████████████████████████████████████

████████████████████████ Ex. 11 (12/7/22 Choi Depo. Tr.) at 29:24-30:6.

**MIL 5.**  Netlist should be permitted at trial to examine Samsung's corporate representatives on any subject matter upon which Samsung as a corporation testified during deposition. Contrary to Samsung's argument in its motion, the Federal Rules of Civil Procedure and black-letter Fifth Circuit law permit a party to examine an adverse party's corporate representative at trial on any matter within the corporation's knowledge presented during a Rule 30(b)(6) deposition. Under Rule 32(a)(3), "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Impeachment is a purpose. *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-456-JRG, 2018 WL 6787357, at *3 (E.D. Tex. Nov. 14, 2018) ("[t]o the extent [corporate representative's] answers are inconsistent with [former corporate representative's] 30(b)(6) testimony, Weatherford is permitted to use [former corporate representative's] 30(b)(6) deposition and his testimony at trial to impeach him."); *Lightfoot v. Hartford Fire Ins. Co.*, 2012 U.S. Dist. LEXIS 31615, at *3-4 (E.D. La. Mar. 9, 2012) ("The Fifth Circuit has specifically declared that '[a]s stated, [Rule 32(a)([3])] permits a party to introduce the deposition of an adversary as part of his substantive proof regardless of the adversary's availability to testify at trial' and has held that it is error for the district court to prohibit an adversary's use of deposition testimony of a designee.")

In *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006), the Fifth Circuit explained that "because, under the rule 30(b)(6) framework, Grisby acts as the agent for the corporation, he should be able to present Cajun's subjective beliefs… as long as those beliefs are based on the collective knowledge of Cajun personnel," and "[a]ccordingly, if a certain fact is within the collective knowledge or subjective belief of Cajun, Grisby should be prepared on the issue by Cajun, and allowed to testify as to it, even if it is not within his direct personal knowledge, provided the

testimony is otherwise permissible lay testimony." *Id.* Just as a corporate representative at trial can testify as to the knowledge of the corporation, the corporate representative at trial can be examined as to the knowledge of the corporation as disclosed in 30(b)(6) depositions. This is especially the case because Netlist's witness list calls any witness Samsung calls, and therefore its examination would be a hostile direct examination, not just a cross. Ex. 12 (Netlist's Amended Witness List).

In its motion, Samsung seeks to insulate its testifying corporate representatives who "work in marketing or sales" roles from any cross examination on "corporate policies for dealing with patent infringement allegation," on "technical details of each of the products and components at-issue [sic]," or on "every pre-suit communication between the parties." Mot. at 12-13. Yet as the Federal Rules and the Fifth Circuit make clear, this is precisely the role of a party's corporate representative: to testify on behalf of the corporation, consistent with the corporation's deposition testimony. Netlist is permitted to use that corporate deposition testimony "for any purpose."

The unpublished Fifth Circuit opinion on which Samsung relies, *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, at *7 (5th Cir. 2010), supports Netlist's position. Samsung carefully deletes the portion of that opinion immediately preceding the portion it quotes. The complete quotation is the following:

> Rule 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and **Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial.** However, a corporate representative may not testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.'" 907-908 (emphasis added, internal cites omitted).

*Id.* at 907-08 (internal citations omitted). Here, too, Netlist may impeach Samsung's corporate representatives with the deposition testimony of its 30(b)(6) witnesses, which are not hearsay as to Samsung. *See also Function Media, L.L.C. v. Google, Inc.*, 2010 WL 276093, at *3 (E.D. Tex. Jan. 15, 2010) (holding that ("[Plaintiff] is, of course, free to cross-examine [witness] with any relevant portions of Google's 30(b)(6) testimony").

Dated: March 20, 2023

Respectfully submitted,

*/s/ Jason Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on March 10, 2023 a copy of the foregoing was served to all counsel of record.

*/s/ Jason Sheasby*
Jason Sheasby

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Jason Sheasby*
Jason Sheasby