# EXHIBIT 14

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:21-CV-463-JRG |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD., | ) | |
| SAMSUNG ELECTRONICS AMERICA, | ) | |
| INC., SAMSUNG SEMICONDUCTOR, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF NETLIST, INC.'S SECOND NOTICE OF DEPOSITION OF DEFENDANTS SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG SEMICONDUCTOR, INC. PURSUANT TO RULE 30(b)(6)

Please Take Notice that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Local Rules of this Court, Plaintiff Netlist, Inc. ("Netlist") directs the following interrogatories to defendants Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), and Samsung Semiconductor, Inc. ("SSI") (collectively "Samsung" or "Defendants") on a date agreeable by the parties, beginning at 9:00 am PST and continuing from day-to-day thereafter (excluding Saturdays, Sundays, and holidays) until completed.  This deposition shall take place at Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067, or at a place mutually agreed by the parties.  The deposition(s) will be conducted pursuant to the Federal Rules of Civil Procedure and will be conducted in the English language before a notary public or other officer authorized to administer oaths.  The deposition(s) may be recorded by stenographic means, audiotaped, videotaped, and/or transcribed using real time interactive transcription (e.g., LiveNote).

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Samsung shall designate one or more of its officers, directors, managing agents, or other persons who are most knowledgeable, and competent to testify on its behalf, as to all matters known or reasonably available to Samsung with respect to the topics set forth in Attachment A.  Pursuant to Federal Rule of Civil Procedure 30(b)(6), the person(s) designated should be prepared to testify as to such matters known or reasonably available to Samsung.  At least five business days before the date set for the deposition(s), Samsung shall identify, by name and position, each person so designated and shall set forth the matters on which that person will testify.

Netlist reserves the right to serve Samsung with additional notices pursuant to Rule 30(b)(6) on additional topics as this litigation progresses and as further evidence is produced.

Dated: September 27, 2022

*/s/ Jason G. Sheasby*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiff Netlist, Inc.***

- 2 -

**ATTACHMENT A**

**DEFINITIONS**

Unless the context indicates otherwise, for purposes of these discovery requests, the following words and phrases have the meanings given:

1.      "Samsung," "Defendant(s)," "You," or "Your" means Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc. and any present or former parent, subsidiary, division, subdivision, affiliated company, licensee, predecessor, or successor of Samsung, and any of its or their present or former officers, directors, agents, attorneys, consultants, accountants, employees, representatives, investigators, distributors, salespersons, sales representatives, licensors, licensees, and any other persons acting, or purporting to act for or on its or their behalf or under its or their control, including but not limited to experts or persons consulted concerning any factual matter or matters of opinion relating to any issues involved in the action.

2.      "Netlist" shall mean Plaintiff Netlist, Inc. and all of its affiliates, officers, employees, agents, representatives, contractors, consultants, attorneys, successors, and assigns.

3.      "Patent" means any United States, international, or foreign classes or types of patents, utility models, design patents, applications (including provisional applications), certificates of invention, reissues, divisionals, continuations, continuations-in-part, extensions, renewals, reexaminations and foreign counterparts thereof.  The defined term Patent includes all stated categories of intellectual property regardless of whether those rights are presently expired or were ever adjudged invalid.

4.      "Netlist Patents-in-Suit" means and refers to U.S. Patent Nos. 10,860,506 ("'506 Patent"), 10,949,339 ("'339 Patent"), 11,016,918 ("'918 Patent"), 11,232,054 ("'054 Patent"), 8,787,060 ("'060 Patent"), and 9,318,160 ("'160 Patent").

5.      "Third party" means any individual, entity, organization, partnership, or corporation that is not a party to this action.

6.      "Samsung Accused DDR4 LRDIMMs" shall include any and all Samsung Double Data Rate 4 ("DDR4") load reduced dual in-line memory modules ("LRDIMMs"), including ones that its customers further customize.

7.      "Samsung Accused DDR5 DIMMs" shall include any and all Samsung Double Data Rate 5 ("DDR5") dual in-line memory modules, including ones that its customers further customize.

8.      "Samsung Accused HBM Products" shall include any and all Samsung HBM2, HBM2E, or HBM3 high bandwidth memory products, including ones that its customers further customize.

9.      "Samsung Accused Products" shall mean any and all Samsung Accused DDR4 LRDIMMs, Samsung Accused DDR5 DIMMs, and Samsung Accused HBM Products.

10.      "Samsung Distributor" shall include any person who Samsung authorized to sell any Samsung Accused Products.

11.      "Samsung Supplier" means a natural person or a business entity that supplies any component involved in the Samsung Accused Products or assembled Samsung's Accused Products in whole or in part.  For the purposes of this definition, a co-development relationship or a fabrication relationship shall constitute one type of supplier relationship.

12.      "Montage" means Montage, Inc. (d/b/a Montage Technologies, Inc.), Montage Technology, Inc., and any present or former parent, subsidiary, division, subdivision,

affiliated company, licensee, predecessor, or successor of Montage, Inc. and Montage Technology, Inc, and any of its or their present or former officers, directors, agents, attorneys, consultants, accountants, employees, representatives, investigators, distributors, salespersons, sales representatives, licensors, licensees, and any other persons acting, or purporting to act for or on its or their behalf or under its or their control, including but not limited to experts or persons consulted concerning any factual matter or matters of opinion relating to any issues involved in the action.

13.     "MPS" means Monolithic Power Systems, Inc. and any present or former parent, subsidiary, division, subdivision, affiliated company, licensee, predecessor, or successor of Monolithic Power Systems, Inc., and any of its or their present or former officers, directors, agents, attorneys, consultants, accountants, employees, representatives, investigators, distributors, salespersons, sales representatives, licensors, licensees, and any other persons acting, or purporting to act for or on its or their behalf or under its or their control, including but not limited to experts or persons consulted concerning any factual matter or matters of opinion relating to any issues involved in the action.

14.     "Rambus" means Rambus Inc. and any present or former parent, subsidiary, division, subdivision, affiliated company, licensee, predecessor, or successor of Rambus Inc., and any of its or their present or former officers, directors, agents, attorneys, consultants, accountants, employees, representatives, investigators, distributors, salespersons, sales representatives, licensors, licensees, and any other persons acting, or purporting to act for or on its or their behalf or under its or their control, including but not limited to experts or persons consulted concerning any factual matter or matters of opinion relating to any issues involved in the action.

15.     "Renesas" means Renesas Electronics America Inc. and any present or former parent, subsidiary, division, subdivision, affiliated company, licensee, predecessor, or successor of Renesas Electronics America Inc., and any of its or their present or former officers, directors, agents, attorneys, consultants, accountants, employees, representatives, investigators, distributors, salespersons, sales representatives, licensors, licensees, and any other persons acting, or purporting to act for or on its or their behalf or under its or their control, including but not limited to experts or persons consulted concerning any factual matter or matters of opinion relating to any issues involved in the action.

16.     "TI" means Texas Instruments Incorporated and any present or former parent, subsidiary, division, subdivision, affiliated company, licensee, predecessor, or successor of Texas Instruments Incorporated, and any of its or their present or former officers, directors, agents, attorneys, consultants, accountants, employees, representatives, investigators, distributors, salespersons, sales representatives, licensors, licensees, and any other persons acting, or purporting to act for or on its or their behalf or under its or their control, including but not limited to experts or persons consulted concerning any factual matter or matters of opinion relating to any issues involved in the action.

17.     "Standard(s)" means any technical standard created, authorized, controlled, and/or developed privately or unilaterally by a corporation, consortium, regulatory body, government, or standards setting organization.

18.     "JEDEC" means the JEDEC Solid State Technology Association.

19.     "JDLA" means the Joint Development and License Agreement entered between Netlist, Inc. and Samsung Electronics Co., Ltd. on November 12, 2015.

20.     "Person" refers to any natural individual; any form of business entity including, but not limited to, any corporation, company, firm, general partnership, limited partnership,

limited liability company, joint venture, proprietorship, business association, association, foundation, and legal entity; any directors, officers, owners, members, employees, agents, representatives, and attorneys of any of the foregoing; anyone else purporting to act on behalf of any such natural person or business entity; or any government entity, agency, officer, department, or affiliate.

21.     "Including" and "include" mean including without limitation, whether or not the phrase "without limitation" is explicitly stated.

22.     The words "and" and "or" are terms of inclusion and not of exclusion and are to be construed conjunctively or disjunctively as necessary to bring within the scope of these requests for production any information which might otherwise be construed to be outside their scope.

23.     The term "any" shall mean "any and all" and the term "all" shall mean "any and all."

24.     "Date" means the exact day, month and year if so ascertainable, or if not, the best approximation (including relationship to seasons and other events).

25.     "Document" means any form of communication or representation, in any language fixed in any tangible medium, including every form of recording letters, words, pictures, sounds, or symbols, or combinations thereof by means such as handwriting, printing, photostatting, photographing, magnetic taping or writing, optically burning or encoding, or any other form of storing, compiling, or mechanically or electrically recording data onto any media including paper, film, plastic, magnetic tape, computer disks, compact discs (CDs), digital video discs (DVDs) and the like. For example, the term "Document" includes without limitation, application notes, correspondence, circuit diagrams, datasheets, design files, description of operation principles, functional block diagrams, schematics, memoranda, notes,

diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, notebooks, lab notebooks, invention disclosures, prospectuses, product manuals, interoffice, and intra-office communications, offers, notations of any sort of conversations, working papers, applications, permits, surveys, specifications, source code, indices, telephone calls, meetings, printouts, teletypes, telefax, telefax records, invoices, work sheets, graphic or oral representations of any kind (including without limitation, pictures, photographs, charts, microfiche, microfilm, videotape, audiotape, recordings, motion pictures, plans, drawings, surveys), and electronic or mechanical records or representations of any kind (including, without limitation, electronic mail or e-mail, Instant Messages, tapes, cassettes, discs, and recordings).

26.     "Communications" means all written, oral, telephonic, or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, advertisements, e-mails and all other Documents evidencing any transmittal of information or verbal or nonverbal interaction between persons and entities.

27.     The terms "relate to," "reflecting," "relating to," "concerning," or any variations thereof, shall mean relating to, referring to, concerning, mentioning, reflecting, regarding, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, constituting (in whole or in part), or between (as in the context of Communications), as the context makes appropriate.

28.     The term "Identify" or "Identity" shall mean:

(1)     in connection with natural persons, their full names, titles and job description, and their present or last known business address and residence (designating which);

(2)     in connection with firms, partnerships, corporations, proprietorships, associations or other entities, their name, and their present or last known addresses of the principal place of business (designating which);

(3)     in connection with Documents, a description of the Document, setting forth its Date, title, format, nature, substance, author or over whose name it issued, addressee, and present custodian thereof, with such reasonable particularity as would be sufficient to permit the Document to be sought by subpoena *duces tecum* or under the provisions of Rule 34 of the Federal Rules of Civil Procedure;

(4)     in connection with oral statements and Communications: (i) the Date and location where they were made; (ii) the identity of each of the participants and witnesses thereto, and all others present; (iii) the medium of communication; and (iv) their substance.

## **TOPICS**

**TOPIC NO. 15**:

The identification of all Samsung Accused Products.

**TOPIC NO. 16**:

The numbers and percentages of Samsung Accused Products containing components supplied by third parties, including information for:

(1)     the respective numbers and percentages of Samsung Accused DDR4 LRDIMMs containing data buffers supplied by Montage, Renesas, and/or other Samsung Supplier(s);

(2)     the respective numbers and percentages of Samsung Accused DDR4 LRDIMMs and Samsung Accused DDR5 DIMMs containing RCDs supplied by Montage, Rambus, Renesas, and/or other Samsung Supplier(s);

(3)    the respective numbers and percentages of Samsung DDR5 RDIMMs containing power management integrated circuits ("PMICs") supplied by Samsung LSI, TI, MPS, Renesas, and/or other Samsung Supplier(s);

(4)    the respective numbers and percentages of Samsung DDR5 UDIMMs containing power management integrated circuits ("PMICs") supplied by Samsung LSI, TI, MPS, Renesas, and/or other Samsung Supplier(s);

(5)    the respective numbers and percentages of Samsung DDR5 SODIMMs containing power management integrated circuits ("PMICs") supplied by Samsung LSI, TI, MPS, Renesas, and/or other Samsung Supplier(s); and

(6)    the respective numbers and percentages of Samsung DDR5 DIMMs containing serial presence detect ("SPD") supplied by Montage, Renesas, and/or other Samsung Supplier(s).

**TOPIC NO. 17**:

The presence or absence of acceptable non-infringing alternatives to the inventions claimed in Netlist Patents-in-Suit.

**TOPIC NO. 18**:

Samsung's customer base, market share, and distribution channels for Samsung Accused Products.

**TOPIC NO. 19**:

Samsung's actual, proposed, contemplated, planned or prospective pricing policies, strategies, plans, practices, or decisions for Samsung Accused Products.

**TOPIC NO. 20**:

Any benefits, financial or otherwise, that Samsung receives, directly or indirectly, relating to Samsung Accused Products.

**TOPIC NO. 21**:

The total units of Samsung Accused Products sold or otherwise provided to customers from six years before the filing of this lawsuit to the present.

**TOPIC NO. 22**:

The gross revenues, net revenues, costs, gross profits, and net profits attributable to each Samsung Accused Product sold or otherwise provided to customers from six years before the filing of this lawsuit to the present.

**TOPIC NO. 23**:

Samsung's Documents relating to sales, costs, marketing, revenues, profits, expenses, and margins associated with sales of Samsung Accused Products, including without limitation how such Documents and information are maintained, where they are kept, and how the information within any such Documents is organized.

**TOPIC NO. 24**:

The facts and circumstances of all sales, or offers for sales of the Samsung Accused Products, including but not limited to sales meetings in the United States, sales Communications to or from the United States, customization for the United States market, Communications with an entity whose parent is located in the United States, and any other sales activity occurring at least in part in or directed from the United States.

**TOPIC NO. 25**:

All facts and circumstances relating to the cost of researching, developing, testing, and bringing to market each Samsung Accused Product.

**TOPIC NO. 26**:

All facts and circumstances relating to the cost of any sourcing, sale, shipment, delivery, importation, or exportation by Samsung of the Samsung Accused Product and the components thereof.

**TOPIC NO. 27**:

The cost of researching, developing, purchasing, testing, and manufacturing each key component of Samsung Accused Products, including without limitation data buffers, RCD, PMICs, and control dies.

**TOPIC NO. 28**:

The date on and circumstances through which Samsung began making, using, selling, offering for sale, or otherwise providing to a customer the first unit of each Samsung Accused Product.

**TOPIC NO. 29**:

The expected, planned, and forecasted profitability, revenues, and sales of the Samsung Accused Products.

**TOPIC NO. 30**:

Samsung's past, present, and future assessment of its market share, state of competition, Competitors for Samsung Accused Products.

**TOPIC NO. 31**:

Samsung's past, present, and future assessment of its customer demand and customer requirements for Samsung Accused Products.

**TOPIC NO. 32**:

Samsung's marketing, advertising, and promotion of the Samsung Accused Products, including without limitation all advertising or Communications between Samsung and its past, current, and prospective customers about the value, advantages and importance of Samsung Accused Products comparing to others' competitive products.

Netlist, Inc 's Second Notice of 30(b)(6) Deposition
No  21-cv-463-JRG (E D Tex )

**TOPIC NO. 33**:

The Identity, location, organizational structure, and responsibilities of each Samsung person, group, team, business, or functional unit involved with the sales and marketing of Samsung Accused Products.

**TOPIC NO. 34**:

Any customer surveys, market research, or consumer research relating to Samsung Accused Products, including Samsung's methods and systems for tracking and recording such information.

**TOPIC NO. 35**:

Any research, analyses, studies, evaluations, opinions, competitive analysis, or any other activity Samsung undertook or is undertaking to determine the past, current, or potential marketability, revenues, costs, profits, market share, or customer perceptions of Samsung Accused Products including without limitation Samsung's past, current, and future commercialization plans for Samsung Accused Products.

**TOPIC NO. 36**:

How and why Samsung Accused Products are superior to or more desirable than its competitors' products.

**TOPIC NO. 37**:

All facts relating to the appropriate amount of damages to which Netlist is entitled if Netlist Patents-In-Suit are valid and infringed.

**TOPIC NO. 38**:

The portion of the realizable profit from the sale of the Accused Products that should be credited to the alleged invention of Netlist Patents-in-Suit as distinguished from

nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Samsung.

**TOPIC NO. 39**:

Samsung's knowledge regarding all products that should be or should have been marked under Netlist Patents-in-Suit.

**TOPIC NO. 40**:

Samsung's knowledge regarding whether any present or past Netlist products practice(d) any of the Netlist Patents-in-Suit.

**TOPIC NO. 41**:

The Identity of all products that do now or have ever practiced any claim of Netlist Patents-in-Suit.

**TOPIC NO. 42**:

The Identity of any past or present DDR4 LRDIMM, DDR5 DIMM, or HBM product that does not practice any asserted claim of Netlist Patents-in-Suit.

**TOPIC NO. 43**:

Any basis for Samsung's contention that Netlist is not entitled to reasonable royalty in this case and/or basis for Samsung's proposed royalty calculation, including facts applicable to each of the *Georgia Pacific* factors and apportionment.

**TOPIC NO. 44**:

To the extent Samsung contends that any Netlist Patents-in-Suit are essential to practicing a standard, the basis for Samsung's proposed (F)RAND royalty calculation.

**TOPIC NO. 45**:

The facts and circumstances relating to the preparation of any cost, revenue, profit, loss, or other financial Documents produced in this Action, including the meaning and

- 14 -

interpretation of such financial Documents as well as the accuracy of the information contained therein.

**TOPIC NO. 46**:

For each Samsung Accused Product sold worldwide since six years before the filing of this lawsuit, the total number of units manufactured, total number of units sold, gross and net revenue, costs (including total cost of manufacture, fixed costs, and variable costs), and gross and net profits, on a monthly and quarterly basis dating back to the date each Samsung Accused Product was first sold, in each country, and Samsung's systems and methods for tracking, recording, and maintaining such information. This should include data on transfer pricing between Samsung entities. This should also include worldwide data because of any disputes regarding whether a product is sold or offered for sale or used in the United States. This should also include an explanation of how Samsung attributes revenue from Samsung Accused Products to a particular country or region.

**TOPIC NO. 47**:

The facts and circumstances relating to how Samsung determines or calculates rebates provided to customers, including but not limited to all reasons for which rebates are offered, how the amount of rebate is determined, who determines the amount of rebate, and how the amount of rebate may vary across customer, product, and time.

**TOPIC NO. 48**:

The facts and circumstances relating to Samsung's decision not to obtain a license to Netlist Asserted Patents after the JDLA was terminated.

**TOPIC NO. 49**:

Samsung's formal or informal policies, procedures, guidelines or practices for handling, negotiating, reviewing, editing, executing, or otherwise dealing with agreements

relating to patent rights (including patent licenses), including what Person(s) at Samsung is involved in or responsible for such agreements and the factors Samsung considers when negotiating license agreements or attempting to determine the value of patents.

**TOPIC NO. 50**:

Any industry standards or practices relating to the licensing of or royalties for memory module technologies.

**TOPIC NO. 51**:

Existing Samsung agreements, contracts, patent licenses, or other licenses concerning any Samsung Accused Product.

**TOPIC NO. 52**:

Any agreements, contracts, patent licenses, or other licenses Samsung contends are comparable to a license that Samsung would have taken in a hypothetical negotiation in this case, including the fat and circumstances Samsung took into account in considering or entering into any offer to license or purchase or any actual license or purchase agreement that Samsung contends is reasonably comparable in scope to a license for the use or practice of any of Netlist Asserted Patents.

**TOPIC NO. 53**:

All formal and informal indemnity agreements between Samsung and any third party that relate in any way to Samsung Accused Products, including the terms and circumstances of the agreements and all attempts to enforce the agreements.

**TOPIC NO. 54**:

Any competitive analysis or reverse engineering of any product manufactured, sold, or distributed by Netlist.

**TOPIC NO. 55**:

Any patent owned by Samsung or third parties that covers the Accused Products.

**TOPIC NO. 56**:

The value contributed to Samsung Accused Products separate from that recited in the claims of the Netlist Patent-in-Suit.

**TOPIC NO. 57**:

Samsung's decision-making regarding compliance with Netlist's requests for Samsung to supply products under the JDLA.

**TOPIC NO. 58**:

Any agreements with third parties that require Samsung to supply DRAM and Flash memory to customers based on the request or requirements of the customer.

**TOPIC NO. 59**:

Samsung's system(s) for tracking or recording patent licenses or other patent-related agreements to which Samsung is or was a party, and any royalty payments made subject to those agreements, including but not limited to all lists, databases, or other compilations of such information.

**TOPIC NO. 60**:

Samsung's contention that it has an implied or express license to Netlist Patents-in-Suit.

**TOPIC NO. 61**:

For each Samsung Accused Product, the JEDEC specification(s) such Samsung Accused Products practice.

**TOPIC NO. 62**:

All facts and circumstances relating to Samsung's contention that any claim of Netlist Patents-In-Suit is essential to practicing a standard, including the specific section of any standard being practiced.

**TOPIC NO. 63**:

Any facts supporting and/or contradicting Samsung's contention that Netlist is subject to any duty to disclose under the JEDEC Patent Policy, including the duty to disclose patent applications.

**TOPIC NO. 64**:

Any facts supporting and/or contradicting Samsung's contention that Netlist breached any JEDEC Patent Policy, including any duty to disclose patent applications.

**TOPIC NO. 65**:

Samsung's awareness and/or knowledge of Netlist Patents-In-Suit and of any patent application or patent relating to any Netlist Patents-in-Suit, including but not limited to the date on which Samsung first gained such awareness and/or knowledge and the facts and circumstances relating thereto.

**TOPIC NO. 66**:

Any evaluations, analyses, or other efforts by Samsung to determine if any Samsung Accused Product or any other Samsung product would infringe Netlist Patents-In-Suit, including the facts and circumstances of those efforts, the results of those efforts, any opinions of counsel relating to such efforts or patents, and any conclusion as to whether or not Samsung needed or should obtain a license to one or more of Netlist Patents-In-Suit.

**<u>TOPIC NO. 67</u>**:

All facts and circumstances relating to the basis for Samsung's contention that Samsung's infringement of Netlist Patents-In-Suit has not been willful.

**<u>TOPIC NO. 68</u>**:

Any effort made by, on behalf of, or at the request of Samsung to design around and/or develop a non-infringing alternative to any or all of Netlist Patents-In-Suit, including the facts and circumstances concerning such efforts, any reason for not implementing or deploying any design around or non-infringing alternative to Netlist Patents-In-Suit, the existence or feasibility of implementing any such design around or non-infringing alternative, any plans or strategies for designing or developing any such design around or non-infringing alternative, any benefits or disadvantages of any such design around or non-infringing alternative, and the costs, engineering requirements, and/or changes necessary to implement any such design around or non-infringing alternative.

**<u>TOPIC NO. 69</u>**:

The facts and circumstances relating to the willfulness evaluation factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992).

**<u>TOPIC NO. 70</u>**:

The facts and circumstances relating to any policy in effect now or at any point, or any practice by Samsung personnel, whereby Samsung employees are discouraged or prohibited, or understand themselves to be discouraged or prohibited, from reading patents and/or patent applications filed by other companies.

**<u>TOPIC NO. 71</u>**:

Whether Samsung instructs its employees on avoiding infringement of others' intellectual property, and the programs, policies, and steps employed towards such avoidance.

**TOPIC NO. 72**:

The facts and circumstances relating to any opinions of counsel upon which Samsung intends to rely on in this Action.

**TOPIC NO. 73**:

The facts and circumstances relating to any actions undertaken by Samsung in response to becoming aware of Netlist Patents-in-Suit and/or of the Complaint in this Action.

**TOPIC NO. 74**:

The facts and circumstances relating to any actions undertaken by Samsung in order to avoid infringement of Netlist's patents in response to (1) Netlist's termination of the JDLA on July 15, 2020; and/or (2) the summary judgment order and final judgment entered by the United States District Court for the Central District of California, confirming that Netlist properly terminated the JDLA as of July 15, 2020. *Netlist, Inc. v. Samsung Elecs. Co., Ltd.*, No. 8:20-cv-993-MCS (C.D. Cal.).

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on September 27, 2022.

*/s/ Yanan Zhao*
Yanan Zhao

- 20 -