UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>and SAMSUNG SEMICONDUCTOR, INC.,<br><br>　　　　Defendants. | Civil Case No. 2:21cv463-JRG<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S OMNIBUS MOTION *IN LIMINE***

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**TABLE OF CONTENTS**

I.   MOTION *IN LIMINE* NO. 1: Improper Argument or Evidence Regarding Samsung's Alleged Failure To Supply Memory to Netlist ................................................................... 1

II.  MOTION *IN LIMINE* NO. 2: Improper Argument or Evidence Regarding the Alleged Value of the Supply Agreement to Netlist Under the JDLA ............................................. 5

III. MOTION *IN LIMINE* NO. 3: Improper Argument or Evidence Regarding the Korean Tax Tribunal Opinion ....................................................................................................... 7

IV.  MOTION *IN LIMINE* NO. 4 Improper Allegations of Price Fixing or Other Illegal Activities ......................................................................................................................... 10

V.   MOTION *IN LIMINE* NO. 5: No Argument, Evidence, or Questions Suggesting a Party's Corporate Representative at Trial Is Obligated To Prepare on Any Particular Topic or Is Charged with Knowledge of Others Within the Company ............................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chrimar Sys., Inc. v. Adtran, Inc.*,
  No. 6:15-cv-618-JRG-JDL, 2017 WL 131587 (E.D. Tex. Jan. 13, 2017)................................5

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-cv-72-DF, Dkt. 2392 (E.D. Tex. Oct. 5, 2010)...........................................................13

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
  70 F. Supp. 3d 808 (E.D. Tex. 2014)........................................................................................6

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
  28 F.4th 42 (9th Cir. 2022) ......................................................................................................11

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
  No. 6:11-CV-00201-JRG, 2017 WL 2773944 (E.D. Tex. May 26, 2017) ..............................10

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
  140 S. Ct. 1589 (2020)..............................................................................................................5

*Mars, Inc. v. Trurx LLC*,
  No. 6:13-CV-526-RWS-KNM, 2016 WL 4055675 (E.D. Tex. Apr. 29, 2016) ......................10

*Retractable Techs. Inc. v. Becton, Dickinson & Co.*,
  No. 2:07-CV-250, 2009 WL 8725107 (E.D. Tex. Oct. 8, 2009) .............................................10

*South Ionian Shipping Co. v. Huge Neu & Sons Int'l Sales Corp.*,
  545 F. Supp. 323 (S.D.N.Y. 1982) ...........................................................................................8

*U.S. v. Sum of $70,990,605*,
  234 F. Supp. 3d 212 (D.D.C. 2017) ..........................................................................................8

*Union Pump Co. v. Centrifugal Tech. Inc.*,
  404 F. App'x 899 (5th Cir. 2010) ...........................................................................................13

**Statutes**

35 U.S.C. § 286........................................................................................................................11

**Other Authorities**

Fed. R. Evid. 402, 403 .................................................................................................9, 10, 12, 13

Fed. R. Evid. 403 ..................................................................................................................6, 12

Samsung respectfully moves *in limine* to preclude the following from trial:

I. **MOTION *IN LIMINE* NO. 1: Improper Argument or Evidence Regarding Samsung's Alleged Failure To Supply Memory to Netlist**

The Court should preclude Netlist from re-litigating before the jury Samsung's alleged failure to supply memory to Netlist—facts that formed the basis of Netlist's separate lawsuit in the Central District of California ("CDCA") alleging that Samsung had breached the Joint Development and License Agreement ("JDLA"). The evidence and testimony surrounding this issue are not relevant to any claim or defense in this patent infringement case, are more prejudicial than probative, and violate this Court's Standing Order on Motions *in Limine* (No. 13) precluding discussion of prior litigations between the parties, which appears to recognize that introducing the jury to such subject matter creates the potential for prejudice and jury confusion. *See* Court MIL No. 13.

Netlist has referenced Samsung's alleged failure to discharge its supply obligations under the JDLA with the plain intent to cast Samsung in a negative light and inflame the jury's emotions with facts that are simply irrelevant to anything in this case. Netlist also seeks to introduce alleged breach of contract facts in connection with its improper, unpled early repudiation theory—i.e., that ████████████████████████████████████████████████████████████████████████████████, rather than *on* July 15, 2020 when Netlist terminated it per the CDCA judgment. This theory is one of Netlist's belated and improper attempts to defeat Samsung's license defense for pre-July 15, 2020 sales, so that Netlist can recover damages for those sales.[1] As discussed in the pending motions for summary judgment,

---

[1] Granting either Samsung's Motion for Summary Judgment that all pre-July 15, 2020 Sales were licensed, Dkt. No. 196, or Samsung's Motion for Summary Judgment of No Pre-Suit Damages, Dkt. No. 198, would eliminate this improper reason for Netlist to seek to discuss Samsung's alleged failure to supply memory with respect to Netlist's early repudiation theory.

1

Netlist's arguments for pre-July 15, 2020 termination are barred by issue preclusion, judicial estoppel, and claim preclusion. *See, e.g.*, Dkt. Nos. 196, 255, 290. Netlist brought claims against Samsung *for breach of contract* in the CDCA case, the parties litigated those claims, and the court rendered judgment. That judgment found that Samsung breached the JDLA, and that Netlist properly terminated the JDLA on—not before—July 15, 2020. Netlist also brought a declaratory judgment claim that the JDLA was terminated on—not before—July 15, 2020, presented evidence on Samsung's alleged pre-July 15, 2020 breaches, and prevailed in that case. Netlist cannot now re-litigate this issue, with the exact same nexus of facts and evidence, in pursuit of a new theory that the JDLA was actually terminated at some nebulous time before July 15, 2020.

Given its lack of connection to the core issues in this case—patent infringement, invalidity, and damages—argument and evidence regarding Samsung's alleged failure to supply Netlist memory, under the JDLA or otherwise, is far more prejudicial than probative, and is likely to confuse the jury. As one example, Netlist intends to present testimony from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 at 89:4-91:3. Netlist also sought testimony from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 at 66:4-69:20.

Such evidence is not relevant to any issue properly in this case. It can serve only to prejudice the jury against Samsung due to conduct Netlist characterizes as unethical, but which

2

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

was entirely lawful under the proper interpretation of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Samsung will be prejudiced by having to spend valuable trial time providing context around the supply issues and the dispute over the JDLA's supply provision. Indeed, Samsung has raised this very issue—whether the JDLA's supply provision was materially breached—in its appeal of the CDCA's judgment to the Ninth Circuit. Re-litigating this side issue of Samsung's supply of memory to Netlist would be a highly prejudicial, irrelevant distraction to the jury tasked with deciding issues of patent infringement, invalidity, and damages for six asserted patents.

Finally, this Court's Standing Order on MIL No. 13 appears to recognize the potential for prejudice and jury confusion because it prohibits the parties from "introducing evidence, testimony, or argument regarding either party's other litigations or arbitrations, including parallel proceedings in any other court, tribunal, or forum, including ADR proceedings." The issue of whether and when Samsung materially breached the JDLA's supply provision, and the effect that alleged breach had on the JDLA, was fully and fairly litigated in the CDCA Case, and is currently on appeal at the Ninth Circuit. For Netlist to bring up Samsung's alleged failure to supply memory puts Samsung in an impossible position. Even if Netlist does not specifically mention the CDCA contract litigation when discussing the supply-related facts, Samsung is not able to respond by providing necessary context and explain without completely re-litigating the CDCA action.

While the issue of Samsung's purported failure to supply memory products to Netlist has no place in this jury trial, discussion of the JDLA and the judgment terminating the JDLA still must be permitted because it relates directly to Samsung's damages case. In order to walk the line of keeping out highly prejudicial and irrelevant issues but permitting Samsung to properly defend itself in this case, Samsung proposes that the Court employ the same approach it did in

the *Acorn v. Samsung* matter by providing specific guidance on the content of permissible disclosure to the jury.  As such, while the parties should be precluded from referencing the underlying facts of the CDCA Case, including Netlist's allegations about Samsung's supply of memory to Netlist, the parties should be allowed to discuss the following as it relates to the CDCA case:  (1) that the parties previously engaged in breach of contract litigation, which was resolved by the court in that case entering final judgment, on February 15, 2022, that the JDLA terminated on July 15, 2020; (2) that the jury in that case found that Netlist suffered no damages as a result of Samsung's alleged breach, and (3) that both parties are appealing various aspects of the CDCA Court's final judgment.  *See* Ex. 3 at 7-8.

There is also an issue related to Samsung's defense of the allegation of willful infringement.  For that defense, Samsung relies on, *inter alia*, (1) its license under the JDLA and its vigorous defense to Netlist's breach and termination allegations in the CDCA Case, (2) the CDCA jury's December 3, 2021 verdict that Netlist suffered no damages as a result of the alleged breach of the JDLA's supply provision, (3) the CDCA Court's February 15, 2022 final judgment on the breach issues,[2] and (4) Samsung's appeal to the Ninth Circuit.  Dkt. No. 200 at 7-12; Dkt. No. 293 at 3-4.

Standing Order on MIL No. 13 would prevent Samsung from presenting a full and complete defense to the willful infringement allegations.[3]  Samsung recognizes that the Court's MIL Nos. 6 and 13 seek to balance probative value against potential prejudice and jury

---

[2] The date of this judgment supports Samsung's position that, up to at least February 15, 2022, Samsung had a good faith belief that it was still licensed under the JDLA.  *See, e.g.*, Dkt. No. 200 at 8-9.

[3] Standing Order on MIL No. 6, barring reference to PTAB proceedings, also prevents Samsung from presenting fully its defense to Netlist's allegations of willful infringement because both Samsung's IPR petitions and the PTAB's institution of IPRs, demonstrate Samsung's justified belief in the asserted patents' invalidity.  Dkt. No. 200 at 11-12.

confusion. However, Samsung should not be forced to forego significant aspects of its defense to Netlist's charge of willful infringement.

For the foregoing reasons, the Court should preclude evidence and testimony regarding Samsung's alleged failure to supply memory to Netlist.

## II. MOTION *IN LIMINE* NO. 2: Improper Argument or Evidence Regarding the Alleged Value of the Supply Agreement to Netlist Under the JDLA

Netlist intends to argue to the jury that the value of the supply agreement to Netlist under the JDLA was ▮▮▮▮▮▮▮▮▮▮. This valuation is inconsistent with the only evidence of value specific to the supply agreement—the jury verdict in the CDCA Case, where the jury awarded no damages for Samsung's breach of the supply provision. Ex. 4.[4] There, the jury determined that Netlist was ***not damaged*** by Samsung's discontinuing of supply to Netlist and, consequently, that the ***supply agreement was worth nothing***. *Id.* This decision is binding on Netlist under both the issue and claim preclusion doctrines. *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594-95 (2020) (listing claim preclusion factors); *Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-cv-618-JRG-JDL, 2017 WL 131587, at *1 (E.D. Tex. Jan. 13, 2017) (listing issue preclusion factors). Indeed, Netlist has not appealed this aspect of the final judgment in the CDCA Case. *See* Ex. 6 at 28-35. This Court should preclude Netlist from presenting argument, evidence, or testimony inconsistent with this jury verdict.

Despite the jury's finding the supply agreement valueless, Netlist's damages expert calculated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 7 at ¶ 326. Netlist's witnesses parroted this same unsubstantiated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but never testified to or produced independent evidence

---

[4] The CDCA court subsequently entered judgment in the amount of $1.00 for "breach of the supply provision in the parties' contract." Ex. 5 at ¶ 1. Samsung has appealed the judgment to the Ninth Circuit.

from ██████████████████████. Ex. 8 at 125:7-128:14; Ex. 9 at 215:15-216:21. Nor did Netlist disclose such a theory during the fact discovery period.

Netlist maintains that such valuation evidence should be permitted because the CDCA jury was not permitted to evaluate consequential damages. Ex. 7 at ¶ 325. However, the CDCA Court entered summary judgment barring Netlist from recovering consequential damages as a remedy for its breach of contract claims. Ex. 10 at 21-22. Although Netlist is appealing that decision, issue preclusion bars Netlist from asserting that consequential damages would have been available to Netlist. *See DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 812 (E.D. Tex. 2014) ("Importantly, the collateral estoppel effect of a prior district court decision is not affected by the fact that an appeal has been taken from the decision." (citing cases)).

Finally, re-litigating the value of the supply agreement portion of the JDLA here, through the injection of Mr. Kennedy's opinions and Netlist's claims of contract damages, would be highly prejudicial and likely to confuse the jury, and such prejudice outweighs any possible probative value. *See* Fed. R. Evid. 403. It would be particularly confusing and prejudicial because, at the hypothetical negotiation, Netlist would know that it could not get consequential damages for breach given that the JDLA bars consequential damages recovery, so the purported ████████████████ is wholly improper. Ex. 11 at 11 ████████████████

████████████████████████████████████████

Samsung would be prejudiced, furthermore, because it would have to explain why the JDLA

---

[5] Samsung has sought to exclude Mr. Kennedy's improper consequential contract damages opinions. Dkt. No. 205 at 12-13.

does not permit the valuation and why Netlist is precluded from arguing otherwise. Such explanations would require significant resources and trial time. As discussed above, Standing Order on MIL No. 13 operates to bar Samsung from providing this highly important context. To avoid such prejudice and confusion, this Court should prevent Netlist from providing argument or evidence regarding the alleged value to Netlist of the JDLA's supply agreement.

### III.    MOTION *IN LIMINE* NO. 3: Improper Argument or Evidence Regarding the Korean Tax Tribunal Opinion

Netlist intends to introduce evidence regarding the opinion of the Korean Tax Tribunal in another attempt to defeat Samsung's license defense and/or otherwise disparage Samsung. Specifically, Netlist has cited to this Korean Tax Tribunal opinion as evidence that the JDLA license provision was ███████████████████████████████████████ ███████████████████████████████. Dkt. No. 264 at 14-16. This improper interpretation would allow Netlist to recover damages for accused HBM sales prior to July 15, 2020; this is the primary argument in support of which Netlist has attempted to use the Korean Tax Tribunal decision. As a preliminary issue, if the Court grants Samsung's Motion for Summary Judgment That All Accused Products Sold Before July 15, 2020 Are Licensed, or Samsung's Motion for Summary Judgment of No Pre-Suit Damages, the issue of pre-July 15, 2020 damages is off the table, and thus so is this purported justification for Netlist to introduce evidence of the Korean Tax Tribunal decision. Dkt. Nos. 196, 198.

Netlist additionally improperly cites to the Korean Tax Tribunal decision in support of its willfulness position. *See* Ex. 12 at 26-28. Netlist's entire willfulness argument is the subject of Samsung's Motion for Summary Judgment of No Willfulness; if the Court grants that motion, evidence regarding the Korean Tax Tribunal cannot be used for this purpose either. Independent of Samsung's motions for summary judgment, the Court should still exclude evidence regarding

7

the Korean Tax Tribunal decision as irrelevant to any claim or defense in the case, in violation of this Court's Standing Order on Motions *in Limine* (No. 13), barred by issue preclusion and judicial estoppel, and more prejudicial than probative.

First, the Korean Tax Tribunal decision is irrelevant to any claim or defense in this case. Foreign decisions are relevant only where the judgment was rendered after a fair trial, in a court of competent jurisdiction, which means a contested proceeding concerning the immediate parties after due citation or voluntary appearance of the defendant, and regarding the same underlying cause of action. *South Ionian Shipping Co. v. Huge Neu & Sons Int'l Sales Corp.*, 545 F. Supp. 323, 325 (S.D.N.Y. 1982); *see also* Rest. 3d Confl. § 98. The decision of the Korean Tax Tribunal here meets none of these requirements. Samsung was not a party to those proceedings, the Korean Tax Tribunal is not a "court," there was no fair trial or contested proceeding for Samsung (who was not a party), and the underlying cause of action in the decision of the Korean Tax Tribunal was, unsurprisingly, one of Korean tax law and not New York contract law. *See, e.g.*, *U.S. v. Sum of $70,990,605*, 234 F. Supp. 3d 212, 246-47 (D.D.C. 2017) (denying motion for summary judgment on grounds of international comity in part because there was no trial on the issue in the foreign decision). A United States court is far better equipped to interpret a United States contract under United States law than is a foreign tax tribunal.

Second, the Court's Standing Order on Motions *in Limine* (No. 13) precludes introduction of evidence relating to other proceedings, like the one between Netlist and a Korean tax agency:

> The parties shall be precluded from introducing evidence, testimony, or argument regarding either party's other litigations or arbitrations, including parallel proceedings in any other court, tribunal, or forum, including ADR proceedings.

Court MIL No. 13. The Korean Tax Tribunal decision is subject to this standing MIL.

8

██████████████████████████████████████████

Third, issue preclusion and judicial estoppel bar Netlist from arguing that the JDLA license provision is limited to the Joint Development Project, the ultimate theory in support of which Netlist (wrongly) cites the Korean Tax Tribunal decision. *See, e.g.*, Dkt. 196. ███

███████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████.

10 at 9 ██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████). Netlist is therefore barred from making the contrary argument here using the Korean Tax Tribunal decision.

Finally, this Court also should exclude Netlist's reliance on the findings of the Korean Tax Tribunal proceedings as more prejudicial than probative. *See* Fed. R. Evid. 402, 403. In addition to addressing an entirely irrelevant, and potentially confusing issue, the decision makes ████████████████████████████████ despite the fact that Samsung was not a party to that proceeding. *See, e.g.*, Ex. 15 at 29 █████████████████████

████████████████████████████). The jury could give such statements undue weight, as they could be seen to have the stamp of government approval even though they were made by a Korean administrative agency. This undue influence on the jury would be highly prejudicial to Samsung, and, as explained above, the Korean Tax Tribunal decision is not

9

probative to any issue in this case.

**IV.    MOTION *IN LIMINE* NO. 4 Improper Allegations of Price Fixing or Other Illegal Activities**

The Court should preclude Netlist from making any suggestion, assertion, charge, or other allegation that Samsung has engaged in price fixing or other illegal behavior. *See, e.g.*, *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, No. 2:07-CV-250, 2009 WL 8725107, at *1 (E.D. Tex. Oct. 8, 2009) (granting motion *in limine* to preclude allegations that the defendant is a monopolist). The Court's Standing Order on Motions *in Limine* (No. 9) already precludes using such pejorative and inflammatory terms:

> ***The parties shall be precluded from introducing evidence, testimony, or argument referring to any other person or entity as "greedy," "corrupt," "evil," or "dishonest," or using any other pejorative term.*** The parties shall also be precluded from introducing evidence, testimony, or argument that characterizes any other person or entity's actions as "stealing," "copying," "misappropriating," "pirating," "trespassing," or any similar terms.

Court MIL No. 9 (emphasis added).

Netlist's counsel, corporate witness, and damages expert ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. This accusation—divorced from any claim or defense actually pled in this case—is inadmissible. Fed. R. Evid. 402, 403; *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 2773944, at *3 (E.D. Tex. May 26, 2017) (granting motion *in limine* "as to inflammatory references to 'price fixing' or antitrust charges and pleas"); *Mars, Inc. v. Trurx LLC*, No. 6:13-CV-526-RWS-KNM, 2016 WL 4055675, at *1 (E.D. Tex. Apr. 29, 2016) ("Defendants will not be permitted to make derogatory remarks about Mars, such as by referring to Mars as a 'Goliath,' 'Monopolist,' or 'Bully.'").

For example, Netlist's counsel asked a Samsung corporate representative, Anson Tsui, to

10

████████  Ex. 16 at 13:3-13.  Later, Netlist's corporate representative, Chuck Hong, ████████, and Netlist has designated that testimony for presentation at trial.  Ex. 9 at 36:5-37:22, 191:18-192:10, 197:8-19, 198:5-199:3.  In particular, Mr. Hong testified that ████████ *Id.* at 37:5-18.  ████████.  Neither Netlist nor Mr. Hong has provided any rational explanation for how that litigation or its outcome could have any relevance to this patent case.  Indeed, Netlist does not claim damages going back to 2006—nor could it.  *See* 35 U.S.C. § 286.  Mr. Hong's testimony therefore lacks relevance.

Additionally, Netlist's damages expert, David Kennedy, included a section in his report titled ████████ Ex. 7 at ¶ 191.  Mr. Kennedy further explained that ████████ *Id.* at ¶ 192.  According to Mr. Kennedy, ████████ *Id.* at ¶ 192.  But Mr. Kennedy's opinion is devoid of support.  Mr. Kennedy performs no ████████.  And recently the Ninth Circuit affirmed the dismissal of an antitrust lawsuit claiming that Samsung, Micron, and SK Hynix conspired in violation of antitrust laws, explaining that any such claim was not plausibly pled.  *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 45 (9th Cir. 2022) (citation and quotation marks omitted).  Mr. Kennedy's non-factual analysis is based on speculation and has no evidentiary value.

Netlist's price fixing allegation is irrelevant to this patent case and is highly prejudicial to Samsung. Fed. R. Evid. 402, 403. Netlist and its witness have not articulated any sound support for it. Augmenting the inherent prejudice of such incendiary allegations, Netlist's price fixing allegation would require significant resources and trial time to rebut. Yet, Netlist did not properly disclose any price fixing theory during discovery, and Samsung had no opportunity to vet the accusation in discovery. To the extent Netlist's price fixing allegation could be deemed to have any relevance, which Samsung does not concede, the inflammatory nature of Netlist's accusation, its lack of support, and its lack of disclosure render it inadmissible because its evidentiary value is substantially outweighed by the unfair prejudice to Samsung and the risk of misleading the jury. *See* Fed. R. Evid. 403.

The Court should reject Netlist's efforts to cast aspersions at Samsung's memory business and preclude Netlist from making any suggestion, assertion, charge, or other allegation that Samsung has engaged in price fixing or other illegal behavior.

**V.     MOTION *IN LIMINE* NO. 5: No Argument, Evidence, or Questions Suggesting a Party's Corporate Representative at Trial Is Obligated To Prepare on Any Particular Topic or Is Charged with Knowledge of Others Within the Company**

The Court should preclude Netlist from suggesting that any of Samsung's corporate representatives at trial have a legal obligation to be prepared to testify on any particular topic or should be expected to know all information that resides with others in the company. Samsung fully intends to have corporate representatives present at trial on the company's behalf and to have each testify regarding information within their personal knowledge. However, Netlist should not be permitted to imply to the jury that a corporate representative is expected to have knowledge regarding every topic that might be relevant to the case.

For example, if Samsung's corporate representatives work in marketing or sales roles, Netlist should not be permitted to imply that they should be prepared to testify regarding

12

corporate policies for dealing with patent infringement allegations, that they should be well-versed in the technical details of each of the products and components at-issue, or that they be knowledgeable on every pre-suit communication between the parties. Any possible lack of knowledge of such information—which is the subject of other witnesses' testimony—is not relevant to the claims at issue and can only unfairly prejudice the jury against Samsung. That is particularly true here, where Netlist is a small company with only a few witnesses that have all of Netlist's relevant knowledge. Fed. R. Evid. 402, 403; Ex. 17, *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72-DF, Dkt. 2392 at 48-9 (E.D. Tex. Oct. 5, 2010) (granting defendants' motion seeking order that "[t]he Parties should be precluded from asserting that a person who is acting as a Party's corporate representative at trial (1) has a legal obligation to prepare to testify on any particular topic, (2) is charged with the knowledge of others within the company, or (3) has the ability to bind the Party with his or her trial testimony.").

Courts have limited the scope of corporate knowledge on which a corporate representative may even testify, i.e., holding a "corporate representative may not testify to matters outside his own personal knowledge to the extent that information is hearsay not falling within one of the authorized exceptions." *See, e.g.*, *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, at *7 (5th Cir. 2010) (omitting internal quotations and alterations). By the same logic, Netlist should not be able to point to Samsung's corporate representatives as lacking knowledge that others at Samsung would have, particularly when they would not otherwise be permitted to offer such testimony.

* * *

Samsung respectfully requests that the Court grant its above motions *in limine*.

|  |  |
|---|---|
| Date: March 10, 2023 | Respectfully submitted, |
|  | */s/ Francis J. Albert* |
|  | Ruffin B. Cordell<br>TX Bar No. 04820550<br>cordell@fr.com<br>Michael J. McKeon<br>D.C. Bar No. 459780<br>mckeon@fr.com<br>Lauren A. Degnan<br>D.C. Bar No. 452421<br>LAD@fr.com<br>Brian Livedalen<br>D.C. Bar No. 1002699<br>livedalen@fr.com<br>Daniel A. Tishman<br>D.C. Bar No. 1013923<br>tishman@fr.com<br>Matthew Mosteller<br>CA Bar No. 324808<br>mosteller@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue, SW<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Facsimile: (202) 783-2331<br><br>Katherine Reardon<br>NY Bar No. 5196910<br>kreardon@fr.com<br>Sara C. Fish<br>GA Bar No. 873853<br>sfish@fr.com<br>FISH & RICHARDSON P.C.<br>1180 Peachtree St., NE, 21st Floor<br>Atlanta, GA 30309<br>Telephone: (404) 892-5005<br>Facsimile: (404) 892-5002<br><br>Francis J. Albert<br>CA Bar No. 247741<br>albert@fr.com<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Ste. 400 |

██████████████████████████████████████

San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Matthew Colvin
Texas Bar No. 24087331
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

Karolina Jesien
New York Bar No. KJ7292
FISH & RICHARDSON P.C.
Times Square Tower
20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile:  (212) 258-2291

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

Alice J. Ahn
CA 271399 / DC 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Ste. 5400
San Francisco, CA 94105
Telephone:  (415) 591-7091
Facsimile: (415) 591-6091

Brian R. Nester
D.C. Bar No. 460225
bnester@cov.com
COVINGTON & BURLING LLP

███████████████████████████████████

One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202)-662-6000

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

16

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 10, 2023.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by electronic mail.

*/s/ Francis J. Albert*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on March 10, 2020.  Yanan Zhao, Michael Tezyan, and Jennifer Truelove attended for Plaintiff.  Ruffin Cordell and Katherine Reardon attended for Defendants.  The parties discussed their positions on this motion.  The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve.  Counsel for Plaintiff indicated that they oppose this motion.

*/s/ Francis J. Albert*