# Exhibit 1

[redacted]

```
1              THE COURT:  Be seated, please.
2         All right.  We'll continue the pretrial hearing in the
3    Netlist versus Samsung matter, which has been in recess since
4    yesterday late afternoon.  And we'll return to the unaddressed
5    dispositive motions that are before the Court.
6         Before I do that, is there anything from either side that
7    is either late-breaking or I need to know about?  Are both
8    sides ready to go forward with what's remaining, or is --
9              MR. SHEASBY:  Your Honor, we are ready to proceed.
10        There's some disputes that have been removed from two of
11   Defendant's motions to strike based on the Court's rulings
12   yesterday.  I communicated those to the arguing attorney for
13   the Defendants, and my understanding is he will be apprising
14   the Court of those narrow disputes when he introduces --
15             THE COURT:  Okay.  Well we'll address them when we
16   get to those motions.
17        I take it that none of the motions themselves have been
18   resolved completely; only portions based on yesterday's
19   rulings?
20             MR. SHEASBY:  That's correct, Your Honor, in our
21   view.
22             MR. CORDELL:  I did have one additional issue, Your
23   Honor.
24             THE COURT:  Okay.  What's that?
25             MR. CORDELL:  So just now we got an email from the
```

```
1            MR. CORDELL:  Okay.  We will.  Thank you.
2            THE COURT:  Let me have that within the next 24
3    hours by email to my staff.
4            MR. CORDELL:  Just for clarity, Your Honor we
5    [AOERT] not getting into the who shot John.
6            THE COURT:  I don't see any probative value in doing
7    that.
8            MR. CORDELL:  Excellent.  Thank you.
9            THE COURT:  This is, in effect, a limited exception
10   to MIL 13 simply because I think it's pretty clear that this
11   document is going to be a if not central part, a material part
12   of the evidence in the case.
13           MR. SHEASBY:  I'll just flag this is not their
14   non-willfulness interrogatory response.
15           THE COURT:  Let me say this again, counsel.  You
16   submit to me what you want.  I'll look at it, I'll instruct
17   the jury to a level that I think is appropriate.  If you want
18   to go into this topic beyond what I am going to instruct the
19   jury on, you're going to have to approach leave and convince
20   me to grant leave.
21           MR. SHEASBY:  I understand Your Honor.
22           MR. CORDELL:  Understood, Your Honor.
23           THE COURT:  That is Plaintiff's MIL No. 3, which
24   technically I'm going to deny because it's already subsumed by
25   standard MIL No. 13.  Let's take up Plaintiff's MIL No. 4.
```

1    THE COURT:  Well, let me say this.  To the extent
2  Samsung might be tempted to communicate to the jury that by
3  practicing the standard they're somehow being immunized from
4  an infringement allegation, I think that's improper.  An even
5  though Samsung says they're not going to do this, to that
6  extent I'm going to grant this MIL.
7    Willfulness is a totality of the circumstances as the
8  supreme Court's made clear.  I don't think there's a basis
9  upon which I can keep the Plaintiff from addressing the
10 standard setting body and Samsung's participation in it with
11 regard to the willfulness issue.
12   I'm going to grant it as to precluding the Defendant from
13 trying to defend against infringement on the basis of
14 practicing the standard, but in other regards any other regard
15 I'm going to deny the motion.
16   MR. LIVENDALEN:  Thank you, Your Honor.
17   THE COURT:  Okay.  Let's go to Defendant's disputed
18 motions in limine.  The first one seeks to prevent improper
19 argument or evidence regarding Samsung's alleged failure to
20 supply memory to Netlist.  What's Plaintiff's objection with
21 Defendant's MIL No. 1.
22   MR. SHEASBY:  There will be no discussion of the
23 damages associated with the breach or lack thereof, but the
24 story of the behavior between sing and Netlist goes directly
25 to the willfulness allegations in the case.  If we can have

1  the PX Indong Kim exhibit, Mr. Huynh.
2          THE COURT: And the breach you're talking about is
3  what gave rise to the termination?
4          MR. SHEASBY: That's correct, the cutting off of our
5  supply.
6      So what the record will show is that in June of 2016, as
7  we were getting ramped up and asking for them to increase our
8  supply.
9      Scroll down. Scroll down some more.
10      -- the Samsung entities had what is described as a right
11 of first refusal to our patents which means that if we went
12 bankrupt we would have to give them our patents.
13     Scroll down more.
14     They knew at that time -- scroll up a little more when we
15 were in financial straits. Scroll up. Stop right there. We
16 knew at the time that we were in financial straits they were
17 aware of the importance of our patents to RDIMM HBM and S S D.
18 Then what happened, and if I could have the elmo, is Samsung
19 asked us to agree to an additional technology transfer.
20 That's this email right here. This is in December of 2017 in
21 which they asked us to give them additional technology for
22 just without agreeing to full production or joint production
23 with us. We declined that option.
24     After we declined that option, what happened was that
25 Samsung --

1          And let's go to PX 1673.
2          After we declined that option, internally the most senior
3    individuals at Samsung made the decision to effectively cut
4    off our supply.  And there's actually internal emails where
5    people are writing LOL laughing out loud about our cutoff in
6    supply.
7          Put that down, Mr. Huynh.
8          If we go to PX 1786, please.
9          Sorry we're having a technical difficulty here Your
10   Honor.  Here it is.  After we did that we decline to
11   participate in their technology transfer.  This is an internal
12   Samsung email where it says they get zero allocation and they
13   said --
14         Scroll down.  They told us they get zero allocation and
15   the internal email between Samsung and Netlist says that they
16   recognize that Samsung was a hundred percent of Netlist's
17   business.
18         And if you give me one moment I'll find that slide, Your
19   Honor.  If you -- I'll get it after the argument.  But there
20   was a slide that I showed yesterday in which Samsung was
21   apprised that if they cut off supply it was a hundred percent
22   of our business.  They knew that if they cut off our supply
23   there was a real risk we went bankrupt and if we went bankrupt
24   they got our patents.  And so we don't intend to argue at all
25   that there was damages from this behavior, but we do

1  absolutely intend to tell the willfulness story in which
2  Samsung knew that they had rights to our patents if we went
3  bankrupt, they evaluated the value of our patents as you saw
4  in that document, they asked us to enter into another
5  technology collaboration, we denied -- we refused to do so,
6  and they then terminated or stopped our product supply
7  recognizing that it's a hundred percent of our business.
8      I believe this issue has been settled by Monsanto versus
9  Ralph.  This is 382 F.3d, 1374, in which this exact issue came
10 up.  The jury was affirmed nor considering in the case of
11 damages that Ralph misappropriated a license to use the seed
12 without restrictions inconsistent with their obligations under
13 the agreement.  So I have no doubt that this is going to be
14 need to be constrained by the Court.  My expectation is we
15 will need to make a proffer for Your Honor to see exactly what
16 we're going to say.  But this is a live issue.  There is facts
17 that are prejudicial, but undue prejudice is different from
18 prejudice.  If you turn -- let's go back to PD indon Kim.
19         THE COURT:  Let me ask you this, Mr. Sheasby.  The
20 point in time that you're talking about where there was a as
21 you put it refusal to supply memory from Samsung to Netlist
22 Indong Kim) which subsequently resulted in the termination of
23 the JDLA, obviously those events took place, the refusal or
24 the failure to supply memory as you put it.  Obviously that
25 took place at a time when the JDLA was in force, both sides

1  were licensed. So as egregious as the conduct may be in your
2  view, the willfulness issue is not willfulness in general;
3  it's willfulness as to infringement. How can that relate to
4  infringement at a time when both sides were licensed to the
5  totality of each side's patents.
6            MR. SHEASBY: Sure.
7            THE COURT: And I understand the foundry products
8  may be an exception to this, but outside of that one
9  exception, how does anything that would be covered by the
10 license in the JDLA, how is that a willfulness of
11 infringement?
12           MR. SHEASBY: So Monsanto versus Ralph is the
13 answer, Your Honor, which is that the willfulness is that they
14 tried to end our business to get our patents. That's the
15 willfulness, because they knew they infringed our patents.
16 They had a first line of collateral. This is their internal
17 document analyzing it.
18           And scroll down. Scroll up a little. Sorry.
19           Then right after they say they have a first [O] line of
20 collateral to our [ATS] [R*]s a sets they then talk about the
21 fact that we have patents covering their it can knowledge. We
22 then decline to participate in a joint development with them
23 then they cut off our supply recognizing that was a hundred
24 percent of our business showing that we could go bankrupt and
25 at that point they would own our patents. And so I understand

1  it's prejudicial, Your Honor, but it's not undue prejudice and
2  the reason why it's not undue prejudice is because it shows
3  behavior it shows scienter they knew they needed our patents
4  they knew they had the right to our patents if they went
5  bankrupt so they could both cut off our supply (*check)
6  bankrupt us get our patents and at the same time avoid the
7  fact that there was infringement on RDIMM H B B and SESD and
8  there is a live meaningful issue as to whether HBM was even
9  licensed so at least as to HBM this is highly relevant.
10 (*check) so I understand Your Honor's trepidation of trying a
11 case within a case, but these are real facts that go to
12 recklessness and go to scienter not generic scienter this
13 document refers specifically to our [PA*BTS] and to the
14 patents that we -- and the products we are accusing of
15 infringement and they say it's a first line of collateral
16 assets for their IP.  So they say the jury can find that they
17 knew they were using our HBM patents, they knew that they
18 would get them if we went bankrupt, and they attempted to
19 bankrupt us.  So I'm very sensitive that this should not be a
20 side show, but this is a real defense.  This is a real
21 allegation that's not just a recapitulation of the central
22 district case and I'm happy to make a proffer to Your Honor so
23 it can be constrained, but I cannot agree to the entire MIL as
24 granted.
25            THE COURT:  All right.  Well, I think I've heard

1   enough on this.  I am persuaded that the Court is going to
2   have to oversee any use of this and there's going to have to
3   be justification given in advance and leave granted before
4   this path is gone down.  I'm going to grant the MIL.  That
5   doesn't mean I can't be persuaded that there are some
6   circumstances and there are some ways and means by which this
7   argument can come in.  I don't intend to keep the Plaintiff
8   from telling its story.  I do intend to keep the Plaintiff
9   from making up a story that doesn't have any support and is
10  entirely intended to inflame the jury.  And as I sit here
11  right now, I can think of numerous ways where this could be
12  improperly used, and there may be some ways in which it can be
13  properly used, but I cannot sit here in advance and give
14  you-all clear guidance.  I'm going to have to be an active
15  gate peeper here and on that basis I'm going to grant the MIL.
16          MR. SHEASBY:  And Your Honor we will make a written
17  proffer in advance so that it's not chaotic.
18          THE COURT:  I granted the MIL you better.
19          MR. SHEASBY:  My point is I'm not going to come up
20  to the stand -- to the bench in the middle of a direct and say
21  now I want to do this.  I'm going to in advance.
22          THE COURT:  I need some notice Mr. Sheasby I need
23  some notice on this.
24       Okay.  Let's go to Defendant's MIL No. 2, which seeks to
25  prevent improper argument or evidence regarding the alleged