UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>and SAMSUNG SEMICONDUCTOR, INC.,<br><br>　　　　　Defendants. | Civil Case No. 2:21cv463-JRG<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S RESPONSE TO NETLIST'S PROPOSED PRELIMINARY
JURY INSTRUCTION REGARDING JDLA TERMINATION (Dkt. 421)**

　　　　Netlist's submission is a mis-named motion for reconsideration of several of the Court's pretrial conference rulings, including the grant of Samsung's MIL No. 1 precluding all evidence and argument relating to Samsung's alleged failure to supply memory to Netlist.  Rather than submit a proposed jury instruction that respects the Court's rulings, Netlist reargues the Court's grant of Samsung's MIL No. 1 and denial of Netlist's MIL No. 3, and even contravenes the Court's grant of Samsung's motion for summary judgment as to the termination date of the JDLA, as the Court's rejection of Netlist's "early repudiation" theory eliminates any justification for discussing the supply relationship.

　　　　For example, Netlist repeats its erroneous assertion that the details of "who shot John" in the CDCA breach of contract case, including the supposed intentional nature of Samsung's alleged failure to supply memory, are relevant to damages and willfulness issue here.  Dkt. No. 421 at 5-7; *see also* Ex. 1 at 188:4-7.  Why Samsung "is no longer licensed and an infringement suit ensued," Dkt. No. 421 at 5, is not probative to any issue in this case and the prejudicial

1

nature of such argument requires excluding such information. *See* Fed. R. Evid. 403. As explained in Samsung's MIL No. 1, which the Court granted, Netlist seeks to use such information "to cast Samsung in a negative light and inflame the jury's emotions" with irrelevant facts and accusations that Samsung engaged in "conduct Netlist characterizes as unethical, but which was entirely lawful under the proper interpretation of the JDLA's supply provision (§ 6.2)." Dkt. No. 380 at 2-3. Netlist's headlong sprint into the facts of the CDCA Case will create a massive "trial within a trial," requiring the parties to revisit the entirety of the alleged breach facts and defenses. That supply agreement evidence will be incredibly inflammatory, and has zero probative value in this patent infringement case. The Court's straightforward Rule 403 analysis excluding this evidence was correct at the pretrial conference and remains so today.

Contrary to Netlist's assertions, *Monsanto Co. v. Ralph*, 382 F.3d 1374 (Fed. Cir. 2004), does not support its argument. *Contra* Dkt. No. 421 at 5-6; Ex. 1 at 199:8-201:24 (Netlist arguing willfulness based on *Monsanto*); *see also* Ex. 1 at 201:25-202:15. In *Monsanto*, the patentee granted a restricted-use license allowing growers to "plant[] a commercial crop only in a single season," but not, *inter alia*, to "save any crop produced from this seed for replanting." 382 F.2d at 1377. Separate from the patent license, the grower specifically covenanted not to save and replant seeds. *Id.* When Monsanto discovered that a grower saved and replanted seeds, it filed suit alleging both willful patent infringement and breach of contract counts. *Id.* at 1378. The jury awarded separate damages for patent infringement and breach of contract, but the court held that "satisfaction of the higher patent infringement award would extinguish the lesser breach of contract award." *Id.* at 1379. The patent infringement award included reasonable royalty damages, which the district court trebled due to the defendant's willful infringement. *Id.* at 1382-84.

Importantly, in that case, replanting the seeds was a breach of contract and ***an independent act of infringement***. *Id.* at 1383.  In rejecting the defendant's challenge to the infringement damages award, under the deferential standard for reviewing such an award and the district court's denial of post-trial motions, the Federal Circuit noted the lack of an established royalty for an ***unrestricted*** license because the patentee had previously permitted only a narrow use of seed that excluded planting saved seed, an aspect that is unique to seed patent practice because the patented article is self-reproducing. *Id.* at 1383.  Explaining that the jury had been properly instructed on the *Georgia-Pacific* factors, the Federal Circuit also rejected the defendant's argument that one such factor (an infringer's anticipated profit) should trump the others because "[j]ust as [the defendant] asserts that he would  never pay [the patentee] such a royalty just to be able to save seed for replanting or transfer, [the patentee] would apparently never permit [the defendant] to save seed for replanting or transfer at any price." *Id.* at 1383-84; *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factors including "[t]he licensor's established policy and marketing program to maintain [its] patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly").  The court did not suggest that breach of contract conduct—that itself is ***not*** an act of patent infringement—is relevant to the reasonable royalty calculation or willful infringement.  And in this case, Netlist has secured two different licensees, demonstrating its willingness to license the patents-in-suit and defeating any argument about maintaining a monopoly.

Here, Netlist points to Samsung's failure to supply memory products—the alleged breach of contract—as evidence that "Netlist has never agreed to a bare patent license." Dkt. No. 421 at 6.  Unlike the field of use restriction in *Monsanto*, the JDLA's supply provision does not make

3

the patent license a restricted license instead of a bare one because, as this Court determined when granting Samsung's Motion for Summary Judgment That All Accused Products Sold Before July 15, 2020 Are Licensed, the scope of the license grant is unrestricted except with respect to the exclusion of Foundry Products. Ex. 2 at 49:4-19, 50:22-51:18 (license SJM); *see also* Ex. 3 § 8.2. The supply provision is ancillary, relevant to only the CDCA breach of contract case and its related Ninth Circuit appeal. Netlist also seeks to use the breach to buttress the value it assigns to the SK hynix agreement, Dkt. No. 421 at 6, but such economic analysis does not require discussion of the Samsung-Netlist supply dispute. If Netlist has evidence that the supply agreement formed part of the "value" of the JDLA, it needs to present that evidence. However, any such "value" evidence does not include facts relating to the alleged breach. For example, Netlist repeatedly cites ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, and Netlist repeatedly characterizes Samsung's performance under the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. The parties can debate whether such inflammatory evidence might be relevant to a breach of contract claims, but it has no relevance here. Whatever value Netlist can associate with the JDLA is one matter; whether that value was lost due to Netlist, Samsung, or some other actor is irrelevant and purely prejudicial in this patent infringement case. *See* Fed. R. Evid. 403.

Willfulness also provides no justification for Netlist's intended use of the alleged breach of the supply provision, including whether any alleged breach was intentional. First, Netlist ignores that the conduct Netlist cites—Samsung's supply of memory to Netlist in 2018—occurred **when Samsung was licensed**. Ex. 2 at 17:4-8 (Mr. Sheasby: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬); *id.* at 38:4-20 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬; Ex. 1 at 197:20-

4

200:11.  This Court ruled that the JDLA provides Samsung with a valid license to the accused products through July 15, 2020, and that Samsung was not a willful infringer through that time period.  Ex. 2 at 49:4-19, 50:22-51:18 (license SJM); *id.* at 153:9-20 (willfulness SJM); Ex. 1 at 199:19-200:11.[1]  Netlist's theory thus seeks to circumvent the Court's rulings.  Netlist's proposed jury instructions' statement that "Samsung lost any rights ***it may have had to use any of Netlist's patents***" is inconsistent with this Court's ruling that Samsung was licensed through July 15, 2020.

Second, unlike the patentee in *Monsanto*, Netlist did not bring its breach of contract claim and its patent infringement claim in the same case.  Rather, it sought breach of contract damages in the CDCA Case and did not seek damages for willful or intentional breach of the supply provision—and for good reason because the JDLA precludes them:



Ex. 3 § 12.5 (highlighting added).[2]  Nothing in *Monsanto* permits Netlist to bootstrap any alleged "intentional" breach of the JDLA's supply provision into evidence of "deliberate or intentional" infringement, as required to prove willfulness.  Unlike the defendant in *Monsanto* who committed an independent act of infringement when he breached the covenant not to plant saved

---

[1] The Court acknowledged a factual issue with respect to whether any accused model of HBM product is a Foundry Product, as defined by the JDLA, which are excluded from the scope of the license under the JDLA.  Ex. 2 at 50:22-51:18, 140:24-141:15.

[2] Netlist is barred from asserting such a theory here by the JDLA's own terms and claim preclusion because the issue had to be raised, if at all, in the CDCA breach of contract case.  *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594-95 (2020) (listing claim preclusion factors).

seed, Samsung committed no act of infringement by allegedly failing to supply Netlist memory products (even if such conduct breached the supply provision, which Samsung disputes). Putting Samsung's license aside, not selling memory products to Netlist would have ***avoided*** infringement (act of infringement requires making, using or selling the patented article). *See* 35 U.S.C. § 284.

Neither *Mentor*, *Metabolite*, nor *Embrex* supports Netlist's assertion that it has a right to inform the jury of the details underlying the CDCA breach of contract case. In *Embrex* and *Metabolite*, the jury was empaneled to decide a breach of contract issue in addition to patent infringement. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1359 (Fed. Cir. 2004); *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000). Netlist's discussion of *Metabolite* is particularly misleading. There, the defendant did not challenge the willfulness finding, but rather the district court's enhancing damages based thereon. *Metabolite*, 379 F.3d at 1370. Importantly—and contrary to Netlist's suggestion, Dkt. No. 421 at 7—the Federal Circuit did not highlight the terms of the agreement between the defendant and ***the patentee*** (Metabolite), but rather the agreement between the defendant and its new supplier (Abbott Labs), who affirmatively disclaimed any indemnity for infringement by the supplied product of the patent-in-suit, thus putting "a reasonable licensee on notice to conduct its own investigation regarding the [asserted] patent coverage of the Abbott [product]." 379 F.3d at 1371. Finally, the *Mentor* court reversed the district court's decision preventing the patentee from presenting any evidence on willfulness because the district court erred as to the scope of the pre-suit period and had erroneously precluded post-suit willfulness because the patentee failed to seek a preliminary injunction. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295-96 (Fed. Cir. 2017). These case thus do not suggest that our jury should hear about the alleged

breach of ancillary provisions of the JDLA wholly unrelated to the patent license.

Accordingly, the Court's Standing MIL No. 13 and ruling on Samsung's MIL No. 1 properly prevent Netlist from presenting evidence and argument about Samsung's alleged breach of the JDLA's supply provision and all related facts, including details about when or why Samsung allegedly declined to sell Netlist memory prior to the JDLA's termination. The Court should reject Netlist's proposed preliminary instructions on the JDLA because they discuss Netlist's view of Samsung's alleged breach of the JDLA, the materiality of such breach, Netlist's notice to Samsung of the breach, and Samsung's failure to cure the breach.[3] Indeed, Netlist's justification for such additional detail—i.e., the detail appears in Netlist's own self-serving letters to Samsung—illustrates Netlist's attempt to bias the jury against Samsung. *See* Dkt. No. 421 at 2-4. Netlist's claims here need to rise or fall on the evidence relating to its patent infringement claims and leave its breach of contract issues in California.

Turning to Netlist's objections to Samsung's proposed instruction, Netlist's arguments against including the date when the CDCA Court entered its final judgment do not show that informing the jury of this date would prejudice Netlist, let alone that any prejudice outweighs the probative value. The date of the judgment is relevant to Samsung's good faith belief that Netlist's termination was improper such that Samsung remained licensed because Samsung vigorously contested the termination during the CDCA Case, including securing a jury verdict that Netlist suffered no damages as a result of the alleged breach, only after which did the CDCA

---

[3] Given Netlist's allegation that Samsung stopped performing under the JDLA in 2018 and the May 27, 2020 date of Netlist's first communication about the alleged breach, there was no opportunity for Samsung to cure. *See* Ex. 2 at 38:4-20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮); Dkt. No. 421-1. Accordingly, the discussion of whether there was or was not an attempt to "cure" is the kind of highly prejudicial "who shot John" facts that have no probative value in this patent case.

Court enter final judgment.[4]

In addition, Samsung's proposed instruction's explaining that Netlist recovered $2 in damages in connection with its contract dispute is relevant, for example, to damages insofar as the Court allows Netlist's expert, Mr. Kennedy, to value the JDLA's supply provision as worth more than that amount.  Ex. 4 §§ 326, 344 (███████████████████████████████ ███████████████████████████████████████); *id.* at 92 ███████████████████████████████████████████.[5]  This fact causes Netlist no prejudice because Netlist has no right to explain that this amount represents only what Netlist calls "cover" damages, Dkt. No. 421 at 2, because the JDLA bars any other type of damages, including consequential damages.  Ex. 3 § 12.5; *see also* Ex. 6 at 21 ████████ ███████████████████████████████████████████ ███████████████████).[6]  Using the $2 award to expose the flaws in Mr. Kennedy's damages analysis is entirely appropriate and not, as Netlist asserts, "a surrogate for patent damages," Dkt. No. 421 at 2.  Accordingly, the Court should reject Netlist's effort to insulate Mr.

---

[4] In asserting that Samsung did not disclose its reliance on the timing of the final judgment, Dkt. No. 421 at 1, Netlist submits a truncated copy of Samsung's response to Interrogatory No. 9.  However, Samsung provided a full description of its defenses, including license, invalidity, and noninfringement and incorporated by reference its briefing in the Ninth Circuit appeal.  None of this information had to be repeated under the "No Willful Infringement" heading, which specifically notes the complete lack of evidence of "deliberate" infringement.  *See generally* Ex. 5; *id.* at 117 (incorporating Ninth Circuit briefing); *id.* at 152 (referring to jury's award of no damages, entry of final judgment, and appeal).  The Court should reject Netlist's myopic interpretation of the response.  Furthermore, Netlist asked Samsung's Rule 30(b)(6) witness no questions on the topics that overlapped with the improper contention topic No. 67 and chose not to move to compel a witness on the contention topic, which bars any complaint now.

[5] Yet, Netlist's counsel represented: ████████████████████████████████████ ██████████████████████ Ex. 1 at 196:22-23.

[6] The CDCA Court's decision is binding on Netlist under both issue and claim preclusion.  *See Lucky Brand*, 140 S. Ct. at 1594-95; *Chrimar Sys., Inc. v. Adtran, Inc.*, No. 6:15-cv-618-JRG-JDL, 2017 WL 131587, at *1 (E.D. Tex. Jan. 13, 2017) (listing issue preclusion factors).

Kennedy from robust cross-examination.

      Samsung respectfully asks the Court to adopt its proposed limited preliminary jury instruction about the JDLA.

| | |
|---|---|
| Date: April 3, 2023 | Respectfully submitted,<br><br>/s/ Ruffin B. Cordell<br><br>Ruffin B. Cordell<br>TX Bar No. 04820550<br>cordell@fr.com<br>Michael J. McKeon<br>D.C. Bar No. 459780<br>mckeon@fr.com<br>Lauren A. Degnan<br>D.C. Bar No. 452421<br>LAD@fr.com<br>Brian Livedalen<br>D.C. Bar No. 1002699<br>livedalen@fr.com<br>Daniel A. Tishman<br>D.C. Bar No. 1013923<br>tishman@fr.com<br>Matthew Mosteller<br>CA Bar No. 324808<br>mosteller@fr.com<br>FISH & RICHARDSON P.C.<br>1000 Maine Avenue, SW<br>Washington, DC 20024<br>Telephone: (202) 783-5070<br>Facsimile: (202) 783-2331<br><br>Katherine Reardon<br>NY Bar No. 5196910<br>kreardon@fr.com<br>Sara C. Fish<br>GA Bar No. 873853<br>sfish@fr.com<br>FISH & RICHARDSON P.C.<br>1180 Peachtree St., NE, 21st Floor<br>Atlanta, GA 30309<br>Telephone: (404) 892-5005<br>Facsimile: (404) 892-5002 |

███████████████████████████████

Francis J. Albert
CA Bar No. 247741
albert@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Matthew Colvin
Texas Bar No. 24087331
colvin@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Karolina Jesien
New York Bar No. KJ7292
FISH & RICHARDSON P.C.
Times Square Tower
20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa Richards Smith
melissa@gillamsmith.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

Alice J. Ahn
CA 271399 / DC 1004350
aahn@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Ste. 5400
San Francisco, CA 94105
Telephone: (415) 591-7091
Facsimile: (415) 591-6091

▌

                    Brian R. Nester
                    D.C. Bar No. 460225
                    bnester@cov.com
                    COVINGTON & BURLING LLP
                    One City Center
                    850 Tenth Street, NW
                    Washington, DC 20001-4956
                    Telephone: (202)-662-6000

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on April 3, 2023. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by electronic mail.

                                                */s/ Ruffin B. Cordell*