# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:21-CV-463-JRG |
| | ) | |
| SAMSUNG ELECTRONICS CO., LTD., | ) | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS AMERICA, | ) | ██████████████ |
| INC., SAMSUNG SEMICONDUCTOR, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF NETLIST INC.'S PROFFER REGARDING ADMISSIBILITY OF
### PX583, PX1779, PX1787, PX632, PX1673, and PX1662

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND ...........................................................................................1

III.    ARGUMENT ...............................................................................................3

        A.     Termination of the JDLA AND THE VALUE OF ITS SUPPLY
               COMMITMENT Are Relevant to Damages and Willfulness Under Federal
               Circuit Law ...........................................................................................3

        B.     PX583 and PX1779 ARE THE JDLA BREACH AND TERMINATION
               LETTERS ...............................................................................................5

        C.     PX1787 IS A DOCUMENT IN which SAMSUNG REQUESTED NETLIST
               TECHNOLOGY .....................................................................................7

        D.     PX632 and PX1673 are internal samsung documents acknowledging the
               importance of the supply commitment to netlist ..............................9

        E.     PX1662 Is an internal samsung memo evaluating the importance of netlist's
               patent portfolio ...................................................................................11

IV.     CONCLUSION ..........................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*De Franceschi v. BAC Home Loans Servicing, LP*,
  2011 WL 13233575 (N.D. Tex. Oct. 13, 2011) ........................................................................7

*Embrex, Inc. v. Service Engineering Corp.*,
  216 F.3d 1343 (Fed. Cir. 2000) ...............................................................................................4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) .........................................................................................3

*JPMorgan Chase Bank, N.A. v. Classic Home Financial, Inc.*,
  548 Fed. App'x 205 (5th Cir. 2013) .........................................................................................7

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
  851 F.3d 1275 (Fed. Cir. 2017) ...............................................................................................4

*Metabolite Labs., Inc. v. Laboratory Corp. of Am. Holdings*,
  370 F.3d 1354 (Fed. Cir. 2004) ...............................................................................................4

*Monsanto Co. v. Ralph*,
  382 F.3d 1374 (Fed. Cir. 2004) ...............................................................................................3

*United Services Automobile Association v. PNC Bank, N.A.*,
  2022 WL 19227587 (E.D. Tex. Sep. 1, 2022) .........................................................................9

*WCM Industries, Inc. v. IPS Corp.*,
  721 Fed. App'x 959 (Fed. Cir. 2018) .......................................................................................8

*Westchester Surplus Lines Ins. Co. v. Maverick Tube Corp.*,
  2008 WL 11411192 (S.D. Tex. Dec. 17, 2008) .......................................................................7

**Other Authorities**

Fed. R. Evid. 801(d)(2)(D) ..........................................................................................9, 10, 11, 14

Rule 803(6) ...................................................................................................................9, 10, 11, 14

## I.    INTRODUCTION

Netlist respectfully submits this proffer regarding admissibility of the following exhibits that relate to the value of the supply provision in the Joint Development and License Agreement ("JDLA") between Netlist and Samsung, and the prior business relationship between the parties: PX583, PX1779, PX1787, PX632, PX1673, and PX1662. These exhibits are relevant at least to damages and are not hearsay.

During the Pre-trial Conference, 

Ex. 11 PTC Day 2 Tr. at 212:24-213:10

The Court denied

*Id.* at 216:24-217:4

None of the proffered documents relate to the C.D. Cal. litigation. And all are

## II.    BACKGROUND

Netlist and Samsung were party to a Joint Development and License Agreement ("JDLA"), dated November 12, 2015. Under the JDLA, Samsung had a supply obligation to

██████████████████████████████████████████████████ On May 27, 2020 Netlist provided a notice to Samsung that it was in material breach of the JDLA for failing to comply with its obligation to supply memory materials to Netlist that Netlist used in its business. On July 15, 2020, Netlist terminated the JDLA based on a failure to cure the material breaches. Netlist subsequently brought suit in the Central District of California, and the C.D. Cal. Court issued entered judgment for Netlist that (1) "Samsung breached JDLA § 6.2" (the supply commitment) when it "declined to fulfill all of Netlist's orders for NAND and DRAM products," (2) that Samsung's breach was material, and (3) that "Netlist terminated the JDLA pursuant to JDLA § 13.2, and Samsung's licenses and rights under the JDLA have ceased." Dkt. 379-11 (C.D. Cal. Dkt. 305); Dkt. 201-03 (C.D. Cal. Judgment).

The only patents-in-suit that issued before the termination of the JDLA are the '060 and '160 Patents. These patents are asserted against Samsung HBM products. Judge Gilstrap found a ██████ ████████████████████████████████████████████████████████. Ex. 12 PTC Day 1 Tr. at 58:9-15 ██████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ The Court found that ███████████████████████████████████████████████████████████ ██████████████ *Id.* at 168:25-169:3 ███████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████ The Court also found that Netlist could ██████████████████████████████████████████████ *Id.* at 147:21-149:4.

## III.     ARGUMENT

## A.     TERMINATION OF THE JDLA AND THE VALUE OF ITS SUPPLY COMMITMENT ARE RELEVANT TO DAMAGES AND WILLFULNESS UNDER FEDERAL CIRCUIT LAW

*Damages*.  The *Georgia-Pacific* factors include consideration of "The commercial relationship between the licensor and license" and "The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

In *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004), a licensee lost its right to Monsanto's patents because of a breach of a license agreement, and was exposed to patent infringement damages. The Federal Circuit held that the jury's royalty award appropriately reflected the fact that the defendant breached a license agreement and used the patents in a way the patent holder had never historically allowed:

> Monsanto responds that the jury's award reasonably reflects that Ralph misappropriated a license to use the seed without restrictions, as his infringing use extended well beyond the licensed planting of a commercial crop for a single growing season. Counsel for Monsanto also asserted during oral argument that the assessed $55.04/bag and $52.12/bag reasonable royalty damages for saved and replanted soybean seed and the $548.00/bag and $556.80/bag reasonable royalty damages for saved and replanted cottonseed are all reasonable royalties for licenses to save and replant for a single year; and that $1113.36/bag is a reasonable royalty for a license to save and transfer cottonseed, notwithstanding the fact that Monsanto would not agree to ever grant any such unlimited licenses.
>
> We agree with Monsanto that the court did not err in its determination of a reasonable royalty. . . .

*Id.* at 1384.

*Willfulness.* Separate from damages, it is settled Federal Circuit case law that the circumstances that led to the loss of a license and exposure to infringement liability is relevant to

willfulness. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017) is on point. EVE had a license to Mentor's patents that would terminate upon its acquisition:

> EVE obtained a license to the three patents. The license contained a provision terminating the license if EVE were acquired by another company in the emulation industry. *Id.* at 1281.

Synopses was informed "that the license would terminate if Synopsys acquired EVE". *Id.* The acquisition occurred and EVE was sued for infringement by Mentor. The district court precluded patentee from presenting evidence of willfulness and the Federal Circuit reversed, holding that there was no basis to preclude evidence of willfulness based on termination of the license: "Mentor relies on Synopsys' acquisition of EVE, which terminated the license and rendered all subsequent sales infringing." *Id.* at 1295.

In *Metabolite Labs., Inc. v. Laboratory Corp. of Am. Holdings*, 370 F.3d 1354 (Fed. Cir. 2004), a licensee of patents for assay testing "switched" to an assay developed by a competitor and ceased royalty payments under the license. *Id.* at 1359. The licensor sued for infringement and the jury found willful infringement. The Federal Circuit affirmed the verdict and held that the conduct in violation of the license terms was relevant to willfulness: "LabCorp's failure to conduct a reasonable and independent investigation regarding the Abbott total homocysteine test is further highlighted by the very terms of the license agreement between LabCorp and Abbott Labs." *Id.* at 1371.

In *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343 (Fed. Cir. 2000), a licensee under a settlement agreement breached the agreement, and the jury found willful infringement. The Federal Circuit affirmed the willfulness verdict and held that the circumstances of breach of the contract were relevant to willfulness. *Id.* at 1351 ("the record shows that SEC infringed the '630 patent after substantial notice, prior litigation, and an unambiguous settlement agreement that precluded further infringement . . . Therefore, this court affirms the district court's willfulness finding.")

As discussed further below, each of the exhibits at issue in this proffer are relevant to at least damages and willfulness in this case.

**B.     PX583 AND PX1779 ARE THE JDLA BREACH AND TERMINATION LETTERS**

PX583 is a letter that Netlist sent to Samsung on May 27, 2020, notifying Samsung that it was in breach of the JDLA and requesting restoration of Netlist's supply. Ex. 1. PX1779 is the subsequent letter sent by Netlist to Samsung on July 15, 2020 terminating the JDLA based on Samsung's failure to cure the material breaches. Ex. 2.



PX583.



PX1779.

The notice and termination letters sent by Netlist to Samsung are ████████████████ ████████████████████████████████████████████ Mr. Kennedy discusses the ████████████████████████████████████████ Ex. 3 (Kennedy

Rpt.) at ¶ 318 █████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████). That Netlist was prepared to and did in fact abandon the benefits of the JDLA because of the loss of supply is directly relevant to the importance of the supply clause.

Mr. Kennedy discusses ████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████(Ex. 3):



Mr. Kennedy also discusses █████████████████████████████████████

████████████ Ex. 3 (Kennedy Rpt.) at ¶ 368 ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

The termination letter PX1779 makes no reference to the C.D. Cal. litigation between the parties. PX583 has one sentence referencing the litigation, and this sentence will be redacted.

The letters are not hearsay because they are not offered for the truth of the matter asserted, but rather to show Samsung's awareness of the value of the supply commitment, and the fact of termination of the JDLA. Fifth Circuit case law holds that letters of this type are not hearsay when offered not for the truth, but to show notice to the receiving party and recession of an agreement. *See,*

*e.g., JPMorgan Chase Bank, N.A. v. Classic Home Financial, Inc.*, 548 Fed. App'x 205, 209 (5th Cir. 2013) (letter rescinding insurance policy was not hearsay where offered "not for the truth of the matters asserted therein, but as evidence that JPMC had received notice both that the mortgage insurance policy was rescinded and that PMI had asserted that the loan file on Loan E contained a number of misrepresentations."); *De Franceschi v. BAC Home Loans Servicing, LP*, 2011 WL 13233575, at *3 (N.D. Tex. Oct. 13, 2011) ("breach letter" not hearsay where it was "being offered merely to show that Plaintiffs received notice of their delinquency on the mortgage loan at issue"); *Westchester Surplus Lines Ins. Co. v. Maverick Tube Corp.*, 2008 WL 11411192, at *1 n.1 (S.D. Tex. Dec. 17, 2008) (demand letter "is not hearsay because it is not offered for the truth of the matter asserted but only offered to establish the existence of a written demand for breach of warranty").

## C.    PX1787 IS A DOCUMENT IN WHICH SAMSUNG REQUESTED NETLIST TECHNOLOGY

PX1787 (Ex. 4) is an email from Samsung to Netlist, in which Samsung requested that Netlist provide it with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



PX1787. Netlist declined this offer.

Samsung's continued request ▮▮▮▮▮▮▮▮▮▮ is evidence of the value of Netlist's

technology. In particular, Samsung was hoping ████████████████████████████████

████████████████████████████████████████████. *See* Ex. 5 (2/1/23 Jung Bae Lee

Depo. Tr.) at 38:18-39:23 ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

Samsung accused DDR5 products use on-module power management, and this technology applies to

all classes of DIMMs, including NDIMM, LRDIMM and RDIMM. *Id.*; Ex. 6 (McAlexander Tr.) at

12:13-21 ("██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

       Mr. Kennedy discusses these communications and meetings in unstricken portions of his

expert report, so they will already be before the jury. Ex. 3 (Kennedy Rpt.) at ¶ 62 ("████████

████████████████████████████████████████████████████████████████████████████

████████████████████). Further, this document is not subject to the MIL, because it does not

reference the C.D. Cal. litigation or any breach of contract.

       The fact that this exchange occurred during the period when the ██████████████████

███████████████ does not affect its relevance. The Federal Circuit is clear that willfulness requires

evaluation of the totality of the circumstances, including conduct before the infringement at issue. For

example, in *WCM Industries, Inc. v. IPS Corp.*, 721 Fed. App'x 959, 971 (Fed. Cir. 2018), the Federal

Circuit held it was relevant evidence of willfulness that "IPS's employee, testified that he had

monitored WCM's products for decades and possessed catalogs and other literature indicating that

WCM's products were marked with 'patent pending.'" *See also United Services Automobile Association v. PNC Bank, N.A.*, 2022 WL 19227587, at *11 (E.D. Tex. Sep. 1, 2022) (court "does not preclude USAA from relying on pre-issuance facts and evidence to argue willfulness"). Netlist will not argue that Samsung was infringing during this period, but the evidence is relevant to show that Samsung willfully infringed after the JDLA was terminated.

Further, the communications are not hearsay. Samsung's request ▮▮▮▮▮▮▮▮▮▮ in PX1787 was authored by Yong Hwangbo, a Director at Samsung Electronics, and Mr. Hwangbo states he is communicating on behalf of Samsung ▮▮▮▮▮▮▮▮▮▮. It is therefore an opposing party statement that is not hearsay. *See, e.g.,* Fed. R. Evid. 801(d)(2)(D) (statement is not hearsay if was "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"), 801(d)(2)(C) (statement not hearsay if it was "was made by a person whom the party authorized to make a statement on the subject"). Further, the emails are part of the prior business relationship between Samsung and Netlist made in the regular course of Samsung's and Netlist's business, and are therefore on their face business records under Rule 803(6).

## D. PX632 AND PX1673 ARE INTERNAL SAMSUNG DOCUMENTS ACKNOWLEDGING THE IMPORTANCE OF THE SUPPLY COMMITMENT TO NETLIST

**PX632**. PX632 (Ex. 7) is an internal Samsung email in which Samsung ▮▮▮▮▮▮▮▮



This document shows the importance of the supply commitment in the JDLA to Netlist. Mr. Kennedy discusses this document in his expert report. Ex. 3 (Kennedy Rpt.) at ¶ 306, fn. 304 (discussing "▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

Further, this email is not hearsay because it is a Samsung party statement. The emails are

authored by ▮▮▮▮▮▮, at the time an executive responsible for Samsung's memory sales, and ▮▮

▮▮▮▮ a regional sales manager for Samsung. *See, e.g.,* Fed. R. Evid. 801(d)(2)(D) (statement is not

hearsay if was "was made by the party's agent or employee on a matter within the scope of that

relationship and while it existed"), 801(d)(2)(C) (statement not hearsay if it was "was made by a person

whom the party authorized to make a statement on the subject"). Further, the emails are part of the

prior business relationship between Samsung and Netlist and made in the regular course of Samsung's

and Netlist's business, and are therefore on their face business records under Rule 803(6).

> **PX1673**. PX1673 (Ex. 8) is another internal Samsung email chain in which Samsung employees

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

First, Samsung employees ▮▮▮▮▮▮▮▮▮▮▮.



Second, Samsung employees ▮▮▮▮

Third, Samsung employees ▮▮▮▮▮▮▮▮▮▮▮

████

████████████████████████████████████████████████████████████████

Mr. Kennedy discusses this document and testimony concerning it in his expert report. Ex. 3 Kennedy Rpt. at ¶ 316.

This email likewise is not hearsay because it is a Samsung party statement and business record. The email chain is between and among Samsung employees with Samsung email addresses. For example, the emails quoted above were authored by ███████, a sales director at Samsung Semiconductor, and ██████████, a Director at Samsung Electronics. *See, e.g.,* Fed. R. Evid. 801(d)(2)(D) (statement is not hearsay if was "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"), 801(d)(2)(C) (statement not hearsay if it was "was made by a person whom the party authorized to make a statement on the subject"). Further, the emails were made in the regular course of Samsung's business, and are therefore on their face business records under Rule 803(6).

E.   **PX1662 IS AN INTERNAL SAMSUNG MEMO EVALUATING THE IMPORTANCE OF NETLIST'S PATENT PORTFOLIO**

PX1662 (Ex. 9) is a confidential Samsung memorandum in which Samsung discussed ████████████████████████████. As part of this evaluation, Samsung considered ███ ████████████████████

████████████████████████████████████████████████████████████████

This inquiry led to Netlist providing Samsung with a presentation on ██████████████





Ex. 10 (PX0446). Mr. Kennedy discusses this presentation in his expert report. Ex. 3 (Kennedy Rpt.)

at ¶ 53 ("██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

The value of Netlist's portfolio was relevant in the analysis because ████████████████

████████████████████████

Ex. 9 (PX1662). Judge Gilstrap made clear at the Pre-Trial Conference that Netlist is not allowed to

███████████████████████████████████████████████████████ without
express leave of Court. But this document is nonetheless relevant for another purpose because after
this evaluation Samsung's █████████████████████████████████████
████████████ Ex. 3 (Kennedy Rpt.) at ¶ 345 ████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████

PX1662 is not hearsay. It is an internal Samsung presentation produced by Samsung in this
case, and its sender is identified as █████████, an employee of the Business Development,
Strategic Planning team for Samsung's memory division. It is therefore an opposing party statement
that is not hearsay. *See, e.g.,* Fed. R. Evid. 801(d)(2)(D) (statement is not hearsay if was "was made by
the party's agent or employee on a matter within the scope of that relationship and while it existed"),
801(d)(2)(C) (statement not hearsay if it was "was made by a person whom the party authorized to
make a statement on the subject"). Further, the presentation was made in the regular course of
Samsung's business, and is therefore on its face a business record under Rule 803(6).

## IV.    CONCLUSION

For the foregoing reasons, Netlist respectfully requests the Court pre-admit PX583, PX1779,
PX1787, PX632, PX1673, and PX1662.

Dated: April 4, 2023                           Respectfully submitted,

                                               */s/ Jason G. Sheasby*

                                               Samuel F. Baxter
                                               Texas State Bar No. 01938000

sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

***Attorneys for Plaintiff Netlist, Inc.***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on April 4, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao