# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 2:21-CV-463-JRG ) ) |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., | ) JURY TRIAL DEMANDED ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF NETLIST, INC.'S MEMORANDUM REGARDING SAMSUNG'S EQUITABLE DEFENSES**

**TABLE OF CONTENTS**

**Page**

I. Prosecution Laches ...................................................................................................................1

    A. Netlist Did Not Take Actions to Extend the Patent Term...........................................1

    B. Netlist Did Not Engage in Unreasonable and Unexplained Delay..............................1

        1. Netlist's Prosecution of the '918/'054 Patent Family Was Reasonable. .................................................................................................1

        2. Samsung's Arguments About Claim Scope and JEDEC Fail to Establish the High Standard For Unenforceability...........................................2

    C. Samsung and the Public Have Experienced No Prejudice...........................................3

II. EQUITABLE ESTOPPEL...................................................................................................4

    A. Netlist Met Any Disclosure Duty That Existed............................................................4

    B. Samsung Cannot Show Reliance or Material Prejudice ..............................................7

III. UNCLEAN HANDS............................................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hakim v. Cannon Avent Grp., PLC*,
   479 F.3d 1313 (Fed. Cir. 2007)......................................................................................................2

*Promega Corp. v. Applied Biosystems, LLC*,
   2013 WL 10734174 (N.D. Ill. Apr. 4, 2013) ..................................................................................3

*Seagen Inc. v. Daiichi Sankyo Co.*,
   2022 WL 2789901 (E.D. Tex. July 15, 2022) .............................................................................1, 3

*Symbol Techs., Inc. v. Lemelson Med., Educ. & Rsch. Found.*,
   422 F.3d 1378 (Fed. Cir. 2005).....................................................................................................1, 2

*SynQor, Inc. v. Artesyn Techns, Inc.*,
   2011 WL 2729214 (E.D. Tex. July 13, 2011) ................................................................................3

**Statutes**

35 U.S.C § 154(a)(2).............................................................................................................................1

I.  **Prosecution Laches**[1,2]

  A.  **Netlist Did Not Take Actions to Extend the Patent Term**

Netlist did not take any actions during prosecution "to extend [its] patent term" which "is an important commonality amongst cases finding prosecution laches." *Seagen Inc. v. Daiichi Sankyo Co.*, 2022 WL 2789901, at *7 (E.D. Tex. July 15, 2022). The terms of the '918 and '054 patents are all 20-years from the effective filing date, with no extensions. *See* JTX0003; JTX0004; 35 U.S.C § 154(a)(2). The Federal Circuit has never affirmed a finding of prosecution laches for a patent filed after 1995, when the current 20-year patent-term regime came into effect.

  B.  **Netlist Did Not Engage in Unreasonable and Unexplained Delay**

  1.  **Netlist's Prosecution of the '918/'054 Patent Family Was Reasonable.**

Netlist filed and prosecuted patent applications in the '918/'054 patent family in 2008, 2012, 2014, 2015, 2018, 2020, and 2021. *See* JTX0003; JTX0004. There are fourteen issued patents in the "918/'054 patent family. During prosecution of the application leading to the '833 patent, the PTO issued a restriction requirement recognizing the on-module power management in the '918 and '054 patents as a distinct invention from a DRAM-Flash hybrid module. PX1816 (file history for the 833 patent) at 118-120; (Trial Tr.) 209:13-210:25. Netlist was required to make an election and elected to prosecute in the first instance inventions other than the on-module power management. The Federal Circuit has identified the filing of an additional application in response to a restriction requirement as an example of activity that ***does not support*** a finding of prosecution laches. *Symbol Techs., Inc. v.*

---

[1] Netlist is attaching to this brief both pre-admitted exhibits and additional exhibits relevant only to the bench trial. Those additional exhibits have an asterisk and have not been pre-admitted. Netlist respectfully moves for leave to admit these at the bench trial.

[2] Late Sunday, the day before the deadline for opening briefs, Samsung announced that it does not intent to raise the laches defense with respect to the '339 patent. Netlist has expended significant resources preparing for this defense, and the deadline to withdraw defenses has long passed. *See* PTC V2 at 260: 7-9 (setting deadline for Samsung to narrow its defenses by April 7, 2023).

*Lemelson Med., Educ. & Rsch. Found.*, 422 F.3d 1378, 1385 (Fed. Cir. 2005) ("[I]t cannot, without more, be an abuse of the system to file divisional applications on various aspects that the PTO has considered to be separate and distinct from each other.")

Netlist sought expedited examination of the '918 and '054 patents. JTX0021 ('918 File History) at 113, 138 (showing request for prioritized examination was submitted); JTX0045 ('054 Certified File History) at 2 (showing request for prioritized examination); JTX0003 & JTX0004, cover; Dkt. 1-3, 23-4. Both patents issued within a year after the applications were filed. *See* JTX0003 at 1 (cover showing application filed on December 30, 2020, and the patent was issued on May 25, 2021); JTX0004 at 1 (showing the application was filed on May 24, 2021 and the patent was issued on January 25, 2022).

There was also no delay in prosecuting the applications in the priority chain of the '918/054 patents. The '833, '331, '684 and '186 patents were each obtained within 2-4 years of filing. Netlist did abandon U.S. Application No. 15/934,416 filed on March 23, 2018, but it did not abandon any allowed claims. Rather, it chose to file an expedited new application leading to the '918 patent after the examiner issued final rejections. Such actions are permitted; and Samsung has not presented any authority where prosecution laches were found based on the same fact pattern.

### 2. Samsung's Arguments About Claim Scope and JEDEC Fail to Establish the High Standard For Unenforceability

Samsung alleges that the claims are unenforceable because they are ▮▮▮▮▮ ▮▮▮▮▮ and are broader than the claims in parent patents. *See, e.g.,* ▮▮▮▮▮ ▮▮▮▮▮ But the Federal Circuit has condoned broadening claims through continuation practice. *Symbol Techs.*, 422 F.3d 1378 at 1385; *Hakim v. Cannon Avent Grp., PLC*, 479 F.3d 1313, 1317 (Fed. Cir. 2007).

Samsung already raised these same arguments about the scope of the claims at trial—alleging that the claims are invalid for lack of written description support—and the jury rejected Samsung's position. Dkt. 479 at 5. The Seventh Amendment requires this Court reject these same arguments.

*Seagen*, 2022 WL 2789901, at *6 (prosecution laches based on a "position that a reasonable patent applicant would view the invention of the [asserted] Patent as limited to [one particular embodiment]" fails where that position is inconsistent with the jury's findings regarding written description).

Specifically, for the '918 and '054 patents, Samsung alleges that the claims are unenforceable because they do not require both DRAM and non-volatile flash memory. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Samsung raised this same argument at trial, arguing the claims lack written description support because they fail to recite Flash/DRAM hybrid memory modules. Trial Tr. [Opening] 170:13-18, [McAlexander] 906:18-909:7. The jury rejected Samsung's argument, finding that Samsung had failed to show by clear and convincing evidence that the asserted claims were invalid for failing to recite flash and DRAM. Dkt. 479 at 5.

Samsung's argument that prosecution laches arises because Netlist filed continuation applications while participating in the JEDEC standard-setting organization is unsupported by Federal Circuit law. The Federal Circuit and courts in this district have found that "[t]here is nothing unusual or improper about drafting claims to cover a competitor's product, as long as there is a basis in the pending application," even if that claim has never appeared before in the family. *SynQor, Inc. v. Artesyn Techns, Inc.*, 2011 WL 2729214, at *7 (E.D. Tex. July 13, 2011). The jury's validity findings confirm that "there is a basis in the pending application[s]."

      **C.**    **Samsung and the Public Have Experienced No Prejudice**

Samsung does not explain "what it would have done differently if the patent had issued earlier, or how it relied on, or was harmed by, the delay." *Promega Corp. v. Applied Biosystems, LLC*, 2013 WL 10734174, at *10 (N.D. Ill. Apr. 4, 2013).

With respect to the '918 and '054 patents, as early as in 2014, Netlist shared with Samsung a presentation describing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—technology covered

by the '918 and '054 patents—as "patent pending." PX0621 at 28; Trial Tr. [Milton] 202:13-203:7. Further, in April 2015, Netlist disclosed to Samsung the '831 and '833 patents (to which the '918 and '054 patents claim priority). PX0464 at 43 ▮▮▮▮▮ Trial Tr. [Milton] 216:24-218:3. Based on Samsung's discovery responses, ▮▮▮▮▮

▮▮▮▮▮

▮▮ Samsung did not seek to design around Netlist's patents or seek to obtain a license to them once its license had been terminated.

## II. EQUITABLE ESTOPPEL

Netlist disclosed family members of U.S. patents Nos. 11,016,918 (the "'918 patent") and 11,232,054 (the "'054 patent") to JEDEC. Samsung argues that equitable estoppel applies because Netlist did not separately declare them to specific DDR5 PMIC specifications.

### A. Netlist Met Any Disclosure Duty That Existed

Samsung conceded that **none** of the patents-in-suit were standard-essential. Ex. 2 (3/28/23 PTC Tr.) at 146:1-7, 192:22-24, and 193:6-10. At trial, Netlist did not prove infringement via a comparison to the standard. Given this, any alleged failure to disclose to JEDEC resulted in no material prejudice to Samsung, because a RAND obligation only exists as to actually essential patents. *See* PX1618* § 8.2.4 (". . . each Committee Member . . . agrees to offer to license on RAND terms . . . such Committee Member's Essential Patent Claims . . ."); *id.* at 31 (defining "Essential Patent Claims" as "[t]hose Patent claims the use of which would necessarily be infringed by the use, sale, offer for sale or other disposition of a portion of a product in order to be compliant with the required portions of a final approved JEDEC standard"); *see also* PTC Tr. (Dkt. 427) at 147:1-6 ▮▮▮▮▮

▮▮▮▮▮

Samsung's JEDEC representative (and corporate representative in deposition on JEDEC) testified that JEDEC does not obligate companies to disclose essential patents. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Consistent with that testimony, the JEDEC patent policy limits any disclosure expectation to the personal knowledge of the committee member, with no duty to search:

> All Committee Members must Disclose Potentially Essential Patents, **known to their Representative(s) to be Potentially Essential Patents** that are owned or controlled by that Committee Member to the personal knowledge of the Representatives. However, **neither Committee Members nor Representatives shall have any obligation to conduct a search for Potentially Essential Patents**.

PX1618* (JM21S) § 8.2.3 (emphases added). There is no evidence that Netlist's sole JEDEC representative during the relevant time period, Mario Martinez, had any knowledge of the specification of the '918 and '054 patents. Moreover, the claims in these patents were not filed until after JEDEC adopted and published the PMIC standard.

Even if there were a duty to disclose the '918 and '054 patents, Netlist satisfied that duty through its disclosure of the parent '833 and '831 patents. Netlist first disclosed the '833 and '831 patents to JEDEC in 2015. *See* PX0949* at 19 (disclosing the '831 patent); *id.* at 21 (disclosing the '833 patent). Netlist disclosed both of these patents to the JC-40 subcommittee. JC-40 is the subcommittee that created the JEDEC PMIC specification that Samsung claims to implement. *See* PX1811* (identifying JC-40.1 as committee relevant to PMIC specifications).

Netlist withdrew from the JEDEC JC-40 and JC-42 committees in 2015, and returned to those committees in 2018. In August 2018, Netlist provided JEDEC with a "License Assurance/Disclosure Form" for the '831 patent and '833 patent, again identifying them as relevant to JC-40. PX0176* at 31 ('831 patent) and at 33 ('833 patent).

The disclosure of the parents of the '918 and '054 patents are a disclosure of all members of the family: "[d]isclosure of a patent is deemed to include **all patents claiming priority of a single**

*filing*." PX1618* (JM21S) § 8.2.1 (emphasis added); ▮

▮

Samsung has suggested that the disclosure is insufficient because it identifies only JC-40, and not the specific DDR5 PMIC standard Samsung practices. This, however, is not the requirement. The definition of "Disclosure of Potentially Essential Patents" makes reference to "the Standard(s) on which the submitter of the disclosure *believes* an Essential Patent Claim may read on." PX1618* (JM21S) § 8.2.1. The disclosures made in 2015 and 2018 were made by Noel Whitley at Netlist. At the time of these disclosures, the JEDEC DDR5 PMIC standards at issue had yet to be formulated. And the applications for the '918/'054 patents were not filed until 2.5 years later when Netlist started its development of its own DDR5 products Ex. 6 (Milton Dep. Tr.) at 71:4-73:7. Because a duty of disclosure was specific to Mario Martinez, Netlist's representative on the committee, because there is no duty of inquiry, and because there is no evidence that Mr. Martinez was aware of the contents of the '918 and '054 specification or its alleged relationship to the JEDEC DDR5 PMIC standard, there was no requirement of additional specificity.

Moreover, Netlist's disclosure to JC-40 Item No. 314.22 provided an adequate disclosure for DDR5 PMIC standard. ▮

▮

▮

Accessing non-volatile memory also occurs on DDR5 DIMMs due to the incorporation of the PMIC, as discussed before the jury. Trial Tr. at 202:5-6 (Q. Do [DDR5 DIMMs] have non-volatile memory on them? A. They do in the power management circuit.). The JEDEC DDR5 PMIC standard Samsung claims to practice applies to NVDIMM as well as other DIMMs. ▮

▮

[REDACTED] Thus, any JEDEC participant that wished to determine whether any patents potentially covering the JEDEC DDR5 PMIC standard would know to look at NVDIMM disclosures to JC40. [REDACTED]

### B. Samsung Cannot Show Reliance or Material Prejudice

There is no clear and convincing evidence of reliance. Samsung's corporate representative on JEDEC testified that Samsung does not believe there is a duty of disclosure at JEDEC. *See* Ex. 3 (Kim Depo. Tr.) at [REDACTED]

[REDACTED] In light of this, Samsung could not have relied on disclosure or an absence thereof at JEDEC. Moreover, there is no evidence that Samsung checked JEDEC disclosures before launching its design. Finally, Netlist disclosed to Samsung that it was pursuing patents on on-module power management as early as 2014. *See* PX0621 at 28. Netlist disclosed the parents of the '918/054 patents to Samsung. *See supra* at 4-5; *see also* PX0621; PX0464. Netlist also disclosed the parent of the '339 patent to Samsung and made clear it related to LRDIMMs. *See supra* at 4-5; *see also* PX1781; PX582*; PX0464.

### III. UNCLEAN HANDS

On the eve of trial, Samsung asserted that unclean hands barred Netlist's infringement claims because Netlist changed its position on whether the patents are SEPs. Ex. 4. Samsung never pleaded unclean hands as to the '918, '054, or '339 patents.

[REDACTED]

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████████ Trial Tr. at 933:11-14 (McAlexander testifying "[I]n addition to what is required by the claims, which would be the distributed data buffers and the dual path, that has been accomplished with other way –other means using channel technology"); *id.* 913:22-914:2 (McAlexander testifying "other techniques [one] can use to solve [the] problem").

Samsung's decision to maintain that the patents were not essential was strategic.[3] Because of damaging testimony by Samsung witnesses in the case, if Samsung would have maintained that the patents were standard essential it would have been admitting infringement. Samsung corporate representatives repeatedly confirmed that they implement JEDEC standards that relate to DDR5 PMICs and DDR4 distributed buffers. For example:



If Netlist's patents were actually standard essential, the admissions of Samsung's witnesses would

---

[3] Samsung points out that, in order to comply with German law, Netlist sent a FRAND offer of settlement that included rights to the '339 patent. In response, Samsung disputed that Netlist's patents were infringed. PX1821* ████████████████████████████████████████████████████
████████████████████████████████████████

constitute binding admissions of infringement. By advancing the position of Mr. McAlexander, that the patents are not essential and can be designed around, Samsung was able to present a non-infringement defense at trial. It is for this reason that Samsung's counsel repeatedly represented that the asserted patents were not SEPs:

███████████████████████████████████████████████████████
████████████████████████████████████████████

██████████████████████████████████████████████████████
███████████████████████████████

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
█████████████████████████████████████

Early in the litigation, Netlist indicated in an interrogatory response that it would contend that its patents were necessary for DDR5 and DDR4 LRDIMM products but that a definitive analysis would require experts: ████████████████████████████████████

██████████████████████████████████████████████████████

████████ Based on the testimony of Samsung's technical witnesses and documents that were elicited in the case, it became clear that it was in fact possible to implement the standards without using Netlist's patents, although Netlist does not believe it would be commercially acceptable. *Id.* at 48-49

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████ Netlist explained the same in its pretrial conference briefing. Dkt. 405 (Netlist's Reply ISO MIL) at 4 ("Based on the technical discovery that was produced in the case as well as the claim constructions adopted by the Court,

Netlist determined to not proceed with an infringement case based on mapping the patents to the standard and then relying on admissions that Samsung practiced the standard."). Mr. Milton, Netlist's VP of Engineering, made clear that Netlist had not done an actual essentiality analysis:

Netlist's CEO, who was designated on the topic of the proper measure of damages, presented a formal written statement to Samsung that █████████████████████████████████████████ Samsung prevailed on an issue in this case, non-essentiality, and now it is claiming that Netlist patents are unenforceable because Netlist conceded Samsung's position.

Dated: May 22, 2023                                    Respectfully submitted,

                                                       /s/ Jason G. Sheasby

                                                       Samuel F. Baxter
                                                       Texas State Bar No. 01938000
                                                       sbaxter@mckoolsmith.com
                                                       Jennifer L. Truelove
                                                       Texas State Bar No. 24012906
                                                       jtruelove@mckoolsmith.com
                                                       **MCKOOL SMITH, P.C.**
                                                       104 East Houston Street Suite 300
                                                       Marshall, TX 75670
                                                       Telephone: (903) 923-9000
                                                       Facsimile: (903) 923-9099

                                                       Jason Sheasby (*pro hac vice*)
                                                       jsheasby@irell.com
                                                       Annita Zhong, PhD (*pro hac vice*)
                                                       hzhong@irell.com
                                                       Thomas C. Werner (*pro hac vice*)
                                                       twerner@irell.com
                                                       Andrew Strabone (*pro hac vice*)
                                                       astrabone@irell.com

        Yanan Zhao (*pro hac vice*)
        yzhao@irell.com
        Michael W. Tezyan (*pro hac vice*)
        mtezyan@irell.com
        **IRELL & MANELLA LLP**
        1800 Avenue of the Stars, Suite 900
        Los Angeles, CA 90067
        Tel. (310) 277-1010
        Fax (310) 203-7199

        Rebecca Carson (*pro hac vice*)
        rcarson@irell.com
        **IRELL & MANELLA LLP**
        840 Newport Center Drive, Suite 400
        Newport Beach, CA 92660

        ***Attorneys for Plaintiff Netlist, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on May 22, 2023, a copy of the foregoing was served to all counsel of record.

*/s/ Yanan Zhao*
Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case.

*/s/ Yanan Zhao*
Yanan Zhao