UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., <br><br> Defendants. | Case No. 2:21-CV-463-JRG <br><br> JURY TRIAL DEMANDED |

### NETLIST, INC.'S OPPOSITION TO SAMSUNG'S MOTION TO VACATE THE JUDGMENT AND STAY DUE TO THE NINTH CIRCUIT'S DECISION (DKT. 576)

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................................1

II.  BACKGROUND .....................................................................................................................3

   A.   Samsung's Successful Shift Before the Ninth Circuit Regarding The Narrow Scope Of The JDLA's License Grant ........................................................................3

   B.   The Court's Previous Decisions Regarding The JDLA ................................................6

   C.   The Central District Action ..........................................................................................8

   D.   Samsung's Ninth Circuit Appeal Of The Central District's Ruling .............................8

   E.   Samsung II ..................................................................................................................10

III. ARGUMENT..........................................................................................................................11

   A.   The Ninth Circuit's Order Is Not Controlling............................................................11

   B.   Samsung Is Estopped From Arguing The Infringing Products Are Licensed .........13

   C.   Any Dispute Regarding The License Should Be Resolved In *Samsung II*..................15

- i -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bailey v. Ryan Stevedoring Co.*,
   894 F.2d 157 (5th Cir.1990) ............................................................................................... 11

*Carter v. Fenner*,
   136 F.3d 1000 (5th Cir. 1998) ............................................................................................ 13

*Computer Acceleration Corp. v. Microsoft Corp.*,
   2007 WL 2584827 (E.D. Tex. Aug. 28, 2007) ................................................................... 11

*Cooper v. Texas Alcoholic Beverage Comm'n*,
   820 F.3d 730 (5th Cir. 2016) .............................................................................................. 11

*Hall v. GE Plastic Pac. PTE Ltd.*,
   327 F.3d 391 (5th Cir. 2003) .............................................................................................. 13

*Martagon Cerezo v. Garland*,
   2023 WL 5703655 (5th Cir. Sept. 5, 2023) ........................................................................ 13

*Netlist Inc. v. Samsung*,
   2021 WL 7186853 (C.D. Cal. Oct. 14, 2021) ...................................................................... 8

*Netlist Inc. v. Samsung Elecs. Co.*,
   2023 WL 6820683 (9th Cir. Oct. 17, 2023) ................................................................ passim

*Owens v. W. & S. Life Ins.*,
   717 F. App'x 412 (5th Cir. 2018) ....................................................................................... 15

*Rodgers v. City of Lancaster Police*,
   2017 WL 3605441 (N.D. Tex. July 24, 2017) .................................................................... 12

*Seven Elves, Inc. v. Eskenazi*,
   635 F.2d 396 (5th Cir.1981) ............................................................................................... 11

*Virgen v. United States*,
   2015 WL 7779227 (N.D. Tex. Dec. 1, 2015) ..................................................................... 13

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*,
   751 F.2d 721 (5th Cir., 1985) ............................................................................................. 15

**Rules**

Rule 56 ................................................................................................................................... 7, 12

Rule 60(b) ........................................................................................................................ 11, 12, 13

- ii -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

I.     **INTRODUCTION**

This motion is a repackaging of Samsung's previously denied motion to stay pending the outcome of its Ninth Circuit JDLA appeal. The day after the Central District of California granted summary judgment of no license, Samsung made the strategic decision to begin a patent dispute between the parties by filing a declaratory judgment action of non-infringement in a different forum (Delaware) and also interpose a license defense. Both Judge Andrews in Delaware and this Court concluded that the patents at issue in the above-captioned action should be tried in East Texas.

The Ninth Circuit's decision was narrow. It held only that Samsung's supply obligation is ambiguous and remanded for further proceedings, including considering whether there was a material dispute of fact as to the extrinsic evidence. Contrary to Samsung's assertion, the Ninth Circuit did *not* hold that "Samsung's license to Netlist's patents is in full force" (Mot. at 1). The motion should be denied for three independent reasons.

First, this Court ruled as a matter of law that the JDLA was properly terminated. This Court sits within the Fifth Circuit, and because this is a patent infringement case, the appeal will be taken by the Federal Circuit. Samsung has preserved the issue of the propriety of the termination before this Court via its briefing on summary judgment; it is entitled to present this issue to the Federal Circuit on appeal. A ruling in the Ninth Circuit that the scope of the supply clause is ambiguous and asking the Central District to consider whether there is a material dispute of fact on a breach of contract claim may be informative to the Federal Circuit, but it is not binding on this Court nor the Federal Circuit and is not a basis to vacate or stay.

In East Texas, Netlist moved for summary judgment that preclusion (based on the Central District's summary judgment) blocked Samsung from arguing that the license was not terminated. Dkt. 201. In opposition, Samsung argued that preclusion does not apply: "patent infringement is plainly a different cause of action from breach of contract and declaratory relief for contract

- 1 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

termination, Samsung's defenses to these disparate claims cannot be subject to claim preclusion." Dkt. 255 at 11-12. The Court sided with Samsung and denied Netlist's motion. Dkt. 432 at 1.

Samsung also moved for summary judgment on its JDLA license defense. Dkt. 201. After examining the JDLA and the evidence presented by both parties regarding the behavior of Samsung, this Court found as a matter of law that the JDLA was properly terminated on July 15, 2020.

> THE COURT: Well, I can tell you I'm persuaded, based on the evidence that's been presented, that there's no material question of fact that the termination letter executed by Netlist on July the 15th, 2020, effectively terminated your licenses -- Samsung's licenses as of that date.

Dkt. 426 at 59:9-13. The Court also held that there was a material dispute of fact as to what products were licensed before termination:

> So you've got a license -- Samsung's got a license defense up until July 15th, 2020, and you don't have one after July 15th, 2020. What falls within that license as prescribed by the other terms of the JDLA is a fact question, and I don't find as a matter of summary judgment that the HBM products are foundry products and either would be within or without the license.

*Id.* at 59:19-25. The question of what was licensed pre-termination was ultimately not tried because the Court held that there was a pre-suit marking requirement under *Arctic Cat* and no pre-suit notice as to the only patents in suit that issued before termination, the '060/'160 patents. Dkt. 432 at 3.

Samsung seeks vacatur based on an interim ruling from the Ninth Circuit that is not controlling in either the Fifth or Federal Circuits. Samsung's JDLA license defense was resolved based on a ruling by this Court, not the Central District. Samsung's arguments that the Federal Circuit should follow the Ninth Circuit are just that, arguments for the Federal Circuit to consider.

The second basis for denying the motion is judicial estoppel. Samsung's license defense in this case hinged on Samsung's contention that the JDLA broadly licenses Samsung to Netlist's patents for HBM, DDR4 LRDIMM and DDR5 RDIMMs, UDIMMs, and SODIMMs. As explained below, Samsung secured the Ninth Circuit's partial reversal by arguing the opposite: that the rights grants in

- 2 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

the JDLA were narrowly limited to the collaboration product that was the subject of the JDLA. Specifically, Samsung claimed that provisions in the JDLA that do not mention the parties' "joint development project" are nevertheless limited to that project and the product that was to come out of it (i.e. the "NVDIMM-P" product). As such, regardless of the outcome of the dispute regarding termination, Samsung is bound —based on its own successful argument before the Ninth Circuit— that the JDLA's license clause cannot encompass the asserted patents in this case because none of the accused products here are NVDIMM-P. To be clear, recognizing the change in positions between what Samsung told this Court in *Samsung I* and what it told the Ninth Circuit is not an attack on the integrity of Samsung's counsel in either forum. Samsung made the strategic decision to change its position. But having now succeeded in the Ninth Circuit based on the new position, there are consequences.

Third, Samsung has presented the identical JDLA license defense in *Samsung II* (Case No. 2:22-cv-294-JRG), scheduled for trial in April. As noted in the opposition to the motion to stay *Samsung II*, this license defense has two parts: (a) what is the scope of the license grant; and (b) was termination proper. If an additional trial is necessary, that trial is *Samsung II,* in which all issues can be adjudicated, and Samsung will no longer be able to make the argument that because the Central District is a contract action its rulings are not preclusive in a patent infringement claim.

## II.   BACKGROUND

### A.   Samsung's Successful Shift Before the Ninth Circuit Regarding The Narrow Scope Of The JDLA's License Grant

Three sections of the JDLA are at issue. First, the recitals (in their entirety below) include a reference to joint development and the granting of a license "in connection with their collaboration".

- 3 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)



Dkt. 576-02 at 1. Second, the Samsung supply obligation, which makes no reference to the collaboration. Netlist took the position that the supply obligation was not limited to the collaboration, and, therefore, when Samsung refused to supply, it was in material breach. The literal language of Samsung's supply obligation is not limited to the collaboration:



*Id.* at 6. In the Ninth Circuit, Samsung claimed that, in light of the recitals, the supply obligation was limited to the collaboration, quoting recital four: "Whereas, in connection with their collaboration hereunder, the Parties wish to grant to each other a cross license under each Party's patents." *Id.* at 1.

> "[T]he recitals are very clear -- and parties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts, right? Here's what our purpose is, interpret this agreement consistent with our purpose. And when you look at the recitals, what does it say about the licenses? Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license under each party's patents. ***The licenses are being given in connection with the collaboration. That's the joint development project.***"

Ex. 1 (9th Cir. Hearing Tr.) at 15:10-19. This specific argument was relied on by the Ninth Circuit to find the supply obligation ambiguous: "Read as an integrated whole, however, the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2 'reasonably susceptible of more than one interpretation.' . . . [W]e remand to the district court to consider in the first instance

- 4 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

whether the extrinsic evidence 'creates a genuine issue of material fact' as to the provision's meaning." *Netlist Inc. v. Samsung Elecs. Co.*, 2023 WL 6820683, at *1-2 (9th Cir. Oct. 17, 2023).

The third implicated section of the JDLA, the license grant, like the supply clause, makes no reference to the collaboration.



Dkt. 576-02 at 8. Before this Court, Samsung argued that the license grant should be read plainly without reference to the recitals to apply to all Samsung products, not simply the collaboration products. "The plain language of the JDLA unambiguously licenses all semiconductor products except Foundry Products and is not limited to the Joint Development." Dkt. 328 at 2. Samsung's counsel confirmed this at the March 28, 2023 pretrial conference. Dkt. 426 (*Samsung I,* Pretrial Conference Tr.) at 28:8-29:14 ("[T]he reality is that JDLA was in no way limited to jointly developed products.").

This interpretation is the opposite of Samsung's successful argument to the Ninth Circuit less than three months later: "'Whereas, in connection with their collaboration hereunder, the Parties wish to grant to each other a cross license under each party's patents.' **The licenses are being given in connection with the collaboration. That's the joint development project**." Ex. 1 (9th Cir. Hearing Tr.) at 15:17-21, referring to JDLA Recital No. 4, p. 1 (emphasis added).

Samsung also claimed before this Court that the consideration for this "broad" license was an $8 million payment under the JDLA. *Samsung I,* Dkt. 566 at 57 ("Netlist perpetually licensed 87 patents to Samsung, including the asserted patents, in an agreement where Samsung paid $8 million."). However, in the Ninth Circuit, Samsung represented that "there's an $8 million NRE fee that's paid.

- 5 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

It's clearly for the joint development project, but it doesn't say it's specifically for the joint development project." Ex. 1 (9th Cir. Hearing Tr.) at 8:16-24. This was part of Samsung's theme that, even where the JDLA does not reference the joint development collaboration, that contract would still be limited to the collaboration.  As Samsung's counsel confirmed: "You can't make these repeated statements to courts all over the country and then come back and take them back. You just can't. We certainly can't do that here in Texas." Dkt. 426 (*Samsung I,* Pretrial Conference Tr.) at 39:1-4.

The JDLA defines the ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Thus, according to Samsung's successful position in the Ninth Circuit, the Accused Products in this case--DDR4 LRDIMMs, DDR5 SODIMMs, UDIMMs, RDIMMs, and HBMs--are not licensed because none of them are NVDIMM-P. Samsung's corporate representative admitted that ███████████████████████████████████████████████████████████

### B. The Court's Previous Decisions Regarding The JDLA

Netlist moved for summary judgment of no-license, arguing that preclusion applies based on the Central District ruling. Dkt. 201. Samsung argued in response that the ruling in the Central District was not binding before this Court:

> Because patent infringement is plainly ***a different cause of action*** from breach of contract and declaratory relief for contract termination, Samsung's defenses to these disparate claims cannot be subject to claim preclusion.
>
> Netlist fails to analyze whether the claims in the CDCA Case and this one are the same. Rather, it refers to its argument for issue preclusion as allegedly showing that the CDCA Case and this case loosely involve the same "claim." Dkt. No. 201 at 4. But Netlist focuses on an issue having been decided, not whether the claims are the same.

Dkt. 255 at 11-12 (emphasis added). These arguments were successful and the Court denied Netlist's

- 6 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

motion. "I'm going to deny Plaintiff's motion for partial summary judgment. I don't think it's supported by Rule 56. I don't think the Court has a basis to grant it." Dkt. 426, 56:8-11.

In parallel, Samsung moved for summary judgment on its license defense. Samsung argued that the scope of the JDLA covered all of its products.

> By its expressed terms, the license covers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
>
> The Court should grant summary judgment in favor of Samsung to establish that Samsung's license under the JDLA covered all accused products. . . . *Id.* at 2.

The Court denied this motion, holding that there were questions of fact as to license scope:

> The motion was GRANTED-IN-PART to the extent it seeks a declaration that Samsung had a license until July 15, 2020. (Dkt. No. 426 at 56:12–24.) The Court found that there are fact issues with respect to whether the High Bandwidth Memory ("HBM") products are "Foundry Products" under the Joint Development and License Agreement ("JDLA"), which would determine whether they did or did not fall within the license that existed up until July 15, 2020 and DENIED the motion in that respect. The Court recognized the representations made by both Parties in open Court that after July 15, 2020, Samsung does not have a license defense and as of that date the JDLA was terminated, which terminated any license created thereunder. (*Id.* at 19–22.). Dkt. 432 at 2.

The question of what was licensed before termination was ultimately moot because the Court also held as a matter of law that there was a pre-suit marking requirement under *Arctic Cat* and there was no pre-suit notice as to the only patents in suit that issued before termination, the '060/160 patents. Dkt. 432 at 3. Samsung is correct that the Court granted judgment at the end of trial that the accused HBM products were not foundry products. This is a necessary but not sufficient condition for a product to be licensed. The Court did not grant judgment at the end of trial that any products were licensed under the JDLA because that was not an issue before the jury. Netlist only sought damages for the period after termination, consistent with the Court's summary judgment during pre-trial. And the Court held that willfulness could only be pursued post-termination. Dkt, 432 at 4 (finding "genuine issues of material fact" for willfulness "[a]s to the period of time after July 15, 2020").

- 7 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

### C. The Central District Action

In August 2021, Netlist and Samsung both moved for summary judgment on whether Samsung had committed material breach of the JDLA by its failure to supply product (something Samsung admitted it had failed to do). Ex. 10 (C.D. Cal., Dkt. 187) at ███████████████████████████████████████████████████████████. Samsung's position at summary judgment as to the interpretation of JDLA § 6.2 was that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The Central District held that § 6.2 is unambiguously a mandatory supply obligation that is not limited to either the joint development project or the product that was intended to come out of that development (*i.e.* NVDIMM-P). In doing so, the Central District expressly noted that the JDLA is specific in its reference to the joint development project and/or joint product when it intends to be, and that the provisions of the JDLA that do not reference those terms (such as Samsung's mandatory supply obligation) cannot be read to include the supposed unstated limitation: "The coexistence of project-specific provisions and project-nonspecific provisions signals that the parties intended not to restrict the NAND and DRAM supply obligation to the NVDIMM-P project by omitting any mention of it in § 6.2." *Netlist Inc. v. Samsung*, 2021 WL 7186853, at *5 (C.D. Cal. Oct. 14, 2021).

### D. Samsung's Ninth Circuit Appeal Of The Central District's Ruling

Samsung appealed the Central District's summary judgment to the Ninth Circuit, reversed course on how to interpret the JDLA, and achieved partial success with its new positions. For example, in the Central District (and this Court), Samsung represented (as an undisputed fact) that "it considered the $8 million as consideration for Netlist's grant of patent licenses . . . ." Ex. 4 (C.D. Cal., Samsung SSUF, Dkt. 168-2), fact #62. However, in the Ninth Circuit, Samsung represented that "there's an $8 million NRE fee that's paid. It's clearly for the joint development project, but it doesn't

- 8 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

say it's specifically for the joint development project." Ex. 1 (9th Cir. Hearing Tr.) at 8:16-24. Further, Samsung told the Central District (and this Court) that the absence of reference to collaboration in a grant of rights clauses means the clause is broad and not limited to the collaboration: "Sections 7 [release] and 8 [license] do not deal with the JDLA and the joint development. . . So I very clearly will say to the jury in this case, if I get there, your Honor, Section 7 and Section 8 don't apply to joint development." Ex. 5 (C.D. Cal. Dkt. 213 (September 20, 2021 MSJ Hearing Tr.)) at 23:16-23. Whereas, in the Ninth Circuit, Samsung made the opposite argument, asserting that the fourth recital discussing the license grant in reference to the collaboration meant that the clause was limited to collaboration:

> [T]he recitals are very clear -- and parties put recitals in agreements to make sure language isn't tortured down the road by lawyers and courts, right? Here's what our purpose is, interpret this agreement consistent with our purpose. And when you look at the recitals, what does it say about the licenses? Whereas in connection with their collaboration hereunder, the parties wish to grant to each other a cross-license under each party's patents. **The licenses are being given in connection with the collaboration. That's the joint development project.**

Ex. 1 (9th Cir. HT) at 15:10-21 (emphasis added).[1] In other words, Samsung's argument to the Ninth Circuit was that the JDLA provisions that do not expressly refer to the joint development project should still be interpreted as narrowly limited to that project in light of recital four.

Samsung partially succeeded. In an unpublished 2-1 decision, the majority upheld multiple rulings of the Central District, but reversed the grant of summary judgment on the supply clause, § 6.2. The Ninth Circuit conceded that "[s]tanding alone, the plain language of § 6.2 favors Netlist's interpretation: that Samsung must fulfill all NAND and DRAM orders by Netlist for whatever purpose," *Netlist Inc.*, 2023 WL 6820683, at *1, but, nevertheless, remanded for the Central District to

---

[1] In making this argument, Samsung's counsel adopted the reasoning of the Korean Tax Tribunal as to the scope of the JDLA license grant. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- 9 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

consider in the first instance whether extrinsic evidence would create an issue of material fact on supply clause interpretation. The Ninth Circuit also reversed and remanded as to the materiality of Samsung's breach, finding that a disputed fact issue existed. *Netlist Inc.*, 2023 WL 6820683, at *3.

### E. Samsung II

*Samsung II* is set for trial on April 15, 2024. Samsung's license defense (which parallels its license defense in this case) will be part of that trial. Samsung has moved to stay *Samsung II* pending the Central District's decision on remand. *Samsung* II, Dkt. 187. As explained in Netlist's opposition to that motion, *Samsung II* is the only matter where the parties' entire dispute can be decided, which includes: (1) the scope of the license, (2) whether the license was terminated, and (3) whether Samsung has infringed the asserted patents in that case. *Samsung* II, Dkt. 196. The Central District is only addressing (2) in the context of termination under Section 13 of the JDLA itself, and trial has yet to be scheduled in that case.

In *Samsung II*, Samsung's corporate representative affirmed that 

- 10 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████
████████████████████

Ex. 6 (Calandra Depo) at 10:7-13:19. Notably, this testimony is the exact opposite of what Samsung told the Ninth Circuit, where it argued that the supply clause as interpreted by Netlist, this Court and the Central District, was entirely unique and unprecedented in Samsung's history. Ex. 7(Samsung First Brief on Cross Appeal) at 34-35 ("No ordinary businessperson in Samsung's position would agree to supply an unquantified amount of DRAM and NAND to a single customer on 'request at a competitive price.'").

### III. ARGUMENT

This District Court has cautioned that "Rule 60(b) should be used sparingly, only as an 'extraordinary remedy.'" *Computer Acceleration Corp. v. Microsoft Corp.*, 2007 WL 2584827, at *1 (E.D. Tex. Aug. 28, 2007). This is because "judgments should not be lightly reopened." *Id.* (citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir.1981)); *see also Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir.1990) ("The desire for a judicial process that is predictable mandates caution in reopening judgments."). The moving party "has the burden to show that relief under Rule 60(b)(5) is warranted." *Cooper v. Texas Alcoholic Beverage Comm'n*, 820 F.3d 730, 744 (5th Cir. 2016).

#### A. The Ninth Circuit's Order Is Not Controlling

Samsung's motion to vacate is predicated on Rule 60(b)(5). That rule states, in pertinent part, that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "it is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5).

This Court granted summary judgment on Samsung's license defense, concluding that "after July 15, 2020, Samsung does not have a license defense and as of that date the JDLA was terminated."

- 11 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

Dkt. 432 at 2. That decision was not "based on" the Central District's decision within the meaning of Rule 60(b)(5). Indeed, Netlist moved for summary judgment on Samsung's license defense on the ground that the Central District's decision was preclusive and Samsung opposed. Dkt. 201 (Netlist Motion for Partial Summary Judgment) at 1 ("[P]rinciples of issue preclusion and claim preclusion require that the termination be accepted and applied in this Action, and as such summary judgment is appropriate here."); Dkt. 255 (Samsung's Opposition) at 11-12 ("Because patent infringement is plainly a different cause of action from breach of contract and declaratory relief for contract termination, Samsung's defenses to these disparate claims cannot be subject to claim preclusion."). The Court denied Netlist's motion. Dkt. 432 at 2 ("Netlist had not shown there was a clear basis under Federal Rule of Civil Procedure 56 to grant the motion.").

Instead, in a separate ruling, the Court concluded that the JDLA's license had been terminated, and the scope of that license remained as a disputed question of fact:

> [T]here's no material question of fact that the termination letter executed by Netlist on July the 15th, 2020, effectively terminated your licenses – Samsung's license as of that date . . . So you've got a license – **Samsung's got a license defense up until July 15th, 2020, and you don't have one after July 15th, 2020. What falls within that license as prescribed by the other terms of the JDLA is a fact question**.

Dkt. 426 (March 28, 2023 HT) at 59 (emphasis added). Nothing in the Order states that this Court abdicated its Article III authority and simply rubber-stamped the Central District. Indeed, because the issue before this Court was when Samsung lost its license, Netlist argued it was when Samsung first materially breached the JDLA (i.e. not just when Samsung failed to cure and the termination letter was sent), an issue that was never presented in the Central District. The Court determined that Samsung lost its license not at the time of first material breach, but at the time of termination.

Thus, the Ninth Circuit's partial reversal is not controlling here. *See, e.g., Rodgers v. City of Lancaster Police*, 2017 WL 3605441, at *5 (N.D. Tex. July 24, 2017), report and recommendation adopted, 2017 WL 3592410 (N.D. Tex. Aug. 21, 2017) (denying Rule 60(b)(5) motion because the

- 12 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

"Judgment [was] not based on the decision vacated by the Fifth Circuit."); *Martagon Cerezo v. Garland*, 2023 WL 5703655, at *1 (5th Cir. Sept. 5, 2023) ("[A] decision from another circuit is not controlling on this court."). Samsung is free to argue to the Federal Circuit that the Ninth Circuit's reasoning is relevant and should be taken into consideration. But the Ninth Circuit's reversal in a separate dispute cannot serve as basis for vacating the judgment here.[2]

### B. Samsung Is Estopped From Arguing The Infringing Products Are Licensed

Even assuming Rule 60(b) was applicable here, Samsung's motion fails for a second reason: Samsung is estopped from arguing that the JDLA license, which it successfully argued in the Ninth Circuit covers only NVDIMM-P, covers the accused products here (which are not NVDIMM-P). *See Carter v. Fenner*, 136 F.3d 1000, 1005-06 (5th Cir. 1998) (to prevail on a Rule 60(b) motion, a movant "first must show that . . . he has a meritorious defense to the action.").

Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). The Fifth Circuit applies a two-pronged test for judicial estoppel: "the position of the party to be estopped is clearly inconsistent with the previous one; and that party must have convinced the court to accept that previous position." *Hall*, 327 F.3d at 396. Here, both prongs are met. **First**, Samsung's position to the Ninth Circuit on the scope of the license during oral argument is the opposite of the position Samsung took in this case. Samsung's license defense hinges on the premise that the JDLA provided a "broad" license grant to all of Netlist's patents for any purpose, not just the parties' joint development efforts and the joint development product. As Samsung asserted to this Court: ▮

---

[2] Samsung also cites Rule 60(b)(6) as an alternative basis for vacatur. Mot. 8. But that catchall provision, which requires the movant to demonstrate a "defect in the integrity of the underlying proceedings," does not apply here. *Virgen v. United States*, 2015 WL 7779227, at *2 (N.D. Tex. Dec. 1, 2015).

- 13 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

Dkt. 328 at 2. In the Ninth Circuit, however, Samsung successfully argued that the JDLA's scope was narrow and thus Samsung was only narrowly obligated to supply product for the joint development project and product to come out of it (i.e. NVDIMM-P). In support of this argument, Samsung's counsel cited recital four of the JDLA, which states ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 576-02 at 1. As Samsung's counsel explained, this recital demonstrated that the provisions of the JDLA, ***including the license grant***, were limited to the parties' joint development project: "***The licenses are being given in connection with the collaboration. That's the joint development project***." Ex. 1 (9th Cir. Hearing Tr.) at 15:10-21 (emphasis added).[3]

***Second***, the argument that the fourth recital limited the scope of the rights clauses in the JDLA was accepted by the Ninth Circuit to find the supply obligation ambiguous: "Read as an integrated whole, however, the contract's apparent purpose as derived from its title, structure, and related provisions make § 6.2 'reasonably susceptible of more than one interpretation.' . . . [W]e remand to the district court to consider in the first instance whether the extrinsic evidence 'creates a genuine issue of material fact' as to the provision's meaning." *Netlist Inc.*, 2023 WL 6820683, at *1-2 (9th Cir. Oct. 17, 2023).[4] Neither the supply clause nor the license clause make any express reference to the joint development project. But as Samsung specifically argued that the JDLA license grant ***was***

---

[3] One of Samsung's negotiators of the JDLA has similarly testified: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

[4] At oral argument, the very first question posed to Netlist's counsel by the Presiding Judge of the Ninth Circuit and a member of the majority opinion was: "But it is, if you will, interpreted by the rest of the contract including, for example, the recital that [Samsung's counsel] just gave, and when you look at that in its totality, now it's pretty ambiguous to me. Why am I wrong?" Ex. 1 (9th Cir. Hearing Tr.) at 18:23-19:2.

- 14 -

Netlist's Opp. To Samsung's Motion To Vacate the Judgment And Stay Due To The Ninth Circuit's Decision No. 21-cv-463-JRG (E.D. Tex.)

limited to the joint development project, extended this reasoning to the supply obligation, and then prevailed, it cannot now turn around and argue that the license grant is not limited to the joint develop projects. *Owens v. W. & S. Life Ins..*, 717 F. App'x 412, 418 (5th Cir. 2018) (court accepted representations for purposes of judicial estoppel by remanding a case in reliance on them). The dissent in the Ninth Circuit affirmed that the majority opinion was relying on the argument made by Samsung relating to recital four. *Netlist Inc.*, 2023 WL 6820683, at *4 ("Finding no support in the terms of the agreement, the majority's decision settles on the recitals as the basis for its finding that § 6.2 is ambiguous.") (Desai, J., dissenting).

### C. Any Dispute Regarding The License Should Be Resolved In *Samsung II*

Finally, to the extent that the Court believes that Samsung's license defense needs to be retried, this should be done in the forthcoming *Samsung II* trial, scheduled for April 15th. As noted in the opposition to the motion to stay *Samsung II*, Samsung has raised the identical license defense in that action. Thus, the Court will soon have the opportunity to resolve any remaining dispute over either (a) the scope of the license grant, or (b) whether Netlist's termination is proper. If Netlist prevails in defeating Samsung's license defense, then Samsung's motion to vacate here will be rendered moot. The Court should similarly reject Samsung's request that this case be stayed pending the Central District's decision on remand. Mot. 1. As explained in Netlist's stay briefing in *Samsung II,* this Court is the only forum that can decide all elements of Samsung's JDLA license defense because the scope of the license grant is not before the Central District. *Samsung II,* Dkt. 196 at 14. It is also the only Court that can decide Netlist's infringement claims. *West Gulf* confirms that vacating the judgment and a stay is not appropriate. The panel held that "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 729 (5th Cir., 1985). Here, only East Texas in *Samsung II* can decide whether Samsung's non-NVDIMM-P products were licensed under the JDLA.

- 15 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)

| | |
|---|---|
| Dated: November 13, 2023 | Respectfully submitted, |
| | */s/ Jason G. Sheasby* |

                                                      Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Thomas C. Werner (*pro hac vice*)
twerner@irell.com
Andrew Strabone (*pro hac vice*)
astrabone@irell.com
Yanan Zhao (*pro hac vice*)
yzhao@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice*)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

**Attorneys for Plaintiff Netlist, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that, on November 13, 2023, a copy of the foregoing was served to all counsel of record via this Court's CM/ECF system.

                                                                              */s/ Yanan Zhao*
                                                                              Yanan Zhao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and exhibits attached hereto are authorized to be filed under seal pursuant to the Protective Order entered in this Case

                                                                              */s/ Yanan Zhao*
                                                                              Yanan Zhao

- 17 -

Netlist's Opp. To Samsung's Motion To Vacate the
Judgment And Stay Due To The Ninth Circuit's Decision
No. 21-cv-463-JRG (E.D. Tex.)